QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Rachel Herrick Kassabian (Bar No. 191060)
rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Rory S. Miller (Bar No. 238780)
rorymiller@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3100
Facsimile: (213) 443-3100

Attorneys for Specially Appearing
Defendant Yandex N.V.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| PERFECT 10, INC.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>YANDEX N.V.,<br><br>　　　　Defendant. | CASE NO. CV-12-1521-WHA<br><br>**SPECIALLY APPEARING PARTY YANDEX N.V.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:　　June 14, 2012<br>Time:　　2:00 p.m.<br>Crtrm.:　8 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

STATEMENT OF RELEVANT FACTS ........................................................................................ 1

ARGUMENT .................................................................................................................................... 3

I. LEGAL STANDARD GOVERNING A RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ................................................................. 3

II. PERFECT 10'S SUPERFICIAL ALLEGATIONS ARE LEGALLY INSUFFICIENT TO FIND PERSONAL JURISDICTION .................................................. 4

III. LOOKING BEYOND PERFECT 10'S CONCLUSORY ALLEGATIONS, YANDEX N.V. IS NOT SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT ........................................................................................................................ 5

    A. Yandex N.V. Is Not Subject to General Personal Jurisdiction .................................. 5

        1. Yandex Inc.'s California Contacts Cannot Be Imputed to Yandex N.V. ................................................................................................................ 6

        2. Personal Jurisdiction Does Not Arise from Listing on NASDAQ ................ 8

    B. Yandex N.V. Is Not Subject to Specific Personal Jurisdiction ................................. 9

        1. Perfect 10 Cannot Make its Showing Under the First Prong ....................... 9

        2. Perfect 10 Cannot Make its Showing Under the Second Prong.................. 11

    C. The Exercise of this Court's Jurisdiction over Yandex N.V. Would Not Be Reasonable in this Case. .......................................................................................... 11

    D. Contacts Between the United States and Any Yandex N.V. Subsidiaries Cannot Be Imputed to Yandex N.V. ........................................................................ 13

CONCLUSION ............................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
   293 F.3d 707 (4th Cir. 2002) ................................................................................................. 14

*Arch v. American Tobacco Co.*,
   984 F. Supp. 830 (E.D. Pa. 1997) ............................................................................................ 7

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ................................................................................................. 11

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir. 2010) ............................................................................................... 10

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .......................................................................................................... 4, 11

*Calder v. Jones*,
   465 U.S. 783 (1984) ................................................................................................................ 9

*Cubbage v. Merchant*,
   744 F.2d 665 (9th Cir. 1984) ................................................................................................... 4

*Cybersell, Inc. v. Cybersell, Inc.*,
   130 F.3d 414 (9th Cir. 1997) ................................................................................................. 14

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) .............................................................................................. 4, 5

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ............................................................................... 4, 6, 7, 8, 13

*Gallagher v. Mazda Motor of America, Inc.*,
   781 F. Supp. 1079 (E.D. Pa. 1992) .................................................................................... 7, 13

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) ................................................................................................. 6

*Gray Line Tours of Southern Nevada v. Reynolds Elec. & Eng'g Co., Inc.*,
   193 Cal. App. 3d 190 (1987) ................................................................................................... 9

*Int'l Shoe v. Washington*,
   326 U.S. 310 (1945) ................................................................................................................ 4

*Jennings v. AC Hydraulic A/S*,
   383 F.3d 546 (7th Cir. 2004) ................................................................................................. 14

*Lake v. Lake*,
   817 F.2d 1416 (9th Cir. 1987) ........................................................................................... 4, 11

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011)...................................................................................................14

*Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*,
    556 F.2d 975 (9th Cir. 1977), cert. denied 434 U.S. 1035 .........................................................6

*Perfect 10, Inc. v. Amazon.com Inc.*,
    508 F.3d 1146 (9th Cir. 2007)................................................................................................1, 3

*Rio Properties, Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002).....................................................................................................4

*Roberts v. Synergistic Int'l, LLC*,
    676 F. Supp. 2d 934 (E.D. Cal. 2009).........................................................................................6

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004).........................................................................................4, 9, 11

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990).....................................................................................................5

*Stormhale, Inc. v. Baidu.com, Inc.*,
    675 F. Supp. 2d 373 (S.D.N.Y. 2009).........................................................................................8

*Thomson v. Anderson*,
    113 Cal. App. 4th 258 (2003).....................................................................................................9

*Transure, Inc. v. Marsh and McLennan, Inc.*,
    766 F.2d 1297 (9th Cir. 1985).....................................................................................................6

*Tri-West Ins. Servs., Inc. v. Seguros Monterrey Aetna, S.A.*,
    78 Cal. App. 4th 672 (2000).......................................................................................................9

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000).........................................................................................................8

*World-Wide Volkswagen*,
    444 U.S. at 295..........................................................................................................................11

*Yahoo! Inc. v. La Ligue Contra Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006)...............................................................................................6, 10

*Ziegler v. Indian River County*,
    64 F.3d 470 (9th Cir. 1995).......................................................................................................12

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997) .........................................................................................14

**Statutes/Rules**

Cal. Corp. Code § 2105 ........................................................................................................................8

N.D. Cal. Civil L.R. 3-5 .......................................................................................................................4

Fed. R. Civ. P. 4 ................................................................................................................................8

Fed. R. Civ. P. 12 ...........................................................................................................................3, 4

**Other Authorities**

Weil, et al., *California Practice Guide: Civil Procedure Before Trial*
(2011 ed.) at § 3:210.4 ........................................................................................................9

**Introduction**

In this suit, Perfect 10, Inc. is attempting to sue in the United States Yandex N.V., a Dutch company, over image search results that appear on search engine websites owned and operated by a third party, Yandex LLC, a Russian limited liability company. According to Perfect 10, because the Yandex LLC search engine displays thumbnails of these images and provides direct links to the websites which actually host the full image, Yandex N.V. is responsible for copyright infringement.

Setting aside the legal deficiencies of these claims, which have been rejected by the Ninth Circuit in other Perfect 10-initiated litigations, *see, e.g., Perfect 10, Inc. v. Amazon.com Inc.,* 508 F.3d 1146 (9th Cir. 2007), Perfect 10's suit fails for a far more simple reason: this Court lacks jurisdiction to adjudicate a claim against a Dutch company with minimal contacts to the United States, let alone California, for the actions of its Russian limited liability company subsidiary. Pursuant to Federal Rule of Civil Procedure 12(b)(2), this case should be dismissed with prejudice for want of jurisdiction.

**Statement of Relevant Facts**

Yandex N.V.  Yandex N.V., the defendant in this action, is a Dutch corporation with its principal place of business in the Netherlands. Declaration of Elena Ivashentseva, filed concurrently (hereinafter "Ivashentseva Decl."), at ¶ 3. As described further below, Yandex N.V. owns and invests in various Internet and technology-related businesses. Yandex N.V. does not engage in business activities in California. It has no offices in California. It is not registered to do business in California. *Id.* at ¶ 4. Yandex N.V. does not direct any advertising specifically toward California residents. It does not advertise in any publications that are directed primarily toward California residents. *Id.* at ¶ 7. None of Yandex N.V.'s officers or directors reside in or are domiciled in California. *Id.* at ¶ 5.

Contrary to the allegations of the Complaint, Yandex N.V. does not own or operate the internet websites yandex.com, yandex.ru, yandex.st or yandex.net, nor does it hold the domain name registrations for these sites. *See* Ivashentseva Decl. at ¶ 7; Declaration of Diane M. Doolittle, filed concurrently, (hereinafter "Doolittle Decl."), at Exs. 1-4 (WHOIS records for each

1   website).  Yandex N.V. does not direct or control the search functionality of the websites
2   yandex.com, yandex.ru, yandex.st or yandex.net.  Ivashentseva Decl. at ¶ 7.  In addition, Yandex
3   N.V. has no involvement in the selection, storage, or display of images over the internet, whether
4   on the websites yandex.com, yandex.ru, yandex.st or yandex.net or elsewhere.  *Id.*

5   Since May 24, 2011, Yandex N.V. has been publicly traded on the NASDAQ Global
6   Select Market.  Other than limited activities to support its stock exchange listing, Yandex N.V. has
7   no U.S.-based business operations, no U.S. employees, owns no U.S. property, and pays no state
8   or U.S. federal taxes.  Ivashentseva Decl. at ¶ 4.  Yandex N.V. also does not sell products or
9   provide any services in California or elsewhere in the United States.  *Id.*  In addition, until the
10  present lawsuit, there has been no federal lawsuit involving Yandex N.V. as either a plaintiff or a
11  defendant.  Doolittle Decl. at ¶ 8.

12  Yandex N.V. is the worldwide parent company of the Yandex family of companies.
13  Collectively, this corporate family offers a broad range of search, location-based, personalized and
14  mobile services that are free to users and that enable those users to find information and
15  communicate over the Internet from both desktops and mobile devices.  One of Yandex N.V.'s
16  subsidiaries, Yandex LLC, a Russian limited liability company, is the leading internet company in
17  Russia, and operates the most popular search engine and most visited website for Internet users
18  within Russia.  *See* Doolittle Decl., Ex. 5 at p. 55 (excerpts of Yandex N.V.'s 2012 Form 20-F
19  SEC Statement).  For example, in 2011, 63.3% of all Russian search traffic utilized a Yandex-
20  affiliated search, compared to Google (the closest competitor in Russia), which had 23.4% of
21  search traffic, and Mail.ru (the closest domestic competitor in Russia), which had another 7.1% of
22  traffic.  *Id.*  Presently, the Yandex family of companies operates principally in Russia, Ukraine,
23  Belarus, Kazakhstan and Turkey.  *Id.* at p. 54.

24  Yandex N.V.'s subsidiaries include one based in California:  Yandex Inc., a Delaware
25  corporation with its principal place of business in Palo Alto.  Ivashentseva Decl. at ¶ 8.  As with
26  Yandex LLC, Yandex N.V.'s involvement in Yandex Inc. is limited to performing its function as a
27  parent investor, and it does not control, manage or direct the internal affairs or day-to-day
28  operations of Yandex Inc.  *Id.* at ¶ 9.  Additionally, the companies keep separate financial records

1 and distinct bank accounts. *Id.* The primary function of Yandex Inc. is to recruit software
2 engineers from the Silicon Valley and to employ a small team of software developers who conduct
3 research and development of search engine algorithms and technology. *Id.* at ¶ 10. As of
4 December 2011, Yandex Inc. had only 16 employees out of the 3,312 total headcount for the
5 Yandex family of companies. *Id.* at ¶ 12.

6      Yandex N.V. continues to invest in or acquire other businesses. Recent acquisitions, for
7 example, include the purchase of a 100% stake in the SPB Software group of companies, which
8 were founded in St. Petersburg, Russia and develop software for mobile devices such as
9 telephones and tablets. *See* Doolittle Decl., Ex. 5 at p. 65; *see also* Ivashentseva Decl. at ¶ 11.

10      Even aggregating all of the activities of the entire Yandex group of companies, Yandex
11 N.V.'s U.S. contacts are minimal. Including all of its subsidiaries' revenue, Yandex N.V. derives
12 less than 0.4% of its total annual revenue from U.S.-based sources. Ivashentseva Decl. at ¶ 14.

13      <u>Perfect 10, Inc.</u> Perfect 10's origins were as an adult magazine publisher in the mid-to-late
14 1990s that never turned a profit on its operations. By 2007, Perfect 10 ceased production of its
15 magazine, laid off its key employees, and ended most of its operations. Over the last decade,
16 Perfect 10 has been a serial litigant, having brought at least 33 lawsuits alleging copyright
17 infringement against companies such as Amazon.com, Visa, MasterCard, Microsoft and Google.

18      <u>Substantive Allegations of the Complaint.</u> The allegations made by Perfect 10 in this
19 action are no different than those Perfect 10 has made against numerous other defendants: that
20 there is a massive, Internet-wide effort underway to infringe tens of thousands of Perfect 10's
21 copyrights through the use of such tools as image search engines and email, and that, as a result of
22 this broad-reaching infringement, Perfect 10 has been driven to financial ruin, and forced to
23 engage in seemingly endless copyright litigation against scores of companies.

24                       **Argument**

25 **I.**     **LEGAL STANDARD GOVERNING A RULE 12(B)(2) MOTION TO DISMISS FOR**
26          **LACK OF PERSONAL JURISDICTION**

27      Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal
28 jurisdiction. Notably, unlike a motion to dismiss pursuant to Rule 12(b)(6), it is ***the plaintiff's***

1  *burden* to establish the court's personal jurisdiction over a defendant. *See, e.g., Rio*
2  *Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002); *Cubbage v. Merchant,*
3  744 F.2d 665, 667 (9th Cir. 1984).  Similarly, unlike Rule 12(b)(6), a court assessing personal
4  jurisdiction in the context of a Rule 12(b)(2) motion is under no obligation to consider the
5  allegations in a complaint as true, and may consider evidence presented in affidavits or by other
6  means. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004) (citing *Int'l Shoe v. Washington,* 326 U.S. 310, 316 (1945)). "Minimum contacts" may be satisfied with either "general jurisdiction" or with "specific jurisdiction." *Doe v. Unocal Corp.,* 248 F.3d 915, 924 (9th Cir. 2001).

For both general and specific personal jurisdiction, the exercise of the court's power must also be "reasonable." *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985) (for general personal jurisdiction, "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.") (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980)); *Schwarzenegger,* 374 F.3d 802 (for specific personal jurisdiction, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.") (quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987)). Notwithstanding Perfect 10's boilerplate allegation of personal jurisdiction over Yandex N.V., as described below, the facts fail to support such a finding. Accordingly, Perfect 10's suit should be dismissed.

## II. PERFECT 10'S SUPERFICIAL ALLEGATIONS ARE LEGALLY INSUFFICIENT TO FIND PERSONAL JURISDICTION

It is Perfect 10's *affirmative* burden to prove that there is jurisdiction over Yandex N.V. The Local Rules of this Court require that Perfect 10 set forth the legal and factual basis for jurisdiction over Yandex N.V. *See* N.D. Cal. Civil L.R. 3-5(a).

Perfect 10's sole personal jurisdiction allegation in compliance with this rule is in the third paragraph of the complaint, which contains the formulaic (and unsupported) allegation that "[p]ersonal jurisdiction is proper over the Defendants because they have purposefully availed themselves of the privilege of doing business in California and material elements of Defendants' wrongdoing occurred in this State."

The only apparent factual support for this allegation in Perfect 10's complaint is found in paragraph 5, which alleges (incorrectly) that Yandex N.V. "owns and operates" various internet websites and "operates a research facility" in Palo Alto, California. This paragraph also (correctly) alleges that Yandex N.V. is listed on the NASDAQ stock exchange, and that its subsidiary Yandex Inc. serves as its agent for service of process in connection with certain Securities and Exchange filings.

Neither of these mostly inaccurate allegations can provide any support to Perfect 10's personal jurisdiction allegation. As more fully explained below in Section III, there is no legal or factual support for Perfect 10's boilerplate assertion that Yandex N.V. is subject to the personal jurisdiction of this Court. The truth is quite the opposite—Yandex N.V. has scant few contacts with California, or even the United States as a whole. More pointedly, Yandex N.V. does ***not*** own or operate the websites at issue or the "research facility" in California. Moreover, the mere fact of a U.S.-based stock exchange listing an agent for service of process in connection with Securities and Exchange Commission regulatory filings that is incidentally located in California does not give rise to personal jurisdiction.

### III. LOOKING BEYOND PERFECT 10'S CONCLUSORY ALLEGATIONS, YANDEX N.V. IS NOT SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT

#### A. Yandex N.V. Is Not Subject to General Personal Jurisdiction

"General jurisdiction applies where a defendant's activities in the state are 'substantial' or 'continuous and systematic,' even if the cause of action is unrelated to those activities." *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *Data Disc,* 557 F.2d at 1287). "Unless a defendant's contracts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes," general jurisdiction is not

1  present. *Yahoo! Inc. v. La Ligue Contra Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1205

2  (9th Cir. 2006) (en banc); *see also Roberts v. Synergistic Int'l, LLC,* 676 F. Supp. 2d 934, 942

3  (E.D. Cal. 2009) ("For general (unlimited) jurisdiction, a higher level of 'contacts' with the forum

4  state is required to support local jurisdiction."). In assessing general jurisdiction, a court must

5  focus on the "economic reality" of the defendant's activities; where they are "more occasional

6  than continuous, and more infrequent than systematic," general jurisdiction is not appropriate.

7  *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir. 1984).

8      Yandex N.V.'s contacts with California and the United States are minimal. It has no

9  employees, no operations, and no advertising in either California or the United States.

10 Ivashentseva Decl. at ¶¶ 4 & 8. It owns no property, transacts no business, and is not even

11 licensed to do business in California or elsewhere in the United States. *Id.* at ¶ 4. Rather, Yandex

12 N.V.'s contacts are limited to (1) owning a separate and distinct subsidiary entity, Yandex Inc.,

13 that has its principal place of business in California and (2) being listed on a NASDAQ stock

14 exchange in New York and designating an agent for service of process in connection with its

15 regulatory filings that happens to be located in California. Neither of these activities constitutes

16 the "continuous and systematic" contacts required for general personal jurisdiction.

17         1.    <u>Yandex Inc.'s California Contacts Cannot Be Imputed to Yandex N.V.</u>

18     It is settled law that "mere existence of the parent-subsidiary relationship is not alone a

19 sufficient basis for long-arm jurisdiction of the parent" for actions by a subsidiary. *Mizokami*

20 *Bros. of Ariz., Inc. v. Baychem Corp.,* 556 F.2d 975, 977 (9th Cir. 1977), cert. denied 434 U.S.

21 1035; *see also Unocal,* 248 F.3d at 925 ("The existence of a relationship between a parent

22 company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on

23 the basis of the subsidiaries' minimum contacts with the forum.") (citing *Transure, Inc. v. Marsh*

24 *and McLennan, Inc.,* 766 F.2d 1297, 1299 (9th Cir. 1985)). Instead, the relationship between the

25 two must be such that the subsidiary is really an "alter ego" or an "agent" of the parent, or is

26 acting as an agent on behalf of the parent. *Unocal,* 248 F.3d at 926.

27     The "alter ego" exception to this rule requires that a plaintiff show "(1) that there is such

28 unity of interest and ownership that the separate personalities [of the two entities] no longer exist

1  and (2) that failure to disregard [their separate identities] would result in fraud or injustice."
2  *Unocal,* 248 F.3d at 926 (quoting *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94
3  F.3d 586, 591 (9th Cir. 1996) (alterations in *Unocal*)).  To meet the "agency" exception, a plaintiff
4  must demonstrate that the subsidiary "performs services that are 'sufficiently important to the
5  foreign corporation that if it did not have a representative to perform them, the corporation's own
6  officials would undertake to perform substantially similar services."  *Unocal,* 248 F.3d at 928
7  (quoting *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1405 (9th Cir. 1994)).

       No such relationship exists between Yandex Inc. and Yandex N.V.  Yandex N.V.'s involvement with Yandex Inc. is limited to its role as a parent investor.  Ivashentseva Decl., ¶ 9.  Yandex N.V. does not control the internal affairs or day-to-day operations of Yandex Inc.  *Id.*  The companies not only maintain separate operations; they keep separate financial records and their bank accounts are separate and independent.  *Id.*  Perfect 10 cannot prevent this motion by pointing to Yandex Inc. and claiming that company's contacts with California should be imputed to Yandex N.V.

       As a general matter, it is improper to impute the contacts of a subsidiary to a holding company parent, such as Yandex N.V.  *See, e.g., Gallagher v. Mazda Motor of America, Inc.,* 781 F. Supp. 1079, 1085 (E.D. Pa. 1992) ("the subsidiary is not performing a function that the parent would otherwise have had to perform itself (the holding company simply could hold another type of subsidiary).  In such a case, imputing jurisdictional contacts would be improper."); *Arch v. American Tobacco Co.,* 984 F. Supp. 830, 840 (E.D. Pa. 1997) (quoting and applying *Gallagher* to find no personal jurisdiction).[1]  Because Yandex N.V. is a holding company acting consistent with its role as an investor, any contacts of Yandex Inc. should not be imputed.

---

[1]  The Ninth Circuit has adopted *Gallagher's* analysis and reasoning on this point.  *See, e.g., Unocal,* 248 F.3d at 929-930 (citing to *Gallagher* and determining that there is no agency exception to personal jurisdiction over a holding company).

2. <u>Personal Jurisdiction Does Not Arise from Listing on NASDAQ</u>

Beyond California, Yandex N.V.'s contacts elsewhere in the United States are limited to its listing on a NASDAQ stock exchange in New York. However, the law is clear that listing on a stock exchange, and taking steps to support that listing, absent further actions, is insufficient to find personal jurisdiction. *See, e.g., Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 98 (2d Cir. 2000) ("absent other substantial contacts, a company is not 'doing business' in New York merely by taking ancillary steps in support of its listing on a New York exchange").

The Southern District of New York's decision in *Stormhale, Inc. v. Baidu.com, Inc.,* 675 F. Supp. 2d 373 (S.D.N.Y. 2009), is squarely on point for this issue. In that case, Stormhale sued Baidu, a leading Chinese search engine company, for copyright infringement. The alleged copyright infringement by Baidu was surprisingly similar to that alleged by Perfect 10 here: that, following a search for Stormhale's works, Baidu displayed links to those works in the search results. In response to a motion to dismiss for lack of personal jurisdiction, Stormhale argued that Baidu was "doing business" in New York because it was listed on NASDAQ and submitted numerous regulatory filings with the SEC. *Id.* at 375. The court, however, rejected these arguments and found that it had no jurisdiction over Baidu for the purposes of Stormhale's copyright infringement claim. *Id.* at 376. The law in the Ninth Circuit is identical: listing on a United States stock exchange is not sufficient to find personal jurisdiction. *Unocal,* 248 F.3d at 922 ("Total has no contacts of its own with the United States beyond listing its stock on various exchanges and promoting sales of stock in the United States. . . . the Court is not persuaded that Congress intended for the courts to assert jurisdiction under Rule 4(k)(2) whenever a corporation lists its stock on a United States exchange.").

Nor does the existence of an agent designated for the service of process in connection with Securities and Exchange Commission regulatory filings give rise to the personal jurisdiction of this Court. First, it should be noted that this registration is separate and distinct from the designation of an agent for service of process in California, which is part of "qualifying to do business" in the state under *California Corporations Code* § 2105. Yandex N.V. has never qualified to do business in California, nor has it registered an agent for service of process with the

1  Secretary of State.  Ivashentseva Decl. at ¶ 4.  Second, even if it had, California law is clear that
2  for purposes of its long-arm statute, the existence of a registered agent for service of process is **not**
3  a consent to jurisdiction in the state.  *See, e.g., Thomson v. Anderson,* 113 Cal. App. 4th 258, 270
4  (2003); *Tri-West Ins. Servs., Inc. v. Seguros Monterrey Aetna, S.A.,* 78 Cal. App. 4th 672, 676-77
5  (2000); *Gray Line Tours of Southern Nevada v. Reynolds Elec. & Eng'g Co., Inc.,* 193 Cal.
6  App. 3d 190, 193-95 (1987); *see generally* Weil et al., *California Practice Guide: Civil Procedure*
7  *Before Trial* (2011 ed.) at § 3:210.4 ("A foreign corporation's designation of an **agent for service**
8  of process in California is **not a submission to personal jurisdiction** here.  I.e., although service of
9  summons may be made on the designated agent, the action cannot be maintained against a foreign
10 corporation absent 'minimum contacts' with California.") (emphasis in original).
11       Thus, Yandex N.V.'s limited activities within the United States are, as a matter of law,
12 insufficient to support a finding that it is subject to the general personal jurisdiction of this court,
13 or of any other United States court.
14       **B.     Yandex N.V. Is Not Subject to Specific Personal Jurisdiction**
15       In addition to being unable to prove that Yandex N.V. is subject to the general personal
16 jurisdiction of this Court, Perfect 10 is also unable to demonstrate that it should be subject to
17 specific personal jurisdiction for the acts alleged in the complaint.  Specific jurisdiction requires
18 that "(1) the nonresident defendant . . . purposefully direct his activities or consummate some
19 transaction with the forum or resident thereof; or perform some act by which he purposefully
20 avails himself of the privilege of conducting activities in the forum . . .; (2) the claim . . . be one
21 which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of
22 jurisdiction . . . be reasonable." *Schwarzenegger,* 374 F.3d at 802 (quoting *Lake,*
23 817 F.2d at 1421).
24            1.     <u>Perfect 10 Cannot Make its Showing Under the First Prong</u>
25       The Ninth Circuit has set forth a detailed test for analyzing the first prong of the specific
26 jurisdiction standard that it has termed the "effects" test.  This test, which is based on the Supreme
27 Court's decision in *Calder v. Jones,* 465 U.S. 783 (1984), is applied in copyright cases.  *See, e.g.,*
28 *Schwarzenegger,* 374 F.3d at 802.  To meet this test, a plaintiff must prove that the defendant

1  "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendants knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo!,* 433 F.3d at 1206). Perfect 10 cannot meet these elements here.

First, it cannot show that *any* of the actions cited in the complaint as infringement were the intentional acts of Yandex N.V. Yandex N.V. *does not own or operate* the search engines that form the core of Perfect 10's complaint (or any other search engines, for that matter); so no intentional act led to the items at issue in the complaint. Ivashentseva Decl. at ¶ 6; Doolittle Decl., Exs. 1-4. Second, Perfect 10 cannot demonstrate that any of Yandex N.V.'s activities were expressly aimed at California. Yandex N.V. does not have any office in California, is not registered to do business in California, and does not sell any products or provide any services in California. Ivashentseva Decl. at ¶¶ 4 & 7. Third and finally, *none* of the alleged harm in Perfect 10's complaint is the result of any act by Yandex N.V.; as a result, there is simply no nexus between Yandex N.V., the allegations of the complaint, and California. Therefore, there is no specific personal jurisdiction.

Even if this Court were to conflate the actions of Yandex N.V.'s subsidiaries with Yandex N.V.'s own, Perfect 10's suit would still fail. For the first element, Perfect 10 has failed to allege, let alone sufficiently show, that a search result, delivered without human interaction or guidance, constitutes an intentional act, let alone an intentional act of copyright infringement. For the second element, it cannot show that any of the complained-of actions (which, again, were not even actions by Yandex N.V.) were expressly aimed at California. Finally, it is unclear how a search engine website, operating abroad, directed at users abroad, could be said to be causing any "harm" in California.

Perfect 10 has failed to establish any element of the "effects" test, whether based either on Yandex N.V.'s actions (as the law requires) or even by improperly conflating the actions of Yandex N.V.'s subsidiaries with Yandex N.V.'s own. As a result, Perfect 10 cannot establish that this Court has specific personal jurisdiction over Yandex N.V.

<ol start="2">
<li>Perfect 10 Cannot Make its Showing Under the Second Prong</li>
</ol>

The Ninth Circuit has adopted a "but for" test to guide analysis under the second prong of the test for specific personal jurisdiction. *See, e.g., Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir. 1995). This test requires a court to ask "but for [defendant's] contacts with the United States and California, would [plaintiff's] claims against the [defendant] have arisen?" *Id.*

The answer to that is plainly "no" for Yandex N.V. As noted above, Yandex N.V.'s contacts with the United States are limited to specific acts in furtherance of its NASDAQ listing, and owning a separate and distinct subsidiary company that operates in the United States. Ivashentseva Decl. at ¶¶ 4-10. Even if Yandex N.V. had not undertaken these actions, the claims in the complaint would remain unaltered—there would still be a search engine, and Perfect 10 would still be a serial copyright litigant. There is no connection between any of Yandex N.V.'s limited contacts with California and the rest of the United States and the claims in this action.

**C.   The Exercise of this Court's Jurisdiction over Yandex N.V. Would Not Be Reasonable in this Case.**

Both general personal jurisdiction and specific personal jurisdiction require that the assertion of a court's authority over the defendant be reasonable. *See, e.g., Burger King,* 471 U.S. at 474 (for general personal jurisdiction, "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.") (citing *World-Wide Volkswagen,* 444 U.S. at 295); *Schwarzenegger,* 374 F.3d 802 (for specific personal jurisdiction, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.") (quoting *Lake,* 817 F.2d at 1421). The facts of the present case demonstrate that requiring Yandex N.V. to defend this suit before this Court would be unreasonable.

In evaluating reasonableness, courts must consider:

> (1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Ziegler v. Indian River County,* 64 F.3d 470, 474-75 (9th Cir. 1995). A court should weigh all seven factors, as no single factor is dispositive. *Id.* at 475.

Although all of the factors weigh against the exercise of personal jurisdiction or, at best for Perfect 10, are neutral, the first three factors weigh particularly heavily against the exercise of personal jurisdiction over Yandex N.V. As demonstrated previously, Yandex N.V. has not purposefully injected itself into California specifically or the United States in general. Ivashentseva Decl. at ¶¶ 4-7, 14. Moreover, litigating this action in the United States would pose a great burden to Yandex N.V., as the majority of individuals who have information or knowledge related to the allegations of the complaint are Russian nationals who reside in Russia and who either do not speak English or do not speak English as a first language. *Id.* at ¶ 15(d). Additionally, as a Dutch company subject to Dutch law, with Yandex LLC subject to Russian law, should this Court enter injunctive relief, Yandex N.V. may find itself facing an impossible choice of complying with its obligations under Dutch law and Russian law, or complying with an inconsistent United States-issued injunction. *Id.* at ¶ 15(e).

Other factors also weigh against the reasonableness of litigation in this forum as well. For example, under the seventh factor, there is an alternative forum for Perfect 10: Dutch courts. The Netherlands have long provided international protections for copyrights—for example, the Netherlands has been a signatory to the Berne Convention for the Protection of Literary and Artistic Works since October 9, 1912. *See* Doolittle Decl., Ex. 6 (WIPO Report on the Netherlands's Enactment of the Berne Convention). Similarly, the Netherlands is a member of the World Trade Organization and provides intellectual property protection, including copyright protection, pursuant to that organization's TRIPS Agreement.[2] The availability of Dutch courts as an alternative forum is further enhanced by the ease of enforcement of any judgment against Yandex N.V.—as a Dutch company with its principal place of business in The Hague, Yandex

---

[2] TRIPS is an acronym for "Trade-Related Aspects of Intellectual Property Rights." This agreement is binding on all members of the WTO as part of the "single undertaking" resulting from the Uruguay Round negotiations. *See* Doolittle Decl., Ex. 7 (WTO Frequently Asked Questions Regarding TRIPS).

1   N.V. is subject to Dutch law, and Dutch judgments are easy to enforce against it.  However, there
2   is no treaty between the Netherlands and the United States that would provide for the
3   enforcements of a judgment of this Court by a Dutch court.  *See* Doolittle Decl. at ¶ 7 & Ex 5 at
4   p. 40.

It is unreasonable to allow a serial copyright litigant like Perfect 10 to force a foreign company that has never done business in California and who has minimal business contacts with the United States as a whole, to defend this case in this forum, and the Court should recognize this fact and decline to exercise personal jurisdiction over Yandex N.V.

### D. Contacts Between the United States and Any Yandex N.V. Subsidiaries Cannot Be Imputed to Yandex N.V.

As set forth above, Perfect 10 has failed to (and indeed, can never) show that Yandex N.V. should be subject to the personal jurisdiction of this Court.  One end-run around this reality that Perfect 10 might attempt deserves comment here:  jurisdiction over Yandex N.V. cannot be based on any of its subsidiaries' operations in or contacts with the United States.

First, as discussed previously, in order to impute the contacts of Yandex N.V.'s subsidiaries to it, Perfect 10 must show that those subsidiaries operate either as "alter egos" or "agents" of Yandex N.V.  *Unocal,* 248 F.3d at 926.  As previously discussed, *see supra* at 6:17-7:22, no such showing can be made here.  Yandex N.V.'s subsidiaries are separate companies with significant independent operating control, *see* Ivashentseva Decl. at ¶¶ 9, 11 & 13, which is fatal to any attempt to impute their contacts with either California or the United States as a whole to Yandex N.V.  This is especially true in light of the fact that, as a holding company, Yandex N.V. does not use its subsidiaries as "agents" for the purposes of personal jurisdiction.  *Gallagher,* 781 F. Supp. at 1085 ("the subsidiary is not performing a function that the parent would otherwise have had to perform itself (the holding company simply could hold another type of subsidiary).  In such a case, imputing jurisdictional contacts would be improper.").

Second, the Yandex N.V. subsidiary that operates in California, Yandex Inc., does not own or operate the search engines that produce the results that Perfect 10 claims infringe its copyrights. *See* Doolittle Decl., Exs. 1-4.

Finally, the entity that does operate those search engines, Yandex LLC, is not a U.S.-based subsidiary, that, prior to the events alleged in the complaint, had surrendered its registration to do business in California. *See* Ivashentseva Decl. at ¶ 8. Moreover, as a Russian subsidiary of Yandex N.V., operating outside of California, there is no basis to impute any possible contacts with the United States to its Dutch parent investor.[3] Even if they were, it would still not be sufficient to haul Yandex N.V. into court.

This is because "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Here, the exercise of personal jurisdiction would be grossly disproportionate to the commercial activity generated from the United States—the entire Yandex group of companies derives less than 0.4% of their total annual revenue from U.S.-based sources. Ivashentseva Decl. at ¶ 14.

Nor does the mere fact that the Yandex-branded search engines are accessible over the Internet from a computer in California suffice to confer jurisdiction—purposefully directing activities at a particular forum requires more than just maintaining an accessible website. *See, e.g., Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1225-1227 (9th Cir. 2011) (holding that even a "highly interactive" website not sufficient to ground jurisdiction); *see also, e.g., Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 550 (7th Cir. 2004); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002) (exercise of jurisdiction on the sole basis that information placed by defendant on the internet is accessible in forum would eviscerate defense of personal jurisdiction). The operation of a search engine website, even if that search engine can be used in California, does not *ipso facto* result in personal jurisdiction in California.

---

[3] Yandex N.V. is unaware of any case ruling that a court can obtain personal jurisdiction over a foreign holding company based upon the contacts of a subsidiary organized under the laws of a foreign country and operating outside of the United States.

## Conclusion

Perfect 10 has sued a company that does essentially no business in California, for alleged copyright infringement resulting from activities that company does not control or direct. Perfect 10 has similarly failed to make *any* showing, let alone a legally tenable one, that Yandex N.V. should be subject to the personal jurisdiction of this Court. Indeed, Perfect 10 could never make such a showing.

For the foregoing reasons, specially appearing defendant Yandex N.V. respectfully requests that this Court dismiss Perfect 10's suit in its entirety and with prejudice.

DATED: May 10, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   /s/ Diane M. Doolittle
  Diane M. Doolittle
  Rachel Herrick Kassabian
  Attorneys for Specially Appearing Defendant Yandex N.V.