1  Eric J. Benink, Esq., SBN 187434
2  Krause Kalfayan Benink & Slavens, LLP
3  550 West C Street, Suite 530
   San Diego, CA  92101
4  (619) 232-0331 (ph)
   (619) 232-4019 (fax)
5  eric@kkbs-law.com
6
   Attorney for Plaintiff Perfect 10, Inc.
7

8            UNITED STATES DISTRICT COURT
9
      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
10

11 PERFECT 10, INC., a California          Case No.: CV 12-1521 WHA
   corporation,
12                                         **PLAINTIFF PERFECT 10, INC.'S**
13             Plaintiff,                  **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES IN OPPOSITION TO**
14        v.                               **YANDEX'S MOTION TO DISMISS**
                                           **FOR LACK OF PERSONAL**
15 YANDEX N.V., a Netherlands limited      **JURISDICTION**
   liability company; and DOES 1 through
16 100, inclusive,                         Date:   June 14, 2012
                                           Time:  8:00 A.M.
17             Defendants.                 Ctrm:  8
                                           Judge:  Honorable William Alsup
18

19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ...................................2

II.    STATEMENT OF FACTS ...............................................................................3

    A.   Yandex N.V. is a Search Engine Company ........................................3

    B.   Yandex Inc. is Located and Conducts Significant
        Business in California ..........................................................................5

    C.   Yandex N.V. Has Other Contacts with California ..............................6

    D.   Yandex N.V. has Numerous Dealings Throughout the U.S. ...............6

    E.   Perfect 10's Claims ............................................................................7

III.   ARGUMENT ..................................................................................................7

    A.   The Standards for a Fed. R. Civ. P. 12(b)(2) Motion .........................7

    B.   Yandex N.V. Consented to Jurisdiction in California.........................7

    C.   Yandex Inc.'s and Yandex LLC's Contacts Must Be
        Imputed to Yandex N.V. ....................................................................8

        1.   Yandex N.V.'s Subsidiaries Act as its Agents................................8

        2.   Yandex Inc. and Yandex LLC are
            Yandex N.V.'s "Alter Egos"........................................................10

    D.   Yandex N.V. is Subject to General Jurisdiction........................11

    E.   Yandex N.V. is Subject to Specific Jurisdiction .........................12

        1.   Purposeful Availment ....................................................................12

        2.   Perfect 10's claims arise out of and result from
            Yandex N.V.'s forum-related activities. ........................................14

        3.   Yandex N.V. has not presented a compelling case
            that assertion of jurisdiction is unreasonable ................................15

    F.   The Court May Exercise Federal Long-Arm Jurisdiction
        Pursuant To Rule 4(K)(2)...............................................................18

    G.   Perfect 10 Requests Jurisdictional Discovery ..........................20

IV.   CONCLUSION................................................................................................23

1
2

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allstar Marketing Group, LLC v. Your Store Online, LLC.*,
   666 F.Supp.2d 1109 (C.D. Cal. 2009) ................................................................. 13, 14

*American Automobile Assoc., Inc. v. Darba Enterprises, Inc.*,
   2009 WL 1066506 at (N.D. Cal., April 21, 2009) ...................................................... 14

*AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) .......................... 7

*Bauman v. DaimlerChrysler AG*, 2005 WL 3157472
   at (N.D. Cal. November 22, 2005) ............................................................................ 19

*Bauman v. DaimlerChrysler Corp.*, 644 F.3d. 909, 920 (9th Cir. 2011)................passim

*Bellomo v. Penn. Life Co.*, 488 F.Supp. 744, 746 (S.D.N.Y. 1980) .............................. 10

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) .................................. 12, 15

*Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257 (9th Cir. 1989)............ 17

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462; 105 S.Ct. 2174 (1985) ..............passim

*Butchers Union Local No. 498, United Food and Commercial Workers v.*
   *SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986) ........................................................... 20

*Calder v. Jones*, 465 U.S. 783 (1984)........................................................................... 13

*Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 at 1404 (9th Cir. 1994) ...................... 9

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993) ...................... 16

*Colt Studio Inc. v. Badpuppy Ent.*, 75 F.Supp.2d. 1104 (C.D. Cal. 1999) .............. 14, 17

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997)............................. 12, 13

*Data Disc, Inc. v. Sys. Technology Assoc., Inc.*, 557 F.2d 1280 (9th Cir. 1977) ...passim

*Davis v. Asano Bussan Co.*, 212 F.2d 558 (5th Cir. 1954) ........................................... 21

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ...............................................passim

*El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C.Cir. 1996)................................... 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) .............. 12

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) .................................................................................... 9

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408 (1984) .................... 7

*Helm v. Alderwoods Group, Inc.*, 696 F.Supp.2d 1057 (N.D. Cal. 2009).............passim

*Holland Am. Line Inc. v. Wartsila N. Amer. Inc.*, 485 F.3d 450 (9th Cir. 2007) .......... 18

*ISI Intern. Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548 (7th Cir. 2001) ............ 18

*Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir.1990) ........................... 3, 8

*Martin v. D-Wave Systems, Inc.*, 2009 WL 4572742,
  (N.D. Cal. December 1, 2009) ................................................................... 8, 19

*Monster Cable Products, Inc. v. Euroflex SRI*,
  642 F.Supp.2d 1001 (N.D. Cal. 2009) ..................................................... 18

*Nutrishare, Inc. v. BioRX, L.L.C.*, 2008 WL 3842946,
  (E.D.Cal. August 14, 2008) ..................................................................... 8

*Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, n. 2 (9th Cir.2002) ............ 19

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995).................... 12

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340; 98 S.Ct. 2380 (1978) .................. 20

*Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670 (S.D. Cal. 2001) ..... 21

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ........................passim

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) .................................passim

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) ............................................... 12

*Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990)
  rev'd on other grounds  499 U.S. 585; 111 S.Ct. 1522 (1991) ..................... 14

*Stangvik v. Shiley, Inc.*, 54 Cal.3d 744, 752 (1991)............................................ 17

*Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074 (C.D. Cal 1999)........................... 13, 14

*Wells Fargo & Co v. Wells Fargo Express Co.*,
  556 F.2d 406 n. 24 (9th Cir. 1977) ....................................................... 20, 21

**Statutes**

Cal. Code Civ. Proc. § 410.10..................................................................... 7

Fed. R. Civ. P. 4(k)(2)............................................................................ 3, 18, 23

Fed. R. Civ. P. 12(b)(2)........................................................................... 7, 20

Fed. R. Civ. P. 26(b)(1)........................................................................... 20

---

Perfect 10's Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction  | Case No. 12CV1521

1

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

2

3          Defendant Yandex N.V. ("Yandex N.V.") has filed a motion to dismiss (the

4    "Motion"), contending that it has "scant few contacts" with California and thus, is not

5    subject to personal jurisdiction here.  Its Motion is premised on a claim that its

6    subsidiaries, not Yandex N.V., are engaged in the conduct at issue.  However, virtually

7    every factual assertion made by Yandex N.V. in its Motion is contrary to

8    representations that Yandex N.V. has made in its Securities and Exchange Commission

9    ("S.E.C.") filings and press releases, and on yandex.com.  Yandex.com is one of the

     websites that Perfect 10 alleges violates its copyrights.

10         For example, in its S.E.C. F-1 Registration Statement filed April 28, 2011,

11   Yandex N.V. stated under the heading "Our Business" that:  "**We are the leading**

12   **internet company in Russia, operating the most popular search engine and the**

13   **most visited website**."  Declaration of Dr. Norman Zada, filed separately herewith

14   ("Zada Decl.") Exh. 1, page 4.  As described more fully below, press releases issued by

15   Yandex N.V. and the yandex.com website make nearly identical statements and make

16   no attempt to distinguish between "parent" and "subsidiary."  Yandex N.V. is not a

17   "parent investor" in unrelated companies as it might have the Court believe, but rather,

18   utilizes its subsidiaries to accomplish its singular goal of competing in the search

19   engine industry through the **Yandex brand**.  Indeed, Yandex N.V. admits that it,

20   together with its subsidiaries, "operate as a single business segment."  Zada Decl.  Exh.

21   2, pages 19, 24.   Yandex N.V. is thus substantially different from a parent investor

22   such as Berkshire Hathaway, Inc. that owns a variety of unrelated subsidiaries such as

23   Geico, Clayton Homes, See's Candies, and Helzberg Diamonds, and makes clear in its

24   SEC filings that it is merely a holding company.  *See* Annual Report for Berkshire

25   Hathaway, Inc. ("Berkshire Hathaway Inc. . . .is a holding company owning

26   subsidiaries engaged in a number of diverse business activities.") Zada Decl. Exhs. 5-

27   6.  Unlike Yandex N.V., Berkshire Hathaway never suggests in its S.E.C. filings that it

28   operates as a single business segment or as a single brand.

The Northern District of California has held that the contacts of subsidiaries to California may be imputed to a "holding company" under very similar circumstances. *See Helm v. Alderwoods Group, Inc*., 696 F.Supp.2d 1057 (N.D. Cal. 2009). Thus, because Yandex Inc.'s principal place of business is in Palo Alto, California, the Court may assert general jurisdiction over it and Yandex, N.V. Zada Decl. Exh. 1, page 1. Likewise, the Court may assert specific jurisdiction over Yandex N.V. because its subsidiaries operate California-based web crawlers that copy images from websites in California for display by interactive search engines to Californians. Zada Decl. ¶¶10-14, Exhs. 7-11.

In addition, the Court should exercise jurisdiction over Yandex N.V. because by designating Yandex Inc. as its agent for service of process, Yandex N.V. has consented to jurisdiction in California. *See Knowlton v. Allied Van Lines, Inc*., 900 F.2d 1196, 1199 (8th Cir.1990). Zada Decl. Exh. 1, page 1 (Yandex N.V. lists Yandex Inc. as its agent for service on the first page of its F-1 Stock Offering Registration Statement).

Even if the Court were not inclined to assert general or specific jurisdiction over Yandex N.V. or finds that Yandex N.V. has not consented to jurisdiction, the Court should exercise federal long-arm jurisdiction over Yandex N.V. pursuant to Fed. R. Civ. P. 4(k)(2), because of its numerous dealings and transactions throughout the United States.

Contrary to Yandex N.V's contention that Perfect is required to *prove* that it is subject to personal jurisdiction here, Perfect 10 is only required to make a *prima facie* showing. *Data Disc, Inc. v. Systems Tech. Assoc., Inc*., 557 F.2d 1280, 1285 (9th Cir. 1997). As more fully discussed below, Perfect 10 has done just that. This Motion must be denied.[1]

## II. STATEMENT OF FACTS

### A. Yandex N.V. is a Search Engine Company

Yandex N.V.'s S.E.C. filings are replete with statements emphasizing that it is a

---

[1] Alternatively, Perfect 10 seeks jurisdictional discovery (*see* Section III.G below).

search engine company, not an investor or holding company.

In Yandex N.V.'s Registration Statement, dated April 28, 2011, in the section entitled, "Our Business," Yandex N.V. states:

- We are the leading internet company in Russia, operating the most popular search engine and the most visited website; and
- We derive substantially all of our revenues from online advertising.

Zada Decl. Exh. 1, page 4.

In the section entitled, "Our Strategy," it states:

- We seek to structure and make easily accessible the wealth of content available on the internet, as well as to actively expand the scope and usefulness of that content.

Zada Decl. Exh. 1, page 5.

In the section entitled, "Our Industry," it states:

- The internet is becoming an increasingly significant advertising medium in Russia and the other countries in which we operate. *Id.* Exh. 1, page 5.

In Yandex N.V.'s 2011 Annual Report, it states:

- We consider Google to be our principal competitor in the market for internet search….

Zada Decl. Exh. 2, page 3.

Absent from these critical disclosures is any analysis of any other business that Yandex N.V. allegedly engages in. Its stated goal is to compete with Google in the internet search engine industry. Its subsidiaries are simply tools to achieve these end-goals. Indeed, Yandex N.V. states that it and its subsidiaries operate as a "single business segment." Zada Decl. Exh. 2, pages 19, 24.

Yandex N.V. press releases are also unequivocal about the business that Yandex N.V. is engaged in: *See, e.g.*, April 26, 2012 Press Release ("Yandex (NASDAQ: YNDX), the leading internet company in Russia operating the country's most popular search engine and most visited website, today announced its unaudited financial results

for the quarter ended March 31, 2012."), found at Zada Decl. Exh 4, page 1.  *See also* other Yandex press releases, found at Zada Decl., Exh 4, pages 2-8.

The Yandex.com website, which identifies Yandex N.V. and its address and telephone number, reiterates the same statements: "We are the leading internet company in Russia, operating the most popular search engine and the most visited website."  Zada Decl. Exh. 4, page 12.  More importantly, this website – which is at the center of this litigation, because it has infringed thousands of Perfect 10 copyrighted images (*see* Zada Decl. ¶14, Exhs. 10-11; Complaint ¶¶15-19) – provides links to Yandex N.V.'s S.E.C. filings, analyst coverage, corporate governance documents, biographies of members of the Board of Directors, and a "contact" for U.S. Investors at the Blue Shirt Group, which is based in San Francisco, CA.  Zada Decl. Exh. 4.  The website also provides a description of Yandex Labs, located in Palo Alto, CA.  Zada Decl. Exh. 4, pages 9-10.

### B.   Yandex Inc. is Located and Conducts Significant Business in California

Yandex N.V. designated Yandex Inc. as its agent for service of process.  Zada Decl. Exh. 1, page 1.  Yandex Inc. maintains its offices in Palo Alto and is registered to business in California. Zada Decl. Exhs. 3, 8.  Yandex Inc. owns a block of at least 8,000 I.P. address in Palo Alto, California, and operates at least 28 web crawlers for yandex.com.  Zada Decl. ¶¶11-13, Exhs. 8-9.  In other words, it is providing critical functions that support the infringing activity.

Yandex Labs, which operates from Yandex, Inc.'s offices, was created with the "objective of fostering innovation in search and advertising technology" and employs "scientists and engineers with a wealth of research and development experience from top U.S. search engine companies, such as Yahoo! and Google."  Importantly, "Members of Yandex Labs work in close collaboration with other Yandex teams helping them solve challenging problems in Web crawl, indexing, machine-learned ranking, and search relevance areas"  Zada Decl. ¶7, Exh. 4, page 9.  A job posting for

"Relevance scientist / Research programmer" on yandex.com states, "Yandex Labs is located in Palo Alto, CA, and is a fully owned subsidiary of Yandex, the top Russian search engine company, now serving over 60% of all queries in Russia." Zada Decl., Exh. 4, page 10.

### C.     Yandex N.V. Has Other Contacts with California

According to Yandex N.V.'s S.E.C. filings and press releases, Yandex N.V. has engaged in business with a number of California-based companies, including Mozilla, Facebook, Twitter, Visa, Warner Music, EMI and Universal Music, among others. Zada Decl. ¶¶5, 7, Exhs. 2, 4. With regard to Mozilla, located in Mountain View, California, Yandex states that, "Our two largest distribution partners in 2011, Mozilla and Opera, accounted in aggregate for 58% of our distribution costs in 2011 and 57% in 2010." Zada Decl. Exh. 2, page 21. Thus, Yandex N.V. is paying significant sums to a California company in furtherance of its search engine business. Yandex N.V. has also invested $15 million in blekko.com, a search engine that also violates Perfect 10's copyrights. Blekko.com operates from Redwood City, CA. Zada Decl. ¶5, Exh. 2, page 20. Finally, as referenced above, Yandex N.V. utilizes (and presumably pays) Blue Shirt Group, a San Francisco firm, as its U.S. investor contact. Zada Decl. Exh. 4, page 2.

### D.     Yandex N.V. has Numerous Dealings Throughout the U.S.

In addition to other contacts with California described above, Yandex N.V. has other contacts in the United States. Yandex N.V.'s website, yandex.com, is written in English to appeal to U.S. users. Yandex N.V. operates data centers in Las Vegas, Nevada. Zada Decl. Exh. 2, page 14. It acquired the mobile software business of SPB Software, Inc. (US). Zada Decl. Exh. 2, page 20  It has $43.9 million of long-lived assets in the United States. *Id.* Exh. 2, page 25. It has an advertising relationships with Microsoft Bing. *Id.* Exh. 2, page 5. Finally, it is listed on a U.S.-based stock exchange, the NASDAQ.

1

### E.     Perfect 10's Claims

2

Perfect 10 alleges that the websites yandex.com and yandex.ru violate Perfect

3

10's copyrights by copying Perfect 10's images and displaying them to their users, and

4

by linking to, storing, and placing ads around such images without permission.

5

Complaint ¶¶15-19.  Perfect 10 also alleges that Yandex N.V. has failed to stop the

6

infringing conduct, even after receiving 72 DMCA notices from Perfect 10.  Complaint

7

¶21.

8

## III.   ARGUMENT

9

### A.     The Standards for a Fed. R. Civ. P. 12(b)(2) Motion

10

Although Plaintiff bears the burden of proof on the necessary jurisdictional facts,

11

such as the existence of "minimum contacts" between Defendant and the forum state,

12

when Defendant's motion to dismiss is made as its initial response, a Plaintiff only

13

needs to make a *prima facie* showing that personal jurisdiction exists.  *Data Disc,* 557

14

F.2d at 1285. "Uncontroverted allegations contained in a complaint must be taken as

15

true for the purposes of evaluating a jurisdictional issue and conflicts must be resolved

16

in favor of the party asserting that personal jurisdiction exists."  *AT&T v. Compagnie*

17

*Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996).  In California, the personal

18

jurisdiction statute extends jurisdiction to the limits of constitutional due process.  *See*

19

Cal. Code Civ. Proc. § 410.10.  In order to comport with constitutional due process

20

requirements, the federal courts have recognized two ways in which to obtain personal

21

jurisdiction over a defendant: general jurisdiction and specific jurisdiction.

22

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).

23

### B.     Yandex N.V. Consented to Jurisdiction in California

24

"[T]here are a 'variety of legal arrangements' by which a litigant may give

25

'express or implied consent' to the personal jurisdiction." *Burger King Corp. v.*

26

*Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985).  Yandex N.V. argues that it did not consent

27

to service by designating an agent for service of process in California.  Motion. 8:23 –

28

9:10.  But "[t]he Ninth Circuit has not yet ruled on the question of whether appointing

an agent for service of process within California constitutes consent to personal

jurisdiction." *Martin v. D-Wave Systems, Inc*., 2009 WL 4572742, at *2 (N.D. Cal.

December 1, 2009) (citing *Nutrishare, Inc. v. BioRX, L.L.C*., 2008 WL 3842946, at *2

(E.D.Cal. August 14, 2008)).

     As explained by the Eighth Circuit:

> A defendant may voluntarily consent or submit to the jurisdiction of a
> court which otherwise would not have jurisdiction over it. [citation
> omitted] One of the most solidly established ways of giving such consent
> is to designate an agent for service of process within the State.

*Knowlton*, 900 F.2d at 1199.  Perfect 10 respectfully requests that the Court

adopt the reasoning espoused by the Eighth Circuit.

### C.    Yandex Inc.'s and Yandex LLC's Contacts Must Be Imputed to Yandex N.V.

     Yandex N.V.'s entire motion is premised on its assertion that its alleged

subsidiaries' contacts with California cannot be imputed to Yandex N.V. because

Yandex N.V. is only a "holding" company.  But such a relationship (if it truly exists

here) does not insulate Yandex N.V.  *See Helm*, 696 F.Supp.2d at 1067 (whether

contacts can be imputed "depends on, *inter alia*, the type and degree of control it

exercises over those entities, not on whether it is accurate to call [defendant] a holding

company.")

     Indeed, if a parent and subsidiary are not really separate entities (e.g. alter ego)

or one acts as an agent of the other, the local subsidiary's contacts with the forum may

be imputed to the foreign parent corporation.  *Doe v. Unocal Corp.*, 248 F.3d 915, 926

(9th Cir. 2001) (quoting *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C.Cir.

1996)).  Satisfaction of only one of the foregoing tests is necessary to find the requisite

contacts needed to support the exercise of personal jurisdiction over a foreign parent

company. *Bauman v. DaimlerChrysler Corp.,* 644 F.3d. 909, 920 (9th Cir. 2011).

### 1.    Yandex N.V.'s Subsidiaries Act as its Agents

The "agency" test is predicated upon a showing of the special importance of the

services performed by the subsidiary.  *Bauman,* 644 F.3d. at 920. The test is satisfied

by a showing that the subsidiary functions as the parent corporation's representative in

that it performs services that are sufficiently important to the foreign parent

corporation such that if the parent corporation did not have a representative to perform

them, the corporation's own officials would undertake to perform substantially similar

services.  *Id*. (quoting *Unocal*, 248 F.3d at 928) (quoting *Chan v. Society Expeditions,*

*Inc.,* 39 F.3d 1398 at 1404, 1405 (9th Cir. 1994)) (internal quotation marks omitted);

*see also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122,

1135 (9th Cir. 2003).  In *Bauman,* the Ninth Circuit found this requirement met where

a subsidiary's sales in the forum state accounted for 2.4% of the parent company's

worldwide sales.  *Bauman,* 644 F.3d. at 922.  Further, the principal's *right* to control is

necessary, while actual control is not.  *Bauman* 644 F.3d. at 923.

Yandex N.V. admits it is in the search engine business.  As described above, its

subsidiary, Yandex Inc., performs a number of functions in support of that business,

including that fact that "members of Yandex Labs work in close collaboration with

other Yandex teams. . ." Zada Decl. ¶7, Exh. 4, page 9.  In other words, Yandex Inc.

does not operate some distinct and unrelated business; rather, it furthers the core

business that Yandex N.V. repeatedly describes in its S.E.C. filings, press releases, and

on the yandex.com website – the search engine business.  And of course, Yandex LLC

– which Yandex N.V. contends is the proper party to this litigation – is critical to its

search engine business as well. Yandex N.V. generates substantially all of its revenues

from online advertising; a service sufficiently important to Yandex N.V. that, if its

subsidiaries went out of business, it would undertake to perform substantially the same

service.

Yandex N.V. is similar to the defendant in *Helm. See Helm,* 696 F.Supp.2d

1057.  There, the parent corporation, SCI, was engaged in a line of business in

"deathcare" services and its subsidiaries operated funeral homes, mortuaries,

crematoriums, and cemeteries.  *Id*. at 1070.  SCI had created a national brand, "Dignity

Memorial" for its funeral operations throughout North America. *Id*. at 1065. Judge Illston held that the use of a national brand on its companies in California suggested that "SCI control[led] the manner in which SCI's California businesses provide mortuary and funeral services." *Id*. at 1070. Thus, even though SCI had no employees and conducted no business in California, Judge Illston nevertheless found that "defendants have not provided a basis 'for distinguishing between the business of the parent and the business of the subsidiaries,'" and asserted jurisdiction over SCI. *Id*. *See also Bellomo v. Penn. Life Co*., 488 F.Supp. 744, 746 (S.D.N.Y. 1980) (asserting jurisdiction over holding company where business of subsidiaries constituted the only business of parent.)

Perfect 10 has made the same *prima facie* showing. The brand "Yandex" used by defendant and its subsidiaries is critical to its business. *See* Zada Decl. Exh. 2, page 5 ("***Our business depends on a strong brand, and failing to maintain and enhance our brand would harm our ability to expand our base of users, advertisers and network partners and would materially adversely affect our business, financial condition and results of operations.***") (bold and italics in original.) Yandex, N.V. cannot distinguish between its business and that of its subsidiaries. Indeed, it admits that it **"operates as a single segment."** Zada Decl. Exh. 2, pages 19, 24. The contacts of Yandex Inc. and Yandex, LLC must be imputed to Yandex, N.V.

### 2. Yandex Inc. and Yandex LLC are Yandex N.V.'s "Alter Egos"

The "alter ego" test is predicated upon a showing of parental control over the subsidiary. *Bauman,* 644 F.3d at 920. The two prongs of the "alter ego" test are as follows: (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice. The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former. *Id*. (*citing Unocal*, 248 F.3d at 926). A plaintiff must only make out a *prima facie* case of the

1    foregoing.  *Unocal*, 248 F.3d at 926.

2         Yandex N.V. repeatedly contends, both in its SEC filings and in its press

3    releases, that it operates the company's search engines.  This contention means that

4    Yandex N.V. controls Yandex Inc. and Yandex LLC, whose primary responsibilities

5    Yandex, N.V. admits are search engine operations.  Yandex N.V. also contends that

6    "[t]he Company operates as a single segment."  Zada Decl. Exh. 2, pages 19, 24.  This

7    means that there is a unity of interest and ownership.  The extent of the unity of interest

8    and ownership among Yandex N.V.,  Yandex LLC and Yandex Inc. is further reflected

9    by the emphasis on the "Yandex brand" described by Yandex N.V., upon which

10   Yandex LLC and Yandex Inc. rely.  Zada Decl. Exh. 2, page 5.  Yandex N.V. openly

11   controls the corporate personality and web presence of Yandex LLC and Yandex Inc.:

12   all companies share the "Yandex Company" website which does not differentiate

13   between the operations, purposes of the entities, or a difference in management teams,

14   instead stating that "[w]e are the leading internet company in Russia".  Zada Decl. Exh.

15   4, page 12.  Furthermore, because search engines are, in effect, a single large computer

16   program, there must be a single entity that controls and coordinates the operation of the

17   program for it to function effectively.  The various contributors of code to that program

18   simply cannot operate independently.

19        In addition, Yandex N.V. openly admits it directly derives substantially all

20   revenues from online advertising. This admission demonstrates its unity of interest in

21   the operation of Yandex websites and renders the separate personalities of Yandex

22   N.V. and its subsidiaries non-existent.  Zada Decl. Exh. 2, page 24.  It would be

23   fraudulent and unjust to treat Yandex N.V., Yandex Inc. and Yandex LLC as separate

24   entities, as Yandex Inc. and Yandex LLC are merely instrumentalities of Yandex N.V.

25   Even Yandex N.V. does not treat them as separate entities but rather as a "single

26   business segment."  Zada Decl.  Exh. 2, pages 19, 24.

27        **D.    Yandex N.V. is Subject to General Jurisdiction**

28        "General jurisdiction applies where a defendant's activities in the state are

'substantial' or 'continuous and systematic,' even if the cause of action is unrelated to those activities." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *Data Disc*, 557 F.2d at 1287).

As explained above, Yandex N.V. is subject to jurisdiction if one of its subsidiaries is. Here, Yandex Inc. maintains its only office in Palo Alto, California, which is sufficient to assert general jurisdiction over it. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-2854 (2011) (identifying corporation's principal place of business as "paradigm" for assertion of general jurisdiction.)

### E. Yandex N.V. is Subject to Specific Jurisdiction

A district court may exercise specific jurisdiction over a nonresident defendant if three elements are satisfied: (1) the nonresident defendant must do some act or consummate some transaction with the forum by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the district court's exercise of specific jurisdiction must be reasonable. *See Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir. 1997); *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (citing *Data Disc*, 557 F.2d at 1287). Jurisdiction cannot be avoided "merely because the defendant did not physically enter the forum state." *Burger King Corp.*, 471 U.S. at 476.

The Plaintiff bears the burden on the first two prongs. *Boschetto v. Hansing* 539 F.3d 1011, 1016 (9th Cir. 2008) (internal citation omitted). Once those prongs are satisfied, the Defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable. *Id.* (internal citation omitted).

### 1. Purposeful Availment

The purposeful availment prong of the specific jurisdiction test "ensures that a non-resident defendant will not be haled into court based upon 'random, fortuitous or

1 attenuated contacts.'" *Panavision Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th

2 Cir. 1998) (citing *Burger King Corp*., 471 U.S. at 475). The prong is satisfied if the

3 defendant purposefully avails himself of the privilege of conducting activities in the

4 forum or purposefully directs activities toward the forum. *Pebble Beach Co. v. Caddy*

5 453 F.3d 1151, 1155 (9th Cir. 2006).

6       In attempting to defeat this element, Yandex N.V. relies exclusively on *Calder v.*

7 *Jones,* 465 U.S. 783; 104 S.Ct. 1482 (1984) and the effects test articulated therein.

8 Motion 9:25-10:27. In doing so, Yandex N.V. disregards the standards that courts

9 have applied to internet operators. "In the internet context, the Ninth Circuit utilizes a

10 sliding scale analysis under which 'passive' websites do not create sufficient contacts

11 to establish purposeful availment, whereas interactive websites may create sufficient

12 contacts, depending on how interactive the website is." *Allstar Marketing Group, LLC*

13 *v. Your Store Online, LLC*. 666 F.Supp.2d 1109, 1121 (C.D. Cal. 2009) (internal

14 citations omitted). At one end of the scale are 'passive' websites which merely display

15 information, such as an advertisement and at the other end of the scale are 'interactive'

16 websites which function for commercial purposes and where users exchange

17 information. *Id*. (citing *Stomp, Inc. v. NeatO, LLC* 61 F.Supp.2d 1074, 1078 (C.D. Cal.

18 1999); *Cybersell,* 130 F.3d at 418).

19       Here, Perfect 10's core allegation is that the websites yandex.com and yandex.ru

20 display infringing Perfect 10 copyrighted images to their users, as well as store, copy,

21 place ads around, and link to such images. Complaint ¶¶15-19; Zada Decl. ¶14, Exh.

22 11. The websites in question are highly interactive; they provide a portal for users to

23 content on the Internet – including Perfect 10's copyrighted images. In fact,

24 yandex.com is written in English to appeal to U.S. users. While only Yandex N.V.

25 possesses information regarding the number of California residents that have used its

26 websites, based on its reported $622 million in yearly revenue, and 40 million unique

27 visitors to its home page (*see* Zada Decl. Exh. 2, pages 12, 25), it is hard to imagine

28

that less than thousands of persons in California have viewed or downloaded infringing images using Yandex N.V.'s services.

Courts have had no trouble determining purposeful availment in similar circumstances. *See Allstar Marketing Group*, 666 F.Supp.2d 1109 (trademark and copyright infringement action against seller of knock-off products through web site); *Colt Studio Inc. v. Badpuppy Ent.,* 75 F.Supp.2d. 1104 (C.D. Cal. 1999) (copyright infringement action against the seller of internet subscriptions, alleging that unauthorized distribution was made of the copyrighted photographs on the defendants' website); and *Stomp, Inc.,* 61 F.Supp.2d 1074 (patent infringement action wherein internet operator sold infringing products through its website). Even more attenuated connections have been deemed sufficient. *See American Automobile Assoc., Inc. v. Darba Enterprises, Inc.* 2009 WL 1066506 at * 4 (N.D. Cal., April 21, 2009) (trademark action wherein defendant's website only provided free insurance quotes after viewers provided their name and contact information).

In addition, yandex.com utilizes at least twenty-eight web crawlers controlled by Yandex Inc., with IP addresses and servers in Palo Alto, California. Zada Decl. ¶¶10-13, Exhs. 7-9. A web crawler is an integral part of a search engine in that it visits websites on the Internet, and copies images, links, and text from those websites for use and display by that search engine. Yandex Inc.'s web crawlers have been deployed to capture information from California websites. Zada Decl. ¶¶10-14, Exhs. 7-11.

### 2. Perfect 10's claims arise out of and result from Yandex N.V.'s forum-related activities.

A lawsuit arises out of a defendant's contacts with the forum state if there is a direct nexus between the cause of action being asserted and the defendant's activities in the forum. *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522 (1991). The Ninth Circuit has adopted a 'but for' test when assessing whether an action arises out of a defendant's contract with the forum state. *Panavision Intern.,* 141 F.3d at 1322 ("We must

1  determine if the plaintiff Panavision would not have been injured 'but for' the

2  defendant Toeppen's conduct directed toward Panavision in California.")

3      Other than denying that Yandex N.V. is responsible for the actions of its

4  subsidiaries,  Yandex N.V. presents no legitimate argument that the "but for" test has

5  not been satisfied.  Instead, it attacks the merits of the case.  Motion. 11: 9-11  ("Even

6  if Yandex N.V. had not undertaken these actions, the claims in the complaint would

7  remain unaltered – there would still be a search engine, and Perfect 10 would still be a

8  serial copyright litigant.")

9      Yandex N.V. makes no attempt to show that Perfect 10 has not satisfied the "but

10  for" test because this test is easily satisfied when an interactive website is at issue.

11  Yandex N.V. has made thousands of  Perfect 10 images available to Californians,

12  many of which are infringing images from websites hosted in California.  Complaint

13  ¶¶15-19; Zada Decl. ¶14, Exhs. 10-11.  In addition, Yandex has refused to stop

14  offering such infringing Perfect 10 content in California and elsewhere.  But for these

15  actions, Perfect 10 would not have been injured.  The nexus is undeniable.

### 3.    Yandex N.V. has not presented a compelling case that assertion of jurisdiction is unreasonable

18      As discussed above, once the plaintiff has satisfied the first two prongs, the

19  defendant must come forward with a **compelling case** that the exercise of jurisdiction

20  would not be reasonable.  *Boschetto,* 539 F.3d at 1016.  Yandex N.V. has failed to

21  present such a compelling case.

22      The Ninth Circuit considers seven factors when assessing the reasonableness of

23  jurisdiction: (1) the extent of a defendant's purposeful interjection; (2) the burden on

24  the Defendant in defending in the forum; (3) the extent of conflict with the sovereignty

25  of the Defendant's state; (4) the forum state's interest in adjudicating the dispute; (5)

26  the most efficient judicial resolution of the controversy; (6) the importance of the

27  forum to the Plaintiff's interest in convenient and effective relief; and (7) the existence

28  of an alternative forum  *Panavision Intern.,*141 F.3d at 1323 (citing *Burger King*, 471

U.S. at 476-477).  No one factor is dispositive; a court must balance all seven.  *Id.*

(*citing Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1488 (9th Cir. 1993)).

The balance in this case is decisively in favor of exercising jurisdiction in this district.

**Extent of Purposeful Injection –** Yandex N.V. has substantial contacts with

California, including a laboratory and business office in Palo Alto, California, and has

substantial dealings with California companies, including Mozilla, Visa, Facebook,

Twitter, Warner Music, EMI, and Universal Music.  Yandex N.V. is registered to do

business in California, through its subsidiary Yandex Inc., which has offices in Palo

Alto, California.  Zada Decl. Exh. 1, page 1, Exhs. 2-4.

**Burden on Defendant –**  "A defendant's burden in litigating in the forum is a

factor in the assessment of reasonableness, but unless the inconvenience is so great as

to constitute a deprivation of due process it will not overcome clear justifications for

the exercise of jurisdiction."  *Panavision Intern.*, 141 F.3d at 1323.  Defending an

action in California which is largely based on electronic files and records will not

result in a deprivation of due process.  *Panavision Intern.,* 141 F.3d at 1323 (stating

that in this era of fax machines and discount air travel, requiring [defendant] to litigate

in California is not constitutionally unreasonable.)

**Conflict with Sovereignty of Defendant's Home State**  –  This prong concerns

whether exercising jurisdiction would implicate sovereignty concerns of Yandex

N.V.'s home state, the Netherlands.  *Panavision Intern.,* 141 F.3d at 1323.  Yandex

N.V.'s only complaint is that it "may find itself facing an impossible choice of

complying with its obligations under Dutch law and Russian law, or complying with an

inconsistent United States-issued injunction."  Motion 12:11–14.  It cites no legal

authority in support of this supposed dilemma.[2]

**California's Interest in Adjudicating the Controversy**  --  Plaintiff is a

California resident and California has "a strong interest in protecting its residents from

_____

[2] This position is puzzling, because Yandex N.V. also contends that Perfect 10 has not named
the correct entity.  If Yandex N.V. cannot be properly held liable here in the United States, it
probably cannot be properly held liable in any jurisdiction.

torts that cause injury within the state, and in providing a forum for relief." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). This case is not only important for Perfect 10, but also for all of the California-based entertainment companies that are being substantially damaged by Yandex N.V.'s involvement in the unauthorized theft and sale of their intellectual property.

**Efficient Resolution --**   This factor focuses on the location of the evidence and witnesses, but it is not afforded much weight given the modern advances in communications and transportation. *Panavision Intern*.,141 F.3d at 1323.   Yandex N.V. does not address this factor.

**Convenient and Effect Relief for Plaintiff** – It would be unduly burdensome to require Plaintiff, a company that is essentially bankrupt, to dismiss this action, secure attorneys in Russia or the Netherlands, and re-file a new action. This is particularly true here, where Yandex N.V. has admitted that the Russian courts are corrupt and ineffective. Zada Decl. Exh. 2, pages 6-8, 10. *See Colt Studio, Inc.*, 75 F.Supp.2d. at 1110-11 (stating that a dismissal and re-filing in another state takes time and money and does not advance the resolution of the matter on the merits.)

**Alternative Forum**  -- A forum will be considered suitable if its law provides a remedy for the claims sued upon and a valid judgment may be obtained against the defendant. *See Stangvik v. Shiley, Inc.*, 54 Cal.3d 744, 752 (1991). While the Netherlands perhaps would provide an alternative forum in a case against Yandex N.V., Yandex N.V. contends that Yandex, LLC is responsible for the conduct alleged in the complaint. And Yandex N.V. has conceded in its S.E.C. filings that Russia is not an adequate forum. Zada Decl. Exh. 2, page 10 ("inconsistencies between and among laws and regulations"; "gaps in the regulatory structure resulting from the delay in adoption or absence of implementing regulations"; "selective enforcement of laws or regulations, sometimes in ways that have been perceived as being motivated by political or financial considerations"; "a perceived lack of judicial and prosecutorial independence from political, social and commercial forces.")

These factors weigh heavily in favor of finding that assertion of jurisdiction in California is reasonable.

**F.     The Court May Exercise Federal Long-Arm Jurisdiction Pursuant To Rule 4(K)(2)**

Assuming *arguendo* that the Court is not inclined to assert general or specific jurisdiction, a separate basis for personal jurisdiction exists under Fed. R. Civ. P., Rule 4(k)(2). This Rule provides for personal jurisdiction through nationwide service when three conditions are met: (1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process. Fed. R. Civ. P., Rule 4(k)(2); *Pebble Beach*, 453 F.3d at 1159. Rule 4(k)(2) was added in 1993 to deal with a gap in federal personal jurisdiction law in situations where a defendant does not reside in the United States and lack contacts with a single state sufficient to justify personal jurisdiction, but has enough contacts with the United States as a whole to satisfy due process requirements. *ISI Intern. Inc. v. Borden Ladner Gervais LLP* 256 F.3d 548, 551-52 (7th Cir. 2001).

While Perfect 10 believes that the facts warrant the exercise of both general and specific jurisdiction over Yandex N.V. in California, jurisdiction is also warranted under the "federal long-arm" jurisdiction doctrine. First, Perfect 10's claims are based on federal law. The second factor is met if the defendant does not identify another state court in which the suit could proceed, which is the case here. *See Monster Cable Products, Inc. v. Euroflex S.R.L.,* 642 F.Supp.2d 1001, 1008 (N.D. Cal. 2009) (*citing Holland Am. Line Inc. v. Wartsila N. Amer. Inc.*, 485 F.3d 450, 461 (9th Cir. 2007)).

The third factor's due process analysis is identical to the analysis for the forum state, except the relevant forum is the United States as a whole. *Monster Cable Products*, 642 F.Supp.2d at 1008 (*citing Pebble Beach*, 453 F.3d at 1159). The federal long-arm statute simply requires that jurisdiction comport with due process. *Pebble Beach*, 453 F.3d at 1159. At its base, due process seeks to ensure that a defendant is

18

Perfect 10's Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction  | Case No. 12CV1521

not hauled into court for contacts that are random, fortuitous, or attenuated. *Burger King*, 471 U.S. at 475. It places responsibility on defendant's own actions that create a substantial connection with the forum. *Id.* The Ninth Circuit's flexible approach allows for a lesser showing of contacts if considerations of reasonableness are met. *Ochoa v. J.B. Martin & Sons Farms, Inc.,* 287 F.3d 1182, 1188, n. 2 (9th Cir. 2002).

First, Perfect 10 notes that Yandex N.V. expends substantial efforts explaining that neither a listing on a stock exchange nor designating an agent for service of process is sufficient to establish personal jurisdiction. Motion 8:1 – 9:13. Even if the Court accepts these arguments, at the very least, both may be considered in the mix of contacts that the Court considers. *See Bauman v. DaimlerChrysler AG*, 2005 WL 3157472 at *8 (N.D. Cal. November 22, 2005) ("Neither is a listing on a stock exchange, *without more*, sufficient to confer general jurisdiction.") (italics added); *Martin*, 2009 WL 4572742, at *4 (considering designation of agent as one of the factors in support of exercise of general jurisdiction).

Here, Yandex N.V. has numerous contracts throughout the U.S. that it has purposefully initiated:

- It is listed on the NASDAQ.
- It created Yandex Inc., a California company, which it owns.
- It designated Yandex Inc. as its agent for service of process.
- It entered into traffic and advertising deals with a slew of California businesses, including Mozilla, Facebook, Twitter, Visa, Warner Music, EMI, and Universal Music.
- It owns a data center in Las Vegas, Nevada.
- It invested $15 million in a search engine, blekko.com, located in Redwood City, California.
- It purchased a mobile phone software company, SPB, located in New Jersey.
- It uses an investor relations firm, Blue Shirt Group, located in San Francisco, California.

- It has $43.9 million in assets in the United States.  Zada Decl.  ¶¶4-7, 10-14, Exhs. 1-4, 7-11.
- One of its search engines, yandex.com, is written in English and uses crawlers operating from Palo Alto, California.

Considering all of these contacts with the United States, it is reasonable for the Court to exercise federal long-arm jurisdiction over Yandex N.V.

## G.    Perfect 10 Requests Jurisdictional Discovery

If this Court is not inclined to deny the Motion,  Perfect 10 seeks leave to conduct jurisdictional discovery.  Jurisdictional discovery is widely recognized as necessary and appropriate in the context of Yandex N.V.'s 12(b)(2) Motion.  Rule 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party …." Fed.R.Civ.P. 26(b)(1).  Discovery is proper where issues arise as to jurisdiction or venue, such as those brought to issue by Yandex's 12(b)(2) Motion. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978) (". . . where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.").

 In granting jurisdictional discovery, the trial court is vested with broad discretion. *Data Disc,* 557 F.2d at 1285 n. 1.  It is clear that the Court may allow discovery to aid in determining whether it has *in personam* jurisdiction.  *Wells Fargo & Co v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977) (internal citations omitted).  Discovery going to the issue of whether the Court has personal jurisdiction over a defendant "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butchers Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc,* 557 F.2d at 1285 n. 1; *Wells Fargo & Co.*, 556 F.2d at 430 n. 24). Discovery is further specifically allowed where there is a question as to whether jurisdiction may be established over an alien corporation through the employment of

another as agent.  *Wells Fargo & Co.*, 556 F.2d at 430 n. 24 (citing *Davis v. Asano Bussan Co.*, 212 F.2d 558, 564-65 (5th Cir. 1954)).  Defendants face a "high burden" to prevent jurisdictional discovery, and discovery should be denied only where "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction".  *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 674-75 (S.D. Cal. 2001) (quoting *Wells Fargo*, 556 F.2d at 430 n.24).

Perfect 10 believes that the following areas of discovery, *inter alia*, will allow it to better understand and present to the Court the true relationships between Yandex N.V. and its subsidiaries, Yandex Inc. and Yandex, LLC, and Yandex N.V.'s contacts in California and throughout the United States:

1)  Yandex N.V., Yandex, Inc. and Yandex, LLC corporate organization charts since 2007, including documents sufficient to identify each Yandex N.V. subsidiary, the employee(s) that runs that subsidiary, who they report to, and who reports to them;

2)  Contracts between Yandex N.V. and Yandex Inc;  between Yandex N.V. and Yandex LLC; and between Yandex Inc. and Yandex LLC, from 2008 to the present;

3)  Employee contracts for all corporate officers of Yandex Inc., Yandex LLC, and each member of the Yandex N.V. board of directors, from 2008 to the present;

4)  All corporate minutes of Yandex N.V. from 2008 to the present, in which the operations of Yandex search engines are discussed;

5)  Documents reflecting rules, regulations and policy decisions promulgated by Yandex N.V. that may govern Yandex Inc. and Yandex, LLC from 2008 to the present;

6)  Documents reflecting Yandex N.V. corporate officer or board members' approval of  decisions of Yandex Inc. and Yandex LLC, from 2008 to the present;

7)   Copies of Yandex N.V., Yandex LLC and Yandex Inc. employee company handbooks, from 2008 to the present;

8)   Documents sufficient to explain the operation of stock option, retirement and benefit plans for Yandex N.V., Yandex Inc., and Yandex LLC employees, including the funding of those plans, from 2008 to the present;

9)   Identification of all servers in California and the United States that are used by yandex.com and yandex.ru;

10)  Identification of all web crawlers with IP addresses in the United States, that are used by yandex.com and yandex.ru;

11)  Contracts between Yandex N.V. and/or Yandex Inc. and/or Yandex LLC on the one hand, and Mozilla, Facebook, Twitter, Blekko.com, Warner Music, Universal Music, EMI, and/or with any other California companies, on the other, including but not limited to Visa, Paypal, and Google;

12)  Contracts between Yandex N.V., Yandex Inc. and Yandex LLC on the one hand, and the operators of the data centers in Las Vegas, Microsoft, Mastercard, and with any other United States companies on the other;

13)  Lease agreements for the leasing of office space by Yandex N.V., Yandex LLC and Yandex Inc., from 2008 to the present;

14)  Documents sufficient to determine the amount of money that Yandex N.V., Yandex Inc., or Yandex LLC has paid to or received, from California or U.S. corporations, from 2008 to the present;

15)  Documents sufficient to determine or approximate the number of U.S. consumers that have used either yandex.com or yandex.ru from 2008 to the present;

16)  Copies of Yandex N.V., Yandex Inc., and Yandex LLC bank account statements showing month ending balances, for the years 2011 and 2012;

17)  Documents sufficient to determine the number and identity of Yandex

N.V. executives who reside, part-time or full-time, in the United States;

18)    Documents reflecting all loans between Yandex N.V. and Yandex LLC, and between Yandex N.V. and Yandex Inc., including all documents reflecting the terms of those loans;

19)    Documents reflecting contracts between Yandex N.V. and the Blue Shirt Group; and

20)    Documents sufficient to identify all users that have downloaded or viewed Perfect 10 copyrighted images as identified in DMCA notices sent to Yandex by Perfect 10.

## IV.   **CONCLUSION**

Perfect 10 has made a *prima facie* showing that Yandex N.V. is the entity that operates the websites at issue in this case.  The Court may exercise jurisdiction under many alternative theories, including consent, specific and general jurisdiction, and under Rule 4(k)(2).  Perfect 10 respectfully requests that the Court deny the motion in its entirety.  Alternatively, it requests that the Motion be held in abeyance until jurisdictional discovery can be conducted.

Dated: May 24, 2012                    Respectfully submitted,
                                       Krause Kalfayan Benink & Slavens, LLP.

                                       By: ___*/s/ Eric Benink*_____
                                           Eric Benink
                                           Attorney for Plaintiff, Perfect 10, Inc.