QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Diane M. Doolittle (Bar No. 142046)
  dianedoolittle@quinnemanuel.com
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

  Rory S. Miller (Bar No. 238780)
  rorymiller@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:     (213) 443-3100
Facsimile:      (213) 443-3100

Attorneys for Specially Appearing
Defendant Yandex N.V.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| PERFECT 10, INC.,<br><br>             Plaintiff,<br><br>    vs.<br><br>YANDEX N.V.,<br><br>             Defendant. | CASE NO. CV-12-1521-WHA<br><br>**SPECIALLY APPEARING PARTY YANDEX N.V.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:    June 14, 2012<br>Time:   8:00 a.m.<br>Crtrm.:  8 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I. PERFECT 10'S OPPOSITION DOES NOT ATTEMPT TO DEFEND ITS DEFECTIVE JURISDICTIONAL ALLEGATIONS ........................................................... 2

II. YANDEX N.V. HAS NOT CONSENTED TO THE JURISDICTION OF THE COURT ................................................................................................................................. 2

III. PERFECT 10'S OPPOSITION IGNORES THE UNDISPUTED FACT THAT YANDEX N.V. IS A SEPARATE ENTITY FROM ITS SUBSIDIARIES ......................... 3

    A. Under Binding Ninth Circuit Precedent, Contacts of Yandex N.V.'s Subsidiaries Cannot Be Imputed ................................................................. 4

    B. Selective Quotations from Yandex N.V.'s SEC Filings Cannot Alter the Reality of the Yandex Corporate Structure ............................................... 7

IV. PERFECT 10'S REMAINING JURISDICTIONAL ARGUMENTS FAIL ........................ 9

V. YANDEX N.V. IS NOT SUBJECT TO LONG-ARM JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(K)(2) ............................................................. 11

VI. PERFECT 10'S REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD BE DENIED ................................................................................................................................. 12

CONCLUSION ............................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

### Cases

*Arch v. American Tobacco Co., Inc.*,
   984 F. Supp. 830 (E.D. Pa. 1997) ............................................................................................6

*Akzona Inc. v. E.I. Du Pont De Nemours & Co.*,
   607 F. Supp. 227 (D. Del. 1984) ..............................................................................................9

*America West Airlines, Inc. v. GPA Group, Ltd.*,
   877 F.2d 793 (9th Cir. 1989) ..................................................................................................15

*Bauman v. DaimlerChrysler Corp.*,
   644 F.3d 909 (9th Cir. 2011) ................................................................................................5, 6

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) ............................................................................................12, 14

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ................................................................................................10

*Cybersell, Inc. v. Cybersell, Inc.*,
   130 F.3d 414 (9th Cir. 1997) ...............................................................................................9, 10

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ...........................................................................................4, 5, 8

*Dole Food Co. v. Patrickson*,
   528 U.S. 468 (2003) .................................................................................................................4

*Fiore v. Walden*,
   657 F.3d 838 (9th Cir. 2011) ....................................................................................................2

*Fletcher v. Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995) .....................................................................................................8

*Gallagher v. Mazda Motor of America, Inc.*,
   781 F. Supp. 1079 (E.D. Pa. 1992) ..................................................................................4, 5, 6

*Gray Line Tours of Southern Nevada v. Reynolds Elec. & Eng'g Co., Inc.*,
   193 Cal. App. 3d 190 (1987) ....................................................................................................3

*Helm v. Alderwoods Group, Inc.*,
   696 F. Supp. 2d 1057 (N.D. Cal. 2009) ...................................................................................5

*Herman v. YellowPages.com, LLC*,
   780 F. Supp. 2d 1028 (S.D. Cal. 2011) ..................................................................................13

*Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*,
   456 F. Supp. 831 (D. Del. 1978) ..............................................................................................7

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,

394 F.3d 1143 (9th Cir. 2004) ..................................................................................................4

*Knowlton v. Allied Van Lines, Inc.*,
   900 F.2d 1196 (8th Cir. 1990) ........................................................................................... 2, 3

*Lang v. Morris*,
   823 F. Supp. 2d 966 (N.D. Cal. 2011) ...................................................................................15

*Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*,
   556 F.2d 975 (9th Cir. 1977), cert. denied 434 U.S. 1035 ........................................................4

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ..................................................................................... 12, 13

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ................................................................................................14

*Thomson v. Anderson*,
   113 Cal. App. 4th 258 (2003) ..................................................................................................3

*Tri-West Ins. Servs., Inc. v. Seguros Monterrey Aetna, S.A.*,
   78 Cal. App. 4th 672 (2000) ....................................................................................................3

*Wince v. Easterbrooke Cellular Corp.*,
   681 F. Supp. 2d 688 (N.D.W. Va. 2010) ................................................................................13

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000) .....................................................................................................12

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ...............................................................................................................10

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997) .......................................................................................10

**Other Authorities**

Weil et al., CALIFORNIA PRACTICE GUIDE: CIVIL PROCEDURE BEFORE TRIAL
   (2011 ed.) § 3:210.4 .................................................................................................................3

Fed. R. Civ. P. 4 ............................................................................................................................ 11, 12

**Introduction**

In its opposition, Perfect 10 makes no effort to defend its sparse and factually incorrect allegations of personal jurisdiction. Rather, it makes two primary, but fundamentally flawed, arguments as to why this Court should exercise personal jurisdiction over Yandex N.V.

*First,* Perfect 10 argues that by Yandex N.V. designating an agent for service of process, it has consented to the general personal jurisdiction of this Court. That argument ignores clear precedent that an agent for service of process is *not* consent to jurisdiction in California. This Court should decline Perfect 10's invitation to reject decades of settled precedent. *Second,* Perfect 10 argues that Yandex N.V. and its subsidiaries are a single enterprise that exists and functions as one, and thus all corporate distinctions and legal formalities should be ignored. But Yandex N.V. has provided an uncontested, sworn declaration from director Elena Ivashentseva that its subsidiaries, including Yandex Inc. and Yandex LLC, are independently-run, legal entities for whom the separate corporate formalities have been respected. Perfect 10's opposition ignores this evidence entirely. Instead, Perfect 10 attaches selected pages from SEC filings that refer to the entities collectively as "Yandex" and describe certain business activities without identifying the specific legal entity responsible. These descriptions, however, fail to show that Yandex's subsidiaries are either "agents" or "alter egos" of their parent corporation, which is required before the Court may impute contacts. Indeed, the key statement that Perfect 10 points to, that Yandex N.V. "operate[s] as a single business segment," is actually an accounting term of art that has no bearing on alter ego or corporate formalities. In any event, binding Ninth Circuit case law instructs that such statements have *no* weight in a personal jurisdiction analysis.

In addition to advancing these flawed arguments, Perfect 10 also belatedly requests a slew of jurisdictional discovery from no fewer than three different companies, seeking documents located around the world spanning over a five-year time period. However, at no point does Perfect 10 attempt to justify this far-reaching and burdensome discovery by tying it to any specific legal theory that would justify personal jurisdiction. Instead, Perfect 10 seeks permission from the Court to embark on a fishing expedition, hoping to locate some information that it might use to bolster an unspecified personal jurisdictional argument. This Court need not entertain such an

abusive request.

The Court should deny Perfect 10's discovery fishing expedition request and grant Yandex N.V.'s motion to dismiss for lack of personal jurisdiction.

## Argument

### I. PERFECT 10'S OPPOSITION DOES NOT ATTEMPT TO DEFEND ITS DEFECTIVE JURISDICTIONAL ALLEGATIONS

In its opposition papers, Perfect 10 does not even attempt to defend the thin and factually incorrect jurisdictional allegations contained within its complaint. Nor could it, since "[m]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Fiore v. Walden,* 657 F.3d 838, 846-47 (9th Cir. 2011). The sole factual basis for jurisdiction set forth in Perfect 10's complaint is the claim that Yandex N.V. directly "owns and operates" various Internet websites and "operates a research facility" in Palo Alto, California. These allegations are contrary to facts that Perfect 10's opposition grudgingly acknowledges, as well as by the sworn declaration from Yandex N.V. director Elena Ivashentseva, the contents of which Perfect 10 has not contradicted, objected to or otherwise challenged in any substantive way.

Perfect 10 must appropriately allege the basis for personal jurisdiction in its complaint but has failed to defend its defective pleading of personal jurisdiction in this case. For that reason alone, the Court should grant Yandex N.V.'s motion to dismiss.

### II. YANDEX N.V. HAS NOT CONSENTED TO THE JURISDICTION OF THE COURT

Perfect 10 also argues that Yandex N.V. has consented to the general jurisdiction of this Court by designating a domestic agent for service of process in connection with its regulatory filings with the United States Securities and Exchange Commission. Perfect 10 urges this Court to follow *Knowlton v. Allied Van Lines, Inc.* 900 F.2d 1196 (8th Cir. 1990), and find that the designation of an agent for service of process is a consent to general personal jurisdiction.

What Perfect 10 fails to mention is that this Eighth Circuit case was interpreting and applying **Minnesota state law** when it ruled that designation of an agent for service of process constitutes consent to general personal jurisdiction. *Id.* at 1199. As the Eighth Circuit held, the

Minnesota long-arm statute governing the effect of designation of an agent for service of process was inherently unlimited, noting that "[t]here are no words of limitation to indicate that this type of service is limited to claims arising out of activities within the state." *Id.* The Eighth Circuit also specifically noted that "[t]he effect of such a designation can be limited to claims arising out of in-state activities and some statutes are so limited." *Id.*

In contrast, California law, which governs here, explicitly holds that designation of an agent for service of process is *not consent to personal jurisdiction. See, e.g., Thomson v. Anderson,* 113 Cal. App. 4th 258, 270 (2003); *Tri-West Ins. Servs., Inc. v. Seguros Monterrey Aetna, S.A.,* 78 Cal. App. 4th 672, 676-77 (2000); *Gray Line Tours of Southern Nevada v. Reynolds Elec. & Eng'g Co., Inc.,* 193 Cal. App. 3d 190, 193-95 (1987); *see generally* Weil et al., CALIFORNIA PRACTICE GUIDE: CIVIL PROCEDURE BEFORE TRIAL (2011 ed.) at § 3:210.4 ("A foreign corporation's designation of an *agent for service* of process in California is *not a submission to personal jurisdiction* here.") (emphasis in original). Thus, although service of summons may be made on the designated agent, an action "cannot be maintained against a foreign corporation absent 'minimum contacts' with California." Weil et al. at § 3:210.4.

Yandex N.V. made this clear in its opening papers. *See* Motion at 9:1-10. Perfect 10's opposition papers ignore these authorities and instead misleadingly suggest that this is an open question. *See* Opposition at 7-8. It is not. Under the California long-arm statute, unlike the Minnesota law at issue in *Knowlton,* designation of an agent for service of process cannot constitute consent to personal jurisdiction.

**III.    PERFECT 10'S OPPOSITION IGNORES THE UNDISPUTED FACT THAT YANDEX N.V. IS A SEPARATE ENTITY FROM ITS SUBSIDIARIES**

Perfect 10's opposition is devoted to arguing that because various Yandex N.V. subsidiaries share the "Yandex" brand for their products (including not only for Internet search functions, but also e-mail, cloud storage, maps service, music service, mobile device applications, and electronic payment functionality), *all* such entities and products are, in reality, attributable to Yandex N.V. as a single monolithic corporate entity, without any regard for corporate form or binding precedent. This falls far short of presenting a *prima facie* case for personal jurisdiction.

*See, e.g., Dole Food Co. v. Patrickson,* 528 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances.").

Binding Ninth Circuit precedent, as acknowledged by Perfect 10, dictates that a subsidiary cannot be treated as one and the same as its parent unless it acts as an "agent" or "alter ego" of the parent. *See Doe v. Unocal Corp.,* 248 F.3d 915, 929-30 (9th Cir. 2001); *see also* Opp. at 8:20-24 (stating test). It is not enough that a parent-subsidiary relationship exist. *See, e.g., Unocal,* 248 F.3d at 925 ("The existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum."); *see also Katzir's Floor & Home Design, Inc. v. M-MLS.com,* 394 F.3d 1143, 1149 (9th Cir. 2004) ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law."); *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.,* 556 F.2d 975, 977 (9th Cir. 1977), cert. denied 434 U.S. 1035 ("mere existence of the parent-subsidiary relationship is not alone a sufficient basis for long-arm jurisdiction of the parent").

As explained in Yandex N.V.'s opening motion, although there is a parent-subsidiary relationship between Yandex N.V. and Yandex LLC and Yandex Inc., the independent corporate existence of these entities has been respected both in formalities and in fact. Both subsidiaries are independently organized entities with financial books and accounts, officers, and operations separate and distinct from Yandex N.V. *See* dkt. no. 17-2 (Declaration of Elena Ivashentseva, hereinafter "Ivashentseva Decl.") at ¶¶ 9, 11, &13. Further, Yandex N.V. does not exercise day-to-day control over either of these two entities. *Id.* These distinctions between Yandex N.V. and its subsidiaries are supported by uncontroverted evidence presented in a sworn declaration by a Yandex N.V. director. Perfect 10's opposition brief does nothing to disprove these facts.

### A. Under Binding Ninth Circuit Precedent, Contacts of Yandex N.V.'s Subsidiaries Cannot Be Imputed

Despite repeatedly citing to *Unocal,* Perfect 10 urges this Court to misapply it to hold that Yandex N.V.'s operating subsidiaries are acting as agents and alter egos of their parent holding

company. As explained in Yandex N.V.'s moving papers, in *Unocal,* the Ninth Circuit adopted the reasoning of *Gallagher v. Mazda Motor of America, Inc.,* 781 F. Supp. 1079 (E.D. Pa. 1992), when analyzing claims that a subsidiary is acting as an agent for its parent. See *Unocal,* 248 F.3d at 929-30. *Gallagher* specifically held that "the subsidiary is not performing a function that the parent would otherwise have had to perform itself ([as] the holding company simply could hold another type of subsidiary." 781 F. Supp. at 1085.

The primary case relied on by Perfect 10 against this authority is *Helm v. Alderwoods Group, Inc.,* 696 F. Supp. 2d 1057 (N.D. Cal. 2009). However, the facts of that case make it clear that, far from addressing a true holding company such as Yandex N.V., the parent entity at issue (called SCI) was an active participant in the day-to-day operations of its subsidiaries and thus outside the rule set forth in *Unocal* and in *Gallagher*. For example, the *Helm* court noted that "SCI sets policies for employees in California" and that it "controls the manner in which SCI's California businesses provide" their services. *Id.* at 1070. For these reasons, the court concluded that "evidence supports plaintiffs' contention that SCI exercises close control of its subsidiaries' daily operations." *Id.*

Perfect 10 also discusses *Bauman v. DaimlerChrysler Corp.,* 644 F.3d 909 (9th Cir. 2011) at length. That case is inapposite for the same reasons that *Helm* is: the parent company, rather than being a mere investor, was heavily involved in the day-to-day operations of the subsidiary.

*Bauman* is further distinguishable due to the stark difference in the significance of the United States operations to the parent entity. There, the Ninth Circuit found that the parent company, DCAG, existed to sell Mercedes-Benz automobiles directly. Indeed, its own corporate charter stated that it was devoted to the "development, manufacture, and sales" of those vehicles. *Id.* at 922. To that end, its United States' subsidiary acted as its sales agent. Unlike Yandex N.V., which receives a miniscule amount of revenue from the United States,[1] DCAG's subsidiary in *Bauman* was responsible for nearly 20% of worldwide sales of Mercedes-Benz vehicles. *Id.*

---

[1] Currently, the entire Yandex family of companies (not just Yandex N.V.), derives less than 0.4% of total annual revenue from U.S.-based sources. See Ivashentseva Decl., ¶ 14.

Beyond this unity of operating purpose in *Bauman*, DCAG also had substantial direct control over the activities of its subsidiary—indeed, the Ninth Circuit, reviewing the evidence, stated that "DCAG has the right to control nearly all aspects of MBUSA's operations." *Id.* at 924.

Nothing like the evidence in either *Helm* or *Bauman* exists here. In fact, the uncontroverted evidence is directly the contrary: Yandex N.V. does not exercise day-to-day operating control over its subsidiaries. Ivashentseva Decl., ¶ 9. Each of these entities maintains its own separate office spaces, bank accounts, officers, and employees. Perfect 10's voluminous opposition contains no evidence to the contrary.

As a last ditch measure, Perfect 10 also appears to suggest that this Court can ignore precedent because, unlike a more diversified holding company such as Berkshire Hathaway, Yandex N.V. holds only Internet search engine-related assets. *See, e.g.,* Opp. at 2 (attempting to draw distinctions between Yandex N.V. and Berkshire Hathaway). No such distinction appears in the case law. For example, in *Arch v. American Tobacco Co., Inc.,* there is no suggestion of this requirement. In fact, the parent holding company at issue, B.A.T. Industries p.l.c., was specifically a tobacco holding company. 984 F. Supp. 830, 833 (E.D. Pa. 1997). Nevertheless, the court in that case followed *Gallagher* and declined to find personal jurisdiction. *Id.* at 840.

In any event, Perfect 10's argument that Yandex N.V. is a single-industry company is contrary to undisputed fact. As set forth in Yandex N.V.'s original moving papers, in addition to its subsidiaries that operate Internet search engines and other online services, Yandex N.V. also continues to acquire and invest in other businesses unrelated to Internet search engines.[2] The most prominent example of this is the recent purchase of the SPB Software group of companies, which develop software for mobile devices such as telephones and tablets. Motion at 3:6-9 (citing evidence). Similarly, Yandex.Money, a service for conducting secure online payments that competes with PayPal in Russia, is a separate subsidiary as well. *See, e.g.,* Declaration of Rory S.

---

[2] Even Yandex N.V.'s minority investment in Blekko.com, Inc., another Internet search company, is different from the Yandex-branded search. Blekko's self-stated goal is to provide a "human curated" search, rather than a global index search such as the Yandex-branded one. *See* Miller Decl., Ex. 4.

Miller, filed concurrently ("Miller Decl."), Ex. 1 at pp. 32 & 49.

### B. Selective Quotations from Yandex N.V.'s SEC Filings Cannot Alter the Reality of the Yandex Corporate Structure

Perfect 10's opposition also devotes much attention to selective quotations from Yandex N.V.'s SEC regulatory filings in order to suggest that Yandex N.V. is not truly a holding company, but is instead, along with its subsidiaries, a monolithic entity.

As an initial matter, Perfect 10 reads far more into the 20-F filing than is supported by a fair reading of the full document. Perfect 10 claims that the 20-F report "proves" that the Yandex family of companies is operated as a single, unitary entity, without regard for corporate formalities or the factual distinctions among the various Yandex entities. However, the very beginning of the 20-F report makes clear that this is ***not*** a fair interpretation of its statements and specifically notes that "references to 'Yandex,' the 'company,' 'we,' 'us,' or similar terms are to Yandex N.V. ***and,*** as the context requires, its wholly owned subsidiaries." Miller Decl., Ex. 1 at p. 4 (emphasis added). Such attempts at simplification in corporate reports do not undermine the legal distinction between a parent and its subsidiaries. *See, e.g., Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.,* 456 F. Supp. 831, 846 (D. Del. 1978) ("The representations made by AOI in its annual reports that AOI itself conducts petroleum operations in Nigeria suggests that AON serves as an agency or instrumentality of AOI. However, such representations may result from public relations motives or an attempt at simplification.") (citing *American Trading & Prod. Corp. v. Fischbach & Moore, Inc.,* 311 F. Supp. 412, 416 (N.D. Ill. 1970)) (other citations omitted).

Another example of this is Perfect 10's attempt to capitalize on the 20-F statement that "we operate as a single business segment." *See, e.g.,* Opp. at 4:24. Perfect 10 is apparently unaware that this phrase is a term of art under generally accepted accounting principles ("GAAP"). As set out in the Financial Accounting Standards Board's Statement of Financial Accounting Standards No. 131, a "segment" is defined as a component that (1) conducts business that earns revenues and incurs expenses; (2) whose operating results are regularly reviewed by the chief operating decision maker in order to allocate resources; and (3) for which discrete financial information is available. Miller Decl., Ex. 2 at ¶ 10 (FASB Standard No. 131). This accounting standard recognizes that

for many enterprises, these characteristics will result in there being "a single set of operating segments," *id.* at ¶ 13, such as Yandex N.V. reports. Adherence to this GAAP standard does not mean, as Perfect 10 claims, that Yandex N.V. and all its subsidiaries operate as a single, undifferentiated business. Indeed, if Yandex N.V. did not use the term "business segment" it would be required to prepare its accounting documents and filings in a different manner—in short, the term is mandatory for the accounting and financials as reported by Yandex N.V.

Similarly, despite Perfect 10's attempts to mischaracterize the 20-F statement, that filing makes it clear that Yandex N.V. is a true holding company that has no operations other than as an investor in and owner of subsidiaries. As the 20-F report states in discussing proceeds from the Yandex N.V. IPO, "[t]hose proceeds were received by our parent company, a Dutch holding company that generates no operating cash flow itself." Miller Decl., Ex. 1 at p. 71.

Even if Perfect 10 had not mischaracterized the 20-F statement, the Ninth Circuit has specifically rejected attempts to ignore the realities of a corporate structure based on such materials, holding that "references in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship." *Unocal,* 248 F.3d at 928. In connection with this statement, the Ninth Circuit cited two cases that demonstrate why Perfect 10's argument is contrary to controlling law. *Id.* at 927.

The first is *Fletcher v. Atex, Inc.,* a Second Circuit decision. In that case, the plaintiffs were attempting to argue that Atex, a subsidiary of Eastman Kodak, was actually an alter ego of Kodak. 68 F.3d 1451, 1458 (2d Cir. 1995). The Second Circuit affirmed a summary judgment that Atex was **not** an alter ego of Kodak, and rejected numerous arguments advanced by the plaintiffs, including that marketing and investment literature treated the companies as a single entity. For example, among other references, Atex described himself as "a business unit" or a "division" of Kodak rather than a separate entity. *Id.* Other documents stated that Atex and Kodak had undergone a "merger." *Id.* The Second Circuit, after reviewing the various statements cited by the plaintiffs, held that "these statements and the use of the Kodak logo are not evidence that the two companies operated as a 'single economic entity.'" *Id.* (collecting cases).

*Unocal* also cited *Akzona Inc. v. E.I. Du Pont De Nemours & Co.,* 607 F. Supp. 227 (D.

1  Del. 1984). In that case, DuPont was seeking to have the court rule that two subsidiaries, Enka
2  and Akzona, were "agents" of their parent Akzo. *Id.* at 237. One piece of evidence presented by
3  DuPont was that a manager of Enka stated that it was "a division of Akzo." The district court
4  rejected this argument as "unpersuasive." *Id.*

5  As these cases, as well as *Unocal* itself, demonstrate, statements that a parent company and
6  its subsidiaries operate as a single entity, or that the subsidiaries are mere "divisions" of the
7  parent, cannot support a finding that the subsidiaries are "agents" or "alter egos" of the parent,
8  even when these statements appear in official corporate documents such as an annual report.

9  Consequently, Perfect 10's lengthy recitation of statements in Yandex N.V.'s SEC filings
10 is irrelevant. For similar reasons, Perfect 10's attempt (*see* Opp. 11:10-14) to characterize
11 statements on the website company.yandex.com as proving that Yandex N.V. is not distinct from
12 its subsidiaries also fails—Perfect 10 points to **no** evidence that this is not yet another example of
13 simplifications made for ease of understanding. Instead, what **is** relevant is what Perfect 10 has
14 failed to address: whether or not the relationship between Yandex N.V. and its subsidiaries
15 satisfies the legal tests set forth for imputing contacts. As discussed in the opening papers, the
16 answer is clearly "no," and no personal jurisdiction exists here. *See* Motion at 6-7 & 13-14.

17 **IV.   PERFECT 10'S REMAINING JURISDICTIONAL ARGUMENTS FAIL**

18 Perfect 10's remaining arguments regarding jurisdiction all require that Yandex N.V. be
19 treated as one and the same as its subsidiaries. As demonstrated above, Perfect 10 has not met its
20 burden of proving that either Yandex Inc. or Yandex LLC are alter egos or agents of Yandex N.V.
21 Perfect 10's remaining jurisdictional arguments thus must fail.

22 For example, Perfect 10 breezily claims that Yandex N.V. is subject to general personal
23 jurisdiction merely because its subsidiary Yandex Inc. is located in Palo Alto. *See* Opp. at 12:4-9.
24 It then proceeds to engage in a lengthy and factually suspect argument regarding specific personal
25 jurisdiction that appears to be founded entirely on the operations of Yandex LLC rather than any
26 actions of Yandex N.V. Similarly, Perfect 10 self-servingly assumes, without basis, that the
27 search engine websites operated by Yandex LLC are controlled by Yandex N.V. Even if that were
28 the case (it is not), as explained in Yandex N.V.'s motion, "the likelihood that personal

jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). This analysis is done on a spectrum between "passive" sites that just carry advertising and "interactive" sites, where users exchange information. 130 F.3d at 418. Although it identifies the proper test, Perfect 10 fails to properly conduct *any* analysis under it, instead merely asserting, without evidence or authority, that "[t]he websites in question are highly interactive," and proceeding as though this were dispositive. Opp. at 13:22.

It is not. As the Ninth Circuit has noted, "[i]f the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, 'the eventual demise of all restrictions on the personal jurisdiction of state courts' would be the inevitable result." *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1075-76 (9th Cir. 2011) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294 (1980)). Even under the sliding-scale approach in *Cybersell* and *Zippo,* this Court must still conduct a purposeful availment analysis. Perfect 10's opposition does not even attempt to demonstrate purposeful availment with evidence rather than mere speculation. Nor could it—the uncontroverted evidence demonstrates that the various Yandex-branded search engines are *not* directed at users in the United States. *See* Ivashentseva Decl., ¶ 14 (entire Yandex family of companies derives less than 0.4% of the total annual revenue from U.S.-based sources).

Setting aside the improper attempt to conflate Yandex LLC and Yandex N.V., Perfect 10's arguments are also highly speculative. For example, it asserts, without evidence, that various Yandex-branded websites are intended to appeal to U.S. users because they appear in English. *See* Opp. at 13:24. This ignores the existence of literally billions of non-U.S. English speakers around the globe as well as English's place as a common second language of Internet use.[3] Other similar

---

[3] In its rush to speculate about the purpose of yandex.com, Perfect 10 ignores Yandex LLC's own public statements regarding the website. As set forth in a May 19, 2010 press release, Yandex LLC explained that the search engine at yandex.com exists "for testing new search algorithms" and to
(footnote continued)

speculations include the guess that "thousands of persons in California" have used Yandex-branded search products to download Perfect 10 images (*see* Opp. at 13:28-14:1), or that, because one Yandex N.V. subsidiary provides services to a different Yandex N.V. subsidiary, that somehow Yandex N.V. is responsible for both their actions.  *See* Opp. at 14:15-20.

Perfect 10's remaining jurisdictional arguments are based upon portraying carefully selected statements from Yandex N.V.'s public filings as directly attributable to Yandex N.V., which, as discussed above, is incorrect.  For example, Perfect 10 suggests that Yandex N.V. owns $43.9 million worth of assets in the United States, (*see* Opp. at 20:1), which Perfect 10 contends suggests Yandex N.V. has a significant operating presence in the United States.  However, these assets are, in actuality, the value of Yandex N.V.'s investments in its subsidiaries.  Likewise, Perfect 10's opposition suggests that **Yandex N.V.** has contracts with numerous California-based companies.  *See* Opp. at 16:4-7.  However, as explained above, this statement is the result of Perfect 10's deliberate misreading of the SEC filing to refer specifically to Yandex N.V., rather than any of its subsidiaries.  Tellingly, Perfect 10 has presented no evidence that Yandex N.V. actually has any such business dealings or contacts with California.

## V.    YANDEX N.V. IS NOT SUBJECT TO LONG-ARM JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(K)(2)

Perfect 10 finally argues that it should be entitled to sue Yandex N.V. in this Court under Federal Rule of Civil Procedure 4(k)(2).  As Perfect 10 admits in its opposition, this too must comport with constitutional due process, and the Rule 4(k)(2) analysis is functionally identical to that for general personal jurisdiction, except that it looks to contacts with the United States as a whole.  *See* Opp. at 18:24-25.  As with its prior arguments, Perfect 10 again improperly conflates Yandex N.V. with Yandex Inc. and Yandex LLC.  Moreover, Perfect 10's list of contacts that it considers sufficient to establish jurisdiction under Rule 4(k)(2) is anything but—regardless of the entity at issue, many of the items listed by Perfect 10 cannot establish jurisdiction as a matter of

---

provide access for Russian users seeking to conduct searches on the more than four billion pages, mostly in English, that use the Latin alphabet.  *See* Miller Decl., Ex. 3.

law.  For example, Perfect 10 again points to the designation of an agent for service of process, which cannot confer jurisdiction.  Similarly, three additional bullet points concern Yandex N.V.'s activities in furtherance of its listing on the NASDAQ stock exchange, which also cannot confer jurisdiction.  *See, e.g., Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 98 (2d Cir. 2000).

Other bullet points listed by Perfect 10 are factually inaccurate.  For example, Perfect 10 asserts without evidentiary support that the SPB software group of companies is located in New Jersey, when, in fact, the vast bulk of that family of companies' operations are in St. Petersburg, Russia, with only a minimal U.S. presence.  *See* Ivashentseva Decl., ¶ 11.  Perfect 10 likewise claims that Yandex N.V. "owns" a data center in Las Vegas that is actually owned by a subsidiary.

Yandex N.V.'s nationwide contacts are no more substantial than those it has with California.  Consequently, for the same reasons that the exercise of personal jurisdiction over Yandex N.V. in this Court fails to comport with due process, so too would the exercise of jurisdiction pursuant to Rule 4(k)(2).

## VI. PERFECT 10'S REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD BE DENIED

As an initial matter, Perfect 10 failed to raise, even informally, the possibility of jurisdictional discovery at any time prior to filing its opposition.  Instead of seeking leave to take jurisdictional discovery and then filing a single, complete opposition, Perfect 10 wants two bites at the apple:  it wants to oppose Yandex N.V.'s motion and, if that fails, to take jurisdictional discovery and bring a *second* opposition.  Such inefficient games-playing wastes the time and resources of both the Court's and Yandex N.V.  Perfect 10 should not benefit, nor Yandex N.V. suffer, from the consequences of a deliberate litigation strategy.  The Court should deny Perfect 10's request for jurisdictional discovery as untimely.

Even were Perfect 10's requests timely, jurisdictional discovery is not an absolute right, but is subject to reasonable limits, and this Court has "broad discretion to permit or deny discovery."  *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 540 (9th Cir. 1986).  One of the most important limits is that a court is not required to indulge a plaintiff that fails to meet its burden of showing why such discovery is appropriate: "where a plaintiff's claim of

personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1160 (9th Cir. 2006).  This case is a perfect example—Perfect 10 made perfunctory allegations about jurisdiction in its complaint and, when opposing Yandex N.V.'s motion to dismiss, made little attempt to identify specific factual disputes that could be resolved.  Nowhere in Perfect 10's request for jurisdictional discovery is there any attempt to provide a specific, reasonable theory that the jurisdictional discovery would be likely to prove.  Thus, because Perfect 10 "points to no specific fact in dispute or needing further evidentiary support," its request for discovery should be denied.  *Herman v. YellowPages.com, LLC,* 780 F. Supp. 2d 1028, 1036 (S.D. Cal. 2011) (citing *Wince v. Easterbrooke Cellular Corp.,* 681 F. Supp. 2d 688, 693 (N.D.W. Va. 2010)).

   Here, Perfect 10 has requested twenty different, vast categories of documents, most spanning over half a decade.  Additionally, Perfect 10 seeks these materials not only from Yandex N.V., but also the non-party entities Yandex Inc. and Yandex LLC.  Despite seeking this vast range of material, Perfect 10 makes no attempt to tie any of it to the allegations of the complaint or even the theories in its opposition.  Instead, it admits that it seeks approval to conduct a fishing expedition of documents located around the globe "to better understand and present to the Court the true relationships between Yandex N.V. and its [non-party] subsidiaries, Yandex Inc. and Yandex, LLC, and Yandex N.V.'s contacts in California and throughout the United States."  Opp. at 21:8-10.  Courts are under no obligation to humor such fishing expeditions in the guise of jurisdictional discovery.  *See, e.g., Wince,* 681 F. Supp. 2d at 693 (denying jurisdictional discovery because the court refused to sanction a "fishing expedition").

   Even a cursory review of the twenty categories of discovery demonstrates the objectionable nature of Perfect 10's requests.  For example, request #8 seeks five years' worth of documents detailing all the retirement, benefits, and compensation plans for every employee not only of Yandex N.V., but also for Yandex LLC and Yandex Inc.  Similarly, request #12 seeks all contracts between not only Yandex N.V. but also Yandex LLC and Yandex Inc. and a host of third parties—much of which is highly confidential and proprietary information for **both** parties to the

1 contract.  Other, such as request #4, which seeks all corporate minutes of Yandex N.V., and request #16, which seeks monthly bank statements, *to determine month ending balances,* seek highly sensitive confidential information unrelated to any jurisdictional analysis.

4        Other requests are impossibly burdensome to comply with.  For example, request #20 would require Yandex N.V. to obtain information from the non-party Yandex LLC to identify every individual that ever accessed an image that Perfect 10 claims was identified in its DMCA notices.  Apart from the practical impossibility of this request, the DMCA notices at issue are defective, as set forth in Yandex N.V.'s opposition to Perfect 10's motion for preliminary injunction, and do not provide any notice or clarity of *what* images they claim copyright in.  *See* dkt. no. 19 at 15:24-16:10 (Yandex N.V.'s opposition to motion for preliminary injunction); *cf. Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1113 (9th Cir. 2007) (defective DMCA notices cannot be used to demonstrate "knowledge of infringement").

13        Finally, as is expected for a foreign company with minimal ties to the United States, almost no documents that would be responsive to these requests are in English.  The burden in both expense and time involved in translating all of these documents to English greatly outweighs any possible benefit of the documents, and is another basis to deny Perfect 10's requests for jurisdictional discovery, or at the very least, order Perfect 10 to bear all the associated costs.

18        This Court need not permit such abusive discovery.  The Ninth Circuit's ruling in *Butcher's Union* is a good example of appropriately denied jurisdictional discovery.  In that case, the plaintiffs' failed to explain what they hoped to prove by taking jurisdictional discovery, stating instead that they "would 'need to engage in discovery in order to support jurisdictional allegations,'" and "only that they 'believe' that discovery will enable them to demonstrate" minimum contacts.  *Butcher's Union Local No. 498,* 788 F.2d at 540.  These vague and conclusory statements regarding jurisdiction are no different than Perfect 10's here.  Simply stating a belief that jurisdictional discovery may uncover some unknown fact is not sufficient.

26        Nor does Perfect 10 attempt to address the evidence already before the Court regarding jurisdiction.  Nowhere in its opposition does Perfect 10 even mention, let alone challenge, the Ivashentseva Declaration provided by Yandex N.V.  Perfect 10 does not point to a single

1. statement in the declaration that it believes is incomplete or inaccurate.  Perfect 10's silence in the face of this evidence waives any argument that it is not accurate, and the Ivashentseva Declaration should be accepted as undisputed.  Consequently, any discovery would duplicate the uncontested facts set forth in that declaration, further jurisdictional discovery is not appropriate.  *See, e.g., America West Airlines, Inc. v. GPA Group, Ltd.,* 877 F.2d 793, 801 (9th Cir. 1989) (holding that responses to jurisdictional discovery were not required); *Lang v. Morris,* 823 F. Supp. 2d 966, 979 (N.D. Cal. 2011) ("discovery is not warranted if a plaintiff cannot 'demonstrate how further discovery would allow it to contradict the [defendant's] affidavits'").

Should the Court contemplate allowing jurisdictional discovery, Yandex N.V. respectfully requests that it be strictly circumscribed, and that it be given the opportunity to fully object to the myriad discovery sought by Perfect 10.  Moreover, because the jurisdictional discovery is sought only to aid Perfect 10 in curing a defect in its own pleadings, Yandex N.V. respectfully requests that the Court order Perfect 10 to pay all costs associated with the jurisdictional discovery it takes.

**Conclusion**

Perfect 10's opposition papers do not alter the fundamental fact of this case:  Perfect 10 has sued a foreign company that does no business in California for alleged copyright infringement resulting from activities that company does not control or direct.  Perfect 10's opposition asks this Court to hold that Yandex N.V., a Dutch company, can be sued in California, for the purported actions of a Russian subsidiary, based upon the contacts of a separate American subsidiary.  Perfect 10's arguments are contrary to both the governing law and the facts and mock the very notion of fairness, equity and due process.  This Court should dismiss Perfect 10's suit in its entirety and with prejudice.

DATED: May 31, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Diane M. Doolittle
Diane M. Doolittle
Attorneys for Specially Appearing Defendant Yandex N.V.