IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>YANDEX N.V., a Netherlands limited liability company, and DOES 1–100,<br><br>    Defendants.<br>_____ / | No. C 12-01521 WHA<br><br>**ORDER FOR LIMITED DISCOVERY ON ISSUES OF PERSONAL JURISDICTION AND VACATING JUNE 14 HEARING** |

## INTRODUCTION

In this copyright-infringement action, defendant moves to dismiss for lack of personal jurisdiction and plaintiff moves for a preliminary injunction. For the reasons stated below, the motions will be held in abeyance until a factual record is developed on the question of personal jurisdiction. The hearing scheduled for June 14 is vacated.

## STATEMENT

Plaintiff Perfect 10, Inc., a California company, creates copyrighted adult entertainment products, including photographs. Perfect owns the copyrights for all of the photos at issue in this action (Zada Decl. ¶¶ 1, 4, Exh. 1).

Defendant Yandex N.V., a Dutch holding company headquartered in the Netherlands, owns a family of companies under the "Yandex" brand. The Yandex companies, approximately 15 in number, offer a broad range of search functions over the internet. Even

1  though Yandex N.V. is the only named defendant in this action, two of its subsidiaries, important

2  for the issue of personal jurisdiction, will be described below.

3        Yandex N.V.'s most important subsidiary is Yandex LLC, a Russian company that owns

4  and operates a leading internet website in Russia: www.yandex.ru (Zada Decl. Exh. 1 at 4).

5  Yandex LLC is incorporated and headquartered in Russia (Doolittle Decl. Exh. 5 at 55; Zada

6  Decl. ¶20, Exh. 15). Both websites at issue in this action, www.yandex.ru and www.yandex.com

7  (which is an English-language website), are owned by Yandex LLC. Perfect alleges that the

8  websites violated (and continue to violate) its copyrights by copying its images and displaying

9  them to internet users, and by linking to, storing, and placing ads around such images without

10 permission (Compl. ¶¶ 15–19). For example, these search-engine websites display thumbnails of

11 Perfect's images after a user conducts a search for Perfect's images (Zada Decl. ¶ 16, Exh. 11).

12       Yandex N.V. and Yandex LLC have no offices in California, are not registered in

13 California, do not direct any advertising specifically toward California residents, do not sell

14 products in California, and none of their officers or directors resides in California (Ivashentseva

15 Decl. ¶ 4–8).

16       However, another subsidiary, Yandex Inc., is a Delaware corporation with its principal

17 place of business in Palo Alto (Ivashentseva Decl. ¶ 8). Yandex Inc. recruits software engineers

18 from the Silicon Valley area and employs a team of software developers who conduct research

19 and development of search engine algorithms and technology (*id.* ¶ 10). Yandex Inc. also serves

20 as Yandex N.V.'s agent for service for certain filings with the Securities and Exchange

21 Commission. As of December 2011, Yandex Inc. had only 16 employees out of 3,312 total for

22 the Yandex companies (*id.* ¶ 12).

23 **ANALYSIS**

24 Rule 12(b)(2) governs dismissal for lack of personal
jurisdiction. . . . It is the plaintiff's burden to
25 establish the court's personal jurisdiction over a
defendant. The court may consider evidence
26 presented in affidavits to assist it in its
determination and may order discovery on the
27 jurisdictional issues. However, when a district
court acts on a defendant's motion to dismiss
28 without holding an evidentiary hearing, the plaintiff
need make only a prima facie showing of

2

> jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant. Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss. Likewise, 'conflicts between the facts contained in the parties' affidavits must be resolved in plaintiffs' favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'

*Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citations omitted).

**1. YANDEX N.V.'S CONTACTS WITHOUT CONSIDERATION OF ITS SUBSIDIARIES.**

The mere existence of a parent-subsidiary relationship is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' contacts with the forum. *Id.* at 925.

Without considering the contacts of its subsidiaries, Yandex N.V. has no offices in California, is not registered in California, does not direct any advertising specifically toward California residents, does not sell products or provide services in California, and none of its officers or directors reside in California (*id.* ¶ 4–7). Indeed, Yandex N.V. does not (and did not) own the websites at issue in this action (Ivashentseva Decl. at ¶ 7; Doolittle Decl. Exhs. 1–4). Therefore, Yandex N.V.'s contacts, without consideration of its subsidiaries, are insufficient to establish personal jurisdiction in California.

Perfect argues that Yandex N.V. has consented to jurisdiction in this district by designating Yandex Inc., a California company, as its agent for service in its F-1 stock offering registration statement filed with the SEC (Zada Decl. Exh. 1 at 1). Importantly, this agent designation with the SEC filing is distinct from the designation of an agent for service of process in California, which is part of "qualifying to do business" in the state under California Corporations Code Section 2105. Yandex N.V. has never been qualified to do business in California, nor has it registered an agent for service of process with the California Secretary of State (Ivashentseva Decl. at ¶ 4).

3

### 2. IMPUTING CONTACTS OF SUBSIDIARIES YANDEX LLC AND YANDEX INC.

A foreign parent company may have the necessary contacts by virtue of its relationship to a subsidiary through either the "alter ego" or "agency" theory. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011).

#### A. Alter Ego.

Alter ego is predicated upon a showing of parental control over the subsidiary. The two prongs of the test are as follows:

> (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice. The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.

*Id.* at 919–20. Perfect has failed to meet its burden of establishing that Yandex N.V. is the alter ego of either Yandex LLC or Yandex Inc. For example, there is no evidence that corporate officers are shared, that finances are shared, or that one company directs the day-to-day operations of another.

Perfect argues that the Yandex companies are alter egos of Yandex N.V. because everyone's business is related to internet search engines. Even if this were enough, the current evidentiary record does not support Perfect's argument. Perfect points to Yandex N.V.'s 2011 SEC filings, where Yandex N.V. presented itself as a family of companies in the search-engine business "operat[ing] as a single segment" (Zada Decl. Exh. 2 at 19, 24, 34, 26). Exactly what this means is unclear. But Yandex N.V.'s corporate veil is not pierced simply because Yandex N.V. and its subsidiaries all engage in the search-engine business. Contrary to Perfect, our court of appeals has held that "references in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship," *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001), and "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor & Home Design, Inc. v. MMLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004). Perfect has not yet met its burden of showing that the corporate

4

1  forms of the Yandex companies should be pierced. Indeed, Yandex N.V.'s SEC filing made
2  clear that there were parent-subsidiary corporate structures within the Yandex family of
3  companies. The SEC filing specifically noted that "references to 'Yandex,' the 'company,' 'we,'
4  'us,' or similar terms [were] to Yandex N.V. and, as the context requires, its wholly owned
5  subsidiaries." The SEC filing also stated that Yandex N.V. was a holding company that
6  "generate[d] no operating cash flow itself" (Miller Decl. Exh. 1 at 71).

### B. Agency.

The agency test, for purposes of personal jurisdiction, is predicated upon a showing of the special importance of the subsidiary. The agency test is satisfied by a showing two things: (1) that the subsidiary performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services, and (2) the parent has a right to control the subsidiary's activities. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919–24 (9th Cir. 2011).

### i. Yandex LLC.

Yandex N.V. relies on subsidiary Yandex LLC for its main business: operating search-engine websites in Russia. In its SEC filing, Yandex N.V. stated that its primary business was conducted through Yandex LLC: "We are the leading internet company in Russia, operating the most popular search engine and the most visited website" (Zada Decl. Exh. 1 at 4). Yandex N.V.'s press releases have also stated that Yandex LLC's Russian websites were central to Yandex N.V.'s business: "Yandex (NASDAQ: YNDX), the leading internet company in Russia operating the country's most popular search engine and most visited website . . ." (Zada Decl. Exh 4 at 1). According to its SEC filing, most of Yandex N.V.'s revenue came from Yandex LLC's Russian websites (*Id.* Exh. 2 at 25). Therefore, it is clear that the services of Yandex LLC were (and still are) of special importance to Yandex N.V.

It is yet unclear, however, whether Yandex N.V. has the right to exercised control over Yandex LLC's activities. Discovery on this point is needed. Currently, the record shows that Yandex N.V wholly owned Yandex LLC. But there is no evidence that any of the corporate

1 officers are shared, that finances are shared, or that one company manages or directs the day-to-
2 day operations of another. Nor is there evidence of a contractual right for Yandex N.V. to
3 control the operations of Yandex LLC.

### ii. Yandex Inc.

It is yet unclear how important Yandex Inc.'s operations are to Yandex N.V. Some of the world's top computer scientists live and work in Silicon Valley, so Yandex Inc.'s main purpose of "recruitment" cannot be dismissed as neglible to Yandex N.V.'s business. Yandex Inc. is not merely a generic investment for Yandex N.V. but is instead a funnel to bring in talented employees to support Yandex N.V.'s business. Thus, it is possible that Yandex Inc. has special importance and its contacts should be imputed to Yandex N.V.

On the other hand, there is no evidence on how many computer scientists are actually recruited by Yandex Inc. Nor is there evidence regarding the importance of Yandex Inc.'s research and development functions. Moreover, there is no evidence to show that Yandex N.V. has the right to control the activities of Yandex Inc. More discovery on this is needed.

If discovery bears fruit that Yandex Inc. is an agent of Yandex N.V., for purposes of jurisdiction (not infringement), then this Court would have the necessary jurisdiction over Yandex N.V. because of Yandex Inc.'s location in Palo Alto. Therefore, the remainder of this order will only address whether personal jurisdiction can be based on imputing the contacts of Yandex LLC, the Russian company operating the accused websites, to Yandex N.V. As discussed below, more discovery on this issue is also needed.

### 3. NO CALIFORNIA JURISDICTION EVEN IF YANDEX LLC'S CONTACTS ARE IMPUTED TO YANDEX N.V.

#### A. General Jurisdiction in California.

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. For general jurisdiction to exist over a nonresident defendant . . . the defendant must engage in continuous and systematic general business contacts, that approximate physical presence in the forum state. The standard is met only by continuous corporate operations within a

6

> state that are thought so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities. To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets. The standard for general jurisdiction is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) (citations omitted). In *CollegeSource*, our court of appeals refused to find general jurisdiction over a foreign company even though that company misappropriated a California company's copyrighted materials; marketed its services to California students and educational institutions; had three hundred registered users and two paid subscribers in California; and maintained an interactive website accessible by users in California.

Here, the relationship of Yandex N.V. and Yandex LLC (assuming that Yandex LLC's contacts can be imputed to Yandex N.V.) to California are arguably more attenuated than the defendant in *CollegeSource*. There is no evidence that the websites at issue, www.yandex.com and www.yandex.ru, target California users. Yandex N.V. and Yandex LLC do not have offices in California, are not registered to do business in California, and do not pay state taxes. Therefore, even if Yandex LLC's contacts are imputed to Yandex N.V., it is unlikely that there can be general jurisdiction over Yandex N.V. in California.

### B. Specific Jurisdiction in California.

There is a three-part test to determine whether a district court may exercise specific jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

7

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). In the context of infringing internet websites, our court of appeals uses a sliding-scale analysis that looks at how interactive a website is for purposes of determining its jurisdictional effect. There is no specific jurisdiction even where the defendant operates and advertises a website, accessible in the forum state, that contains allegedly infringing material, but does not allow parties to conduct business transactions via the website. *Id.* at 1018 (9th Cir. 2008) (summarizing Ninth Circuit law).

Here, Perfect alleges that www.yandex.com and www.yandex.ru displays (and displayed) infringing copies of Perfect's copyrighted images (Compl. ¶¶ 15–19). The accused websites do not allow for business transactions and are not targeted towards California users. These are not highly interactive websites and are therefore insufficient by themselves, on this record, to establish specific jurisdiction on their owner, Yandex LLC.

Perfect also points to web crawlers (programs that browse the internet to provide up-to-date data for search engines) that are operated by Yandex Inc. to capture information from Perfect's websites (Zada Decl. Exhs. 7–9). This order does not need to resolve whether web crawlers are sufficient to provide specific jurisdiction. As discussed, there is insufficient evidence to show that Yandex Inc. is an alter ego or agent of Yandex N.V. If there was sufficient evidence to impute Yandex Inc's contacts onto Yandex N.V., then the fact that Yandex Inc. is headquartered in California would be enough for personal jurisdiction.

**4.  NATIONWIDE JURISDICTION PURSUANT TO RULE 4(K)(2).**

Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

8

Three requirements have to be met:

> First, the claim against the defendant must arise under federal law . . . Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.
>
> \* \* \*
>
> The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [] entities and the forum state, [courts] consider contacts with the nation as a whole.

*Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 461–62 (9th Cir. 2007).

The first and second requirements for Rule 4(k)(2) are satisfied. This action arises under federal copyright law. Yandex N.V. has not identified any other state in which this suit could proceed, and indeed, has argued that no state has jurisdiction. As discussed, this order has already determined that California jurisdiction is unlikely for Yandex N.V. and Yandex LLC. The third requirement of due process evaluates whether Yandex N.V.'s contacts with the United States are greater than its contacts with California. This requires more discovery.

Perfect has alleged, without an adequate evidentiary basis, the following contacts with the United States:

- Yandex N.V. entered into traffic and advertising deals with a slew of California businesses, including Mozilla, Facebook, Twitter, Visa, Warner Music, EMI, and Universal Music.

- Yandex N.V. owns a data center in Las Vegas, Nevada.

- Yandex N.V. invested $15 million in a search engine, blekko.com, located in Redwood City, California.

- Yandex N.V. purchased a mobile phone software company, SPB, incorporated in Nevada.

- Yandex N.V. uses an investor relations firm, Blue Shirt Group, located in San Francisco, California.

9

Yandex N.V. denies these factual allegations but does not offer dispositive evidence. Discovery will clarify these disputes.

**CONCLUSION**

For the reasons set forth above, jurisdictional discovery is necessary. Plaintiff shall be allowed to take four half-day depositions on the narrow issues of personal jurisdiction addressed in this order. Plaintiff may also propound 12 narrowly tailored document requests on these issues. Failure to cooperate in discovery may be deemed as an admission to the relevant issue by the non-cooperative party.

The parties will have until August 16 to finish this limited discovery. Supplementary submissions on the pending motion to dismiss will be due at noon on August 16. The motion for a preliminary injunction will be held in abeyance. The hearing scheduled for June 14 is **VACATED**.

**IT IS SO ORDERED.**

Dated: June 11, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE