Eric J. Benink, Esq., SBN 187434
Krause Kalfayan Benink & Slavens, LLP
550 West C Street, Suite 530
San Diego, CA 92101
(619) 232-0331 (ph)
(619) 232-4019 (fax)
eric@kkbs-law.com

Natalie Locke, Esq., SBN 261363
Perfect 10, Inc.
11803 Norfield Court
Los Angeles, CA 90077
(310) 476-8231 (ph)
(310) 476-0700 (fax)
natalie@perfect10.com

Attorneys for Plaintiff Perfect 10, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>YANDEX N.V., a Netherlands limited liability company; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: CV 12-1521 WHA<br><br>**PLAINTIFF PERFECT 10, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO YANDEX N.V.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date: June 14, 2012<br>Time: 8:00 A.M.<br>Ctrm: 8<br>Judge: Honorable William Alsup |

# **TABLE OF CONTENTS**

I.  INTRODUCTION……………………………………………………………1

II.  STATEMENT OF RELEVANT FACTS………………………………..3

    A.  Yandex N.V. is in the Search Engine Business……………………......3

    B.  The Creation and Formation of Yandex Labs……………………………4

    C.  The Overlap and Close Relationship of Officers and Directors…………..5

    D.  Hiring and Firing of Employees and Compensation Packages…………...7

    E.  Yandex Inc. Provides Hosting, Web Crawlers, IP Addresses ███████
████████████████████████████████████……………………………...7

    F.  Yandex N.V. uses Yandex Inc. to Facilitate Transactions in the U.S…….8

    G.  Yandex Lab's Vital Work on the Search Engines………………………11

    H.  Shared Finances………………………………………………………13

    I.  Yandex N.V. Promulgates Company – Wide Policies that Govern
       Yandex Inc……………………………………………………………14

    J.  Yandex N.V.'s Contacts With California And the U.S…………………14

III.  ARGUMENT………………………………………………………………...16

    A.  Legal Standards on Agency Test………………………………………...16

    B.  Yandex. Inc. Performs "Sufficiently Important Services"……………..16

    C.  Yandex N.V. Controls Yandex Inc……………………………………19

    D.  Yandex N.V. Has Sufficient Contacts with the U.S. To Warrant
       F.R.C.P. 4(k)(2) Jurisdiction…………………………………………21

IV.  THE IVASHENSTEV A DECLARATION IS FALSE AND
     MISLEADING……………………………………………………………22

V.  OTHER YANDEX MISREPRESENTATIONS……………………………23

VI.  CONCLUSION…………………………………………………………25

ii                                              **12 cv 1521**
Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction
| Case No. 12CV1521

# TABLE OF AUTHORITIES

**Cases**

*Acorn v. Household Int'l Inc.*
 211 F.Supp.2d 1160 (N.D. Cal. 2002)……………………………………….20

*Bauman v. DaimlerChrysler AG*
 2005 WL 3157475 at *8 (N.D. Cal. November 22, 2005)…………………..21

*Bauman v. DaimlerChrysler Corp.*
 644 F.3d 909 (9th Cir. 2011) …………………………………………...3, 16, 17, 19

*Bellomo v. Penn. Life Co.*
 488 F.Supp.744 (S.D.N.Y. 1980)………………………………………….20

*Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.*
 508 F.Supp. 1322 (E.D.N.Y. 1981)………………………………………...18, 19

*Burger King Corp. v. Rudzewicz*
 471 U.S. 462 (1985)………………………………………………………….21

*Doe v. Unocal Corp.*
 248 F.3d 915 (9th Cir. 2001)………………………………………………18

*Gallagher v. Mazda Motor of America, Inc.*
 781 F.Supp. 1079 (E.D.Pa. 1992)…………………………………………18

*Helm v. Alderwoods Group, Inc.*
 696 F.Supp.2d 1057 (N.D.Cal. 2009)………………………………………17, 20

*Hydoxycut Marketing and Sales Practices Lit.*
 810 F.Supp.2d 1100 (S.D.Cal. 2011) …………………………………….2, 17

*In re Musicmaker.com Securities Lit.*
 2001 WL 3062431 at *9 (C.D. Cal. June, 4, 2001)……………………….17

*Martin v. D-Wave Systems, Inc.*
 2009 WL 4572742 at *4 (N.D. Cal. December 1, 2009)…………………...21, 22

*Ochoa v. J.B. Martin & Sons Farms, Inc.*
 287 F.3d 1182 (9th Cir. 2002)………………………………………………..21

## I.    <u>INTRODUCTION</u>

Perfect 10, Inc. ("Perfect 10") submits this supplemental briefing per the Court's June 11, 2012 Order (Dkt. No. 24) (the "Order."). In the Order, the Court found that jurisdictional discovery was appropriate to determine: (i) the importance of Yandex Inc. to Yandex N.V (Order 6:5-10); (ii) whether Yandex N.V. has the right to exercise control over Yandex Inc. or Yandex LLC (Order 5:26-27; 6:11-14); and (iii) whether the Court's exercise of personal jurisdiction over Yandex N.V. comports with due process to establish nationwide jurisdiction pursuant to Rule 4(k)(2) (Order 9:17).

**The Importance Of Yandex Inc.**

Discovery has revealed that Yandex Inc. is extraordinarily important to Yandex N.V.'s search engine business.

First Yandex Inc. hosts yandex.com, the English version of Yandex N.V.'s search engine that has infringed Perfect 10's copyrights. This means that the infringing webpages and images that are being offered to users around the world by Yandex.com are being provided from Palo Alto, California.



Fourth, Yandex N.V. used Yandex Inc. to recruit top search engineers from Silicon Valley to work directly on the Yandex search engines.

1

Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction
| Case No. 12CV1521

[BLACK REDACTION BAR]

**Yandex N.V. Has The Right To Control, and Has Controlled, Yandex Inc.**

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

Yandex N.V.'s corporate governance guidelines state that Yandex N.V. is to manage its subsidiaries, and that no material non-ordinary transaction can be made by any subsidiary, whether it is Yandex Inc. or Yandex LLC, without Yandex N.V. approval.

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

In sum, Yandex N.V. is not a passive holding company that simply invests in its subsidiaries. See *Hydoxycut Marketing and Sales Practices Lit*., 810 F.Supp.2d 1100, 1118 (S.D. Cal. 2011). Instead Yandex Inc. is Yandex N.V.'s agent because if Yandex Inc. did not exist, Yandex N.V. would undertake to perform the services rendered by Yandex Inc. itself. It also has the right to control Yandex Inc. As such, Yandex Inc.'s

contacts with California may be imputed to Yandex N.V. under the agency theory. See *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 921-924 (9th Cir. 2011).

**Yandex N.V. is Subject to Jurisdiction in the U.S. Pursuant to Rule 4(k)(2)**

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████; its sale of $401 million in stock through the U.S. NASDAQ stock exchange; and its other contacts detailed in Section II.J below are sufficient to establish F.R.C.P. 4(k)(2) jurisdiction.

Perfect 10 respectfully requests that Yandex N.V.'s motion should be denied in its entirety.

## II. <u>STATEMENT OF RELEVANT FACTS</u>

### A. **Yandex N.V. is in the Search Engine Business**

Yandex N.V. is a publicly-traded company that describes itself in its SEC filings and in its press releases as a "search engine" company. See Perfect 10's Opposition Brief ("Oppo Brf.") (Dkt. No. 21), 2:10-14; Order at 4:18-22. Yandex N.V.'s website, company.yandex.com, is hosted by Yandex Inc. Supplemental Declaration of Dr. Norman Zada filed herewith ("Zada Suppl. Decl.") ¶7, Exh. 14. Most of Yandex N.V.'s revenues are derived from advertising on its search engines. Oppo. Brf. 4:2-7. Contrary to what Yandex N.V. may argue, it is *not* a holding company that "invests" in subsidiaries. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Perfect 10 alleges that Yandex N.V. search engines yandex.com and yandex.ru infringe Perfect 10's copyrights.

**B.    The Creation and Formation of Yandex Labs**

Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction
| Case No. 12CV1521

Yandex Inc. does not have its own website. A description of Yandex Labs may be accessed on the Yandex N.V. website, company.yandex.com website, which also publishes Yandex N.V.'s SEC filings, Yandex press releases, corporate information, descriptions of the Yandex management team, and explanations as to how the Yandex search engines and web crawlers operate. Benink Decl., ¶ 16, Exh. GG.

**C.     The Overlap and Close Relationship of Officers and Directors**

5

Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction | Case No. 12CV1521



Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction
| Case No. 12CV1521

[redacted]

**D. Hiring and Firing of Employees and Compensation Packages**

[redacted].

**E. Yandex Inc. Provides Hosting, Web Crawlers, IP Addresses, [redacted]**

[1] [redacted]

Yandex Inc. hosts yandex.com, one of the websites that infringes Perfect 10 copyrights. Zada Suppl. Decl. ¶7, Exh. 14. This website allows the sharing of Perfect 10 images by Twitter and Facebook users. Zada Suppl. Decl. ¶ 12, Exh. 19. Yandex Inc. also hosts tweetedtimes.com, a Yandex LLC registered website that features major U.S. media such as USA TODAY and The Washington Post. Zada Suppl. Decl. ¶8, Exh. 15. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

**F.     Yandex N.V. uses Yandex Inc. to Facilitate Transactions in the U.S.**

████████████████████████████████████████████



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction
| Case No. 12CV1521



Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction | Case No. 12CV1521



Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction
| Case No. 12CV1521



[redacted]

**G. Yandex Lab's Vital Work on the Search Engines**

[redacted]

[redacted]



Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction
| Case No. 12CV1521

## I. Yandex N.V. Promulgates Company-Wide Policies that Govern Yandex Inc.

Yandex N.V.'s Corporate Governance Guidelines govern Yandex N.V and its subsidiaries. Fenaughty Tr. at 12:21-13:4, Benink Decl., Exh. B-36. Under these guidelines, Yandex N.V.'s board of directors provide advice and assistance to the subsidiaries' management and oversee management of the "company," which is defined as Yandex N.V. and its subsidiaries. All Yandex N.V. subsidiaries must obtain Yandex N.V. approval before they make any material transaction not made in the ordinary course of business. Benink Decl., Exh. B-36, p. 81. The policies include matters such as compliance with laws, rules, and regulations; confidentiality; protection and proper use of corporate assets; gifts and gratuities; bribes and kickbacks; accuracy of books

and records; concerns about accounting and auditing matters; sexual and racial harassment; and equal opportunities for employment. Benink Decl., Exh. B-39. Employees are advised that they may report alleged violations directly to the Yandex Group's CFO in Russia. Benink Decl., Exh. B-39.

**J.  Yandex N.V.'s Contacts With California And The U.S.**

Yandex N.V. has the following contacts with the U.S.:

- ███████████████████████████████████████████████.

- It designated Yandex Inc. as its agent for process of service in its SEC filings.

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████

███████████████████████████████████████████████

███████████████████████

███████████████████████████████████████

███████████████

- ███████████████████████████████████████████

████████████████████████████████.

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction | Case No. 12CV1521



III. **ARGUMENT**

    A. **Legal Standards on Agency Test**

        A foreign parent company may have the necessary contacts by virtue of its relationship to a subsidiary through either the "alter ego" or "agency" theory. *Bauman*, 644 F.3d at 919. The agency test is satisfied by a showing two things: (1) that the subsidiary performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services, and (2) the parent has a right to control the subsidiary's activities. *Id.* at 919–24. *See also*, Order 5:8-14.

    B. **Yandex Inc. Performs "Sufficiently Important Services"**

        The principal focus of the agency test is the importance of the services to the

16

Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction
| Case No. 12CV1521

parent. *Bauman,* 644 F.3d at 922. "The purpose of examining sufficient importance is to determine whether the actions of the subsidiary can be understood as a manifestation of the parent's presence." *Id.* at 921. If the parent would undertake the services of the subsidiary if the subsidiary did not exist, then this element is met. *Id.* at 921-922. But this test is met even when those services might be delegated by the parent to another agent or subsidiary. *Id.* at 922, fn. 13. In other words, the test does not ask whether Yandex N.V.'s own officials (represented by a board of directors) would *directly* undertake those services. Here, many of the services Yandex Inc. provides would likely be delegated to Yandex LLC if Yandex Inc. did not exist. ██████████████

██████████████████████████████████████████

Yandex N.V. argues that "Yandex N.V. is a holding company acting consistent with its role as an investor. . ." (Dkt. 17-1, 7:21-22). The sufficient importance element has been found where a subsidiary was not a true passive holding company in the business of investing in subsidiaries. In *Hydroxycut*, the parent company Kerr was the parent to 50 corporations described together as the Iovate Companies. In analyzing the agency test, the Court rejected Kerr's argument that it was a true holding company and held:

> It is clear the one business enterprise has been divided into numerous parts that work together and depend on each other. All of the functions of the subsidiaries are devoted to the common end of developing and selling the Iovate Companies' diet and nutritional supplements.

*Hydroxycut*, 810 F.Supp.2d. at 1119.

The sufficient importance element has also been found where a subsidiary acted as a distribution channel for vehicles in California that accounted for 2.4% of worldwide sales, *Bauman,* 644 F.3d. at 922; where a subsidiary was used by the parent as an agent to implement strategy and to acquire a controlling stake in a third party, *In re Musicmaker.com Securities Lit.*, 2001 WL 3062431 at *9 (C.D. Cal. June, 4, 2001); and where a subsidiary provided "management, administrative, accounting, and data

processing services" for a larger group of 180 companies ("SCI") involved in the "death business." *Helm v. Alderwoods Group, Inc*., 696 F.Supp.2d 1057, 1064, 1069-1070 (N.D. Cal. 2009).

The Yandex search engines are critically important to Yandex N.V. (Order 5:24-25).



Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction | Case No. 12CV1521

██████████████████████████████████████████████████████

Yandex N.V. is not simply a passive holding company investor. Rather Yandex Inc. is nothing more than an incorporated department of Yandex N.V. whose presence in Palo Alto, California substitutes for the presence of Yandex N.V. *See Doe v. Unocal Corp.*, 248 F.3d 915, 928-929 (9th Cir. 2001); citing *Gallagher v. Mazda Motor of America, Inc.*, 781 F.Supp. 1079, 1083-84 (E.D.Pa.1992); *quoting Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.*, 508 F.Supp. 1322, 1342 (E.D.N.Y.1981.) If Yandex Inc. did not exist, Yandex N.V. would certainly have this work performed by another agent or subsidiary.

### C. Yandex N.V. Controls Yandex Inc.

The control required to establish agency is of a lower standard than that under the alter-ego test. *Bauman,* 644 F.3d. at 922. The Ninth Circuit specifically noted that it is not a requirement that the parent must exercise actual control over the operations of its subsidiary on a day-to-day basis for the agency theory to be established. *Id.* (noting that "this argument is in error because it conflates the agency and alter ego tests"). **Instead, only a right to control must be established.** And as discussed above, the right to control is also the lesser important of the two elements necessary to establish the agency theory.

As explained above, Yandex N.V. Corporate Governance Guidelines provide it with such a right, as Yandex N.V. must approve all material non-ordinary Yandex Inc. transactions. Benink Decl, Exh. 36, p. 81. Yandex N.V. has demonstrated its complete control of Yandex Inc ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Overlapping directors, while not determinative, is probative of control. *Acorn v. Household Int'l Inc.*, 211 F.Supp.2d 1160, 1167 (N.D. Cal. 2002) ("several courts have found such overlapping control structures to be probative of a broad principal/agent relationship.")

Yandex, Inc. is not a stand-alone company and was not created to make money. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Yandex's promulgation of Yandex-wide written policies on matters such as sexual and racial harassment, and accounting and audit matters, also reflect its control of Yandex Inc. Benink Decl, Exh. B-39, p. 71-78. See *Helm*, 696 F.Supp.2d at 1070 (finding employee handbook issued by parent, *inter alia*, supported plaintiffs' contention that parent exercises close control of its subsidiaries' daily operations).

Perfect 10's opposition brief discussed at great length, Yandex N.V. ubiquitous descriptions of itself and "Yandex" as a search engine company. The existence of a single brand and image supports the finding of an agency relationship as well. See *Acorn,* 211 F.Supp.2d at 1165 ("This close relationship between parent and subsidiary is reflected in HI's frequent references to itself and its subsidiaries as a single, unitary enterprise."); see also *Helm*, 969 F.Supp.2d at 1070 (". . .[parent company] SCI's imposition of a national SCI brand, Dignity Memorial, on its companies in California . . .suggest[s] that SCI controls the manner in which SCI's California businesses provide mortuary and funeral services.") Thus, even though SCI had no employees and

conducted no business in California, Judge Illston nevertheless found that "defendants have not provided a basis 'for distinguishing between the business of the parent and the business of the subsidiaries,'" and asserted jurisdiction over SCI. *Id. See also Bellomo v. Penn. Life Co*., 488 F.Supp. 744, 746 (S.D.N.Y. 1980) (asserting jurisdiction over holding company where business of subsidiaries constituted the only business of parent.)

### D. Yandex N.V. Has Sufficient Contacts With the U.S. To Warrant F.R.C.P. 4(k)(2) Jurisdiction

This Court has already found that Yandex N.V. satisfies the first two requirements for 4(k)(2) jurisdiction. The final requirement is that the federal court's exercise of personal jurisdiction must comport with due process.

At its base, due process seeks to ensure that a defendant is not haled into court for contacts that are random, fortuitous, or attenuated. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). It places responsibility on defendant's own actions that create a substantial connection with the forum. *Id*. The Ninth Circuit's flexible approach allows for a lesser showing of contacts if considerations of reasonableness are met. *Ochoa v. J.B. Martin & Sons Farms, Inc.,* 287 F.3d 1182, 1188, n. 2 (9th Cir. 2002).

Here, as discussed more thoroughly above, Yandex N.V. has deliberately injected itself into the U.S. ███████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████████████ █████████████████████ It is also listed on the NASDAQ stock exchange and raised $401 million in its IPO, much of which was from U.S. Investors. Benink Decl, Exh. O, p. 178. It also designated Yandex Inc. as its agent for service of process in its SEC

filings.  Zada Decl. (Docket 21-1) Exh. 1, p. 1.  While listing on a U.S. stock exchange and designation of an agent in the forum state, may not be enough, by itself to establish personal jurisdiction, they may be considered in the mix of contacts that the Court considers.  *See Bauman v. DaimlerChrysler AG*, 2005 WL 3157472 at *8 (N.D. Cal. November 22, 2005)  ("Neither is a listing on a stock exchange, *without more*, sufficient to confer general jurisdiction.") (italics added);  *Martin v. D-Wave Systems, Inc*, 2009 WL 4572742, at *4 (N.D. Cal., December 1, 2009) (considering designation of agent as one of the factors in support of exercise of general jurisdiction).

And it would be imminently reasonable for the Court to assert jurisdiction over Yandex N.V. ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████ Yandex N.V. cannot possibly argue that its contacts with the U.S. are random, fortuitous, or attenuated.

## IV.    THE IVASHENSTEVA DECLARATION IS FALSE AND MISLEADING

Yandex relied almost exclusively in its motion to dismiss, on the declaration of an outside Yandex N.V. board of director, Elena Ivashentseva.  However, her declaration contains a number of false and/or misleading statements.

████████████████████████████████████ ████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████████

Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction | Case No. 12CV1521



[redacted]

Ivashentseva's statement that "Yandex LLC surrendered its registration to do business in California several years ago," is also misleading. Yandex LLC surrendered its registration to do business in California on or about October 19, 2010, approximately a year and seven months before Ivanshentseva signed her declaration. Locke Decl., Exh. 1, p. 3.

## V. OTHER YANDEX MISREPRESENTATIONS

In addition to the misleading statements made in the Ivashentseva Declaration, Yandex N.V. has also made a number of inaccurate statements to the Court during the

discovery hearing on August 8, 2012.[2]  For example, in order to persuade the Court that Dr. Zada should be forced to drive two and a half hours down to San Diego to see AEO documents, Ms. Kassabian stated to this Court that Dr. Zada "has a mansion in Beverly Hills."  In fact, Dr. Zada lives in a house in Los Angeles that is not a "mansion."  Zada Suppl. Decl. ¶¶3, 16, Exh. 23, p. 4.  Dr. Zada has lost most of his money attempting to protect what is left of Perfect 10.

Ms. Kassabian also represented to the Court that Yandex only stores thumbnails on its servers.   Zada Suppl. Decl. ¶16, Exh. 23, pp. 7-8.  There are in fact, many hundreds of full-sized Perfect 10 images on yandex servers, surrounded by Yandex ads.  Zada Suppl. Decl ¶11, Exh. 18.  Ms. Kassabian also stated that there was no precedent for a protective order that would allow Dr. Zada to view AEO documents at his home.  Zada Suppl. Decl. ¶16, Exh. 23, p. 3.  In fact, other courts have allowed Dr. Zada unrestricted access to AEO documents.  (See Dkt. No. 56-1)

///

///

///

///

///

---

[2] During that hearing, Ms. Kassabian persuaded the Court to trust her representations that all contracts involving Yandex N.V. would be produced and that no portions of Yandex N.V. minutes relevant to jurisdictional issues had been redacted.

1

**VI.    CONCLUSION**

2          Yandex N.V. is not a passive holding company whose only interest is in owning

3    profitable subsidiaries.  It operates a family of companies together as a single entity,

4    "Yandex," whose unitary goal is to make its search engines successful.  Yandex N.V.

5    uses Yandex Inc. as a base for its operations in the U.S. and to provide critical

6    computer infrastructure for its search engine business.  It is imminently fair to hale

7    Yandex N.V. into a California court considering Yandex N.V.'s numerous contacts

8    with California and the U.S.  Perfect 10 respectfully requests that this Court deny

9    Yandex N.V.'s motion to dismiss.

10

11   Dated: August 22, 2012                    Respectfully submitted,
                                              Krause Kalfayan Benink & Slavens, LLP.
12

13                                            By: _____*/s/ Eric Benink*_____

14                                                 Eric Benink
                                                   Attorney for Plaintiff, Perfect 10, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Perfect 10's Supplemental Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction
| Case No. 12CV1521