QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Diane M. Doolittle (Bar No. 142046)
  dianedoolittle@quinnemanuel.com
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

  Daniel C. Posner (Bar No. 232009)
  danposner@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:    (213) 443-3100
Facsimile:    (213) 443-3100

Attorneys for Specially-Appearing
Defendant Yandex N.V.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PERFECT 10, INC., | CASE NO. CV-12-1521-WHA |
| Plaintiff, | **SPECIALLY-APPEARING DEFENDANT YANDEX N.V.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| vs. | |
| YANDEX N.V., | |
| Defendant. | |

**PUBLIC REDACTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................... 1

RELEVANT BACKGROUND.............................................................................................. 2

ARGUMENT .......................................................................................................................... 3

I.    AS JURISDICTIONAL DISCOVERY HAS CONFIRMED, YANDEX N.V.'S
      CONTACTS WITH CALIFORNIA ARE INSUFFICIENT TO SUPPORT
      PERSONAL JURISDICTION ...................................................................................... 3

      A.    Yandex N.V. Is Not Subject To General Jurisdiction In California......................... 3

      B.    Yandex N.V. Is Not Subject To Specific Jurisdiction In California ....................... 7

II.   YANDEX N.V. IS NOT SUBJECT TO NATIONWIDE JURISDICTION ....................... 8

III.  YANDEX N.V. IS NOT SUBJECT TO PERSONAL JURISDICTION BASED ON
      IMPUTED CONTACTS .............................................................................................. 9

      A.    Neither Yandex LLC Nor Yandex Inc. Is Yandex N.V.'s "Alter Ego" ................. 10

            1.    Yandex N.V. Does Not Control Its Subsidiaries' Day-To-Day
                  Operations .................................................................................................. 10

            2.    Yandex N.V. Did Not Structure Its Subsidiaries To Perpetrate Fraud
                  Or Injustice ................................................................................................ 14

      B.    Neither Yandex LLC Nor Yandex Inc. Is Yandex N.V.'s "Agent"....................... 14

            1.    Yandex Inc. Is Not Yandex N.V.'s Agent.................................................. 15

            2.    Yandex LLC Is Not Yandex N.V.'s Agent ................................................ 16

      C.    Even If Imputed, Yandex LLC's Contacts Do Not Support Jurisdiction Over
            Yandex N.V. .................................................................................................... 17

IV.   JURISDICTION OVER YANDEX N.V. WOULD BE UNREASONABLE ................... 18

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## Cases

AT&T Co. v. Compagnie Bruxelles Lambert,
  94 F.3d 586 (9th Cir. 1996) ............................................................................7, 9

Akzona, Inc. v. E.I. Du Pont De Nemours and Co.,
  607 F. Supp. 227 (D. Del. 1984) ..................................................................11

Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,
  223 F.3d 1082 (9th Cir. 2000) ......................................................................5

Bauman v. DaimlerChrysler Corp.,
  644 F.3d 909 (9th Cir. 2011) ..........................................................9, 14, 15, 17

Birzer v. Jockey's Guild, Inc., ,
  444 F. Supp. 2d 1005 (C.D. Cal. 2006) ........................................................5

Collegesource, Inc. v. Academyone, Inc.,
  653 F.3d 1066 (9th Cir. 2011) ..................................................................3, 4, 7

Congoleum Corp. v. DLW Aktiengesellschaft,
  729 F.2d 1240 (9th Cir. 1984) ......................................................................5

Doe v. Unocal Corp.,
  248 F.3d 915 (9th Cir. 2001) ..........................................................8, 9, 10, 11, 13

Dole Food Co. v. Patrickson,
  538 U.S. 468 (2003) ..........................................................................9, 10

Farmers Inc. Exch. v. Portage La Prairie Mut. Ins. Co.,
  907 F.2d 911 (9th Cir. 1990) ........................................................................6

Fletcher v. Atex, Inc.,
  68 F.3d 1451 (2d Cir. 1995) ........................................................................11

Flynt Distrib. Co. v. Harvey,
  734 F.2d 1389 (9th Cir. 1984) ......................................................................12

Gallagher v. Mazda Motor of America, Inc.,
  781 F. Supp. 1079 (E.D. Pa. 1992) ..............................................................14

Goodyear Dunlop Tires Operations, S.A. v. Brown,
  131 S. Ct. 2846 (2011) ................................................................................3

Hickory Travel Sys., Inc. v. TUI AG,
  213 F.R.D. 547 (N.D. Cal. 2003) ............................................................11, 14, 15, 16

In re Hillsborough Holdings Corp.,
  166 B.R. 461 (Bankr. M.D. Fla. 1994) ........................................................11

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
   485 F.3d 450 (9th Cir. 2007) ........................................................................8

*Joiner v. Ryder Sys.,*
   966 F. Supp. 1478 (C.D. Ill. 1996) ...............................................................11

*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
   394 F.3d 1143 (2004) ..............................................................................10, 13

*Keeton v. Hustler Magazine, Inc.,*
   465 U.S. 770 (1984) ......................................................................................5

*Kingston Dry Dock Co. v. Lake Champlain Transp. Co.,*
   31 F.2d 265 (2d Cir. 1929) ...........................................................................12

*Kramer Motors, Inc. v. British Leyland, Ltd.,*
   628 F.2d 1175 (9th Cir. 1980) ..........................................................5, 7, 11, 16

*LaSalle Nat'l Bank v. Perelman,*
   82 F. Supp. 2d 279 (D. Del. 2000) ...............................................................14

*Omeluk v. Langsten Slip & Batbyggeri A/S,*
   52 F.3d 267 (9th Cir. 1995) ...........................................................................6

*R & B Falcon Drilling (Intern. & Deepwater), Inc. v. Noble Denton Grp.,*
   91 Fed. App'x 317 (5th Cir. 2004) ..................................................................9

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) .....................................................................7, 18

*Scott v. Breeland,*
   792 F.2d 925 (9th Cir. 1986) .........................................................................5

*Smith v. Simmons,*
   638 F. Supp. 2d 1180 (E.D. Cal. 2009) .......................................................10

*State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC,*
   646 F. Supp. 2d 668 (D.N.J. 2009) ..............................................................11

*Thomson v. Anderson,*
   113 Cal. App. 4th 258 (2003) .........................................................................5

*Troll Busters LLC v. Roche Diagnostics GmbH,*
   No. 11cv56, 2011 WL 3859721 (S.D. Cal. Aug. 31, 2011) ............................7

*U.S. v. Alfred L. Wolff GmbH,*
   No. 08-CR-417, 2011 WL 4471383 (N.D. Ill. Sept. 26, 2011) ......................14

*U.S. v. Bestfoods,*
   524 U.S. 51 (1998) ...............................................................................12, 13

*Ziegler v. Indian River Cty.,*
   64 F.3d 470 (9th Cir. 1995) .........................................................................18

1

<u>**Statutes**</u>

2   <u>Fed. R. Civ. Proc.</u> 4(k)(2)..............................................................................................8, 9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to the Court's Order for Limited Discovery on Issues of Personal Jurisdiction, dated June 11, 2012 (Dkt. 24), Specially-Appearing Defendant Yandex N.V. hereby submits its supplemental brief in support of its motion to dismiss for lack of personal jurisdiction.

## Introduction

Following two months of extensive jurisdictional discovery, Yandex N.V. stands jurisdictionally where it stood before.  It remains a Dutch holding company that generates virtually no revenue at all from the United States and that has done nothing to purposefully avail itself of the laws of California or nationwide.  In apparent recognition of these facts, Perfect 10 seeks to support jurisdiction over Yandex N.V. by alleging an alter-ego or agency relationship between Yandex N.V. and its U.S. subsidiary, Yandex Inc.  But Perfect 10 does not even come close to meeting the relevant standards.  Among other things, Yandex Inc. performs functions that are not indispensable to its holding company parent, Yandex N.V., nor does Yandex N.V. have the right to control Yandex Inc.'s day-to-day operations.  Likewise, Yandex N.V.'s relationship with its Russian-based subsidiary, Yandex LLC, does not support jurisdiction because Yandex N.V. has no right to control, and does not control, the daily activities of Yandex LLC in running its Russian search engine, and Yandex LLC's own contacts with California are insufficient to support jurisdiction over it, let alone over Yandex N.V.  Equally unpersuasive is Perfect 10's theory that the business relationship between sister companies Yandex Inc. and Yandex LLC somehow subjects their parent company Yandex N.V. to jurisdiction.  Perfect 10 has pointed to no authority suggesting that the provision of services from one domestic sister company to another foreign sister company, pursuant to an arm's length contract, somehow imputes jurisdiction upon their foreign parent company.  Finally, even if Perfect 10 could make a *prima facie* showing of personal jurisdiction – and on this record it cannot – it would be unreasonable to exercise jurisdiction here because Yandex N.V. is a foreign defendant with no business operations in California.  Conducting the litigation here would be tremendously unjust and burdensome on Yandex N.V. and its witnesses, as the jurisdictional discovery process itself has made clear.  Yandex N.V.'s motion to dismiss should be granted.

**<u>Relevant Background</u>**

On March 27, 2012, Perfect 10 filed its complaint against Yandex N.V.  Dkt. 1.  On May 10, Yandex N.V. appeared specially for the purpose of moving to dismiss the complaint for lack of personal jurisdiction.  Dkt. 17.  On June 11, after the motion to dismiss was fully briefed, the Court entered its Order for Limited Discovery on Issues of Personal Jurisdiction (the "Order," Dkt. 24), in which the Court made the following findings:

- "Yandex N.V.'s contacts, without consideration of its subsidiaries, are insufficient to establish personal jurisdiction in California."  Order at 3.

- "Perfect [10] has failed to meet its burden of establishing that Yandex N.V. is the alter ego of either Yandex LLC or Yandex Inc."  *Id*. at 4.

- "[E]ven if Yandex LLC's contacts are imputed to Yandex N.V., it is unlikely that there can be general jurisdiction over Yandex N.V. in California."  *Id*. at 7.

- The accused websites operated by Yandex LLC "are not highly interactive websites and are therefore insufficient, by themselves, on this record, to establish specific jurisdiction on their owner, Yandex LLC."  *Id*. at 8.

- "California jurisdiction is unlikely for Yandex N.V. and Yandex LLC."  *Id.* at 9.

Notwithstanding those findings, the Court concluded that "limited" jurisdictional discovery "on the narrow issues of personal jurisdiction addressed in this order" was necessary to develop the record.  *Id*. at 10.  Specifically, the Court identified the following issues as being in need of discovery:

- "[W]hether Yandex N.V. has the right to exercise[] control over Yandex LLC's activities."  *Id*. at 5.

- The "importance of Yandex Inc.'s research and development functions" to Yandex N.V. and whether "Yandex N.V. has the right to control the activities of Yandex Inc."  *Id*. at 6.

- Whether jurisdiction over Yandex N.V. can be "based on imputing the contacts of Yandex LLC . . . to Yandex N.V."  *Id.*

- "[W]hether Yandex N.V.'s contacts with the United States are greater than its contacts with California."  *Id*. at 9.

Since the entry of the Order, Yandex N.V. has responded to Perfect 10's twelve broadly-framed document requests and produced more than 1,100 pages of responsive documents.  Yandex

N.V. has also made available for deposition Yandex N.V. Board member and Chair of its Audit Committee, Charles Ryan; Yandex N.V.'s Chairman of Board of Directors, Alfred Fenaughty; Yandex Inc.'s Chief Technology Officer, Arkady Borkovsky; and Yandex LLC's Vice President of International Finance, John Dowdy.  *See* Declaration of Rachel Herrick Kassabian, dated August 23, 2012 ("Kassabian Dec."), ¶¶ 3, 5.

<u>**Argument**</u>

In its Order, the Court gave Perfect 10 the opportunity to attempt to establish that Yandex N.V. is subject to personal jurisdiction based on either:  (1) Yandex N.V.'s own contacts with California or nationwide, or (2) the contacts of Yandex N.V.'s subsidiaries, Yandex LLC or Yandex Inc., if there exists a basis to impute those contacts to Yandex N.V.  The Court found that on the record as it existed before jurisdictional discovery, Perfect 10 had not met its burden of establishing either basis for jurisdiction.  As discussed below, the evidence adduced during jurisdictional discovery *supports* the Court's initial conclusions, and this motion to dismiss should be granted.

**I.      <u>AS JURISDICTIONAL DISCOVERY HAS CONFIRMED, YANDEX N.V.'S CONTACTS WITH CALIFORNIA ARE INSUFFICIENT TO SUPPORT PERSONAL JURISDICTION</u>**

No evidence adduced during jurisdictional discovery alters the Court's initial finding that "Yandex N.V.'s contacts, without consideration of its subsidiaries, are insufficient to establish personal jurisdiction in California."  Order at 3.

**A.      <u>Yandex N.V. Is Not Subject To General Jurisdiction In California</u>**

General jurisdiction is an "'exacting standard'" that exists only if the defendant engages in "'continuous and systematic general business contacts' . . . that 'approximate physical presence' in the forum state."  *Collegesource, Inc. v. Academyone, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) (citations omitted).  "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'"  *Id.* (citations omitted).  Stated another way, a foreign defendant's "affiliations with the State [must be] so

1  'continuous and systematic' as to render them *essentially at home in the forum State.*"  *Goodyear*

2  *Dunlop Tires Ops., S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011) (emphasis added).

3       As Yandex N.V. showed before, and as discovery has now borne out, Yandex N.V. has

4  precious few forum-related contacts.  Yandex N.V. is a Dutch holding company whose business is

5  to manage its investments, which include 15 companies that operate a variety of businesses,

6  including Yandex LLC's search engine business in Russia.  *See* Declaration of Elena

7  Ivashentseva, dated May 10, 2012 (Dkt. 17-2) ("Ivashentseva Dec."), ¶ 3; Declaration of Charles

8  Ryan, dated August 23, 2012 ("Ryan Dec."), ¶ 6.  Yandex N.V. operates through an eight-member

9  Board of Directors, none of whom resides in or is domiciled in California.  Ivashentseva Dec. ¶ 5;

10  Ryan Dec. ¶ 6.  Yandex N.V. has no employees, offices or property in California, does not sell or

11  offer for sale any products or services in California or direct any advertising toward California

12  residents, and does not pay State taxes, is not licensed to do business, and does not do business in

13  California.  Ivashentseva Dec. ¶¶ 4, 7.  These facts were true before, and now, after months of

14  jurisdictional discovery, are beyond reproach.

15       Yandex N.V.'s meager California contacts consist of the following:  (1) Yandex N.V. has a

16  California subsidiary, Yandex Inc., which is a research facility with approximately 15 employees

17  (out of the more than 3,300 employees in the entire Yandex family of companies) that generates

18  no revenue for Yandex N.V. and that happened to be located in Palo Alto because its founder,

19  Arkady Borkovsky, lived there (Ivashentseva Dec. ¶¶ 8, 12; Declaration of Arkady Borkovsky,

20  dated August 23, 2012 ("Borkovsky Dec."), ¶¶ 5, 8)); (2) it maintains an agent for service of

21  process in California in connection with its regulatory filings in support of its NASDAQ stock-

22  exchange listing (Ivashentseva Dec. ¶ 3); (3) it owns a minority (9.7%) interest in a California-

23  based search engine company called Blekko.com, but has no role in its daily management or

24  operations (Ryan Dec. ¶ 16); (4) it uses a California-based public relations firm called The

25  Blueshirt Group to assist with interfacing with investors (Ryan Dec. ¶ 7);[1] and (5) it guaranteed

26  _____

27  [1] ████████████████████████████████████

28  (footnote continued)

1  Yandex Inc.'s performance under Yandex Inc.'s lease agreement for its Palo Alto office space.

2  These contacts with California fall well-short of the "continuous and systematic" contacts

3  necessary to support general personal jurisdiction. *See Collegesource*, 653 F.3d at 1074 (finding

4  no general jurisdiction where defendant "has no offices or staff in California; is not registered to

5  do business in the state; has no registered agent for service of process; and pays no state taxes");

6  *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177-78 (9th Cir. 1980) (no general

7  jurisdiction over British parent company even though it owned a U.S. subsidiary, another of its

8  subsidiaries "is party to a contract to distribute tractors in the United States," another "supplies

9  marine engines to a company in the Boston area," and a "third once sold eight double-decker

10  buses to the New York Metropolitan Transit Authority"); *Thomson v. Anderson*, 113 Cal. App. 4th

11  258, 268 (2003) (under California law, designation of an agent for service of process is not

12  consent to personal jurisdiction).[2]

13       Perfect 10 likely will try to make much of the fact that Yandex N.V. representatives have

14  met on occasion with a few California-based companies to discuss potential business relationships.

15  However, mere discussion of potential business deals does not equate to conducting business.

16  Moreover, Perfect 10 overlooks that those discussions concerned the Yandex family's *overseas*

17  business operations.  Ryan Dec. ¶ 15.  In any event, because Yandex N.V. indisputably does ***not***

18  conduct any business in California, any business dealings it actually has, or has discussed, with

19  California companies pertain at most to doing business "*with* California," not doing business "*in*

20  California," and for that reason are insufficient to establish general jurisdiction over Yandex N.V.

_____

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████.  Ryan Dec. ¶ 7, Exh. B.

[2]  *See also*, *e.g.*, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 779 & n. 11 (1984) (no general jurisdiction despite circulation of 10,000-15,000 copies of nonresident defendant's magazine in forum per month); *Scott v. Breeland*, 792 F.2d 925, 928 (9th Cir. 1986) ("systematic" sale of records in California by popular country music band from Tennessee insufficient to confer general jurisdiction); *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242-43 (9th Cir. 1984) (no general jurisdiction despite solicitation of orders, promotion of products to potential customers through the mail and through showroom displays, and attendance at trade shows and sales meetings).

1   *See*, *e.g.*, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (no

2   general jurisdiction over defendant whose contacts consisted of "license agreements with two

3   television networks and a handful of California vendors" because "[t]hese agreements constitute

4   doing business with California, but do not constitute doing business in California," and merely

5   "engaging in commerce with residents of the forum state is not in and of itself the kind of activity

6   that approximates physical presence within the state's borders"); *Birzer v. Jockey's Guild, Inc.*,

7   444 F. Supp. 2d 1005, 1010 (C.D. Cal. 2006) ("The Ninth Circuit recognizes that merely

8   contracting with a California resident or one licensed to do business in California is not sufficient

9   to support the exercise of general jurisdiction."); *see also Omeluk v. Langsten Slip & Batbyggeri*

10  *A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (foreign defendant's "lack of a regular place of business in

11  Washington is significant, and is not overcome by a few visits" to the state for business-related

12  purposes).

13          Perfect 10 has also seized on isolated statements from Yandex N.V.'s Board of Director

14  meeting minutes to argue ███████████████████████████████████████████

15  ████████████████████████████████████████████████████████ Yandex N.V.'s

16  witnesses have made clear, however, that Yandex N.V. is a holding company and does not operate

17  the Yandex LLC search engine – in the United States or anywhere else. ████████████████

18  ████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████

20  ████████████████ Hypothetical, unrealized contacts with the U.S. are irrelevant as a matter of law

21  to the jurisdictional question, which considers "only contacts occurring prior to the event causing

22  the litigation." *Farmers Inc. Exch. v. Portage La Prairie Mut. Ins. Co.*,  907 F.2d 911, 913 (9th

23  Cir. 1990).

24          Finally, general jurisdiction over Yandex N.V. cannot be based on the websites accused by

25  Perfect 10 of infringing its copyrights.  As Yandex N.V. previously demonstrated, it does not own

26  or operate the yandex.ru or yandex.com websites that allegedly displayed Perfect 10's copyrighted

27  images, and it has no involvement in the alleged infringement of Perfect 10 images over those

28  websites.  Ivashentseva Dec. ¶ 6; Ryan Dec. ¶ 11.  Notwithstanding Perfect 10's previous

1  misunderstanding of these facts and the incorrect allegations in its complaint, this is now

2  undisputed.

3      But even if Yandex N.V. were considered to be the operator of those websites (which it is

4  not), that still would be insufficient to confer jurisdiction over Yandex N.V. (just as it would be

5  insufficient to confer jurisdiction over Yandex LLC, the company that actually operates the

6  websites), because, as this Court previously found, the websites "are not highly interactive" and do

7  not "target California users."  Order at 7-8.  In any case, even the "maintenance of an interactive

8  website" is insufficient "to support general jurisdiction in every forum in which users interacted

9  with the website" because if it were, "'the eventual demise of all restrictions on the personal

10 jurisdiction of state courts" would be the inevitable result."  *Collegesource*, 653 F.3d at 1075-76.

11 Accordingly, there is no basis for exercising general personal jurisdiction over Yandex N.V. in

12 California.

13      **B.      Yandex N.V. Is Not Subject To Specific Jurisdiction In California**

14      There is likewise no basis for exercising specific personal jurisdiction over Yandex N.V.

15 Specific jurisdiction could exist only if Yandex N.V. (1) performed "some act by which it

16 purposely avail[ed] itself of the benefits and protections of forum law," and (2) Perfect 10's cause

17 of action arose from that act.  *Kramer Motors*, 628 F.2d at 1178; *see Schwarzenegger v. Fred

18 Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Neither factor is met.

19      Perfect 10's specific jurisdiction argument rests on the wrongful premise that Yandex N.V.

20 owns and operates the search engines that allegedly contributed to infringement of its copyrights.

21 *See* Dkt. 21 at 12-14.  As shown above, it is now undisputed that Yandex N.V. does *not* do so, and

22 it therefore is not subject to specific jurisdiction based on that conduct.  *See Troll Busters LLC v.

23 Roche Diagnostics GmbH*, No. 11cv56, 2011 WL 3859721, at *12 (S.D. Cal. Aug. 31, 2011) (no

24 general jurisdiction over Dutch holding company defendant based on "false markings on its

25 website, which may be accessed by individuals in California," where "the website is maintained

26 by" a foreign subsidiary, not by the defendant or any of its U.S.-based subsidiaries).  And, even if

27 Yandex N.V. did operate the accused websites, this Court already found that those websites are

28 "insufficient by themselves, on this record, to establish specific jurisdiction on their owner,

1   Yandex LLC."  Order at 8.  Nor are any of Yandex N.V.'s contacts with California (identified

2   above) sufficient to confer specific jurisdiction, as none has any bearing on, and certainly did not

3   give rise to, Perfect 10's copyright infringement claims.  *See AT&T Co. v. Compagnie Bruxelles*

4   *Lambert*, 94 F.3d 586, 590 (9th Cir. 1996) (no specific jurisdiction where company "conducted no

5   business and maintained no offices in California" and its "majority [ownership] interest in [a

6   California company] does not suffice to confer specific jurisdiction").  In sum, neither general nor

7   specific jurisdiction exists over Yandex N.V. based on Yandex N.V.'s contacts with California.

8   **II.     YANDEX N.V. IS NOT SUBJECT TO NATIONWIDE JURISDICTION**

9        Jurisdictional discovery has likewise confirmed that Yandex N.V. is not subject to

10   nationwide jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  The Rule 4(k)(2) analysis

11   is functionally identical to the general personal jurisdiction test, except that it looks to contacts

12   with the United States as a whole.  *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485

13   F.3d 450, 461-62 (9th Cir. 2007).

14        Yandex N.V.'s contacts with the United States as a whole are no greater than its contacts

15   with California, and in no case are they sufficient to confer nationwide jurisdiction over Yandex

16   N.V.  Other than the sparse California contacts already addressed above, Yandex N.V.'s contacts

17   elsewhere in the United States are limited to its listing on a NASDAQ stock exchange in

18   New York.  The law is clear that a listing on a stock exchange, and steps taken to support that

19   listing, are insufficient to support personal jurisdiction.  *See Doe v. Unocal Corp.*, 248 F.3d 915,

20   922 (9th Cir. 2001) ("Total has no contacts of its own with the United States beyond listing its

21   stock on various exchanges and promoting sales of stock in the United States. . . .  [T]he Court is

22   not persuaded that Congress intended for the courts to assert jurisdiction under Rule

23   4(k)(2) whenever a corporation lists its stock on a United States exchange.").[3]  Indeed, as a sign of

24

25        [3]  Perfect 10 also has cited Yandex N.V.'s investment in a purported Delaware company
26   called "face.com" as being another contact with the U.S.  *See* Perfect 10's August 3, 2012 Letter
     to Court at 2. ████████████████████████████████████████
27   ████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████
28        (footnote continued)

just how minimal Yandex N.V.'s contacts are with the United States as a whole, the entire Yandex family of companies (not just Yandex N.V.) derives less than 0.4% of total annual revenues from U.S.-based sources.  Ivashentseva Dec. ¶ 14.

As such, Yandex N.V.'s contacts nationwide are no more substantial than its meager contacts with California.  The Court's exercise of jurisdiction over Yandex N.V. pursuant to Rule 4(k)(2) would therefore be improper.[4]

### III.   YANDEX N.V. IS NOT SUBJECT TO PERSONAL JURISDICTION BASED ON IMPUTED CONTACTS

Because Yandex N.V. is not subject to general or specific jurisdiction based on its own contacts, the Court may exercise jurisdiction over Yandex N.V. only if its subsidiaries' California contacts are imputed to it under an alter-ego or agency theory.  *See* Order at 4 (citing *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011).  Just as the Court found no basis to impute the contacts of Yandex N.V.'s subsidiaries on the record before, there is no basis to do so now.

_____

███  ██████.  Dowdy Dec. ¶ 15; Kassabian Dec. ¶ 10, Exh. D (Deposition of Charles Ryan at 91:22-92:7).  Yandex N.V.'s minority investment in this company for a limited period of time is far from being a "continuous and systematic" contact with the U.S. that could subject Yandex N.V. to nationwide jurisdiction for all purposes.  Similarly, Perfect 10 has referenced the website "dogpile.com" during the discovery process as being a contact of Yandex N.V.  But that website is owned and operated by Infospace Inc., a Delaware company, and in any case Yandex N.V. has no relationship with it.  Kassabian Dec. ¶ 11.

[4]   Perfect 10 has urged before that Yandex N.V. may be subject to nationwide jurisdiction under Rule 4(k)(2) by virtue of imputing contacts from its subsidiaries.  *See* July 31 Letter Brief at 2.  Perfect 10 has never identified any authority for the proposition that Rule 4(k)(2) jurisdiction can be established through agency or alter-ego imputation, nor has Yandex N.V. found any such authority.  To the contrary, at least one case has suggested that such a basis is not cognizable.  *See R & B Falcon Drilling (Intern. & Deepwater), Inc. v. Noble Denton Grp.*, 91 Fed. App'x 317, 321 (5th Cir. 2004) (finding no jurisdiction under Rule 4(k)(2) over foreign defendants based on plaintiff's contacts with defendants' corporate family-members:  "Noble Denton is not a single corporate entity, and R & B Cliffs' business deals with the various global entities over a number of years cannot be combined to impute sufficient contacts to each of the defendants.").

**A.**      **Neither Yandex LLC Nor Yandex Inc. Is Yandex N.V.'s "Alter Ego"**

The Court previously found that Perfect 10 "has not yet met its burden of showing that the corporate forms of the Yandex companies should be pierced."  Order at 5.  Perfect 10 still cannot meet that burden.

The "alter-ego" exception to the "general rule that a subsidiary and the parent are separate entities" applies in only rare and exceptional cases.  *Unocal*, 248 F.3d at 926 (quoting *AT&T Co.*, 94 F.3d at 591) (alterations in *Unocal*)); *see Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances).  The exception requires that the plaintiff "make out a *prima facie* case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'"  *Id.*  "Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an *injustice* to a third person."  *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (2004) (quotation omitted) (emphasis in original).  Significantly, the "mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law."  *Katzir's Floor & Home Design*, 394 F.3d at 1149 (citation omitted).   Neither factor of the alter-ego test is met here, as to either Yandex Inc. or Yandex LLC.

**1.**      **Yandex N.V. Does Not Control Its Subsidiaries' Day-To-Day Operations**

The first factor of the alter-ego test considers whether the "parent dictates every facet of the subsidiary's business – from broad policy – to routine matters of day-to-day operation." *Unocal*, 248 F.3d at 926-27.  Relevant considerations include whether the parent and subsidiary comingled funds or used each other's assets as their own, use the same offices and employees, fail to segregate corporate records, and inadequately capitalize the subsidiary.  *See* Order at 4; *see also*, *e.g*, *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1191 (E.D. Cal. 2009).

The facts adduced during discovery only buttress the Court's earlier finding that neither Yandex LLC nor Yandex Inc. is the alter ego of Yandex N.V.  The companies maintain separate

1   books and records, have separate bank accounts, separate employees and separate office locations.

2   Ivashentseva Dec. ¶¶ 9, 13; Dowdy Dec. ¶¶ 7, 9, 10.  They do not comingle funds, but instead

3   document financial transactions when they occur between them.  Dowdy Dec. ¶ 9.  Yandex N.V.

4   does not "dictate every facet" of its subsidiaries' businesses, and in fact has no involvement in

5   their daily activities.  Dowdy Dec. ¶¶ 5, 6, Borkovsky Dec. ¶ 7, Ryan Dec. ¶ 12.  Rather, Yandex

6   N.V.'s involvement in the activities of Yandex Inc. and Yandex LLC is limited to setting broad

7   corporate policies, such as for insider trading, and evaluating or approving certain high-level

8   decisions concerning business strategy and structuring, acquisitions, stock option grants, and other

9   material transactions "***not*** entered into the ordinary course of business."  Ivashentseva Dec. ¶ 9;

10  Ryan Dec. ¶ 12; Dowdy Dec. ¶ 5, 6; Borkovsky Dec. ¶ 7.  Yandex N.V. also has made capital

11  contributions  to Yandex Inc. for certain significant transactions, and provided a guaranty of

12  Yandex Inc.'s lease for its office facilities – all consistent with the type of high level oversight one

13  would expect from a publicly traded parent company.

14          As jurisdictional discovery has confirmed, Yandex N.V.'s role in the operation of

15  Yandex LLC and Yandex Inc. is typical of the role of *any* parent of a wholly-owned subsidiary,

16  and falls far short of the "exacting" showing necessary to support a finding of alter ego.  *See*, *e.g.*,

17  *Unocal*, 248 F.3d at 926-27 ("A parent corporation may be directly involved in financing and

18  macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary

19  is merely its alter ego," and "[a]ppropriate parental involvement includes:  'monitoring of the

20  subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and

21  articulation of general policies and procedures'") (citations omitted); *Hickory Travel Sys., Inc. v.*

22  *TUI AG*, 213 FRD 547, 554 (N.D. Cal. 2003) (facts "do not suffice to make a *prima facie* case of

23  alter ego" where parent "owns its subsidiaries, refers to them as divisions and not separate

24  companies, reports their earnings in annual statements, boasts of corporate integration, and has

25  made decisions about restructuring the businesses of some of those subsidiaries"); *Joiner v. Ryder*

26  *Sys.*, 966 F. Supp. 1478, 1485 (C.D. Ill. 1996) (no alter-ego liability where parent approved

27  subsidiaries' acquisitions and capital budget); *Kramer Motors*, 628 F.2d at 1177 (finding no alter

28  ego relationship even though parent guaranteed loans for the subsidiary, reviewed and approved

1  the subsidiary's major decisions, placed several of its own directors on the subsidiary's board, and

2  was closely involved in the subsidiary's pricing decisions).[5]

3          Moreover, both Yandex LLC and Yandex Inc. are sufficiently "capitalized" to carry out

4  their respective business operations.  Yandex LLC generates revenue from its search engines, and

5  Yandex Inc. by providing research and advertising services for Yandex LLC in exchange for

6  compensation.  Borkovsky Dec. ¶ 10; Ryan Dec. ¶ 9, Dowdy Dec. ¶ 10.  ████████████

7  ████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████  This is not

10  a situation where Yandex N.V.'s subsidiaries exist as empty shells with no assets or operations.

11  *Cf. Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393-94 (9th Cir. 1984) (alter ego found where

12  "two sole shareholders of several corporations had converted corporate assets for their own use,

13  had dealt with the various corporations as if they were one, and had transferred assets among the

14  corporations, leaving some of them undercapitalized").

15          Without any evidence to support its alter-ego claim, Perfect 10 will likely point to the fact

16  that certain Yandex N.V. directors also serve as directors or executives of Yandex LLC or Yandex

17  Inc.  This is insufficient as a matter of law to support a finding of alter ego, however, because "it is

18  entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and

19  that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."

20  *U.S. v. Bestfoods*, 524 U.S. 51, 69 (1998) (quotation omitted) (citing *Kingston Dry Dock Co. v.*

---

22  [5]  *See also*, *e.g.*, *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp.
23  2d 668, 680 (D.N.J. 2009) ("a court is not obligated to pierce the corporate veil in the case of a
   corporation that is comprised of only one shareholder or member because, quite obviously, that
24  one member must dominate the corporate entity if the business is to function and be profitable");
   *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459-60 (2d Cir. 1995) (no alter-ego liability where parental
25  approval required for leases, major capital expenditures and the sale of the subsidiary's assets); *In
   re Hillsborough Holdings Corp.*, 166 B.R. 461, 473-74 (Bankr. M.D. Fla. 1994) (proper for parent
26  to provide all financing to a subsidiary); *Akzona, Inc. v. E.I. Du Pont De Nemours and Co.*,
   607 F. Supp. 227, 238 (D. Del. 1984) (blurring corporate separateness in language of annual
27  report, overlap of boards of directors, parental approval of large capital expenditures, and parental
   guaranty of third-party loans to subsidiary insufficient to establish alter ego relationship).

28

1   *Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929) (L. Hand, J.) ("Control through the

2   ownership of shares does not fuse the corporations, even when the directors are common to

3   each"); Henn & Alexander 355 (noting that it is "normal" for a parent and subsidiary to "have

4   identical directors and officers")).   As the Supreme Court explained:

5   > This recognition that the corporate personalities remain distinct has its corollary in

6   > the "well established principle [of corporate law] that directors and officers holding

7   > positions with a parent and its subsidiary can and do 'change hats' to represent the

8   > two corporations separately, despite their common ownership."  [citation]  Since

9   > courts generally presume "that the directors are wearing their 'subsidiary hats' and

10  > not their 'parent hats' when acting for the subsidiary," [citations], it cannot be

11  > enough to establish liability here that dual officers and directors made policy

12  > decisions and supervised activities at the facility.  The Government would have to

13  > show that, despite the general presumption to the contrary, the officers and

14  > directors were acting in their capacities as [the parent's] officers and directors, and

15  > not as [the subsidiary's] officers and directors, when they committed those acts.

16  *Bestfoods*, 524 U.S. at 69-70 (citations omitted).  Here, there is no evidence that any Yandex N.V.

17  director has ever acted in the interests of a director of Yandex N.V. while serving as an executive

18  or director of Yandex LLC or Yandex Inc.

19          In sum, because all three Yandex entities maintain distinct corporate formalities and

20  discrete operations, there is no basis to find that any of them is the alter ego of another.  *See, e.g.*,

21  *Unocal*, 248 F.3d at 928 (where parent and subsidiary "observe all of the corporate formalities

22  necessary to maintain corporate separateness, the first prong of the alter ego test is not satisfied").[6]

23  _____

24  [6]   To the extent Perfect 10 rehashes its argument that the entire Yandex "family" of companies
    should be considered a single enterprise based on isolated statements appearing in Yandex N.V.'s

25  public filings, the Court has already recognized that such statements are insufficient to establish an

26  alter-ego relationship.  *See* Order at 4-5.  In any case Yandex N.V., as a publicly-traded company,
    is required by SEC and other regulations to refer to itself and its subsidiaries using terms of art,

27  such as a "single business segment," that should not be misconstrued as admissions regarding a
    unity of interest for purposes of the alter-ego test.  *See* Dowdy Dec. ¶¶ 12-14.

28

1    **2.**     **Yandex N.V. Did Not Structure Its Subsidiaries To Perpetrate Fraud**

2         **Or Injustice**

3         Perfect 10's alter-ego claim fails for the independent reason that there is no evidence "that

4    failure to disregard" the separate identities or the Yandex companies "would result in fraud or

5    injustice" to Perfect 10.  *See Unocal*, 248 F.3d at 926.  For purposes of this requirement, the

6    "injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is

7    the injustice that results only when corporate separateness is illusory." *Katzir's Floor & Home*

8    *Design*, 394 F.3d at 1149.  Thus, "to prevail on a claim to pierce the corporate veil . . . a plaintiff

9    must prove that the corporate form causes fraud or similar injustice." *LaSalle Nat'l Bank v.*

10   *Perelman*, 82 F. Supp. 2d 279, 295 (D. Del. 2000); *see U.S. v. Alfred L. Wolff GmbH*, No. 08-CR-

11   417, 2011 WL 4471383, at *5 (N.D. Ill. Sept. 26, 2011) (declining to find alter ego where even

12   though defendants had been charged with fraud, facts did not show that defendants had been

13   formed to perpetrate a fraud).

14        Here, there is no evidence at all showing that Yandex N.V. structured either Yandex LLC

15   or Yandex Inc. in such a way as to perpetrate a fraud or injustice, evade jurisdiction or avoid

16   liability.  Whatever injustice Perfect 10 may claim has befallen it as a result of Yandex N.V.'s

17   alleged conduct, or even the conduct of its subsidiaries, that injustice does ***not*** result from the

18   corporate form of those entities.  The second requirement of the alter-ego test is therefore not met.

19   **B.**     **Neither Yandex LLC Nor Yandex Inc. Is Yandex N.V.'s "Agent"**

20        Perfect 10's last option for showing jurisdiction – the agency doctrine – likewise fails.  As

21   the Court concluded before, the agency test requires a showing of "two things:  (1) that the

22   subsidiary performs services that are sufficiently important to the foreign corporation that if it did

23   not have a representative to perform them, the corporation's own officials would undertake to

24   perform substantial similar services, and (2) the parent has a right to control the subsidiary's

25   activities." Order at 5 (citing *Bauman*, 644 F.3d at 919-24).  Neither prong is met here.

26        The first factor in the agency test requires that the "subsidiary functions as an

27   indispensable part of the parent's business." *Hickory Travel Sys.*, 213 FRD at 553.  The "fact that

28   the subsidiary performs a function that the parent finds *useful*, or that the subsidiary makes money

for the parent, is insufficient to establish agency if the parent could carry on its core business in the absence of that subsidiary's work; for agency to exist, the subsidiary's activity must be *integral to the parent's* business." *Id.* (emphasis added).  Moreover, where, as here, the parent is a holding company, the holding company's investments are not necessarily its agents because the holding company could divest itself of those investments and still be a holding company.  *See Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1083-84 (E.D. Pa. 1992).

The second factor of the agency test requires that "both the principal and the agent must manifest assent to the principal's *right to control* the agent."  *Bauman*, 644 F.3d at 923 (citation omitted) (emphasis in original).  "The mere 'capacity' to control is not sufficient to establish agency, absent some indication of an agreement that the principal has the right to control the agent."  *Id.* at 923 n. 15 (citation omitted).  "Although the agreement need not be explicit, 'there must be at least some manifestation of assent' to the right to control."  *Id.* (citation omitted).  In *Bauman*, the court found that the control element was satisfied because the parties' relationship was governed by a "comprehensive written agreement" that established the requirements the domestic subsidiary was required to follow as the foreign defendant's general automobile distributor in the United States.  *Id.* at 914-17, 923-24.

Perfect 10 cannot satisfy both requirements of the agency test as to either Yandex LLC or Yandex Inc.

### 1.     <u>Yandex Inc. Is Not Yandex N.V.'s Agent</u>

Neither of the two requirements of the agency test is met as to Yandex Inc.

*<u>First</u>*, the evidence adduced during jurisdictional discovery confirms that Yandex Inc. does ***not*** function as an "indispensable part of [Yandex N.V.'s] business."  *Hickory Travel Sys.*, 213 FRD at 553.  Indeed, none of Yandex Inc.'s business activities, including the software development and advertising services it provides to *Yandex LLC*, are "integral" to Yandex N.V.'s business of managing the 15 companies it holds as investments.  Further, relative to the rest of the Yandex family, Yandex Inc. is a very small operation.  As of December 2011, Yandex Inc. had only about 15 employees out of the 3,312 total headcount for the Yandex family of companies. Ivashentseva Dec. ¶ 12; Borkovsky Dec. ¶ 5. ████████████████████████

1

2

3

4 ████████████████████████████████████████ Accordingly, no aspect

5 of Yandex Inc.'s business is indispensable to Yandex N.V.

6    *Second*, no document or testimony that Perfect 10 has obtained during jurisdictional

7 discovery reflects the right of Yandex N.V. to control the daily operations of Yandex Inc.  Nor has

8 Yandex N.V. exercised any such right to control Yandex Inc.  *See* Ryan Dec. ¶¶ 12, 14; Dowdy

9 Dec. ¶¶ 5, 6; Borkovsky Dec. ¶ 7; Ivashentseva Dec. ¶ 9, 13.  To the contrary, the evidenced

10 adduced during jurisdictional discovery confirms that other than engaging in Yandex Inc.'s

11 business as any parent-investor would, including by participating in high-level strategic, M&A

12 and high-level employment decisions, Yandex Inc. operates independently from Yandex N.V., and

13 its daily activities are managed by not by Yandex N.V., but by its own Chief Technology Officer,

14 Arkady Borkovsky, and Chief Scientist and Acting CEO, Clifford Brunk.  Borkovsky Dec. ¶¶ 7,

15 11.

16            **2.    Yandex LLC Is Not Yandex N.V.'s Agent**

17    Nor is either factor of the agency test met as to Yandex LLC.

18    *First*, although Yandex LLC operates search engines that generate significant revenue for

19 Yandex N.V., this itself is insufficient to render Yandex LLC "indispensable" to Yandex N.V.

20 because it is not the case that Yandex N.V., a holding company, "would be unable to properly

21 function if it divested itself of" Yandex LLC.  *See Hickory Travel Sys.*, 213 FRD at 554 (noting

22 that "[u]nder Plaintiff's reasoning, basically any corporate division that makes money for the

23 parent is an agent of the parent.  The test of agency in this context is not nearly so broad").

24    *Second*, Perfect 10 can point to no agreement, written or otherwise, between Yandex LLC

25 and Yandex N.V., nor to any other evidence, showing not only that Yandex N.V. has the "right to

26 control" Yandex LLC, but also that Yandex LLC has manifested its assent to that control.  As

27 discussed above, the jurisdictional evidence shows that the companies indisputably maintain

28 separate finances and employees, Yandex N.V. does not "manage or direct the day-to-day

1  operations" of Yandex LLC (*see* Order at 6), and Yandex LLC exercises independence from

2  Yandex N.V. with respect to all agreements and transactions it chooses to engage in other than

3  "material transactions and commitments ***not*** entered into in the ordinary course of business."

4  Ivashentseva Dec. ¶ 9; Ryan Dec. ¶ 12; Dowdy Dec. ¶¶ 5, 6; Borkovsky Dec. ¶ 7.  This evidence

5  falls well-short of what is required to prove an agency relationship between Yandex N.V. and

6  Yandex LLC.  *See*, *e.g.*, *Kramer Motors*, 628 F.2d at 1177 (finding no agency where "[n]one of

7  the United Kingdom companies controls the internal affairs of [the subsidiary] or determines how

8  it operates on a daily basis," and the "parent and subsidiary have dealt with each other as distinct

9  corporate entities").  *Cf. Bauman*, 644 F.3d at 924 (finding agency relationship where parent was

10  heavily involved in the day-to-day operations of the subsidiary and had "the right to control nearly

11  all aspects of [subsidiary's] operations").

12      In sum, there is no basis to impute to Yandex N.V. the California contacts of either

13  Yandex LLC or Yandex Inc.

14      **C.      Even If Imputed, Yandex LLC's Contacts Do Not Support Jurisdiction Over**

15            **Yandex N.V.**

16      Even if Yandex LLC were the alter ego or agent of Yandex N.V., and it is not, it would

17  nevertheless be improper to impute Yandex LLC's sparse California contacts to Yandex N.V.

18  because Yandex LLC is, itself, a foreign company that does not operate in California.  Yandex

19  N.V. is aware of no case, and Perfect 10 has not cited any, which has found jurisdiction over a

20  *foreign* defendant by imputing to that defendant the contacts of a *foreign* subsidiary.  Moreover, as

21  this Court already found, Yandex LLC's contacts with California are insufficient to confer

22  jurisdiction over it in California because the passive yandex.com and yandex.ru websites it

23  operates do not "target California users," and it does "not have offices in California, [is] not

24  registered to do business in California, and do[es] not pay state taxes."  Order at 7.  Accordingly,

25
26
27
28

1   Yandex LLC's contacts with California are insufficient as a matter of fact and law to support

2   jurisdiction over Yandex N.V. in California.[7]

3   **IV.     JURISDICTION OVER YANDEX N.V. WOULD BE UNREASONABLE**

4          Without any basis for exercising jurisdiction over Yandex N.V. in the first place, there is

5   no need to reach the question whether the exercise of jurisdiction over Yandex N.V. would

6   "comport with fair play and substantial justice, *i.e.*, [that] it must be reasonable."

7   *Schwarzenegger*, 374 F.3d at 802.  In any case, it would ***not*** be reasonable to exercise jurisdiction

8   over Yandex N.V.  In evaluating reasonableness, courts must consider:

9          (1) the extent of the defendant's purposeful injection into the forum; (2) the

10         defendant's burdens from litigating in the forum; (3) the extent of conflict with the

11         sovereignty of the defendant's state; (4) the forum state's interest in adjudicating

12         the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

13         importance of the forum to the plaintiff's interest in convenient and effective relief;

14         and (7) the existence of an alternative forum.

15   *Ziegler v. Indian River Cty.*, 64 F.3d 470, 474-75 (9th Cir. 1995).  A court should weigh all seven

16   factors, as no single factor is dispositive.  *Id.* at 475.

17   _____

18      [7]  Perfect 10 attempts to muddy the waters even further by claiming not only that
Yandex LLC's contacts with California should be imputed to Yandex N.V., but also that
19   Yandex LLC is a conduit through which *Yandex Inc.'s* contacts may be imputed to Yandex N.V.
Again, Perfect 10 has cited no authority, and Yandex N.V. is aware of none, that would support
20   the exercise of jurisdiction over a foreign defendant based on the "double-imputation" of forum-
related contacts first between a domestic company (Yandex Inc.) and its foreign, non-party sister
21   company (Yandex LLC), and then continuing through to the defendant foreign parent company
(Yandex N.V.)  Nor is there any basis to impute Yandex Inc.'s contacts to Yandex LLC.  Yandex
22   Inc. and Yandex LLC are not alter egos, as there is no evidence that Yandex LLC controls the
daily operations of Yandex Inc., or otherwise uses Yandex Inc. as its "instrumentality," and in fact
23   it does not.  Ivashentseva Dec. ¶ 9; Ryan Dec. ¶ 12; Dowdy Dec. ¶¶ 5, 6; Borkovsky Dec. ¶ 7.
There likewise is no agency relationship between them.  Yandex Inc. provides limited research
24   and development and advertising services to Yandex LLC pursuant to services contracts.
Borkovsky Dec. ¶ 10; Ryan Dec. ¶ 10; Dowdy Dec. ¶ 8.  No evidence shows that Yandex LLC
25   (i) has the right to control Yandex Inc.'s performance under those contracts or otherwise, or
(ii) could not operate without the services Yandex Inc. provides or the business it conducts.
26   Perfect 10's attempt to impute Yandex Inc.'s contacts to Yandex N.V. *through Yandex LLC*
27   therefore has no merit.

28

1    As Yandex N.V. showed before, all the factors weigh against the exercise of personal

2  jurisdiction over Yandex N.V.  *See* Dkt. 17 at 11-13.  To the extent the jurisdictional discovery

3  Perfect 10 has taken has any bearing on these factors, it only further confirms that jurisdiction

4  would be unreasonable.  As discussed above, Yandex N.V.'s "purposeful injection into"

5  California is non-existent.  Moreover, the tremendous burdens and costs that the jurisdictional

6  discovery process has imposed upon Yandex N.V. would be magnified if the case were to proceed

7  for additional months or years, including through extensive fact-witness discovery and trial.

8  Ivashentseva Dec. ¶ 15; Kassabian Dec. ¶¶ 4, 8.

9    Finally, jurisdictional discovery has in no way addressed Yandex N.V.'s concerns that

10  Yandex N.V. may find itself in the untenable position of having to comply with a United States-

11  issued injunction or judgment that may be inconsistent with its rights and obligations under Dutch

12  or Russian law.  Nor has anything in the discovery process rendered the Dutch courts a less viable

13  alternative forum for this litigation.  Accordingly, even if Perfect 10 had made a *prima facie*

14  showing of jurisdiction, and it has not, jurisdiction still should not be found because its exercise

15  would be unreasonable.

16  <u>**Conclusion**</u>

17    For the foregoing reasons, specially-appearing defendant Yandex N.V. respectfully

18  requests that this Court dismiss Perfect 10's suit in its entirety and with prejudice.

19

20  DATED:  August 23, 2012          QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
21

22

23                                   By    /s/ Diane M. Doolittle
                                         Diane M. Doolittle
24                                       Rachel Herrick Kassabian
                                         Attorneys for Specially-Appearing Defendant
25                                       Yandex N.V.

26

27

28