Eric J. Benink, Esq., SBN 187434
KRAUSE KALFAYAN BENINK & SLAVENS, LLP
550 West C Street, Suite 530
San Diego, CA  92101
(619) 232-0331 (ph)
(619) 232-4019 (fax)
eric@kkbs-law.com

Natalie Locke, Esq., SBN 261363
PERFECT 10, INC.
11803 Norfield Court
Los Angeles, CA 90077
(310) 476-0794 (ph)
(310) 476-8138 (fax)
natalie@perfect10.com

Attorneys for Plaintiff, Perfect 10, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>YANDEX N.V., a Netherlands limited liability company; YANDEX LLC., a Russian limited liability company; YANDEX INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: CV 12-1521 WHA<br><br>**PLAINTIFF PERFECT 10, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT/ SUMMARY ADJUDICATION RE: (i) DMCA COMPLIANCE OF SAMPLE NOTICES; (ii) INELIGIBILITY OF DEFENDANTS FOR DMCA SAFE HARBOR DEFENSE; AND (iii) SUFFICIENCY OF  SAMPLE NOTICES RE KNOWLEDGE FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br><br>Date:   May 2, 2013<br>Time:  8:00 A.M.<br>Ctrm:  8<br>Judge: Honorable William Alsup<br><br>Discovery Cut-Off:  July 31, 2013<br>Pretrial Conference: November 21, 2013<br>Trial Date:  November 28, 2013 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on May 2, 2013 at 8:00 A.M., or as soon thereafter as the motion may be heard, in the Courtroom of the Honorable William Alsup, Courtroom 8, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Perfect 10, Inc. ("Perfect 10") shall and hereby does move pursuant to Federal Rule of Civil Procedure 56(a) and (c) for  Partial Summary Judgment/Summary Adjudication that (i) the three Digital Millennium Copyright Act ("DMCA") notices as attached to this Motion are complaint under the DMCA because they substantially include the required elements of notification pursuant to 17 U.S.C. §§512(c)(3)(A) and (d)(3); (ii) Defendants Yandex LLC, Yandex Inc. and Yandex N.V. are ineligible for any DMCA Safe Harbor defense pursuant to 17 U.S.C. §512 during the period when they had no registered DMCA agent; and (iii) the three sample DMCA notices as attached to this Motion conferred actual knowledge to Yandex LLC and Yandex Inc. regarding the allegedly infringing images/links they removed which were identified by those sample notices, for the purpose of Perfect 10's contributory copyright infringement claim ("Motion for Partial Summary Judgment/Summary Adjudication" or the "Motion").  The Motion thus seeks partial summary judgment/summary adjudication on (i) Yandex LLC's Ninth Affirmative Defense, Yandex Inc.'s Eighth Affirmative Defense, and Yandex N.V.'s Eighth Affirmative Defense, that Perfect 10's claims are barred by the Online Copyright Infringement Liability Limitation Act, 17 U.S.C. §512; and (ii) Perfect 10's First Claim for Relief for Yandex LLC's and Yandex Inc.'s Contributory Liability for Copyright Infringement.

The basis for this Motion is set forth in the following Memorandum of Points and Authorities.

This Motion is based upon the following pleadings, submitted herewith, as well as the pleadings and other documents on file in this action, and such additional pleadings, evidence, and oral argument as may be presented:

1.      Memorandum of Points and Authorities in Support of Plaintiff Perfect 10, Inc.'s Motion for Partial Summary Judgment/Summary Adjudication.

2.      Declaration of Dr. Norman Zada in Support of Perfect 10's Motion for Partial Summary Judgment/Summary Adjudication.

3.      [Proposed] Order Granting Perfect 10, Inc.'s Motion for Partial Summary Judgment/Summary Adjudication.

Dated: March 13, 2013                    Respectfully submitted,


By: _____
          Natalie Locke, Esq.
          Attorney for Plaintiff Perfect 10, Inc.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF PERFECT 10, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT/SUMMARY ADJUDICATION**

## TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ............................. 1

II.  STATEMENT OF FACTS ............................................................. 2

    A.  Perfect 10 ........................................................................ 2

    B.  Yandex N.V., Yandex LLC, and Yandex Inc. ....................................... 3

    C.  Perfect 10's Relevant Claims ..................................................... 3

    D.  Defendants' Relevant Claimed Affirmative Defenses ........................ 4

    E.  Perfect 10's Notices To Defendants ............................................. 4

    F.  Removals From Yandex Servers .................................................. 5

    G.  Yandex.com Removals ............................................................ 5

    H.  Yandex.ru Removals .............................................................. 6

    I.  The DMCA Notice Requirements ................................................. 7

III.  ARGUMENT ........................................................................ 8

    A.  Partial Summary Judgment/Summary Adjudication Standard ............. 8

    B.  Perfect 10's Sample Notices Are Compliant Under the DMCA ........... 9

        1.  Sample Notice 1 .......................................................... 10

            a)  Yandex References or Links ..................................... 11

            b)  Yandex Hosted Material.......................................... 12

        2.  Sample Notice 2 .......................................................... 13

        3.  Sample Notice 3 .......................................................... 14

        4.  Notices With Less Specificity Have Found To Be
            Compliant Under The DMCA ........................................ 14

        5.  The Sample Notices Satisfy the Strict Guidelines
            Set Forth by *Perfect 10 v. Google* ............................... 15

        6.  The DMCA Allows the Rights Holder Substantial
            Leeway in their Form of Notice ................................... 17

    C.  Defendants Are Ineligible for DMCA Safe Harbor
        Prior to the Time They Had Registered DMCA Agents..................... 19

D.   Whether or Not They Were DMCA Compliant, Perfect 10's
Sample Notices Conferred Actual Knowledge of
Infringement to Yandex LLC and Yandex Inc.
With Respect to Perfect 10's Claim for Contributory Liability .......... 21

1.   Defendants' Removal Of Image/Links In Response to Perfect
10's Sample Notices Demonstrates Actual Knowledge of Those
Infringements .............................................................................. 22

IV.   CONCLUSION ............................................................................. 23

# **TABLE OF AUTHORITIES**

**Cases**

*A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004 (9th Cir. 2001) .................2, 22

*Allstate Ins. Co. v. Madan*, 889 F.Supp. 374 (C.D.Cal.1995).................................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, (1986) ...........................................9

*Arista Records, Inc. v. MP3Board, Inc.* 2002
    WL 1997918 (S.D.N.Y., Aug 29, 2002) ......................................................14, 21

*Buzayan v. City of Davis*, 2013 WL 687087 (E.D.Cal., Feb. 25, 2013) ..................8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................9

*Columbia Pictures Industries, Inc. v. Fung*, 2009 WL 6355911
    (C.D.Cal. December 21, 2009)..................................................................22

*Datatech Enterprises LLC v. FF Magnat Ltd.*,  2012 WL 4068624
    (N.D.Cal., Sept. 14, 2012)........................................................................20

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ...............................................9

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    591 F.Supp.2d 1098 (N.D. Cal. 2008) (*"Louis Vuitton I"*) ......................1, 21, 22

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    658 F.3d 936 (9th Cir., 2011) (*"Louis Vuitton II"*) ..................................4

*Perfect 10 v. Visa*, 494 F.3d 788 (9th Cir. 2007) ...................................................21

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007)......................3

*Religious Tech. Center v. Netcom On-Line Comm. Servs., Inc.*,
    907 F.Supp. 1361 (N.D. Cal. 1995) ........................................................22

*UMG Recordings, Inc., v. Shelter Capital Partners LLC*,
    667 F.3d 1022 (9th Cir. 2011)..................................................................10

**Statutes**

17 U.S.C. §512.................................................................................................passim

Fed.R.Civ.P. 56(a) ...................................................................................................8

Fed.R.Civ.P. 56(c) ...................................................................................................8

Fed.R.Civ.P. 56(g) ...................................................................................................9

**Other Authorities**

*Cyberlaw-Intellectual Property in the Digital Millennium* (Law Journal Press
    2010) at 6-88.7 .........................................................................................15

# I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Yandex N.V., Yandex LLC, and Yandex Inc., (collectively, "Yandex" or "Defendants") have claimed as an affirmative defense, that Perfect 10's copyright infringement claims are barred by the Online Copyright Infringement Liability Limitation Act, 17 U.S.C. §512, Title II of the Digital Millennium Copyright Act ("DMCA").  Defendants also contend that the notices of infringement which Perfect 10 sent to them were insufficient to confer actual knowledge of infringement even though Defendants ultimately removed or blocked most of the allegedly infringing images/URLs identified by the notices (demonstrating their actual knowledge), and even though Perfect 10's notices substantially comply with the DMCA notice requirements.

Perfect 10 began sending notices of infringement (which Perfect 10 will refer to as "DMCA notices" or "notices") to Defendants on October 14, 2011.  It has so far sent Defendants at least 155 notices.[1]  These notices have identified tens of thousands of Perfect 10 copyrighted images being offered by Defendants for viewing and downloading.  Between November 11, 2011, and February 14, 2012, Defendants sent Perfect 10 five letters stating that they would not process Perfect 10's notices.   None of those letters suggested that the notices were deficient in any way.  Defendants finally elected to process most of Perfect 10's notices on or about December 20, 2012, more than a year after first receiving such notices.  At that time, they apparently removed or blocked as many as 10,000 Perfect 10 identified infringing images/links in a single day, demonstrating by their conduct that they had actual knowledge of that infringement.  *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc. ("Louis Vuitton I"),* 591 F.Supp.2d 1098, 1106 (N.D. Cal. 2008) (citing *A&M Records*, *Inc. v. Napster, Inc.,* 239 F.3d 1004, 1020 (9th Cir.

---

[1] Perfect 10's notices to Defendants, which were created in late 2011, were designed specifically to address concerns raised by Judge Matz in his July 26, 2010 ruling in *Perfect 10, Inc. v. Google, Inc*, Case No. CV 04-9484 AHM.  *See* Zada Decl., Exhs. 1, 12.

1  2001)).

2      In order to be eligible for DMCA safe harbor, a Defendant must have a

3  DMCA agent registered at the U.S. copyright office.  However, Yandex Inc. did

4  not register a DMCA agent with the U.S. copyright office until at least August 24,

5  2012.  Yandex LLC did not register a DMCA agent with the U.S. copyright office

6  until at least October 15, 2012.  Yandex N.V. has yet to register a DMCA agent.

7  Perfect 10 seeks Partial Summary Judgment/Summary Adjudication that: (i) each

8  of the three sample DMCA notices attached to this Motion is compliant uander the

9  DMCA's notice standards because each substantially includes the required

10  elements of notification pursuant to 17 U.S.C. §§512(c)(3)(A) and (d)(3); (ii)

11  Defendants are ineligible for any DMCA Safe Harbor defense pursuant to 17

12  U.S.C. §512 during the time period when they failed to have a DMCA agent listed

13  with the U.S. copyright office; and (iii) the three sample DMCA notices attached to

14  this Motion conferred actual knowledge to Yandex LLC and Yandex Inc.

15  regarding the allegedly infringing images/links they removed which were

16  identified by those sample notices, for the purpose of Perfect 10's contributory

17  liability claim.

18  **II.**    **STATEMENT OF FACTS**

19      **A.**    **Perfect 10**

20      Perfect 10 published the popular magazine PERFECT 10, an arguably

21  upscale version of Playboy, which featured tasteful semi-nude photos of top

22  natural models, from 1997 to 2007.  It is probably best known for the many

23  appearances of its models on television and radio shows, its promotion of the

24  London Sun/Perfect 10 search for England's most beautiful natural model, and its

25  photos of top models such as Victoria Secret and Sports Illustrated Cover model

26  Marisa Miller.  Perfect 10 was forced to close its magazine in 2007 because of

27  rampant infringement, but maintains its website, perfect10.com.  Declaration of Dr.

28  Norman Zada filed concurrently ("Zada Decl.") ¶2.

### B.   Yandex N.V., Yandex LLC, and Yandex Inc.

Perfect 10 has alleged that Yandex N.V., Yandex Inc. and Yandex LLC together operate the Yandex company websites yandex.com and yandex.ru which infringe Perfect 10's copyrighted works.   First Amended Complaint ("FAC") (Dkt. No. 88) ¶5.   Yandex N.V. is the parent company to its wholly owned subsidiaries Yandex Inc. and Yandex LLC.   Yandex N.V. Answer to FAC (Dkt. No. 92) ¶5.   To the best of Perfect 10's knowledge, Yandex N.V. has not registered a designated agent with the U.S. Copyright Office.  Zada Decl. ¶9.

Yandex Inc. is based in Palo Alto, California and hosts yandex.com, one of the allegedly infringing Yandex websites.  Dkt. No. 73 at 3:5.   It admittedly provides data hosting services to Yandex LLC.  Yandex Inc. Answer to FAC (Dkt. No. 98) ¶17.  More than a year after Perfect 10 began sending notices to the Yandex family of companies, Yandex Inc. finally registered an agent to receive notices of claimed infringement with the U.S. Copyright Office, Arkady Borkovsky, on or about August 24, 2012.  Zada Decl.  ¶16, Exh. 7.

Yandex LLC is a Russian company which contends it operates yandex.ru and provides the search results required to operate yandex.com.  Yandex LLC Answer to FAC (Dkt. No. 104) ¶5.  Yandex LLC first registered an agent to receive notices of claimed infringement with the U.S. Copyright Office, on or about October 15, 2012.  Zada Decl.  ¶16, Exh. 7.

### C.   Perfect 10's Relevant Claims

Perfect 10's claims include that Defendants are contributorily liable for copyright infringement of Perfect 10's copyrighted works, under the standard enunciated in *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1172 (9th Cir. 2007) (holding that an internet service provider is contributorily liable for copyright infringement if it had knowledge that infringing images were available using its search engine, could take simple measures to prevent further damage to the copyrighted works, and failed to take such steps).  In addition, Perfect 10

1    contends that Yandex LLC and Yandex Inc. are contributorily or directly liable for

2    copyright infringement as hosts of infringing material.  *See Louis Vuitton*

3    *Malletier, S.A. v. Akanoc Solutions, Inc*. *("Louis Vuitton II"),* 658 F.3d 936, 943

4    (9th Cir. 2011); *see also Amazon.com*, 508 F.3d at 1159.

5                **D.    Defendants' Relevant Claimed Affirmative Defenses**

6        Defendants raise as an affirmative defense that Perfect 10's claims are barred

     by the Online Copyright Infringement Liability Limitation Act, 17 U.S.C. §512,

7    Title II of the DMCA.  Yandex LLC Answer to FAC p. 9; Yandex Inc. Answer to

8    FAC p. 10; Yandex N.V. Answer to FAC p. 8.

9

10               **E.    Perfect 10's Notices To Defendants**

11       There are two primary infringing websites at issue in this case, yandex.ru,

12   and yandex.com.  Yandex.com provides largely the same infringing images and

13   links as yandex.ru, but in English.  Yandex.ru has placed ads next to thousands of

14   Perfect 10 copyrighted images, whereas yandex.com currently does not.  Zada

15   Decl. ¶7, Exh. 3.

16       On October 14, 2011, Perfect 10 began to send  DMCA notices to

17   Defendants.  The notices were sent to the email address noc@yandex.net.  That is

18   the email address that appeared in the Internet registrations of both yandex.ru and

19   yandex.com.  Between October 14, 2011, and February 12, 2012, Perfect 10 sent to

20   Defendants 73 DMCA notices.  In each notice, Perfect 10 asked Defendants to

21   "Please contact me if you have any questions at all about this notice.  If I do not

22   hear from you, I will assume the notices is compliant under the DMCA.  If you do

23   not believe that this notice is compliant, please provide me with what you believe

24   constitutes a compliant notice for this situation."  Zada Decl. ¶9, Exhs. 2-4.  On

25   November 11, 2011, Perfect 10 received a letter from an attorney Michael J.

26   Bevilacqua of Wilmer Hale, stating in essence that Yandex would not process

27   Perfect 10's notices.  Zada Decl. ¶10, Exh. 5.  Perfect 10 received four additional

28   emails from a "Platon" at company.yandex.com, dated January 18, January 25,

February 10, and February 14, 2012 again stating in essence, that Defendants would not process Perfect 10's DMCA notices.  None of those responses suggested that there were any deficiencies in the notices.  Zada Decl. ¶10, Exh. 5.  Yandex Inc. and Yandex LLC admit that they have received approximately 130 notifications from Perfect 10.  Yandex Inc. Answer to FAC ¶29; Yandex LLC Answer to FAC ¶29.

### F.    Removals From Yandex Servers

On or about July 25, 2012, Perfect 10 received an email from a Platon at abuse@yandex.ru, indicating that Defendants had blocked or removed approximately 150 images or URLs from yandex.ru servers, including from the Yandex hosted website narod.ru, in response to a notice sent by Perfect 10 on July 11, 2012.  It did not appear that Defendants had suppressed any search result thumbnails or links that were not related to Yandex hosted content.  Zada Decl. ¶11, Exh. 1 (folder labeled "Defendants' Responses").  Defendants asked Perfect 10 for the first time to send notices regarding Yandex hosted content to a different email address, namely, abuse@yandex.ru.  Perfect 10 complied by sending subsequent emails to that email address, as well as to noc@yandex.net, and in August of 2012, also copied Arkady@yandex-team.ru, and Cliff@yandex-team.ru, email addresses for employees at Yandex Inc.  Zada Decl. ¶11, Exh. 1.

### G.    Yandex.com Removals

On or about September 25, 2012, almost one year after Perfect 10's first notices to Defendants, Perfect 10 began to receive emails from copyright-complaint@yandex-team.com, from a Platon, at yandex.company.com, in response to Perfect 10 notices sent primarily in September 2012, suggesting that yandex.com (but not yandex.ru) had begun to remove or block some images or URLs as a result of Perfect 10's notices, and that Defendants were able to block thousands of images or URLs using Perfect 10's notices in a few days, when they elected to do so.  Zada Decl. ¶12, Exh. 1.

Between December 12, and December 25, 2012, Perfect 10 received five additional emails from Platon at copyright-complaint@yandex-team.com, which appeared to indicate that in response to Perfect 10's DMCA notices dated October 14, 15, 23, January 7, 8, 9, 10, 12, 24-28, 2012, and August 9 and 13, 2012, yandex.com (not yandex.ru) removed or blocked approximately 18,400 images or links from yandex.com search results.  Zada Decl. ¶12, Exh. 1.

### H.      Yandex.ru Removals

Between December 24, 2012 and December 25, 2012, more than fourteen months after Perfect 10's first notices to Defendants, Perfect 10 received four emails from Platon at copyright@yandex-team.ru, at yandex.company.ru, which appeared to indicate that in response to Perfect 10's October 14, 15, 23,  2011; January 7, 8, 9, 10, 12, 24, 27, 28, 2012; August 9, 13, 21, 28, 30, and 31, 2012; and October 1, 5, 10, 2012 notices, yandex.ru (not yandex.com) removed or blocked approximately 19,560 images or links identified by Perfect 10's notices, **mostly on December 20, 2012**.  Zada Decl. ¶13, Exh. 1.  The long lists of URLs of images or links that Defendants claimed they removed or blocked were very difficult to use or understand because they did not usually indicate which notice the removing or blocking was in response to, or provide the name of the model whose image was infringed.  However, they did demonstrate that Perfect 10's notices provided information sufficient for Defendants to find and remove thousands of Yandex created infringing thumbnails and links to infringing web pages.   Zada Decl. ¶¶14-15, Exh. 6.  For example, Perfect 10 identified the infringing link zufzuluf.weblog.ro/page/36/ on page 6 of Notice 1, which Defendants claim to have blocked from yandex.ru on December 25, 2012.  Zada Decl. ¶15, Exh. 2, p. 6; Exh. 6, p. 2.  Similarly, Perfect 10 identified the infringing link friends-gratis.ucoz.ru/ photo/27-0-1066 on page 9 of Notice 2, which Defendants claim to have blocked from yandex.ru on December 20, 2012.  Zada Decl. ¶15, Exh. 3, p. 9, Exh. 6, p. 5.

At least 20 different Internet service providers have processed Perfect 10 DMCA notices similar to the three sample Perfect 10 notices included herewith, typically in a few days or less, including search engines yahoo.com and ask.com, and internet service providers Cavecreek.com, facebook.com, akamai.com, and godaddy.com.  Zada Decl. ¶17, Exhs. 8, 1.

## I.      The DMCA Notice Requirements

A compliant notice under the DMCA to an Internet service provider that has a designated agent (which is not the case here), must be a "written communication provided to the designated agent of a service provider that includes ***substantially*** the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf

of the owner of an exclusive right that is allegedly infringed." 17 U.S.C.

§512(c)(3)(A) (emphasis added); Zada Decl. Exh. 13, p. 4.

The above requirements are specifically for §512(c), which relates to service providers that host or store infringing materials at the direction of a user.  The requirements for notification under §512(d), for infringement of copyright by information location tools, are the same except that the information described in subsection 512(c)(3)(A)(iii) must be "the identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link."  17 U.S.C. §512(d)(3).

## III.  **ARGUMENT**

### A.  **Partial Summary Judgment/Summary Adjudication Standard**

The Federal Rules of Civil Procedure provide for summary judgment when materials in the record, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  Rule 56 also allows a court to grant partial summary judgment, or summary adjudication, on a part of a claim or defense.  *See* Fed.R.Civ.P. 56(a) ("A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *see also Buzayan v. City of Davis*, 2013 WL 687087 at *5 (E.D.Cal. Feb. 25, 2013); *Allstate Ins. Co. v. Madan*, 889 F.Supp. 374, 378-79 (C.D.Cal.1995).  The standard that applies to a motion for summary adjudication is that same as that which applies to a motion for summary judgment.  *See* Fed.R.Civ.P. 56(a), 56(c); *see Buzayan,* 2013 WL 687087 at *5 (internal citations omitted).  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson*

1   *v. Liberty Lobby, Inc*., 477 U.S. 242,,  256 (1986).

2       Where the moving party will have the burden of proof on an issue at trial,

3   that party must affirmatively demonstrate that no reasonable trier of fact could find

4   other than for the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331

5   (1986).  On an issue as to which the nonmoving party will have the burden of proof

6   at trial, such as an affirmative DMCA defense, the movant can prevail if there is an

7   absence of evidence to support the nonmoving party's case.  *See id*.  Once the

8   moving party meets its burden, the nonmoving party may not rest upon mere

9   allegations or denials, but must present evidence sufficient to demonstrate that

10   there is a genuine issue for trial.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

11   Cir. 2001) (citing *Celotex Corp*., 477 U.S. at 323-324).

12       If the court does not grant all the relief requested by the motion, it may enter

13   an order stating any material fact-including an item of damages or other relief-that

14   is not genuinely in dispute and treating the fact as established in the case.

15   Fed.R.Civ.P. 56(g).

16       **B.    Perfect 10's Sample Notices Are Compliant Under the DMCA**

17       Perfect 10 first seeks partial summary judgment/summary adjudication that

18   the three attached sample DMCA notices (the "Sample Notices") are compliant

19   with the DMCA's notification requirements because they substantially include the

20   required elements of notification pursuant to 17 U.S.C. §§512(c)(3)(A) and (d)(3).

21   Adjudication on the issue of the compliance of the attached notices with DMCA

22   protocol is directly relevant to Defendants' DMCA Safe Harbor affirmative

23   defense,[2] [3] as well as to knowledge for Perfect 10's claims for contributory liability

24   ————————————

25   [2] A requirement for safe harbor under §§512(c) and (d) is that the defendant
    responds expeditiously to remove or disable access to infringing material "upon

26   notification of claimed infringement" as described by paragraph 512(c)(3).  17
    U.S.C. §§512(c)(1)(C), 512(d)(3).

27   [3] An Internet service provider may not qualify for safe harbor protection

28   under either subsections 17 U.S.C. 512 (c)(1)(A) or (d)(1) if it had actual
    knowledge or was aware of facts and circumstances from which infringing activity

1   against Defendants (*see* Section III.D below).

2      **1. Sample Notice 1**

3      Attached as Exhibit 2 to the Zada Declaration is a complete version of

4   a notice that Dr. Zada emailed to Defendants on July 22, 2012 ("Notice 1"), except

5   that the live links have been removed so that the notice could be filed using ECF,

6   and red text boxes have been added for the convenience of the Court.  The live

7   version of that notice (with links that can be clicked on and copied) is included in

8   Exhibit 1 (the disk), in a folder labeled "Sample DMCA Notices."  Pages 11 and

9   12 of Exhibit 2 show that the notice was sent to noc@yandex.net on July 22, 2012,

10  and then resent to cliff@yandex-team.ru and arkady@yandex-team.ru on August 9,

11  2012.

12    As explained on pages 1-2 of Notice 1, page 3 of Notice 1 was obtained by

13  doing a Yandex image search on "Pamela Celini," the term in the browser bar at

14  the top of page 3.  Page 4 was obtained by clicking on the leftmost thumbnail

15  image on page 3.  Pages 6-9 of the notice were obtained by using Yandex's

16  "Search by image" option to find images nearly identical to the smaller image

17  shown at the top of page 6.  The green links on the right side of pages 6-9 of

18  Notice 1, link to infringing web pages where larger versions of the images on the

19  left may be found, and are called "Web Page URLs."  Page 10 contains authorized

20  versions of the infringing images found elsewhere in the notice.

21    Notice 1 substantially satisfies DMCA notification requirements

22  §512(c)(3)(A)(i), (iv), (v), and (vi).  With respect to requirement (i), the signature

23  requirement, the electronic signature "*s / Norm Zada, Ph.D./* " is present.  Zada

24  Decl., Exh. 2, p. 2.  With respect to requirement (iv), providing information

25  _____

26  was apparent.  17 U.S.C. §§512(c)(1)(A), 512(d)(1); *UMG Recordings, Inc., v. Shelter Capital Partners LLC*, 667 F.3d 1022, 1035-1036 (9th Cir. 2011)

27  Compliance with DMCA notice protocol  is recognized as "the most powerful … … evidence of a service provider's knowledge – actual knowledge of infringement

28  from the copyright holder."  *Id.* (citations omitted).

"reasonably sufficient to contact the complaining party," Perfect 10 provided Perfect 10's telephone number, address, and email address.  *Id.*  Defendants were able to contact Dr. Zada based on the information Perfect 10 provided.  Zada Decl. ¶10, Exh. 5.  With respect to requirement (v), Notice 1 states: "I have a good faith belief that the use of the Perfect 10 copyrighted material in the manner complained of in this email is not authorized by the copyright holder Perfect 10, its agent, or the law."  Zada Decl., Exh. 2, p. 2.  With respect to requirement (vi), Notice 1 states that "The information in this notification is accurate.  I swear under penalty of perjury that I am authorized to act on behalf of Perfect 10, Inc. the owner of the exclusive rights in the material which is being infringed."  *Id.*

Perfect 10 satisfied requirement (ii) which asks for the "identification of the copyrighted work claimed to have been infringed," by providing copies of the allegedly infringing works (*see* Zada Decl. ¶5, Exh. 2, pp. 3-9).  In addition, Perfect 10 provided copies of the authorized versions of those works (*see* Zada Decl. ¶5, Exh. 2, p. 10), and their location on the perfect10.com website.  Other copyright holders, including Vogue, People Magazine, Getty Images, and Playboy, have described the copyrighted work using words such as "a photograph of X," which is far less precise than providing the actual allegedly infringing image as Perfect 10 has done.  Zada Decl. ¶25, Exh. 16.

### a)    Yandex References or Links

Notice 1 satisfies notification requirement §512(c)(3)(A)(iii) with respect to references or links that yandex.com or yandex.ru provide to allegedly infringing web pages or images.  That requirement, for information location tools, set forth by §512(d)(3) is "the identification of the reference or link, to material or activity claimed to be infringing… and information reasonably sufficient to permit the service provider to locate the material."  Perfect 10 clearly identified such links, and at least 45 out of 46 of those identified links were ultimately blocked, further demonstrating that Perfect 10 provided Defendants with "information reasonably

1    sufficient to permit the service provider to locate the material."   Zada Decl. ¶15,

2    Exhs. 6, 1 (*see* folder "Blocked Images or Links Based On Sample Notices").

3         For example, Perfect 10 identified 23 specific "references or links" in green,

4    the Web Page URLs on the right side of pages 6-9 of Notice 1.  The first Web Page

5    URL in green on page 7 of Exhibit 2, www.foxmovies.ru/index.php3?id= 37061, is

6    an example of one such reference or link.  That link leads to an infringing web

7    page containing a larger version of the image on the left.  Defendants admittedly

8    removed or blocked at least 22 out of 23 of those references or links.  Zada Decl.

9    ¶15, Exhs. 6, 1.

10        With each thumbnail shown on pages 6-9 of Exhibit 2, Perfect 10 also

11   provided the link associated with that thumbnail, and explained on page 1 of

12   Exhibit 2 how Defendants could copy that link if they wished using Adobe's

13   "Copy Link Location" option.   *See* Zada Decl. Exh. 2, pp. 1, 13-14.  Such links

14   are often referred to as "Image URLs," because when clicked on, they typically

15   lead to a blank page containing a full-size version of the thumbnail image.  See for

16   example, page 11 of Exh. 3.   Defendants admittedly blocked all 23 of the Image

17   URLs identified by Perfect 10 as well.  Zada Decl.  ¶15, Exhs. 6, 1.

18                    **b)    Yandex Hosted Material**

19        Notice 1 further satisfies §512(c)(3)(A)(iii) because it provides information

20   sufficient to locate allegedly infringing Yandex hosted material.  Defendants are

21   not merely acting as an information location provider that may link to infringing

22   material, they are also copying full size images, converting those images to

23   thumbnails, and storing such thumbnails on their servers (not at the direction of

24   third parties), as shown on pages 3-9 of Exhibit 2.  In addition, Defendants are

25   displaying full-size images and placing ads around them.  Zada Decl. ¶7, Exh. 3,

26   pp. 5-6.  Such activity is arguably not covered by any DMCA safe harbor.

27        To the extent that Defendants' storage of infringing Yandex-created Perfect

28   10 thumbnails on their servers is covered by any DMCA safe harbor, the required

1    notification standard is the hosting standard pursuant to 512(c)(3)(A)(iii)

2    "information sufficient to locate," which is a lower standard.  Defendants

3    ultimately removed or blocked each of the thumbnails shown on pages 3-9 of

4    Notice 1 from their servers in response to Notice 1, showing that the notice

5    conveyed the information required by 512(c)(3)(A)(iii) with respect to the

6    thumbnails.  Zada Decl. ¶5, Exh. 2, pp. 16-17; Zada Decl. ¶¶14-15, Exhs. 6, 1.

7                          **2.      Sample Notice 2**

8         Exhibit 3 to the Zada Declaration is the complete version of a notice that

9    Perfect 10 emailed to Defendants on July 15, 2012 ("Notice 2"), except that the

10   live links have been removed so that the notice could be filed using ECF, and red

11   text boxes have been added.  The live version of that notice (with links that can be

12   clicked on and copied) is included in Exhibit 1 (the disk).   Pages 13 and 14 of

13   Exhibit 3 show that the notice was sent to noc@yandex.net on July 15, 2012, and

14   then resent to cliff@yandex-team.ru and arkady@yandex-team.ru on August 18,

15   2012.

16        Notice 2 has the same wording as Notice 1 and therefore satisfies

17   §512(c)(3)(A)(i), (iv), (v), and (vi).  *See* Zada Decl., Exh. 3, pp. 1-2.  Because

18   Notice 2 provides copies of the allegedly infringing images on pages 3-11, and

19   copies of the authorized images on page 12, along with a URL showing their

20   location on perfect10.com, it clearly identifies the copyrighted work claimed to

21   have been infringed and therefore satisfies §512(c)(3)(A)(ii).  Because it provides

22   links to the infringing material on pages 9-10 (see green links on the right hand

23   side of those pages), as well as the image URLs for the thumbnails shown on pages

24   9-10, and because Defendants were able to use this notice to remove or block the

25   identified images shown on page 3, as well as at least 24 of 26 identified links, this

26   notice satisfies §512(c)(3)(A)(iii) even under the §512(d)(3) standard as well.

27   Zada Decl. ¶7, Exh. 3, pp. 3, 17; Zada Decl. ¶¶14-15, Exhs. 6, 1.

28

3.     **Sample Notice 3**

Exhibit 4 to the Zada Declaration is the complete version of a notice that Dr. Zada emailed to Defendants on January 27, 2012 ("Notice 3"), except that the live links have been removed so that the notice could be filed using ECF, and red text boxes have been added.  The live version of that notice (with links that can be clicked on and copied) is included in Exhibit 1 (the disk).   Notice 3 was sent to noc@yandex.net on January 27, 2012.  Zada Decl., Exh. 4, p. 7.  This notice is similar to Notices 1 and 2, and is substantially compliant for the same reasons.

Notice 3 contains examples where Yandex provides a link to an infringing narod.ru webpage which it also hosts.  In such circumstances, a notice should be sufficient if it satisfies *either* the §512(c)(3)(A)(iii) hosting standard "information sufficient to locate" or  the §512(d)(3) "reference or link" standard.  Zada Decl. ¶8, Exh. 4, pp. 3, 5.  Notice 3 satisfied both standards because Defendants not only were able to block the identified link to the infringing Yandex hosted webpage provided by Perfect 10, but also removed the content on that webpage from their servers.  Zada Decl. ¶8, Exh. 4, pp. 12-14.  Yandex has removed approximately 1,000 Yandex hosted images from its servers as a result of Perfect 10's notices, which should be evaluated for compliance in that instance under the "information sufficient to locate" standard.  Zada Decl. ¶11.

4.     **Notices With Less Specificity Have Found To Be Compliant Under The DMCA**

Notices with less specificity have been found to be compliant under the DMCA, even where those notices fail to identify the URLs of infringing links, which Perfect 10 has done.  *See Arista Records, Inc. v. MP3Board, Inc.* 2002 WL 1997918 at *9 (S.D.N.Y., Aug 29, 2002) (notice accompanied by screen shot printouts of defendant's website with asterisks next to infringing links deemed compliant despite the fact that notice did not provide specific URLs of the pages to which the links connected because "overall, the letter and its attachments identified

the material or activity claimed to be infringing and provided information reasonably sufficient to permit [defendant] to locate the links"); *See also* Zada Decl. Exhs.1, 15 (complete DMCA notice which the *Arista Records* Court found compliant, excerpts of notice). The Court in *Arista Records* further firmly rejected defendants' argument that plaintiff did not submit the links in electronic form, or accompanied with the URLs of pages to which the links connected, finding those arguments "baseless and "not grounded in the text of the DMCA or any judicial interpretation of that statute." *Id.* at *10.

The Recording Industry of America ("RIAA") submitted a declaration in *Arista Records* by Francis Creighton, Director of Anti-Piracy for the RIAA which clearly demonstrated the burden that copyright holders face when asked to identify thousands of infringements, as is the case here. Specifically, Mr. Creighton stated, "In the DMCA notice letters, the RIAA does not include the Universal Resource Identifier ('URL') for each allegedly infringing song to which the site provides links. Listing each specific URL would require enormous efforts and resources, particularly in the case of a site like MP3Board, which has potentially thousands of infringing links." Zada Decl. ¶24, Exh. 15, p. 5. That is exactly the situation that Perfect 10 faces. However, by using Adobe Acrobat Professional, Perfect 10 was able to effectively list each link and provide a copy of the infringing images and web pages in an electronic and readily manageable format.

As further noted by J. Dratle and S. McJohn, in *Cyberlaw-Intellectual Property in the Digital Millennium* (Law Journal Press 2010) at 6-88.7, Sections 512(f) and (g) of the DMCA "provides sufficient disincentives and correctives for overbroad notification to obviate any need for hypertechnical interpretation of the requirement for identifying works allegedly infringed."

### 5.   The Sample Notices Satisfy the Strict Guidelines Set Forth by *Perfect 10 v. Google*

As set forth above, as a matter of law, Perfect 10's three Sample Notices are

substantially compliant under the DMCA.

Nevertheless, Defendants may attempt to argue that the Sample Notices are similar to notices which Judge Matz found were defective in his July 26, 2010 *Perfect 10, Inc. v. Google, Inc.*, Case No. CV 04-9484 AHM  ("*Perfect 10 v. Google*") ruling.  Zada Decl., ¶21, Exhs. 12, 1.  The notices here are not similar as Perfect 10 was aware of that ruling and made every effort to comply with it.  Zada Decl. ¶21, Exh. 12.

For example, because the *Google* Court found, in essence, that some of the Perfect 10 notices sent to Google were "too large," (in some cases containing over 1.1 million images that were infringed by Google's advertising affiliates), Perfect 10 sent much smaller notices to Defendants.  The Sample Notices are respectively, 10 pages, 12 pages, and 6 pages in size.  Zada Decl. ¶¶5-8, Exhs. 2-4.

Secondly, the *Google* Court found that Perfect 10's notices would satisfy §512(c)(3)(A)(ii) if they showed, in addition to a copy of the infringing image, "the URL on the P10 website or the volume and page number of *Perfect 10* magazine at which the original copyrighted image appears."[4]  Zada Decl. ¶21, Exh. 12, p. 2.  To comply with this ruling, Perfect 10 provided not only copies of the allegedly infringing images, but also copies of the authorized images, as well as the URL of the web page of perfect10.com where they could be found.  Zada Decl. ¶¶5-8, Exhs. 2-4.  As a result, the Sample Notices here are clearly compliant with 512(c)(3)(A)(ii), even under the *Google* Court's rigorous guidelines.

Finally, the Court in *Google* ruled that all of Perfect 10's notices which consisted of a cover letter, a spreadsheet, and a hard drive or DVD's,  categorized as "the Group C notices," were deficient because "the Group C notices fail to provide all of this information [the information required by §512(c)(3)] in one

---

[4] The requirement that copyright holders provide a location where authorized versions of their works may be found is not part of the DMCA notice requirements and was based on a representation by Google's Quinn Emanuel attorneys that was later contradicted by Google's DMCA agent.  Zada Decl. ¶¶19-21, Exhs. 10-12.

1    place…" Zada Decl. ¶21, Exh. 12, p. 3.  To comply with this ruling, Perfect 10

2    sent much smaller notices to Defendants that contain all of the required

3    information in a single document.  Zada Decl. ¶¶5-8, Exhs. 2-4.

4         In short, Perfect 10's Sample Notices would satisfy the *Google* Court's

5    rigorous guidelines because they were a single document that provided copies of

6    the infringing images, the authorized images, and their location, and  allowed

7    Defendants to find and remove the identified infringing images and links.

8              **6.      The DMCA Allows the Rights Holder Substantial Leeway**

9                   **in their Form of Notice**

10        Defendants may attempt to argue that Perfect 10 should have provided

11   notices without screenshots of infringing web pages or  images, as suggested by

12   some of their responses to Perfect 10's notices.  *See* Zada Decl., ¶¶14-15, Exh. 6.

13   Some internet service providers request that screenshots of infringing web pages be

14   included.  Zada Decl. ¶23, Exh. 14.

15        The DMCA does not require that the copyright holder provide a particular

16   type of notice, such as, for example, a notice without screenshots of infringing web

17   pages or images.  In fact, the Court in *Arista Records* specifically recognized that

18   notices containing screenshots of web pages identifying infringing links satisfy the

19   DMCA notice requirements.  *See Arista Records,* WL 1997918 at *9; Zada Decl.

20   ¶24, Exh. 15.   Nor does the DMCA require that DMCA notices be "easy to

21   process," although Perfect 10's notices were easy to process, as evidenced by the

22   fact that Perfect 10's notices appear to have allowed Defendants to remove or

23   block as many as 10,000 images or URLs in a single day.  Zada Decl. ¶¶14-15,

24   Exh. 6.  In fact, the DMCA allows copyright holders to send notices via fax.   Zada

25   Decl. ¶16, Exh. 7.   Notices sent by fax would normally be much harder to process

26   than Perfect 10's notices, because the URLs typically cannot be readily copied

27   from such notices.

28        The question before this Court is whether, as a matter of law, Perfect 10's

Sample Notices are substantially compliant under the DMCA, not whether or not some other type of notice might have been possible.

In fact, notices without images are effectively unworkable when thousands of infringements must be identified, for several reasons.

First, Perfect 10 is not aware of any feasible way to describe all of the information in any of the Sample Notices without using images.  No spreadsheet notice can capture, for example, the Yandex ads for maximonline.ru appearing next to the Perfect 10 images shown on pages 5, 6, and 8 of Exhibit 3.  There are lists of URLs appearing on the right side of pages 6-9 of Exhibit 2 and pages 9-10 of Exhibit 3 in green.  If one were to remove the images and leave just that long list of URLs, one would not know that many of the allegedly infringing images were the same, or what model they portrayed.  Furthermore, one would not be able to compare the authorized images on page 10 of Exhibit 2 to the allegedly infringing images on pages 3-9 of Exhibit 2, or the authorized images on page 12 of Exhibit 3 to the allegedly infringing images on pages 3-11 of Exhibit 3.  There is simply no better description of an image than a copy of the image itself.  Trying to describe an image with words instead of with the image itself, is unworkable, particularly when thousands of images must be identified.  *See* Zada Decl. ¶20, Exh. 11.

Finally, in order to prove its case, a Plaintiff must demonstrate that the Defendant was actually involved in the infringement.  Simply sending a long list of URLs as shown in Exhibit 6 does not do that, as those links identify infringing materials on third party web sites, not Yandex's websites.  Such a long list of links does not prove that those links were ever on yandex.com or yandex.ru.  Perfect 10's notices provided everything needed in a single document: evidence that the service provider was involved in the infringement, copies of the alleged infringing and infringed images, and the reference or link to the infringing material.  After many years of sending DMCA notices, Perfect 10 has concluded that the best DMCA notices to identify infringing images must include color copies of those

images on Defendant's infringing web pages, along with live links and copies of the authorized images.  Those are the notices which Perfect 10 sent to Defendants.

To the extent that Defendants suggest that Perfect 10 use their forms, those forms were only made available on or about September of 2012, after Perfect 10 had already sent most of its notices.  Zada Decl.  ¶18, Exh. 9.  Furthermore, all of the forms for yandex.ru are in Russian.  Neither the yandex.com form nor the yandex.ru form allows for the attachment of images, or allows the copyright holder to maintain a copy of the notice.  Finally, neither form allows the copyright holder to record Yandex's involvement in the infringement.  Zada Decl.  ¶18, Exh. 9. There is simply no feasible way that the information in Exhibits 2-4 to the Zada Decl. could be communicated using a form.  Furthermore, there is no requirement under the DMCA that a copyright holder use Defendant's form to send notices, particularly when such forms are incapable of capturing the infringement on Defendant's websites and cannot deal with large numbers of infringements.

To the extent that yandex.com's posted notification requirements are at all relevant to the issue of whether Perfect 10's notices were DMCA compliant, Perfect 10's Sample Notices substantially satisfied those requirements as well, even though those requirements were posted in late September 2012, after Perfect 10 had sent its Sample Notices to Defendants.  The primary difference between the yandex.com requirements and Perfect 10 Sample Notices, is that yandex.com requests images and infringing web pages described in words (which is unworkable), whereas Perfect 10 described them by providing copies of the actual infringing web pages and infringing images.  Zada Decl., ¶18, Exh. 9, pp. 4-8.

### C.   Defendants Are Ineligible for DMCA Safe Harbor Prior to the Time They Had Registered DMCA Agents

Perfect 10 next requests partial summary judgment/summary adjudication that Defendants are not eligible for DMCA Safe Harbor defense pursuant to 17 U.S.C. §512(c) or (d) during the time period that each Defendant failed to have a

registered DMCA agent with the U.S. Copyright Office.

The DMCA sets forth a notice and takedown mechanism which requires that in order for service providers to receive a DMCA safe harbor from monetary liability under either 17 U.S.C. §512(c) (information residing on systems or networks at direction of users) or §512(d) (referring or linking users to online location containing infringing material or activity), they must register a DMCA agent at the U.S. copyright office.   17 U.S.C. §512(c)(3) sets forth the elements of DMCA notification protocol, as discussed in detail above.   17 U.S.C. §512(c)(2) provides:

> "The limitations on liability established in this subsection apply to a service provider only if the service provider has *designated an agent to receive notifications of claimed infringement* described in paragraph (3) by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information: (A) the name, address, phone number, and electronic mail address of the agent. (B) other contact information which the Register of Copyrights may deem appropriate."

(emphasis added).  *See also* Zada Decl. Exh. 13, pages 3-5.   The designated agent requirement in connection with DMCA notification protocol extends to the 17 U.S.C. §512(d) safe harbor as well.  *See* 17 U.S.C. §512(d)(3) ("upon notification of claimed infringement as described in subsection (c)(3)…").  Prior to registering their DMCA agents, Defendants could not receive notification of claimed infringement within the proscribed DMCA notification protocol as set forth by Sections §512(c)(3)(A) and §512(d)(3), which require a registered agent, and therefore are ineligible for the DMCA's limitation on monetary liability. Furthermore, without a registered agent, they could also not terminate repeat infringers as required by §512(i), which is a further prerequisite to any safe harbor.

This Court has recognized having a registered agent as a necessity for DMCA safe harbor.  *See Datatech Enterprises LLC v. FF Magnat Ltd*.,  2012 WL 4068624 at *4 (N.D.Cal., Sept. 14, 2012)(noting that a DMCA safe harbor defense

1   is unavailable for alleged infringements prior to the date of designating through the

2   Copyright Office an agent to receive notice of violations).

3       Because Yandex Inc. filed its DMCA agent registration with the U.S.

4   copyright office on or about August 24, 2012, Yandex LLC filed its DMCA agent

5   registration with the U.S. copyright office on or about October 15, 2012, and

6   Yandex N.V. has not yet to register and agent with the U.S. copyright office,

7   Defendants are not eligible for a limitation on their monetary liability pursuant to a

8   DMCA safe harbor defense prior to their respective dates of registration, including

9   with respect to any of Perfect 10's three Sample Notices, which were issued prior

10  to that time.  Zada Decl. ¶¶5-8, 16, Exhs. 2-4, 7.

11      **D.     Whether or Not They Were DMCA Compliant, Perfect 10's**
             **Sample Notices Conferred Actual Knowledge of Infringement to**
12           **Yandex LLC and Yandex Inc. With Respect to Perfect 10's Claim**
             **for Contributory Liability**
13

14       If the Court finds that Perfect 10's Sample Notices are DMCA compliant

15  then they would necessarily have conferred actual knowledge of infringement for

16  the purposes of Perfect 10's contributory liability claim.[5]   But even if the Court

17  finds that one or more of the Sample Notices is not DMCA-compliant, those

18  notices should still be found to have provided Yandex Inc. and Yandex LLC with

19  actual knowledge of infringement, at least for the images/links that Defendants

20  removed as a result of the notice, as explained below.

21      Contributory liability requires (1) knowledge of another's infringement and

22  (2) either (a) material contribution to the infringement or (b) inducement of the

23  infringement.  *Louis Vuitton I,* 591 F.Supp.2d at 1106 (citing *Perfect 10 v. Visa*,

24  494 F.3d 788, 795 (9th Cir. 2007)).  In the specific context of information location

25

26      _____

27      [5] DMCA compliant notices are strong evidence of actual knowledge of
    infringement for purpose of a plaintiff's claim for contributory liability.  *See Arista*
    *Records,* WL 1997918 at *9 noting "stronger evidence that [defendant] acquired
28  actual knowledge of infringement from a notice…pursuant to the DMCA").

tools, a computer system operator is contributorily liable for copyright infringement if it has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works.

*Amazon.com*, 508 F.3d at 1172 (citing *Napster*, 239 F.3d at 1022; *Religious Tech. Center v. Netcom On-Line Comm. Servs., Inc.*, 907 F.Supp. 1361, 1375 (N.D. Cal. 1995)); *see also Columbia Pictures Industries, Inc. v. Fung*, 2009 WL 6355911 at *7 (C.D.Cal. December 21, 2009).[6]

### 1. Defendant's Removal Of Image/Links In Response to Perfect 10's Sample Notices Demonstrates Actual Knowledge of Those Infringements

Actual knowledge exists where it can be shown by a defendant's conduct or statements that it actually knew of specific instances of direct infringement. *Louis Vuitton I,* 591 F.Supp.2d at 1106 (citing *Napster*, 239 F.3d at 1020).

With regards to Sample Notice 1, Defendants have demonstrated by their conduct, namely, removing or blocking 45 of 46 identified infringing images/links from pages 6-9 of that notice, that they knew of those specific instances of infringement. Zada Decl. ¶¶14-15, Exh. 2, pp. 6-9, Exh. 6, pp. 1-3; Exh. 1 (folder "Blocked Images or Links Based On Sample Notices").

With regards to Sample Notice 2, Defendants have demonstrated by their conduct, namely, removing or blocking at least 24 out of 26 infringing images/links from pages 9-10 of that notice, that they knew of those specific instances of infringement. Zada Decl. ¶¶14-15, Exh. Exh. 3, pp. 9-10, Exh. 6, pp. 4-5; Exh. 1.

With regards to Sample Notice 3, Defendants have demonstrated by their

---

[6] This Court has further held that a defendant can be held liable for contributory copyright infringement where knowledge was merely constructive. *Louis Vuitton I*, 591 F.Supp.2d at 1107 (constructive knowledge of infringing material on Defendants' servers would be sufficient for contributory liability claim).

conduct, namely, removing or blocking 40 out of 40 images/links from pages 3-5 of that notice, that they knew of those specific instances of infringement.  Zada Decl. ¶¶14-15, Exh. 4, pp. 3-5, Exh. 6, pp. 6-7; Exh. 1.

Furthermore, it is Perfect 10's position that Defendants should be precluded from even arguing that the Sample Notices failed to provide them with actual knowledge of infringement, because they were repeatedly asked by Perfect 10 to advise them if there were any deficiencies in Perfect 10's notices and Defendants instead sent Perfect 10 five letters stating they would not process any notices, whether compliant or not.  Zada Decl. ¶¶5-10, Exhs. 2-5.

Finally, the Sample Notices should be found to provide Yandex LLC and Yandex Inc. with actual knowledge of infringement for the additional reason that the notices provided Yandex Inc. with the information it requested in its posted DMCA instructions.  Zada Decl. ¶18, Exh. 9.

## IV.  <u>CONCLUSION</u>

For all of the above reasons, Perfect 10 requests that this Court find the following: (i) that the three sample DMCA notices included herewith are each substantially complaint under DMCA's notice standards pursuant to 17 U.S.C. §§512(c)(3)(A) and (d)(3); (ii) that Defendants are not eligible for DMCA Safe Harbor pursuant to 17 U.S.C. §512 prior to the time that they registered DMCA agents with the U.S. copyright office; and (iii) the three Sample Notices conferred actual knowledge to Yandex LLC and Yandex Inc. regarding the allegedly infringing images/links they removed which were identified by those Sample Notices, for the purposes of Perfect 10's contributory liability claim.

Dated: March 13, 2013                    Respectfully submitted,

By: _____
          Natalie Locke, Esq.
          Attorney for Plaintiff Perfect 10, Inc.