Eric J. Benink, Esq., SBN 187434
KRAUSE KALFAYAN BENINK & SLAVENS, LLP
550 West C Street, Suite 530
San Diego, CA 92101
(619) 232-0331 (ph)
(619) 232-4019 (fax)
eric@kkbs-law.com

Natalie Locke, Esq., SBN 261363
PERFECT 10, INC.
11803 Norfield Court
Los Angeles, CA 90077
(310) 476-0794 (ph)
(310) 476-8138 (fax)
natalie@perfect10.com

Attorneys for Plaintiff, Perfect 10, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PERFECT 10, INC., a California corporation,

Plaintiff,

v.

YANDEX N.V., a Netherlands limited liability company; YANDEX LLC., a Russian limited liability company; YANDEX INC., a Delaware corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No.: CV 12-1521 WHA

**PLAINTIFF PERFECT 10, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT/ SUMMARY ADJUDICATION RE: (i) DMCA COMPLIANCE OF SAMPLE NOTICES; (ii) INELIGIBILITY OF DEFENDANTS FOR DMCA SAFE HARBOR DEFENSE; AND (iii) SUFFICIENCY OF SAMPLE NOTICES RE KNOWLEDGE FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT**

Date: May 2, 2013
Time: 8:00 A.M.
Ctrm: 8
Judge: Honorable William Alsup

Discovery Cut-Off: July 31, 2013
Pretrial Conference: November 21, 2013
Trial Date: November 28, 2013

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF PERFECT 10, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT/SUMMARY ADJUDICATION**

---

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. STATEMENT OF ADDITIONAL RELEVANT FACTS .......... 2

III. SUBJECT MATTER JURISDICTION IS PROPER .......... 3

IV. A FAVORABLE RULING ON THE MOTION WILL SUBSTANTIALLY RESOLVE THE CASE .......... 5

A. Compliancy of the Sample Notices Narrows the Issues for Trial .......... 5

1. Perfect 10's Sample Notices Satisfy the DMCA Requirements in the Same Fashion as Its Other Notices .......... 6

B. Defendants' Ineligibility for Safe Harbor Narrows the Issues for Trial .......... 7

V. THE SAMPLE NOTICES CLEARLY SATISFY THE DMCA STANDARD OF SUBSTANTIAL COMPLIANCE .......... 7

A. Lists Of URLs Cannot Effectively Describe Images .......... 7

B. Perfect 10's Sample Notices Substantially Comply With §512(c)(3)(A)(ii) .......... 9

1. The DMCA Does Not Require That The Copyright Holder Provide Authorized Copies Or The Location Of The Authorized Work .......... 10

C. Perfect 10's Sample Notices Substantially Comply With §512(d)(3) .......... 11

1. Defendants Disregard The Hosting Standard .......... 12

VI. DEFENDANTS ARE INELIGIBLE FOR SAFE HARBOR UNTIL AT LEAST SEPTEMBER OF 2012 .......... 13

VII. DEFENDANTS' ACTIONS DEMONSTRATE ACTUAL KNOWLEDGE .......... 14

VI. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Allarcom Pay Television Ltd. v. General Instrument Corp.*, 69 F.3d 381 (9th Cir. 1995) ............. 3

*ALS Scan, Inc. v. RemarkQ Communities, Inc.*, 239 F.3d 619 (4th Cir. 2001)............................ 10

*Arista Records, Inc. v. MP3Board, Inc.* 2002 WL 1997918 (S.D.N.Y., Aug 29, 2002) ................ 8

*Datatech Enterprises LLC v. FF Magnat Ltd.*, No. 3:12-cv-04500-CRB (N.D. Cal. Mar. 13, 2013)........................................................................................ 14

*Hendricksen v. Ebay*, 165 F.Supp.2d 1082 (C.D. Cal. 2001) ............................................... 14, 15

*Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353 (Fed. Cir. 2008) ..................................... 5

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F.Supp.2d 1098 (N.D.Cal. 2008)............................................................................................................. 15

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ....................................... 3, 5

*Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102 (9th Cir. 2007).................................................... 9

**Statutes**

17 U.S.C. §512......................................................................................................................... 7

**Other Authorities**

*Report of the House Committee on Commerce in the Digital Millenium Copyright Act of 1998*, H.R. Rep. No. 105-551 (July 22, 1998) ...................................................................... 14

**I. INTRODUCTION AND SUMMARY OF ARGUMENT**

The opposition of Yandex N.V., Yandex LLC, and Yandex Inc. (collectively "Defendants" or "Yandex") is fraught with contradictions and misstatements. While Defendants claim to be responsible Internet Service Providers ("ISPs") with a "functional" but undisclosed DMCA agent, they have refused to process any and all DMCA notices, compliant or not. Defendants have also failed to respond to repeated requests by Perfect 10 to identify any deficiencies in its notices. However, Defendants now contend that all such notices are deficient and that Perfect 10 should have sent its notices to an email address they never provided.

Perfect 10 has filed a straightforward Motion for Partial Summary Judgment/Summary Adjudication (the "Motion") asking this Court to rule on the sufficiency of three Sample Notices that are in total, 28 pages in length (the "Sample Notices"). Perfect 10 selected those notices because although they are short, they are similar to the vast majority of Perfect 10's other notices in the following respects: (1) the Sample Notices use the same language in their first two pages of text to satisfy §512(c)(3)(A)(i),(iv)-(vi) as 230 out of 231 of Perfect 10's other notices; (2) they satisfy §512(c)(3)(A)(ii) in the same fashion as at least 97% of Perfect 10's other notices by providing copies of the infringing images as well as the authorized images and their location from Perfect 10's website when available[1]; and (3) they identify infringing images and links largely in the same fashion as virtually all of Perfect 10's other notices per §512(c)(3)(A)(iii), (d)(3).[2] A ruling on the sufficiency of the three Sample Notices will establish the sufficiency of virtually all of the notices at issue in this case.

Nevertheless, in response, Defendants have sought to make the Motion's resolution

---

[1] Approximately 75% of the Perfect 10 DMCA notices provided copies of the allegedly infringing images as well as the authorized images and their location in a fashion similar to the Sample Notices. An additional 22% of Perfect 10's DMCA notices provided copies of the authorized images as they are kept by Perfect 10 on its servers - usually because the authorized images were not on Perfect 10's website. Such images often displayed Perfect 10's copyright registration numbers.

[2] The primary difference between the Perfect 10 Sample Notices and many of Perfect 10's other notices, is that a number of the other notices also provided copies of the infringing third party webpages linked to by Yandex. That, if anything, should have provided Yandex with even more knowledge of infringement.

unnecessarily complex.

Defendants' subject matter jurisdiction argument is flawed because it disregards the critical fact that *yandex.com has been hosted in the United States*. Not only is there thus subject matter jurisdiction over all of the infringing images and links identified by the Sample Notices (because they all were offered by yandex.com from U.S. servers), but there is subject matter jurisdiction over at least 20,000 identified infringing images and links in this case, which Defendants have copied and stored in the U.S. *See* Section III below.

Defendants' minute after-the-fact criticisms of Perfect 10's Sample Notices are particularly unreasonable when one considers the degree to which Defendants have refused to comply with any DMCA requirement.

This Court should grant each and every portion of Perfect 10's Motion.

## II. STATEMENT OF ADDITIONAL RELEVANT FACTS

Perfect 10 provided Defendants with approximately 231 DMCA notices**.** Of those notices, 230 out of 231 used the same language in the first two pages to satisfy §512(c)(3)(A)(i), (iv)-(vi). Reply Declaration of Dr. Norman Zada filed concurrently ("Zada Reply Decl.") ¶¶13-14, Exh. 24 . To satisfy §512(c)(3)(A)(ii), 75% of the Perfect 10 DMCA notices provided copies of the allegedly infringing images as well as the authorized images and their location in a fashion similar to the Sample Notices. An additional 22% of Perfect 10's DMCA notices provided copies of the authorized images as they are kept by Perfect 10 - usually because the authorized images were not on Perfect 10's website. Zada Reply Decl. ¶¶11, 13-14, Exhs. 22, 24. To satisfy §512(c)(3)(A)(iii), (d)(3) Perfect 10's DMCA notices in total provided 3,753 pages consisting of long lists of the same image on the left side and green links to infringing webpages on the right side, similar to those appearing in pages 6-9 of Sample Notice 1. Those pages identified approximately 20,678 infringing images/links. Zada Reply Decl. ¶¶6-14, Exhs. 18-24. To satisfy §512(c)(3)(A)(iii) in yet another way, Perfect 10 DMCA notices provided in total, 1,982 copies of Yandex created pages displaying full-size Perfect 10 images and approximately 384 pages of Yandex image search results, in a fashion similar to the Sample Notices. Zada Reply Decl. ¶¶15-16, Exh. 24. The primary difference between the Sample

Notices and Perfect 10's other notices is that in some of the other notices, Perfect 10 clicked on an identified infringing link and added copies of the resulting infringing webpages to the notices, identifying the Perfect 10 images on those webpages. Zada Reply Decl. ¶¶10, 17, Exhs. 21, 24.

**ARGUMENT**

## III. SUBJECT MATTER JURISDICTION IS PROPER

Defendants attempt to argue that this Court deny or hold in abeyance Perfect 10's Motion on the grounds that the three Sample Notices contain certain links located outside of the United States. *See* Opp. at 9:5-8. However, Defendants' "analysis" is flawed.

First, yandex.com has been hosted in the U.S. between late June 2012 and mid-March 2013 and Sample Notice 3 identifies infringing images and links offered by yandex.com. *See* Borkovsky Decl. ¶7; Zada Decl. ¶8, Exh. 4. Thus all of the approximately 20,000 copies of Perfect 10 thumbnails and links in the yandex.com search index that have been identified to Defendants (including those from Sample Notice 3) have been copied, directly infringed, and saved onto U.S. servers, and are thus subject to the subject matter jurisdiction of this Court.[3] *See Allarcom Pay Television Ltd. v. General Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995)(the Copyright Act applies any time at least one alleged infringement has been completed entirely within the United States). For each thumbnail, Defendants also included a link to the corresponding full size image, further subjecting Defendants to contributory liability. Motion 10:10-17; *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (computer system operator may be held contributorily liable for specific infringing material available using its system, noting that such operators substantially assist a worldwide audience of users to access infringing materials).

Secondly, when all three Sample Notices were sent to Defendants, ***yandex.com and***

[3] Because the subject matter jurisdiction of all infringements in this case cannot be fully briefed here, Perfect 10 requests that the Court require Defendants to file a proper 12(b)(1) motion if it believes subject matter jurisdiction is at issue. In that instance, Perfect 10 would request that it be allowed to examine Defendants' servers for downloads from the United States of Perfect 10 images (which Defendants have refused to produce) as Perfect 10 believes they are tracking such downloads for advertising purposes even though they claim they are not. Zada Reply Decl. ¶¶28-29, Exhs. 32-33; Bakharevskaya Decl. ¶13.

***yandex.ru offered identical infringing images and links. They also used the same contact email address, noc@yandex.net.*** Zada Reply Decl. ¶8. Thus Sample Notices 1 and 2 simultaneously identified infringing images and links offered by both yandex.ru and yandex.com. Yandex admits that it processed Perfect 10's Sample Notices for *both* yandex.com and yandex.ru, regardless of which one the notices were directed to. Grigorieva Decl. ¶21, Exhs. E, F, G. In addition, Perfect 10 provided similar notices regarding similar infringements available via yandex.com to Defendants approximately six months earlier. *See, e.g*, Zada Reply Decl., ¶¶6-8, Exhs. 18-19. Because yandex.com did not remove any of the infringements identified by any of the Sample Notices from yandex.com's U.S. servers until at least September 19, 2012, (Zada Decl. ¶¶12-15, Exhs. 6, 1), all of the images and links identified by the Sample Notices are subject to this Court's jurisdiction, not 6% as Defendants incorrectly contend.

Furthermore, there are links from Sample Notices 1 and 2 to U.S. websites, including google.com, bing.com, phun.org, and previously U.S.-hosted picsearch.com, which provide additional copies of all of the infringing images identified in Sample Notices 1 and 2. Zada Reply Decl. ¶23, Exhs. 28, 17.

Yandex's opposition does not include any data regarding downloads of Perfect 10 images by U.S. users.[4] However, there is substantial traffic to yandex.com and yandex.ru from the U.S. (including from search engines who copy images from those sites), which means that downloads of infringing Perfect 10 images occur in the U.S. Zada Reply Decl. ¶¶24-25, Exhs. 29-30. Yandex is contributorily liable for such downloads occurring within the United States, including for images identified by the Sample Notices. *See Columbia Pictures Industries*, 2009 WL 6355911 at *8 (C.D. Cal, December 21, 2009) (defendants may be held liable secondary infringement even when such conduct takes place abroad, noting plaintiffs "need only show that United States users either uploaded or downloaded copyrighted works").

[4] When Perfect 10 repeatedly requested such data in discovery, Yandex objected on grounds including relevance and confidentiality. Yandex did not contend in its discovery responses that it did not maintain such information. Zada Reply Decl. ¶¶28-29, Exhs. 32-33. In its Opposition, Yandex now claims that it "does not keep" such download information, which is inconsistent with its discovery responses, and questions whether Yandex has maintained evidence critical to the case. Bakharevskaya Decl. ¶13; Zada Reply Decl. ¶29, Exh 33.

Finally, because the Sample Notices identify infringements in the same fashion as Perfect 10's other notices (*see* Section IV.A.1), and this Court clearly has subject matter jurisdiction over the 20,000 Perfect 10-identified images directly infringed by Defendants and stored on Defendants' U.S. servers, a ruling on the sufficiency of the Sample Notices can be applied to the vast majority of infringements at issue.

This Court should properly grant Perfect 10's motion as extraterritoriality need be proven before relief granted, rather than treated as question of subject matter-jurisdiction. *See Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008). However, even if this Court finds extraterritoriality to be jurisdictional, subject matter-jurisdiction exists over infringements identified by the Sample Notices as set forth above.

## IV. A FAVORABLE RULING ON THE MOTION WILL SUBSTANTIALLY RESOLVE THE CASE

### A. Compliancy of the Sample Notices Narrows the Issues for Trial

Defendants substantially understate the degree to which the primary issues in this case will be resolved if Perfect 10's three Sample Notices are found to substantially comply with §§512(c)(3)(A)(i)-(vi), (d)(3). Defendants' contention that the methods used by the Sample Notices to satisfy the DMCA's notification requirements are not employed by Perfect 10's other notices is incorrect. Virtually all of the infringement in this case has been identified in the same fashion as the Sample Notices. Zada Reply Decl. ¶¶6-17, Exhs. 18-24. If the Court finds the Sample Notices to be compliant, that ruling could be readily extended to the other notices at trial.

Furthermore, as set forth by Perfect 10's Motion, DMCA compliance is strong evidence of actual knowledge for Perfect 10's claim for contributory liability and is also relevant to the issue of knowledge with respect to Defendants' purported DMCA safe harbor affirmative defense. *See* Motion, p. 9 fn.3, p. 21 fn. 5.[5]

---

[5] With respect to the remaining elements of contributory liability, Defendants could have taken the simple measure of processing Perfect 10's notices, and failed to process many notices expeditiously in light of the fact that after waiting roughly a year to process certain notices they later processed similar notices within ten days or less (*see* Motion at 5:20-6:28) – these elements will be easily satisfied once Defendants' actual knowledge is established. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (an internet service provider is

**1. Perfect 10's Sample Notices Satisfy the DMCA Requirements in the Same Fashion as Its Other Notices**

Perfect 10 has sent to Defendants approximately 231 DMCA notices along with a single notice using the yandex.com online form. Of the 231 Perfect 10 notices, 230 used the same language to satisfy §512(c)(3)(A)(i),(iv)-(vi) as that used on pages 1-2 of the Sample Notices. Defendants harp on one notice out of 231, where Perfect 10 forgot to include the first two pages of text. Zada Reply Decl. ¶¶7, 32. Thus a ruling by this Court that the language used in the Sample Notices to satisfy §512(c)(3)(A)(i),(iv)-(vi) was compliant, could be readily used at trial with respect to the 230 notices which used the same language. Similarly, Perfect 10 identified approximately 20,678 images/infringing links in its other notices by providing long lists of the same thumbnail image on the left side of the page and a green link on the right side of the page, as it did with Sample Notice 1. Zada Decl., Exh. 2, pp. 6-9; Zada Reply Decl. ¶14, Exh. 24. Thus, a ruling by this Court that Sample Notice 1 was compliant, could be used at trial with respect to all of the other 20,000 infringing images/links identified in the same fashion by the other notices. Perfect 10 also provided 384 pages of image search results in its other 228 notices in a fashion similar to that of Sample Notices 1 and 2 (Zada Decl., Exh. 2, p. 3, Exh. 3, p. 3), and 1,982 pages of Yandex-created pages displaying full-size Perfect 10 images in the manner shown by Sample Notice 1 (Zada Decl., Exh. 2, pp. 4-5). *See also* Zada Reply Decl. ¶¶15-16, Exh. 24. Once again, if this Court finds such identifications of infringing images/links to be compliant, that finding could be applied to all of the similar pages in Perfect 10's other notices. Finally, the method used to satisfy §512(c)(3)(A)(ii) in the Sample Notices, was also used in most of Perfect 10's other notices. Zada Reply Decl. ¶¶13-14, Exh. 24. In fact, the primary difference between the Sample Notices and Perfect 10's other notices, is that Perfect 10 occasionally clicked on one or more of the identified infringing links and attached the resulting infringing webpages. If anything, this type of notice (which cannot be replicated using URLs and text alone) would

---

contributorily liable if it had knowledge that infringing images were available using its search engine, could take simple measures to prevent further damage to the copyrighted works, and failed to take such steps).

provide even more knowledge of infringement to Defendants and be even more compliant. Zada Reply Decl. ¶¶8, 17, Exhs. 19, 21.

**B. Defendants' Ineligibility for Safe Harbor Narrows the Issues for Trial**

If the Court finds that Defendants are ineligible for safe harbor prior to the time of agent registration, which covers most of the infringements in this case, not only will the Court avoid the burden of ruling on each element of the safe harbor defense, but also the knowledge standard in this case as a whole will be limited to that in connection with contributory liability, rather than that required by the DMCA. *See* 17 U.S.C. §§512(c)(1)(A), 512(d)(1).

**V. <u>THE SAMPLE NOTICES CLEARLY SATISFY THE DMCA STANDARD OF SUBSTANTIAL COMPLIANCE</u>**

None of Defendants' minute criticisms of Perfect 10's Sample Notices rise to the level needed to find that the notices did not "substantially comply" with any of the six DMCA notification requirements as set forth by the DMCA. As a preliminary matter, it should be noted that Defendants do not appear to challenge Perfect 10's notices under any of §512(c)(3)(A)(i),(iv),(v) or (vi).

Perfect 10's Sample Notices are not "fragments." They are complete notices which contain all of the elements of a compliant notice. There is no DMCA requirement that one cannot send more than one notice on a particular day. Defendants complain that Perfect 10 identified a great deal of infringing material to them. That is because Defendants have infringed a great deal of material.

**A. Lists Of URLs Cannot Effectively Describe Images**

Defendants complain that instead of sending Defendants copies of their own infringing web pages with images and live links (the best possible description of the infringing activity), Perfect 10 should have undertaken the enormous burden of creating new notices consisting solely of URLs. *See* Opp. at 13:1; Zada Decl. ¶30, Exh. 34. Such a suggestion would result in the creation of thousands of incomprehensible pages. For example, page 7 of Sample Notice 2 (shown on the right below) (*see* Zada Decl., Exh. 3, p. 7), would look like the list of URLs on the left, expressed as a list of the URLs that Defendants require, i.e., the web page URL, image

URL, and URL to the authorized image location. Zada Reply Decl. ¶30, Exh 34.

| |
|---|
| http://www.bugaga.ru/2006/07/13/nemnogo_chjornobelojj_jerotiki_html; |
| http://www.pokazuha.ru/view/topic.cfm?key_or=413745; |
| http://firstimpressions.su/celebrity-photo/page/16078/; |
| http://ero.vbios.com/showphoto.php/photo/3199/limit/all; |
| http://images.yandex.ru/yandsearch?from=rpt%3Dsimage&text=%22Evelina%20Stachnik%22&img_url=www.bugaga.ru%2Fuploads%2Fposts%2Fthumbs%2F1152787129_bgg_102.jpg&rpt=imagedups; |
| http://firstimpressions.su/30778-evelina-stachnik.html; |
| http://images.yandex.ru/...ina%20Stachnik%22&img_url=pics2.pokazuha.ru%2Fp442%2Fk%2Fa%2F1869477lak.jpg&pos=2&rpt=simage; |
| http://images.yandex.ru/...%20Stachnik%22&img_url=s55.radikal.ru%2Fi150%2F0810%2F34%2Feef3d54f81act.jpg&pos=4&rpt=simage; |
| http://www.bugaga.ru/uploads/posts/thumbs/1152787129_bgg_102.jpg |
| http://members.perfect10.com/imageviewthumb.php?name=Evelina_Stachnik&file=Evelina_Stachnik_87_lg.jpg; |
| http://s55.radikal.ru/i150/0810/34/eef3d54f81act.jpg; |
| http://members.perfect10.com/imageviewthumb.php?name=Evelina_Stachnik&file=Evelina_Stachnik_53_lg.jpg; |
| http://pics2.pokazuha.ru/p442/k/a/1869477lak.jpg; |
| http://members.perfect10.com/imageviewthumb.php?name=Evelina_Stachnik&file=Evelina_Stachnik_04lg.jpg. |

In should be obvious by comparing the right side above to the left side, that Perfect 10's Sample Notices are vastly more descriptive, usable, and compliant than what Defendants propose, particularly when tens of thousands of infringing images and links must be identified as is the case here.

URLs by themselves also cannot effectively identify specific infringing images when there are multiple images on a webpage, including a web page of Yandex image search results, or a page hosted by Yandex. Zada Reply Decl. ¶¶11, 31, Exhs. 22, 35, pp. 3, 5, 7.

Further, Defendants' insistence that notices be comprised entirely of URLs is contrary to established case law. *See Arista Records, Inc. v. MP3Board, Inc.* 2002 WL 1997918 at *9 (S.D.N.Y., Aug 29, 2002) (notice accompanied by screen shot printouts of defendant's website compliant without specific URLs). Perfect 10's notices are similar to those in *Arista Records* but, in addition, provide complete live links (URLs) with copies of infringing and authorized images and their location. *See id.*; *See* Zada Decl. ¶¶5-9, 24, Exhs. 2-4, 15, pages 14-21.

Defendants' suggestion that *Arista Records* was trumped by *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, (9th Cir. 2007) is unfounded, as the notices in *CCBill* were substantially different than in *Arista Records* or the case at hand. *See CCBill*, 488 F.3d at 1112-1113; *See Arista Records*, 1997918 at *9.[6]

Defendants do not even address, yet alone refute, Perfect 10's contention (*see* Motion at 18:3-19:23) that notices consisting solely of URLs and text are unworkable when thousands of images are involved. Defendants admit that they can readily remove or block thousands of images/links using Perfect 10's Adobe style notices, obviating any need for any other type of notice. *See* Grigorieva Decl., at 6:11-12,22-23. Further, Yandex's counsel took a contrary position in *Perfect 10, Inc. v. Google, Inc*. Case No. CV 04-9484 AHM, (Dkt. Nos. 433, 1062) when they argued that similar lists of URLs were not compliant with the DMCA.[7]

**B. Perfect 10's Sample Notices Substantially Comply With §512(c)(3)(A)(ii)**

17 U.S.C. §512(c)(3)(A)(ii) merely requires an "identification of the copyrighted work." There can be no better identification of a copyrighted image, than the image itself, which identifies the image whether it is infringed or authorized. Defendants' argument that an image cannot simultaneously be infringed and authorized is irrelevant. Perfect 10 provided copies of both the infringing image and the authorized image, and provided the location of the authorized image as well, to satisfy the *Google* Court's authorized location requirements, even though such a requirement does not exist in the DMCA.

---

[6] *CCBill* dealt with a DMCA notice comprised of three separate sets of documents sent in 2002 and 2003, that did not have the necessary swearing language and included a spreadsheet that listed bates numbers referring to documents that had been produced in discovery eight months earlier. The notice was created in this fashion because Perfect 10's memberships had been cancelled and its access to the infringing websites blocked. The notice was found deficient because of these defects, not because the notice referred to webpages containing images. *See CCBill*,488 F.3d at 1112-1113; Zada Reply Decl. ¶27, Exh. 31.

[7] Google and its Quinn Emanuel attorneys repeatedly argued that simply providing a URL is insufficient whenever that URL identifies a web page containing more than one image on the basis that the URL by itself cannot identify which image(s) on the webpage are infringing. That is exactly why Perfect 10 provides actual copies of infringing webpages, and carefully marks which images on those webpages are infringing using Adobe Acrobat Professional. Zada Reply Decl. ¶¶10-11, 19-21, Exhs. 21-22, 26-27.

**1. The DMCA Does Not Require That The Copyright Holder Provide Authorized Copies Or The Location Of The Authorized Work**

There are several reasons why copyright holders generally do not send authorized copies of their works or provide their authorized location. First, §512(c)(3)(A)(ii) only requires that the copyrighted work be identified, not that an authorized location be provided. Second, it would be impractical to include movies, songs, or software with notices, and there is typically no "authorized location" for such works. Zada Reply Decl. ¶26. Finally, there is no reason the ISP should not accept the copyright holder's sworn statement of ownership and undertake the enormous and unnesessary burden of comparing the allegedly infringing work to the authorized work.[8]

There was no requirement in *Arista Records* that the plaintiff provide a copy of the authorized work, or its location. *See Arista Records*, 2002 WL 1997918 at *9. Similarly in *ALS Scan*, identification of the copyrighted work was satisfied where plaintiff simply referred the ISP to two web addresses where pictures of its models were located. *See ALS Scan, Inc. v. RemarkQ Communities, Inc.*, 239 F.3d 619, 625 (4th Cir. 2001). Thus in *ALS Scan* it was sufficient to refer the ISP to a large collection of authorized images.

Defendants' suggestion that Perfect 10's sample notices do not substantially comply with §512(c)(3)(A)(ii) even though Perfect 10 provided copies of the authorized works *and* their locations, because Defendants had to "wade through" a *single page* of authorized thumbnails is unreasonable. *See* Opp. at 13:12-14. It is also contradicted by Defendants' admission that they "took Perfect 10's word for it," i.e., they did not look at authorized images. Zada Reply Decl. ¶38. Furthermore, Perfect 10's notices often identified between 5 to 30 images of the same model, requiring that Perfect 10 provide pages of thumbnails of authorized images (which is more efficient) rather than scatter many large authorized images throughout its notices as Defendants suggest. Zada Reply Decl. ¶¶8-9, Exhs. 19-20. The Sample Notices provide a

[8] The copyright holder's declaration is not a "superfluous" requirement as "accusations of alleged infringement have drastic consequences." *CCBill*, 488 F.3d at 1112. The DMCA provides penalties for misrepresentations by copyright holders. *See* 17 U.S.C. § 512(f).

representative sample of the authorized images as well as their location in contrast to those notices in *Google*. *See* Zada Decl., Exh. 12, p. 2 (*Perfect 10 v. Google*, Case No. CV-04-09484-AHM, Dkt. 937 at 16 (C.D. Cal. July 26, 2010) ("*Perfect 10 v. Google* July 26, 2010 Order") (notices referred defendants to "more than 15,000 images appearing on the entirety of P10's website"). Defendants' suggestion that Perfect 10 be required to provide separate URLs, one for each authorized image, is particularly uneasonable both because it is substantially less efficient (Zada Reply Decl. ¶¶8-9, Exhs. 19-20) and because Defendants admit they do not compare infringing and authorized images. Grigorieva Decl. at 10:14-21. It is certainly not a basis to find that Perfect 10's Sample Notices do not substantially comply with §512(c)(3)(A)(ii)[9].

**C. Perfect 10's Sample Notices Substantially Comply With §512(d)(3)**

Defendants' claim that Perfect 10's notices did not provide them with the "identification of the reference or link" to the infringing activity pursuant to §512(d)(3) is incorrect. *See* Opp at 14:15-17. By providing Defendants with copies of their own infringing webpages, *along with complete live links*, Perfect 10 identified both the infringing images and the infringing activity *in the same fashion as Defendants*, and in addition, provided them with a complete link. Perfect 10 used the identical character string provided by Defendants to describe a specific URL. However, Perfect 10's Adobe notices also provided Defendants with a complete live link (URL). Zada Decl. ¶5, Exh. 2, pp. 15-16. Thus, Defendants' criticism that Perfect 10's notices provided "truncated URLs," is simply incorrect. In addition, Defendants demonstrated that Perfect 10's notices were sufficient to identify and locate the allegedly infringing images/links because Defendants admittedly (but belatedly) removed or blocked the vast majority of them. Zada Decl. ¶¶12-15, Exhs. 6, 1. Furthermore, the DMCA does not specifically require "complete URLs." It requires the ***identification*** of the reference or link to the infringing material. *See* 17 U.S.C.

[9] Virtually the entirety of Defendants' arguments are based on an improper attempt to contend that in *Google*, Judge Matz found notices similar to the Sample Notices to be deficient. *See* Opposition at 12:8-10. In *Google*, defendants filed 1.2 million pages of DMCA notices with their summary judgment motions so it is likely that Judge Matz never examined the notice they now incorrectly contend is similar to the Sample Notices. That "notice" has no copies of authorized images or their location, which would make it deficient under Judge Matz's ruling (*See* Zada Decl., Exh. 12, p. 2 (*Perfect 10 v. Google* July 26, 2010 Order at 16)), and has no pages that are similar in structure to the Sample Notices. Zada Reply Decl. ¶3.

§§512(c)(3)(A)(iii), d(3) (emphasis added). In this case, to identify the reference or link, it would be sufficient to describe the link as Defendants described it.

Defendants' attempt to compare the notices at issue to those "truncated URLs" Judge Matz found deficient in *Google* is misleading. Those notices *did not contain live links*, but rather provided incomplete dead links in a spreadsheet or otherwise not available as complete links in live format. Zada Reply Decl. ¶21; *See* Zada Decl., Exh. 1, (*Perfect 10 v. Google* July 26, 2010 Order at 23). In *Arista Records*, notices were deemed compliant without visibly complete URLs. *See Arista Records*, 2002 WL 1997918 at *9; Zada Decl. ¶24, Exh. 15, pages 14-21.

Defendants provide no reason why, given that Perfect 10 has provided live complete links with it notices (Zada Decl. ¶5, Exh. 2, pages 13-16) which Defendants can admittedly quickly process (Grigorieva Decl. at 6:11-12, 22-23) that Perfect 10 be required to do anything more.

Further, there is no language in the DMCA which suggests that the existence of one or more deficient identifications of references or links in a notice negates other compliant identifications of references or links. *See* Zada Decl., Exh. 1 (*Perfect 10 v. Google* July 26, 2010 Order at 13)("These individual references sufficed to confer notice of infringement for those particular URLs, despite the fact that other URL references with the notices were insufficient"). At a minimum, this Court should find that the visibly complete URLs that Perfect 10 provided with its notices were compliant under the DMCA. Because almost all of the infringement identified by Perfect 10 was accomplished by doing a Yandex "search by image" on a visibly complete image URL (see the browser bars at the top of pages 6 and 9 of Notice 1, page 9 of Notice 2, and page 3 of Notice 3) virtually all of infringement identified by Perfect 10 was done using visually complete URLs. Zada Decl., Exh. 2, p. 9, Exh. 3, p. 9, Exh. 4, p. 3.

**1. Defendants Disregard The Hosting Standard**

Perfect 10's notices to Defendants[10] regarding material they host at the direction of third

[10] Pursuant to Local Rule 7-4(b), Perfect 10 objects to the Declaration of Rachel Kassabian (Dkt. No. 119) ¶¶10-11, Exhs. D, E, on the basis that approximately 200 pages of such attached Perfect 10 notices are not identical to those produced by Perfect 10. Such notices omit the green check marks and/or red redaction boxes used by Perfect 10 to identify its images when there are multiple images on the infringing web page. Further, as produced, Perfect 10's notices included live links, and their removal is not mentioned. *See, e.g*, Dkt. No. 120-4, p. 6. …

parties, such as infringements on narod.ru, or fotki.yandex.ru should be evaluated under the §512(c)(3)(A)(iii) "information sufficient to locate" hosting standard. Because Defendants admittedly but belatedly removed such materials identified by Sample Notice 3 from their narod.ru servers, they demonstrated that they received information sufficient to locate those infringements. Zada Decl. ¶15, Exhs, 6, 1. Defendants incorrectly suggest that finding the narod.ru links in Perfect 10's notices (which Perfect 10 did not know Yandex hosted) was a "daunting task." In fact, using Adobe Acrobat Professional's search capability, they could have found all such links in one Adobe search. Zada Reply Decl. ¶4. To the extent that Defendants contend that Perfect 10 failed to provide complete links (which is simply not correct), Perfect 10's notices also provided Yandex with information sufficient to locate (and remove) 20,000 Yandex-hosted Perfect 10 thumbnails, and thus satisfy the §512(c)(3)(A)(iii) identification standard for hosted material. Zada Reply Decl. Decl. ¶14.

## VI. DEFENDANTS ARE INELIGIBLE FOR SAFE HARBOR UNTIL AT LEAST SEPTEMBER OF 2012

Defendants' suggestion that they qualified for DMCA safe harbor prior to their registration of a DMCA agent is unsupportable. Defendants ask this Court to hold Perfect 10 to a standard much higher than substantial compliance with respect to its notices, while simultaneously arguing that they were under no obligation to make any effort to substantially comply with subsections 512(c)(A)-(B), which clearly require that a service provider not only have a designated agent, but to *make that agent available*, including by submitting the agent's contact information with the Copyright Office. §§512(c)(2)(A)-(B).[11]

---

Perfect 10 objects to the Declaration of Maria Grigorieva (Dkt. No. 118), ¶22, Exh. H, on the same basis, and objects to ¶17, Exh. D on the basis of relevance as the notice provided identifies infringements owned by a third party (Petter Hegre), on whose behalf Dr. Zada is authorized to send notices. Thus the infringements identified by that notice are irrelevant to this case. *See* Zada Reply Decl. ¶¶31-38, Exh. 35.

[11] Compliance with subsections (A)-(B) is mandatory to ensure the public's access ("the service provider must designate an agent …the designation, provided to the Register of Copyrights…is to contain certain information…for inspection by the public"). *See Report of the House Committee on Commerce in the Digital Millenium Copyright Act of 1998*, H.R. Rep. No. 105-551, pp. 54-55 (July 22, 1998).

Defendants' contention that they had a "functional agent" for the purposes of the DMCA prior to the time of registration is baseless given their failure to disclose such an agent to Perfect 10 or to the U.S. public, and their continued refusal to process any DMCA notice, compliant or not. Defendants incorrectly suggest that Perfect 10 should have sent its notices to email addresses they never provided. Zada Reply Decl. ¶33.

Without an agent, Defendants cannot possibly satisfy §512(i)'s repeat infringer policy requirement, which is a prerequisite to any safe harbor. *See* 17 U.S.C. § 512(i). Yandex.ru admittedly did not have a copyright infringement policy for users in the United States until mid-December 2012. Grigorieva Decl. ¶¶7-8. This fact alone disqualifies Yandex LLC from safe harbor under §512(i) prior to that time.

Defendants cite to Judge Breyer's denial of plaintiff's partial summary judgment motion in *Datatech Enterprises LLC v. FF Magnat Ltd.*, No. 3:12-cv-04500-CRB, Dkt. 97 at 5 (N.D. Cal. Mar. 13, 2013) to argue that somehow a factual dispute exists regarding the registration of Defendants' agents with the Copyright Office. But in *Datatech*, the motion was denied because *plaintiff failed to identify an applicable time period when there was no registered agent*. *See Datatech Enters.* at 5. Here there is no dispute as to *whether* Defendants failed to have a registered agent as there was in *Datatech Enters*. *See id*. Defendants here do not contest *when* they registered an agent, but rather attempt to persuade this Court to disregard the DMCA's clear requirement that an agent be listed with the Copyright Office.

## VII. DEFENDANTS' ACTIONS DEMONSTRATE ACTUAL KNOWLEDGE

Defendants' suggestion that Perfect 10's notices did not provide them with actual knowledge disregards the facts. Unlike *Hendricksen*, (where plaintiff refused to identify infringements with *any* specificity) Defendants here admittedly refused to process any notices, compliant or not – they certainly did not rapidly process Perfect 10's notices "in an abundance of caution." *See Hendricksen v. Ebay*, 165 F.Supp.2d 1082, 1091-1092 (C.D. Cal. 2001); Zada Decl. ¶10, Exh. 5. The long lists of images and URLs blocked by Defendants demonstrate that they removed exactly what Perfect 10 identified – there is almost a one to one relationship between the images and links that Perfect 10 identified and what was removed. Zada Decl.

¶¶14-15, Exhs. 6, 1. Defendants have thus demonstrated, by their conduct, they knew of specific instances of infringement. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F.Supp.2d 1098, 1106 (N.D.Cal. 2008). Yandex's claim that it did not know that Perfect 10 owned images that Perfect 10 swore it owned, is meritless. Grigorieva ¶26.

Furthermore, the notice standard to confer actual knowledge is not the DMCA standard for the majority of the infringements in this case, as Defendants are ineligible for any safe harbor prior to their registration of an agent. *See* Section VI, above. Thus Perfect 10 has requested this Court to rule that, whether or not DMCA compliant, the Sample Notices conferred actual knowledge of infringement to Yandex LLC and Inc. with respect Perfect 10's contributory liability claim for those infringements identified by the Sample Notices. *See* Motion,pp. 21-23.

## VI. CONCLUSION

A ruling that Perfect 10's Sample Notices are DMCA compliant will allow for a quick resolution as to the sufficiency of Perfect 10's other notices. Furthermore, it will allow the parties to readily identify the infringements that are at issue in the case. This will avoid needless discovery disputes, allow the parties to better understand their respective risks and reach a settlement, or in the alternative narrow the issues for trial. For all of the above reasons, Perfect 10 requests that this Court grant its Motion. In the event that the Court finds that certain URLs or certain portions of notices to be defective, Perfect 10 requests that the Court not invalidate the entire notice.

Dated: March 13, 2013

Respectfully submitted,

By: ______________________
Natalie Locke, Esq.
Attorney for Plaintiff Perfect 10, Inc.