QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Rachel Herrick Kassabian (Bar No. 191060)
rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

Daniel C. Posner (Bar No. 232009)
danposner@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:     (213) 443-3100
Facsimile:      (213) 443-3100

Attorneys for Defendants Yandex N.V., Yandex
Inc. and Yandex LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>YANDEX N.V., a Netherlands limited liability company; YANDEX INC., a Delaware corporation; and YANDEX LLC, a Russian Limited Liability Corporation,<br><br>Defendants. | CASE NO. CV-12-1521 WHA (LB)<br><br>**[REDACTED FOR PUBLIC FILING]**<br><br>**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING (1) PERFECT 10'S EXTRATERRITORIAL INFRINGEMENT CLAIMS, AND (2) FAIR USE OF THUMBNAIL IMAGES IN YANDEX IMAGE SEARCH**<br><br>Hon. William H. Alsup<br>Date:  July 11, 2013<br>Time:  8:00 a.m.<br>Ctrm:  8 |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on July 11, 2013 at 8:00 a.m., or as soon thereafter as the motion may be heard, in the Courtroom of the Honorable William Alsup, Courtroom 8, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California, defendants Yandex N.V., Yandex Inc., and Yandex LLC (collectively "Defendants" or "Yandex") shall and hereby do move pursuant to Federal Rule of Civil Procedure 56(a) and (c) for Partial Summary Judgment on the grounds that (1) 81% of Perfect 10's contributory infringement claims asserted in this case fail because the underlying third-party direct infringements on which they are based are extraterritorial and thus not actionable under the U.S. Copyright Act, (2) Perfect 10's vicarious infringement claims against Yandex N.V. fail for this same reason; and (3) the entirety of Perfect 10's direct infringement claims fail because (i) the alleged infringements via user-generated content hosted by Yandex are extraterritorial and thus not actionable under the U.S. Copyright Act, and (ii) Yandex's storage of thumbnail-sized images in its Image Search indexes is a non-infringing fair use as a matter of law, per the Ninth Circuit's ruling in *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1166-68 (9th Cir. 2007).

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and other documents on file in this action, such additional pleadings, evidence and oral argument as may be presented, and the following additional pleadings submitted herewith:

1.      Declaration of Geoffrey A. Grundy in Support of Defendants' Motion for Partial Summary Judgment;

2.      Declaration of Tatiana Bakharevskaya in Support of Defendants' Motion for Partial Summary Judgment;

3.      Declaration of Maria Grigorieva in Support of Defendants' Motion for Partial Summary Judgment;

4.      Declaration of Charles Ryan in Support of Defendants' Motion for Partial Summary Judgment;

1     5.     Declaration of Arkady Borkovsky in Support of Defendants' Motion for Partial

2 Summary Judgment; and

3     6.     Declaration of Rachel Herrick Kassabian in Support of Defendants' Motion for

4 Partial Summary Judgment.

5

6 DATED:  May 29, 2013                Respectfully submitted,

7                             QUINN EMANUEL URQUHART &
SULLIVAN, LLP
8

9

10                     By
                        Diane M. Doolittle

11                         Rachel Herrick Kassabian
                        *Attorneys for the Yandex Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    YANDEX IS ENTITLED TO SUMMARY JUDGMENT ON ALL PERFECT 10 CLAIMS THAT CONCERN EXTRATERRITORIAL ACTS OF ALLEGED COPYRIGHT INFRINGEMENT ..................................................................... 8

II.   THE VAST MAJORITY OF PERFECT 10'S INFRINGEMENT CLAIMS ARE EXTRATERRITORIAL AND THUS NOT COGNIZABLE UNDER THE U.S. COPYRIGHT ACT ............................................................................................ 10

        A.    All of Perfect 10's Direct Copyright Infringement Claims Fail Because They Are Extraterritorial, or Are a Non-Actionable Fair Use, or Both............................. 10

                1.    All of the Alleged Hosted Infringements of Full-Size Perfect 10 Images on Narod.ru, Fotki.ru, Ya.ru and Moikrug.ru are Stored on Servers Outside the United States, and Thus Are Extraterritorial ................. 11

                2.    Yandex's Hosting of Thumbnail Images Is Not an Actionable Infringement ....................................................................................... 11

                        (a)    **Perfect 10's direct infringement claims regarding yandex.ru's Image Search service fail because the search index is hosted on servers in Russia**................................. 11

                        (b)    **Under binding Ninth Circuit precedent, displaying thumbnail-size images for information-location purposes is a fair use** ......................................................................... 12

        B.    81% of Perfect 10's Claims for Contributory Copyright Infringement Are Based on Alleged Underlying Direct Infringements Hosted By Third Party Websites Outside the United States, and thus are Extraterritorial ............................ 14

        C.    Perfect 10's Claims for Vicarious Infringement Against Parent Company Yandex N.V. Fail For All Of These Same Reasons .................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### <u>Cases</u>

4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................................... 10

5

*Columbia Pictures Industrial, Inc. v. Fung*,
    2009 WL 6355911 (C. D. Cal. Dec. 21, 2009) ............................................................. 7

6

7

*ITSI T.V. Products v. California Authority of Racing Fairs*,
    785 F. Supp. 854 (E.D. Cal. 1992 ......................................................................... 10, 15

8

*Litecubes, LLC v. Northern Light Products, Inc.*,
    523 F.3d 1353 (Fed. Cir. 2008) .................................................................... 8, 14, 15

9

10

*Omega S.A. v. Costco Wholesale Corp.*,
    541 F.3d 982 (9th Cir. 2008) ...................................................................................... 8

11

*Palmer v. Braun*,
    376 F.3d 1254 (11th Cir. 2004) ................................................................................... 9

12

13

*Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) .................................. *passim*

14

*Rundquist v. Vapiano SE*,
    798 F. Supp. 2d 102 (D.C. Cir. 2011) .............................................................. 9, 10, 15

15

*Shropshire v. Canning*,
    809 F. Supp. 2d 1139 (N.D. Cal. Aug., 2011)............................................................ 8

16

17

*Subafilms Ltd. v. MGM-Pathe Commission Co.*,
    24 F.3d 1088 (9th Cir. 1994)................................................................................. *passim*

18

*Trentacosta v. Frontier Pac. Aircraft Industrial, Inc.*,
    813 F.2d 1553 (9th Cir. 1987) ................................................................................... 9

19

20

### <u>Statutes</u>

21

17 U.S.C. § 107 ................................................................................................................ 12

22

17 U.S.C. § 107 ................................................................................................................ 12

23

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 9

24

Fed. R. Civ. P. 56(a) ........................................................................................................ 2

25

26

27

28

**Preliminary Statement**

Yandex LLC, a Russian Internet company, operates the most popular search engine in Russia, yandex.ru, as well as various other Russian-language services that host user-generated content such as blogs, websites and photos.  Perfect 10, an adult-entertainment company and serial litigant, has sued Yandex LLC (and its parent company, Yandex N.V., and sister company, Yandex Inc.) for direct and secondary copyright infringement, alleging that Yandex is linking to third-party websites that infringe its copyrights and hosting infringing images uploaded by users.  The vast majority of Perfect 10's claims fail, however, because they are based on alleged infringements which occurred, not surprisingly, in Russia and other countries outside the United States.

Specifically, the undisputed evidence shows that **<u>all</u>** of Perfect 10's claims for direct infringement based on hosting user-generated content and **<u>81%</u>** of Perfect 10's claims for secondary infringement based on linking to infringements are premised on extraterritorial acts of alleged infringement.  But the U.S. Copyright Act under which Perfect 10 brings its claims is a *territorial* statute that does not apply to *extraterritorial* acts of infringement.  Thus, Perfect 10's claims based on extraterritorial alleged infringement are not actionable as a matter of law in the United States.  *Amazon.com*, 508 F.3d at 1166-68.

Perfect 10 has also levied claims of direct infringement based on Yandex's storage of "thumbnail"-sized images in its Image Search service index.  These claims are merely a rehash of those Perfect 10 brought—and lost—against Google years ago in *Perfect 10 v. Amazon.com*.  There, the Ninth Circuit held that a search engine's storage of thumbnail-sized copies of images for information location purposes is a transformative fair use, and thus not actionable infringement.  *Amazon.com*, 508 F.3d at 1163-68.  Perfect 10's claims here based on the same alleged conduct therefore fail as a matter of law.

Yandex's motion for partial summary judgment should be granted, and Perfect 10's claims premised on extraterritorial acts of infringement and non-infringing fair uses should be dismissed.

**<u>Statement of Relevant Facts</u>**

**<u>The Yandex Defendants</u>**.  The Yandex[1] family of companies provides a variety of Internet services primarily to Russian and other Commonwealth of Independent States ("CIS") markets, as well as Turkey.

<u>Yandex N.V.</u>  Defendant Yandex N.V. is a Dutch holding company that invests in various Internet and technology-related businesses.  Declaration of Charles Ryan, filed herewith ("Ryan Decl.") ¶¶ 1, 5.  Yandex N.V. has been publicly listed since May 2011.  *Id.* ¶ 1.  Yandex N.V.'s business is managing its investments, including its subsidiaries Yandex LLC and Yandex Inc.  *Id.* ¶¶ 5, 9.  Yandex N.V. does not own or operate any Internet search engines or websites that host user-generated content.  *Id.* ¶ 8.

<u>Yandex LLC.</u>  Defendant Yandex LLC is a Russian technology company that owns and operates search engines and other online services in several non-U.S. markets.  Ryan Decl. ¶ 6.  Yandex LLC is best known for operating Russia's most popular search engine, yandex.ru.  Yandex LLC's largest global competitor is Google.

<u>Yandex Inc.</u>  Defendant Yandex Inc., another Yandex N.V. subsidiary, is a Delaware corporation located in Palo Alto.  Declaration of Arkady Borkovsky, filed herewith ("Borkovsky Decl.") ¶ 3.  Yandex Inc. employs a small staff of eight engineers and provides software-development services to Yandex LLC.  *Id.* ¶¶ 4-5.  Yandex Inc. also owns servers in ███, which hosted the search index for Yandex LLC's international version of its search engine, yandex.com, for a 9-month period of time.  *Id.* ¶ 7.  Yandex Inc. does not own or operate any search engines or any websites that host user-generated content.  *Id.* ¶¶ 5-7.

**<u>The Yandex Services At Issue.</u>**  Perfect 10's suit implicates six of Yandex's Internet-based services:  yandex.ru, yandex.com, narod.ru, fotki.ru, ya.ru, and moikrug.ru.

<u>Yandex.ru.</u>  Yandex.ru is the leading search engine in Russia.  Ryan Decl. ¶ 6.  Yandex.ru is a Russian-language search engine, and the vast majority of yandex.ru users are Russian.  Declaration of Tatiana Bakharevskaya, filed herewith ("Bakharevskaya Decl.") ¶ 15.  Thus, not

---

[1]  "Yandex" refers collectively to defendants Yandex N.V., Yandex LLC, and/or Yandex Inc.

surprisingly, the sites crawled and indexed by yandex.ru are predominantly Russian-language websites, typically hosted in countries outside the United States. *Id.* ¶ 14. The yandex.ru index has always been hosted on Russian servers. *Id.* ¶ 9.

The Yandex-branded search engines function similarly to other popular search engines such as Google. For example, Yandex executes searches in response to user queries by referencing a search index, which is a database of all the words known to the search engine and their locations, compiled by crawlers that periodically canvass the Internet. Bakharevskaya Decl. ¶ 11. That index is used to generate search results in response to user queries. *Id.* Yandex offers both a web search service and an image search service. *Id.* ¶ 12. Like other web search services, Yandex's image search service analyzes the text associated with an image, and then determines whether a given image is responsive to a user query. *Id.* ¶ 13.

The Yandex-branded search services do not store full-sized copies of the images crawled. Bakharevskaya Decl. ¶ 12. Instead, they store smaller, lower-resolution, "thumbnail"-sized copies of the crawled images in their search indexes. *Id.* The thumbnail-sized images are then provided on a search results page to help the user identify and select the particular image the user is looking for. *Id.* ¶ 13. Once located, if desired, the user can then click through to the third-party website on which the full-size image is hosted, if desired. *Id.*

Yandex does not have access to data regarding what a Yandex user does after he or she leaves the Yandex search results page and visits a third-party website, such as whether a user elects to download any particular content from third-party websites. Bakharevskaya Decl. ¶ 17.

Yandex.com. Yandex.com is an experimental search website focused on providing English and other Latin-alphabet based search results to English-speaking Russian users who seek information from websites around the globe. Bakharevskaya Decl. ¶ 14. Like yandex.ru, yandex.com offers both an image search and a web search service. Yandex.com operates similarly to yandex.ru, by responding to user queries with relevant web documents found on the Internet that have been indexed, and generating search results in response to such user queries. *Id.* ¶ 11. Also like yandex.ru, yandex.com does not store on its servers full-sized copies of the images it crawls for

its search index.  *Id.* ¶ 12.  Yandex.com has no advertising anywhere on its site, including its image search results pages.  Ryan Decl. ¶ 6.

The yandex.com index is, and has always been, hosted on servers located in Russia, except for a period of nine months, between June 2012 and March 2013, when it was hosted on servers in ███████████.  Borkovsky Decl. ¶ 7.  The vast majority of yandex.com users are located outside the United States.  Bakharevskaya Decl. ¶¶ 14, 16.  Because of the global audience for yandex.com's search services, a substantial portion of the content crawled and indexed by the yandex.com search service is hosted on foreign websites.  *Id.* ¶ 14.

Narod.ru.  In addition to its search services, Yandex LLC operates several popular Russian-language services that host user-generated content.  One such service is narod.ru ("Narod").  Narod is a Russian-language site-hosting service where users can build and host their own websites (similar to WordPress).  Bakharevskaya Decl. ¶ 6.  Yandex LLC has recently transferred the site-hosting service part of Narod to a third party outside the Yandex family of companies named Ucoz, also located in Russia.  *Id.*  During the period that Yandex LLC hosted and operated the Narod site-hosting service, it was hosted exclusively on dedicated servers in Russia.  *Id.*

For content hosted on any Yandex user-generated content hosting service, including Narod, Yandex does not track "right-click" user activity data.  Bakharevskaya Decl. ¶ 17.  For example, if a user downloads an image on a Yandex-hosted website by right-clicking on that image and selecting the "copy" or "save as" option, Yandex will not know about this, because Yandex does not track such information.  *Id.*  This would be a feature of the user's browser, rather than of the service itself.  *Id.*  Nor does Yandex track the location (or "IP address") from which a user uploads images to Yandex's user-generated content sites.  *Id.*

Fotki.ru.  Fotki.ru ("Fotki") is a Russian-language photo-hosting service and online community (similar to Shutterfly).  Bakharevskaya Decl. ¶ 7.  Fotki is used by many Russian bloggers to host the photos embedded in their blogs.  *Id.*  Like Narod, Fotki is hosted entirely on servers in Russia.  *Id.*  Yandex does not track the IP addresses associated with user uploads or user downloads to its Fotki service.  *Id.* ¶¶ 17, 18.

Ya.ru and Moikrug.ru.  Ya.ru is a blog-hosting service, and moikrug.ru is a social network for professionals.  Bakharevskaya Decl. ¶ 8.  Both of these services are, and have always been, hosted exclusively on dedicated servers in Russia.  *Id.*  Yandex does not track the IP addresses associated with user uploads or user downloads to either of these services.  *Id.* ¶¶ 17, 18.

**Perfect 10's Claims Against Yandex**.  Perfect 10 is in the business of shooting and/or acquiring the copyrights in images of nude female models and then suing Internet companies for allegedly infringing those copyrights, usually through claims of secondary copyright infringement. In this respect, Perfect 10 has been described as a copyright "troll."  In the past several years, Perfect 10 has sued Google, Microsoft, Amazon.com, Visa, and Tumblr, among others.  Perfect 10 also operates a subscription-based adult website located at www.perfect10.com.

According to Perfect 10's First Amended Complaint ("FAC"), Perfect 10's claims against the Yandex defendants for direct, contributory, and vicarious copyright infringement are premised on the following factual allegations:[2]

**(1)  Direct copyright infringement claims based upon Yandex's alleged**:

(a)  hosting of full-size copies of user-uploaded infringing Perfect 10 images on Yandex's Russian-language Fotki and Narod services (FAC ¶ 25 & Exs. 7,8);

(b)  hosting of thumbnail-size copies of infringing Perfect 10 images in the yandex.ru search index (which, in turn, links to third-party websites that host full-size copies of those same images) (*id.*; *see also* Declaration of Rachel Kassabian, filed herewith ("Kassabian Decl.") ¶ 5 & Ex. E at 14 [Perfect 10's Objections and Resps. to Yandex N.V.'s First Set of Interrogatories]; and

(c)  hosting of thumbnail-size copies of infringing Perfect 10 images in the yandex.com search index (which, in turn, links to third-party websites that host full-size copies of those same images) (FAC ¶ 25; *see also* Kassabian Decl. ¶ 5 & Ex. E at 14).

---

[2]  Neither Yandex Inc. nor Yandex N.V. operates any of the accused Yandex services at issue in Perfect 10's FAC.  *See* Yandex N.V.'s Answer to First Amended Complaint (Dkt. 92), *passim*; Yandex Inc.'s Answer to First Amended Complaint (Dkt. 98), *passim*.  In apparent recognition of this fact, Perfect 10 also alleges that Yandex N.V. is vicariously liable for the alleged acts of direct and contributory infringement of its subsidiary Yandex LLC.  FAC ¶ 16.  As discussed below, Perfect 10's vicarious infringement claims against Yandex N.V. fail to the same extent as its contributory infringement claims against Yandex LLC.

1  **(2)  Contributory copyright infringement claims based upon**:

2  (a)  yandex.ru's linking to third-party websites that host full-size infringing copies of

3  Perfect 10's images (FAC ¶¶ 20, 27; *see also* Kassabian Decl. ¶ 5 & Ex. E at 20);

4  (b)  yandex.com's linking to third-party websites that host full-size infringing copies

5  of Perfect 10's images (FAC ¶¶ 20, 27; *see also* Kassabian Decl. ¶ 5 & Ex. E at 20); and

6  (c)  Yandex's operation of user-generated content sites that allegedly allow users to

7  upload (Kassabian Decl. ¶ 5 & Ex. E at 26) or download (FAC ¶ 25) infringing copies of Perfect

8  10's images.

9  **(3)  Vicarious copyright infringement claims against Yandex N.V. only** based upon the

10  above-referenced alleged direct and contributory infringements purportedly committed by Yandex

11  LLC.  Kassabian Decl. ¶ 5 & Ex. E at 17.

12  Perfect 10 claims that all of the alleged infringements at issue in this case are identified in

13  231 DMCA notices it allegedly emailed to Yandex (three of which Yandex has no record of

14  receiving apart from in this litigation), and one "webform" DMCA notice it sent using Yandex's

15  online complaint tool, all of which are dated between October 2011 and January 1, 2013.  *See*

16  Kassabian Decl. ¶ 2 & Exs. A, B; Declaration of Maria Grigorieva, filed herewith ("Grigorieva

17  Decl.") ¶ 9 & Ex. A.  The 231 email-formatted notices purport to identify 63,756 URLs from

18  Yandex search results pages linking to allegedly infringing Perfect 10 images hosted on third-party

19  websites, while the single webform notice identifies a Yandex-hosted image search results page

20  with thumbnail-sized images.  Declaration of Geoffrey A. Grundy, filed herewith ("Grundy Decl.")

21  ¶ 7; Grigorieva Decl. ¶ 12 & Ex. A.  Additionally, buried within its search-related notices were

22  references to approximately 1,474 alleged acts of direct infringement premised on Yandex's alleged

23  *hosting* of Perfect 10 images uploaded by third-party users of Narod, Fotki, Ya.ru and Moikrug.ru.

24  Grigorieva Decl. ¶¶ 10-11 & Ex. A.

25  **The Extraterritorial Location of the Alleged Infringements**.  It is well known that an "IP

26  address," or the numerical label assigned to a computer device that uses the Internet for

27  communication, can be used to determine the physical "geo-location" of that device using digital

28  information processed through the Internet.  Perfect 10's cited authority from its prior Motion for

Partial Summary Judgment/Summary Adjudication (Dkt. 105 at 22) acknowledges this fact. *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 2009 WL 6355911, at *9 n.16 (C. D. Cal. Dec. 21, 2009) ("Defendants' own expert has opined that IP-based location analysis is highly accurate. Plaintiffs' expert agrees.") (citations omitted).  Perfect 10 has also relied on this same website geo-location evidence in prior briefing in this case.  *See, e.g.*, Declaration of Norman Zada in Opposition to Yandex's Motion to Dismiss for Lack of Personal Jurisdiction, filed May 24, 2012 (Dkt. 21-1), at ¶¶ 11, 13, 14 (relying on geo-location evidence to ascertain owner and location information for various websites); Reply Declaration of Norman Zada In Support of Perfect 10's Motion for Partial Summary Judgment/Summary Adjudication, filed April 10, 2013, Ex. 29 (Dkt. 130-9) (relying on geo-location evidence to ascertain owner and location information for various websites).

Using the same widely-available geo-location tools that Perfect 10 has used in this case (*see supra*), Yandex has obtained the IP addresses and corresponding geo-locations of the 63,756 alleged infringements to which yandex.com and/or yandex.ru allegedly linked in search results (before Yandex blocked those links, in response to Perfect 10's DMCA notices and in compliance with the DMCA, as described in the Grigorieva Declaration filed herewith).  Through these efforts, Yandex has confirmed that 51,959 of these alleged infringements are hosted on servers outside the United States.  Grundy Decl. ¶¶ 6, 7 & Ex. A.  Of those, 50,485 concern content hosted by third-party websites on servers located outside the United States.  The remaining 1,474 alleged infringements concern content uploaded by Yandex users to narod.ru, fotki.ru, ya.ru and moikrug.ru accounts and hosted by Yandex, all of which are hosted on Yandex servers in Russia.  Bakharevskaya Decl. ¶¶ 6, 7, 8.

In discovery, Yandex served document requests asking Perfect 10 to produce all documents showing the location of the direct infringements on which its claims are premised.  Kassabian Decl. ¶ 6 & Ex. F at 4-5.  In response, Perfect 10 directed Yandex to various folders and documents regarding claimed infringements allegedly hosted in the United States, but failed to produce any evidence relevant to the location of the 50,485 alleged third-party infringements at issue in this motion that are hosted on servers outside the United States, or the 1,474 alleged infringements

based on user-generated content hosted by Yandex.  Thus, Yandex's evidence showing that all these alleged acts of infringement are extraterritorial is uncontroverted.

**Argument**

It is well-settled that the U.S. Copyright Act prohibits only domestic, or "territorial," acts of infringement.  Because the vast majority of the alleged infringements Perfect 10 asserts in this case concern the foreign operation of Russian internet services by Russian defendant Yandex LLC for a foreign audience involving underlying alleged direct infringements abroad, they are not actionable under U.S. law, and Yandex is entitled to summary judgment on them.[3]

## I.   YANDEX IS ENTITLED TO SUMMARY JUDGMENT ON ALL PERFECT 10 CLAIMS THAT CONCERN EXTRATERRITORIAL ACTS OF ALLEGED COPYRIGHT INFRINGEMENT

Perfect 10 purports to have brought its claims under the U.S. Copyright Act.  The Copyright Act applies to domestic infringements only, and "presumptively does not apply to conduct that occurs abroad even when that conduct produces harmful effects within the United States."  *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 988 (9th Cir. 2008); *Subafilms Ltd. v. MGM-Pathe Comm'n Co.*, 24 F.3d 1088, 1093, 1098 (9th Cir. 1994) ("Because the copyright laws do not apply extraterritorially, each of the rights conferred under the five section 106 categories must be read as extending 'no farther than the [United States'] borders.' . . . [W]e reaffirm that the United States copyright laws do not reach acts of infringement that take place entirely abroad.").  Thus, a claim for copyright infringement is not actionable unless the plaintiff establishes that the act of infringement occurred within the United States.  *See, e.g.*, *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008) ("[W]e hold that the issue  [of territoriality] is properly treated as an element of the claim which must be proven before relief can be granted, not a question of subject matter jurisdiction."); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1141 (N.D. Cal. Aug., 2011) (finding *Litecubes* "well-reasoned and persuasive" and holding extraterritoriality

[3]  Perfect 10 has failed to proffer competent evidence demonstrating that the remaining 19% of the alleged third-party direct infringements at issue here are territorial.  Yandex does not concede that any of these remaining infringements are in fact territorial, and expressly reserves its right to challenge the territoriality of additional acts of infringement alleged by Perfect 10 should fact and/or expert discovery reveal that such infringements are also extraterritorial.

1   to be "an element of claim for copyright infringement rather than an issue of subject matter

2   jurisdiction.").  This rule is particularly important in cases (like this one) involving foreign

3   defendants who conduct their business abroad, because there is simply no territorial conduct in

4   which to anchor a United States infringement claim: "a foreign actor who engages in or authorizes

5   infringing activity while abroad, and no part of the infringing activity takes place in the United

6   States, does not thereby violate U.S. copyright law and U.S. courts do not have subject matter

7   jurisdiction over claims arising from that foreign activity."  *Rundquist v. Vapiano SE*, 798 F. Supp.

8   2d 102, 123 (D.C. Cir. 2011).[4]

9        Moreover, because the Copyright Act applies only to acts of infringement that occur within

10  the United States, claims of secondary infringement are not cognizable under the Copyright Act

11  unless the underlying act of direct infringement occurred within the United States.  *See*, *e.g.*,

12  *Subafilms*, 24 F.3d at 1093 ("Given the undisputed axiom that United States copyright law has no

13  extraterritorial application, it would seem to follow necessarily that a primary activity outside the

14  boundaries of the United States, not constituting an infringement cognizable under the Copyright

15  Act, cannot serve as the basis for holding liable under the Copyright Act one who is merely related

16  to that activity within the United States." (quoting 3 David Nimmer & Melville B. Nimmer,

17  Nimmer on Copyright § 12.04[A][3][b], at 12-86)); *Rundquist*, 798 F. Supp. 2d at 126-27 (in

18

---

19        [4]   Some courts find that extraterritoriality is a question of subject matter jurisdiction, rather than
an element of a plaintiff's claim.  *See*, *e.g.*, *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004)
20  ("[I]t is only where an infringing act occurs in the United States that the infringement is actionable
under the federal Copyright Act, giving the federal courts jurisdiction over the action.").  The Ninth
21  Circuit has not ruled on this issue.  At the hearing on Perfect 10's motion for partial summary
judgment on May 2, 2013, this Court instructed Defendants to file this Motion under Rule 56.  *See*
22  Transcript of Proceedings at 56, Perfect 10 v. Yandex, (May 2, 2013) (CV-12-1521 WHA (LB))
("Transcript of Proceedings").  Nevertheless, should the Court elect now to view this question as a
23  matter of its subject matter jurisdiction, then Yandex alternately moves to dismiss these
extraterritorial claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Perfect
24  10's burden in opposing such a motion is the same as for a motion for summary judgment under
Rule 56.  *See*, *e.g.*, *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.,* 813 F.2d 1553, 1558 (9th Cir.
25  1987) ("The requirement that the nonmoving party present evidence outside his pleadings in
opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required
26  under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth
specific facts, beyond his pleadings, to show that a genuine issue of material fact exists.").

27

28

1  context of contributory liability, "[a]t least one act [of direct infringement] . . . must take place in

2  the United States to trigger the protection of United States law and the subject matter jurisdiction of

3  this Court"); *ITSI T.V. Prods. v. California Auth. of Racing Fairs*, 785 F. Supp. 854, 864 (E.D. Cal.

4  1992), *rev'd in part on other grounds*, 3 F.3d 1289 (9th Cir. 1993) ("To satisfy the jurisdictional

5  requirement that the defendant committed an act of infringement in the United States, the plaintiff

6  must show only that the direct act of infringement for which defendant is contributorily or

7  vicariously liable occurred in the United States.").  Accordingly, Perfect 10's claims for both direct

8  and contributory copyright infringement fail as a matter of law if they are premised on

9  extraterritorial acts of direct infringement.

10  **II.    THE VAST MAJORITY OF PERFECT 10'S INFRINGEMENT CLAIMS ARE
11  EXTRATERRITORIAL AND THUS NOT COGNIZABLE UNDER THE U.S.
     COPYRIGHT ACT**

12      Yandex is entitled to summary judgment on all Perfect 10 claims for copyright infringement

13  where Perfect 10 cannot meet its burden of submitting "affirmative evidence" showing that the

14  claims are premised on territorial acts of direct copyright infringement.  *See Celotex Corp. v.*

15  *Catrett*, 477 U.S. 317, 331 (1986).[5]  As discussed below, the undisputed evidence establishes that

16  the overwhelming majority of the acts of infringement Perfect 10 alleges are extraterritorial and

17  thus not actionable.  Yandex is thus entitled to summary judgment on them.

18      **A.    All of Perfect 10's Direct Copyright Infringement Claims Fail Because They
19             Are Extraterritorial, or Are a Non-Actionable Fair Use, or Both**

20      Yandex is entitled to summary judgment on all of Perfect 10's claims for direct infringement

21  because they all concern extraterritorial infringement and thus are not actionable in the United

    States.

25  _____
    [5]   Yandex does not concede, but rather assumes for purposes of this motion only, that Perfect
26  10 owns valid copyrights in each of the images it asserts in this case, and that each alleged third-
    party use is in fact unauthorized and not subject to any other affirmative defense.  Yandex reserves
27  its right to move for summary judgment on these other issues, should such a motion later prove
    necessary or appropriate.

1.   **All of the Alleged Hosted Infringements of Full-Size Perfect 10 Images on Narod.ru, Fotki.ru, Ya.ru and Moikrug.ru are Stored on Servers Outside the United States, and Thus Are Extraterritorial**

Perfect 10's first theory of direct infringement is premised on Yandex's alleged display of Perfect 10 images uploaded by users to their accounts hosted on Yandex's Russian-language fotki.ru, narod.ru, ya.ru, and moikrug.ru services.  These claims can be disposed of easily because the undisputed evidence shows that all four services are hosted entirely in Russia.  Bakharevskaya Decl. ¶¶ 6, 7 ,8.  Thus, under the Ninth Circuit's "server test," these foreign-hosted alleged infringements are extraterritorial and not actionable in this Court under the U.S. Copyright Act.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007) ("[I]t is the website publisher's computer, rather than [the search engine's] computer, that stores and displays the infringing image.").  Accordingly, Yandex is entitled to summary judgment on the entirety of Perfect 10's claims premised on the 1,474 acts of alleged infringement concerning user-generated content hosted on Yandex's narod.ru, fotki.ru , ya.ru , and moikrug.ru services.  *Subafilms*, 24 F.3d at 1098.

2.   **Yandex's Hosting of Thumbnail Images Is Not an Actionable Infringement**

Perfect 10's second theory of direct infringement is premised on Yandex's alleged display of thumbnail-sized versions of Perfect 10 images in response to user search commands on yandex.com and yandex.ru.  *See* FAC ¶ 25; Kassabian Decl. ¶ 5 & Ex. E at 14.  This claim likewise fails in its entirety as a matter of law.

(a)   **Perfect 10's direct infringement claims regarding yandex.ru's Image Search service fail because the search index is hosted on servers in Russia**

Perfect 10's direct infringement claims that are premised on Yandex's storing and displaying of thumbnail-sized images in the yandex.ru search index fail because it is undisputed that the entire yandex.ru search index is and has always been hosted in Russia.  Bakharevskaya Decl. ¶ 9. Thus, even if the storage of thumbnail images was otherwise actionable copyright infringement—and as discussed below, it is not—Perfect 10's claims concern extraterritorial acts that are not actionable under the U.S. Copyright Act.  The Court should therefore grant summary

judgment on Perfect 10's claims for direct copyright infringement based on Yandex's alleged

storage of thumbnail-size copies of Perfect 10 images on the yandex.ru index.

> **(b)**      **Under binding Ninth Circuit precedent, displaying thumbnail-size images for information-location purposes is a fair use**

Perfect 10's claim that Yandex committed direct copyright infringement by storing and

displaying thumbnail-sized images on *any* of its indexes—including on the yandex.com index

during the nine-month period when it was stored on servers in Nevada—is barred as a matter of law

by the Ninth Circuit's ruling in *Amazon.com*.  There, the court held that a search engine's display of

thumbnail images for information location purposes is a fair use under 17 U.S.C. § 107, and thus

not an actionable infringement.  *See* 508 F.3d at 1166-68.  The *Amazon.com* decision is directly

applicable here, and forecloses Perfect 10's claims.

"The fair use defense permits the use of copyrighted works without the copyright owner's

consent under certain situations."  *Id*. at 1163.  In determining whether a use of a copyrighted work

is a fair use, courts consider "(1) the purpose and character of the use, including whether such use is

of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted

work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a

whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."

17 U.S.C. § 107.

The *Amazon.com* court analyzed each factor of the fair use test and ruled in Google's favor.

*Amazon.com*, 508 F.3d at 1168.  In particular, the court found that the first factor of the test "weighs

heavily in favor of Google" because Google's use of reduced-size and resolution thumbnails for

information location purposes is "highly transformative" of Perfect 10's use of full-size copies of its

images for entertainment purposes.  *Id.* at 1164-67.  The court also considered Perfect 10's

argument that Google's Image Search service had commercial uses by linking to webpages

displaying advertisements from Google's ad network, and concluded that "the significantly

transformative nature of Google's search engine, particularly in light of its public benefit, outweighs

Google's superseding and commercial uses of the thumbnails in this case."  *Id*. at 1166.  Weighing

all four fair-use factors together, the court found that Google had put Perfect 10's thumbnail images

to "a use fundamentally different than the use intended by Perfect 10," and in doing so, "provided a significant benefit to the public." *Id.* at 1168.

Notwithstanding Perfect 10's half-hearted protestations asking this Court not to apply binding Ninth Circuit law,[6] the *Amazon.com* decision dooms Perfect 10's identical claims here. As it did in *Amazon.com*, Perfect 10 effectively asks this Court to find that image search services are illegal, in that they purportedly commit copyright infringement by storing thumbnail-sized images and displaying those images to users in response to search queries. FAC ¶ 19. But Perfect 10 has already made and lost that argument. For the same reasons the Ninth Circuit *in Amazon.com* found that operating a free image search service conferred an immense public benefit and was a permissible fair use, it is likewise a fair use here. Indeed, it is undisputed that Yandex, like Google, creates its image search index by crawling the web and creating smaller, lower-resolution, thumbnail-sized copies of the crawled images so that it may provide free search results in response to user queries. Bakharevskaya Dec. ¶ 12. Because the material facts here are indistinguishable from those in *Amazon.com*, Yandex's use of thumbnails is a transformative fair use under Ninth Circuit law, and is not actionable infringement.

---

[6]   At the hearing on its motion for partial summary judgment on May 2, 2013, Perfect 10 urged the Court to ignore the *Amazon.com* decision. Perfect 10 also misrepresented to the Court that *Amazon.com* is not controlling here with respect to yandex.com, because unlike Google's search services at issue in that case, yandex.com's image search result pages display advertisements. *See* Transcript of Proceedings at 22-26 (arguing that the fact that yandex.com was hosted in the United States conferred territoriality based on hosted thumbnail images on U.S. servers, and attempting to distinguish the *Amazon.com* decision by claiming that yandex.com displays advertising: "[O]ne of the reasons [that this litigation is different from *Amazon.com*] is here Yandex[.com] is actually including advertisements next to thumbnails, and those advertisements are for companies or services that relate to, I guess, semi-nude models."). This accusation is factually incorrect. The yandex.com search service *does not display any advertisements at all*, let alone advertisements surrounding Perfect 10 thumbnail images. Ryan Decl. ¶ 9 ("Yandex.com is not a fully functional commercial website. Among other things, it has no advertising and generates no revenues."). Perfect 10's comments at the hearing were also legally incorrect, because in *Amazon.com* the Ninth Circuit ruled that even in the presence of commercial uses such as advertising, the highly transformative nature of thumbnail images used for information location purposes outweighed any commercial purpose, such that the thumbnails remained a fair use even in that circumstance. *Amazon.com*, 508 F.3d at 1166 (weighing the commercial uses of thumbnail images directing users to advertising partner websites, against the transformative use of such thumbnails, and concluding that the use of thumbnails was a fair one).

1   Accordingly, Yandex is entitled to summary judgment on all of Perfect 10's claims

2   regarding Yandex's alleged hosting of thumbnail-size versions of Perfect 10 images in Yandex's

3   image search services.[7]

4   **B.   81% of Perfect 10's Claims for Contributory Copyright Infringement Are Based on Alleged Underlying Direct Infringements Hosted By Third Party Websites Outside the United States, and thus are Extraterritorial**

5

6   Perfect 10's contributory infringement claims are premised on Yandex's linking, via

7   yandex.com's and yandex.ru's Image Search services, to third-party websites which display

8   allegedly-infringing copies of Perfect 10's images.  *See* FAC ¶¶ 20, 27; Kassabian Decl. ¶ 5 & Ex.

9   E at 20.  To prove its contributory claims, Perfect 10 must demonstrate that the underlying third-

10  party direct infringements occurred in the United States.  *See, e.g., Subafilms*, 24 F.3d at 1093 ("[A]

11  primary activity outside the boundaries of the United States, not constituting an infringement

12  cognizable under the Copyright Act, cannot serve as the basis for holding liable under the Copyright

13  Act one who is merely related to that activity within the United States") (citation omitted).

14  Perfect 10 has failed to do so with respect to the vast majority of its contributory claims.  To

15  the contrary, Yandex has offered affirmative evidence that 50,485 of the 62,282 URLs referenced in

16  Perfect 10's 231 email-formatted DMCA notices concern underlying acts of direct infringement—

17  that is, the display of a full-size Perfect 10 image on a third-party website—outside the United

18  States.  *See* Grundy Decl. ¶¶ 6,7 & Ex. A.  More specifically, Yandex has used industry-standard

19  geo-location look-up tools to confirm that the IP locations for the servers hosting these 50,485

20  alleged third-party infringements are outside the United States.  *Id*. ¶ 4 & Ex. A.  Because these acts

21  of underlying direct infringement are extraterritorial, Perfect 10's claims against Yandex for

22  contributing to such alleged acts of infringement fail as a matter of law.  *See, e.g., Litecubes*, 523

23  F.3d at  1366 n.14 (noting that when the activities complained of against foreign litigants take place

24  outside the United States, "cases will often be able to be quickly disposed of"); *Subafilms*, 24 F.3d

25

26  [7]   These claims include Perfect 10's claims identified in the single "webform" DMCA notice Perfect 10 submitted through Yandex's online complaint tool, which simply identified a single yandex.com URL corresponding to an image-search results page that displayed thumbnail-size copies of Perfect 10 images.  *See* Grigorieva Decl., ¶¶ 9, 12 & Ex. A.

27

28

at 1098; *Rundquist*, 798 F. Supp. 2d at 129 (dismissing plaintiff's contributory and vicarious copyright infringement claims because "plaintiff has failed to allege that [defendant] facilitated this foreign infringement with an act of infringement in the United States"); *ITSI T.V. Prods*, 785 F. Supp. at 864 n.16.  Accordingly, Yandex is entitled to summary judgment on these 50,485 contributory infringement claims.  *See, e.g.*, *Litecubes*, 523 F.3d at 1370 (holding that extraterritoriality is "an element of the claim that must be proven before relief may be granted"); *see also Subafilms*, 24 F.3d at 1099.

Finally, regarding Perfect 10's "user uploads" and "user downloads" theories of contributory infringement, Perfect 10 has produced no evidence that any user uploads or downloads of allegedly unauthorized Perfect 10 images to Yandex's user-generated content sites took place in the United States.  Kassabian Decl. ¶ 9.  Nor does Yandex  maintain or possess any such evidence.  *See* Bakharevskaya Decl. ¶ 17.  Thus, to the extent Perfect 10's contributory infringement claim is premised on this alleged conduct, it fails for lack of evidence.

**C.      Perfect 10's Claims for Vicarious Infringement Against Parent Company Yandex N.V. Fail For All Of These Same Reasons**

Perfect 10 has also alleged that Yandex N.V. is *vicariously* liable for the acts of Yandex Inc. and Yandex LLC on the grounds that Yandex N.V. has the right and ability to control the conduct of its subsidiaries.  *See* Kassabian Decl.¶ 5 & Ex. E at 15.  While Perfect 10 will not be able to meet the test for vicarious infringement on the merits, the Court need not even reach this issue, because Perfect 10's vicarious claims are subject to the same territoriality limitations that apply to Perfect 10's claims for contributory infringement.  *See ITSI T.V. Prods.*, 785 F. Supp. at  864  (territoriality requirement applies to claims for contributory and vicarious infringement).  Perfect 10's vicarious infringement claims against Yandex N.V. thus fail for the same reason Perfect 10's contributory claims fail—because they are premised on the same alleged underlying acts of (extraterritorial) direct infringement.

**Conclusion**

For the foregoing reasons, Yandex's Motion for Partial Summary Judgment should be granted in full.

DATED:  May 29, 2013                    Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _____
    Diane M. Doolittle
    Rachel Herrick Kassabian
    *Attorneys for the Yandex Defendants*