Natalie H. Locke, Esq., SBN 261363
natalie@perfect10.com
Lynell D. Davis, Esq., SBN 271152
lynell@perfect10.com
PERFECT 10, INC.
11803 Norfield Court
Los Angeles, CA 90077
P 310.476.0794 | F 310.476.8138

Eric J. Benink, Esq., SBN 187434
KRAUSE KALFAYAN BENINK & SLAVENS, LLP
550 West C Street, Suite 530
San Diego, CA 92101
P 619.232.0331 | F 619.232.4019
eric@kkbs-law.com

Attorneys for Plaintiff, Perfect 10, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

PERFECT 10, INC., a California corporation,

        Plaintiff,

    v.

YANDEX N.V., a Netherlands limited liability company; YANDEX LLC., a Russian limited liability company; YANDEX INC., a Delaware corporation; and DOES 1 through 100, inclusive,

        Defendants.

Case No.: CV 12-1521 WHA

**PLAINTIFF PERFECT 10, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: (1) PERFECT 10'S EXTRATERRITORIAL INFRINGEMENT CLAIMS, AND (2) FAIR USE OF THUMBNAIL IMAGES IN YANDEX IMAGE SEARCH**

Date: July 11, 2013
Time: 8:00 A.M.
Ctrm: 8
Judge: Honorable William Alsup

Discovery Cut-Off: July 31, 2013
Pretrial Conference: November 21, 2013
Trial Date: November 28, 2013

**PLAINTIFF PERFECT 10, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

_____

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

       A.     FAIR USE .................................................................................. 1

       B.     EXTRATERRITORIALITY ......................................................... 2

II.    STATEMENT OF FACTS ....................................................................... 3

III.   DISPUTED ISSUES OF FACT REGARDING FAIR USE
       AND DIRECT INFRINGEMENT ............................................................ 6

       A.     YANDEX'S USE OF P10 THUMBNAILS IS NOT FAIR USE ............ 6

              1.     Purpose and Character of the Work ................................. 7

              2.     Nature of the Copyrighted Work ..................................... 11

              3.     Amount And Substantiality Of The Use ....................... 11

              4.     Effect Of The Use On The Market ................................. 11

       B.     FOTKI.YANDEX.RU THUMBNAILS ARE
              CLEARLY NOT FAIR USE ................................................... 13

IV.    PERFECT 10'S CONTRIBUTORY INFRINGEMENT
       CLAIMS ARE NOT EXTRATERRITORIAL ................................................ 14

       A.     YANDEX.COM WAS HOSTED IN THE UNITED STATES .............. 15

       B.     YANDEX ACTS OF INFRINGEMENT OCCUR IN THE U.S. ........... 16

       C.     YANDEX CONTRIBUTES TO U.S. DOWNLOADS .......................... 17

              1.     Disputed Issues of Fact Regarding Download Data ..................... 19

       D.     YANDEX'S ANALYSIS IS FLAWED ................................................. 21

V.     PERFECT 10'S DIRECT INFRINGEMENT CLAIMS ARE NOT
       EXTRATERRITORIAL .................................................................................. 23

       A.     DIRECT INFRINGEMENTS BY YANDEX.COM IN THE U.S. ......... 23

B.   FOKTI.YANDEX.RU AND NAROD.RU DIRECT
INFRINGEMENT BY DISPLAY ...................................................... 23

C.   YANDEX.COM'S DIRECT INFRINGEMENT BY DISPLAY ........... 23

VI.   PERFECT 10'S  CONTRIBUTORY CLAIMS FOR
OTHER INFRINGEMENTS .................................................................. 24

VII.   YANDEX N.V.'S VICARIOUS LIABILITY.................................................. 25

VIII.   CONCLUSION.................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ............................................. 6

*Columbia Pictures Industries, Inc. v. Fung*, 2009
    WL 6355911 at *8 (Dec. 21, 2009, C.D. Cal) ....................................................... 17

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985) ................................................................................. 7, 8, 9, 11

*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522 (9th Cir. 2008) ....................... 7, 11

*Los Angeles News Servs. v. Reuters Television Int'l Ltd.*,
    149 F.3d 987 (9th Cir. 1998) ............................................................................ 16, 18

*Louis Vuitton Malletier v. Akanoc Solutions, Inc.*,
    Case No. CV-07-03952-JW (N.D. Cal. March 19, 2010) ......................................... 18

*Mattel Inc. v. Walking Mountain Prods.,* 353 F.3d 792 (9th Cir. 2003) ........................ 7

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012) ............................. 7, 11

*Perfect 10 Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).................... passim

*Perfect 10, Inc. v. Google, Inc.*, Case No. CV 04-9484-AHM (N.D. Cal) .................... 5

*Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381 (6th Cir. 1996)............ 7

*Seals v. Compendia Media Group*, 2003 U.S. Dist. LEXIS 2980, 10-11
    (N.D. Ill. Feb. 27, 2003) ................................................................................... 16

*Sony Corp. of Am. v. Universal City Studios, Inc., *, 464 U.S. 417 (1984).................... 11

*Stockfood America, Inc. v. Pearson Education, Inc.*, 2012
    WL 5986791at *6 (November 29, 2012) ................................................................ 16

*Subafilms Ltd. v. MGM-Pathe Commission Co.*,
    24 F.3d., 1088, 1098 (9th Cir. 1994) .................................................................. 16

*Tableau Software Inc. v. Any Aspect KFT*, 2008
    WL 5429819 at *4 (Aug. 12, 2008)...................................................................... 18

*Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67 (2d Cir. 1988).................... 16

*Yesh Music v. Lakewood Church*, 2012
    WL 524187 at *9 (S.D.Tex., February 14, 2012) ................................................. 17

Plaintiff Perfect 10's Opposition to Defendants' Motion for Partial Summary Judgment

**Statutes**

17 U.S.C. § 101 ........................................................................................................ 23

17 U.S.C. §106 ........................................................................................... 6, 17, 21, 23

17 U.S.C. §107 ...................................................................................................... 1, 7

**Other Authorities**

4 Melville B. Nimmer & David Nimmer,
    Nimmer on Copyright § 14.05, at 14-96 (1996) .................................................. 16, 17

S. Rep. No. 105-190, at **44 (1998) ............................................................................ 10

1   **I.   INTRODUCTION AND SUMMARY OF ARGUMENT**

2       Defendants Yandex N.V., Yandex LLC, and Yandex Inc., collectively

3   "Yandex" or "Defendants" have filed a motion for summary judgement regarding fair

4   use and extraterritoriality (the "Motion").   Defendants fail to meet their burden.  Their

5   Motion disregards applicable case law, is fraught with inconsistencies, and should be

6   denied.

7       **A.   FAIR USE**

8       Fair use calls for a "case-by-case analysis."  *Perfect 10 Inc. v. Amazon.com,*

9   *Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007).   Such an analysis applied to the facts and

10  circumstances here, demonstrates that Yandex should not be entitled to a fair use

11  defense, for multiple reasons.

12      First, fair use is only available to entities that operate in good faith.

13  *Amazon.com*, 508 F.3d at 1164.  Yandex's refusal to process DMCA notices and its

14  willingness to misappropriate other's property, is a demonstration of bad faith that

15  precludes a fair use defense.

16      Second, Yandex does not use thumbnails as pointers to third-party information

17  sources.  *See Amazon.com*, 508 F.3d at 1165.  Instead Yandex uses thumbnails in a

18  non-transformative fashion to merely display full-size infringing images.

19      Third, Yandex has not met its burden of proving that its use of approximately

20  40,000 Perfect 10 thumbnails (as compared to 1,500 in *Perfect 10 v. Amazon.com*), has

21  not negatively impacted the market value of Perfect 10's larger images.  *Id.* at 1163

22  (citing 17 U.S.C. §107).

23      Fourth, the Ninth Circuit substantially relied on Google's perceived public

24  benefit.  Yandex provides no similar apparent benefit to the U.S. public. *Id.* at 1165.

25      Finally, Yandex's Motion does not address its fotki.yandex.ru thumbnails,

26  which are surrounded by Yandex ads and used exclusively to display full-size images

27  hosted on Yandex servers.  Such thumbnails cannot possibly be deemed to be fair use.

28  *See id.* at 1165.

Yandex has failed to apply the four fair use factors to the facts of this case. Instead, Yandex attempts to piggy-back off a preliminary ruling from years ago, with vastly different facts. Yandex has failed to meet its burden to prove its affirmative defense. At the minimum, there are genuine disputed issues of material fact as to whether Yandex's *knowing* exploitation of 40,000 Perfect 10 thumbnails is a fair use.

## B.   EXTRATERRITORIALITY

Yandex's "extraterritoriality" arguments fail for a number of reasons. First and foremost, because yandex.com was hosted in the United States during the period covering all of the 51,960 links and images at issue in Yandex's motion, Yandex's failure to expeditiously remove those infringing images and links  should subject it to liability for contributory copyright infringement under the Ninth Circuit test espoused in *Amazon.com.  See id* at 1172. That test, which clearly applies to U.S. hosted websites such as Google (and thus should apply to yandex.com), was not restricted to the provision of links to U.S. hosted websites. It applies to all links, including the 51,960 links at issue here.

Secondly, yandex.com has copied onto its servers and *directly infringed* at least 20,000 Perfect 10 thumbnail images in this country. Consequently, even if such infringments were deemed to be fair use (and they should not, as explained in Section III below), infringments involving yandex.com would *not* have occurred entirely outside the U.S. as is required for the U.S. Copyright Act to not apply.

Third, Yandex's Motion is based on the fundamentally incorrect proposition that the harm caused by an infringing website is restricted to the country in which it is hosted. Yandex disregards the Ninth Circuit's language in *Amazon.com* which recognizes the worldwide interconnectivity of the Internet. When Yandex or any other website makes an infringing image available *on the Internet*, that image becomes available 'to a worldwide audience," and thus downloads in the U.S. become inevitable. *See Amazon.com,* 508 F.3d at 1172.

Fourth, Perfect 10 can also show that the U.S. Copyright Act applies by

demonstrating that U.S. downloads have occurred, which it has done in a number of ways, including by hiring U.S. investigators to download images from Yandex search engines and Yandex-hosted websites.  Such evidence constitutes acts of direct infringement within the jurisdiction of the Copyright Act.  See Section IV.C below.

Yandex's extraterritoriality arguments are further flawed because websites routinely change hosts.  Under Yandex's "analysis," a Yandex link would be infringing one day but not the next.  See Section IV.D below.

## II.    STATEMENT OF FACTS

Perfect 10 incorporates by reference the statement of facts appearing in its Motion for Partial Summary Judgment/Summary Adjudication.  Dkt. No. 105.

Yandex.com has been hosted in the United States from June 2012 to March 2013, along with the links and images it provided to yandex.com users.  Borkovsky Decl. ¶7.  Yandex has stored at least 40,000 Perfect 10 thumbnails on its yandex.com U.S. servers and used those images in its search engine operation.  A significant percentage of yandex.com users come from the United States.  Declaration of Dr. Norman Zada filed concurrently ("Zada Decl.") ¶27, Exh. 23.

### Yandex Continues To Demonstrate Bad Faith

Despite what are now in excess of 245 Perfect 10 DMCA notices, Yandex continues to place its ads next to at least 4,000 full-size Perfect 10 images, without compensating Perfect 10 for its property.  Even though Yandex has purportedly removed approximately 20,000 infringing Perfect 10 thumbnails (after waiting many months to do so), it is continuing to provide approximately 20,000 other infringing thumbnails, which in many cases are identical to the ones it removed.  Zada Decl. ¶¶5-8, Exhs. 2-4.  Yandex continues to copy millions of images from *known* infringing websites for its image search results, which it links to larger infringing versions of those same images and places ads around.  In total, Yandex is continuing to copy at least 4.2 million images from known infringing websites that have been repeatedly identified in Perfect 10's DMCA notices, and provide at least 1.3 million websearch

links to those websites.  Zada Decl. ¶16, Exh. 12, p. 15.  As a result, Yandex has not disabled Yandex user access to tens of thousands of infringing Perfect 10 images.

Yandex has recently refused to process any of Perfect 10's 14 recent DMCA notices which identified at least 7,000 infringements on paysites hosted in the United States to which Yandex provides thousands of links.  In response to such notices, Yandex has stated, "Your notices are deficient, among other reasons, because they fail to identify any Yandex search result that ***directly links*** to allegedly infringing content…. Your notices are also deficient because they are emails with an accompanying attachment of screenshots, which are unnecessary, insufficient and incompliant with applicable legal requirements …."   Zada Decl. ¶16, Exh. 12.

**Differences Between The Functionality And**

**Commerical Exploitation Of Yandex and Google**

Yandex offers three different search engines, yandex.com (which does not place ads next to thumbnails), yandex.ru (which frequently places ads next to thumbnails), and fotki.yandex.ru, which always places ads next to thumbnails.  When a user clicks on a Yandex thumbnail, the user is taken to a Yandex 'full size image view" page, which appears to display the largest full-size version of that thumbnail image Yandex can locate.  Yandex frequently places its own ads next to that image.  No text or logo from third-party websites appears on that page.  The website from which the thumbnail was created normally is different from the website used by Yandex to display the full-size image.  Zada Decl. ¶¶6-9 Exhs. 2-5.

Fotki.yandex.ru surrounds its thumbnails with ads and links those thumbnails exclusively to webpages hosted by yandex.ru and not to any third-party websites or information sources.  Zada Decl. ¶6, Exh. 2.

In 2005, when a user clicked on a thumbnail created by Google, the user  was sent to a second Google page, most of which consisted of material from the third party site from which the thumbnail was created.   Approximately two-thirds of that page was under the control of the third party website.  To the extent that Google ads

appeared, the revenue from clicks on those ads was split between Google and the third party website, with most of the revenue going to the third party website.  Zada Decl. ¶10, Exh. 6.

### Damage To Perfect 10's Business Between 2005 and 2013

Perfect 10 filed its Motion for Preliminary Injunction against Google on August 24, 2005 in *Perfect 10, Inc. v. Google, Inc.*, Case No. CV 04-9484-AHM (N.D. Cal)("*Perfect 10 v. Google*"), (Dkt. No. 22) ("2005 Motion for Preliminary Injunction").   At that time, the revenue from its business was over $1 million a year and it was earning as much as $5,000 a month from selling images to be viewed on cell-phones, just in Europe alone.  Zada Decl. ¶3.   Since that time Perfect 10 has been forced to fire virtually all of its employees.  It currently has only two employees, Dr. Norman Zada, its President, and Melanie Poblete, an in-house paralegal.  Its revenues are currently less than $60,000 a year.  Zada Decl. ¶3.

### Traffic To Yandex

According to Wikipedia, yandex.ru and yandex.com receive approximately 150 million queries each day.  According to alexa.com, approximately .5% of the traffic to yandex.ru comes from the United States.  Zada Decl. ¶27, Exh. 23.  Thus yandex.ru receives approximately 750,000 search queries from U.S. users *each day*.

### Yandex's Metrika Click Monitoring Program

Yandex has a program called Yandex Metrika which allows the web site owner to "watch every click, scroll and keystroke peformed on your website as if you were looking through the eyes of the visitor." The source code for fotki.yandex.ru, which Yandex hosts, contains three mentions of the term "Metrika."  The source code for Yandex image search in some cases contains hundreds of occurrences of the term "counter."  Zada Decl.  ¶24, Exh. 20.  Yandex also places cookies on user's computer which tracks what they download, and offers a Yandex browser which tracks downloads as well.  Zada Decl. ¶¶25-26, Exhs. 21-22.  According to computer expert Stefan Voit, Yandex runs its Metrika tracking program on its fotki.yandex.ru servers.

See Declaration of Stefan Voit filed concurrently, ("Voit Decl.") ¶¶3-4, Exh. 1.

Perfect 10 has repeatedly asked Defendants by way of both requests for documents and interrogatories, for data regarding downloads from their servers by U.S. users, clicks on Yandex ads next to Perfect 10 images, and clicks on Yandex-created Perfect 10 thumbnails.  Defendants have refused to produce such data.

Perfect 10 has provided Yandex with evidence of at least 700 Perfect 10 images hosted on yandex.ru and narod.ru servers, which have been displayed to U.S. users via U.S. based search engines, including Google and Bing.  Perfect 10 has found additional evidence that such search engines have been displaying images hosted by Yandex since at least 2004.  Perfect 10 has also found evidence of at least 40 uploads of Perfect 10 images from tumblr.com, a U.S. hosted website, to fotki.yandex.ru servers.  Zada Decl. ¶¶19-23, Exhs. 15-19, Exh. 1.

## ARGUMENT

## III.   DISPUTED ISSUES OF FACT REGARDING FAIR USE AND DIRECT INFRINGEMENT

Perfect 10 has alleged that yandex.ru and yandex.com knowingly create and offer tens of thousands of infringing Perfect 10 thumbnails which are used to display full-size Perfect 10 images in violation of Perfect 10's exlusive reproduction and display rights.  FAC ¶19; 17 U.S.C. §106.  Yandex.com thumbnails have been hosted in the United States.  Borkovsky Decl. ¶7.  Yandex seeks to have such direct infringement claims dismissed on the basis of fair use.

### A.   YANDEX'S USE OF P10 THUMBNAILS IS NOT FAIR USE

The facts and circumstances regarding Yandex's use of thumbnails can be readily distinguished from those of *Amazon.com.*  A thoughtful analysis of the four fair use factors shows that they strongly favor Perfect 10, not Yandex.

At trial the defendant in an infringement action bears the burden of fair use.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).  On a motion for summary judgment, a court may resolve the issue of fair use only when "no material

1  facts are in dispute." *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th

2  Cir. 2008)(*citing Mattel Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 800 (9th Cir.

3  2003))., 353 F.3d at 800).  Yandex has failed to meet that burden.

4  Fair use is a mixed question of law and fact and calls for a "case-by-case

5  analysis."  *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560

6  (1985); *Amazon.com*, 508 F.3d at 1163(*citing Campbell*, 510 U.S. at 577-78).   The

7  Ninth Circuit has recognized that the doctrine is "so flexible as to virtually defy

8  definition."  *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1171 (9th Cir. 2012)

9  (*citing Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir.

10  1996).  Fair use is determined on the basis of the following non-exlusive factors:

11
12  (1) purpose and character of the work, including whether such use is
    of a commercial nature or is for nonprofit educational purposes;

13  (2) nature of the copyrighted work;

14
15  (3) amount and substantiality of the portion used in relation to the
    copyrighted work as a whole; and

16
17  (4) the effect of the use upon the potential market for or value of the
    copyrighted work.

18  17. U.S.C. §107.  The balancing of the four fair use factors must be weighed against

19  Yandex's burden to establish fair use.  *See Monge*, 688 F.3d at 1184.  As the defendant

20  bearing the burden of proof, Yandex's conclusory statement that the facts are identical

21  to those in *Amazon.com* comes nowhere close to meeting its burden.  Motion 13:13-15.

22  Yandex does not even address each of the four fair use factors.  The facts and

23  circumstances here are very different from those in *Amazon.com*.

24  **1.      Purpose and Character of the Work**

25  The purpose and character factor was the only one that the Ninth Circuit found

26  in favor of Google, but heavily so.  *See Amazon.com*, 508 F.3d at 1164-1167.  The

27  Ninth Circuit's reasoning that Google's use of Perfect 10 thumbnails was

28  transformative, was based on three considerations, none of which are present here.

### (a)   Yandex Thumbnails Direct The User To A Yandex Webpage, Not To A Third-Party Information Source

Yandex uses thumbnails not to direct the user to a third-party information source, but rather to a Yandex-created second page that displays a similar full-size version of the image, often adjacent to Yandex ads.  Zada Decl.  ¶¶6-10, Exhs. 2-6.  Such use of an infringing thumbnail merely to display the larger work supersedes the use of Perfect 10's copyrighted works.[1]  *See Amazon.com*, 508 F.3d at 1164.

Ninth Circuit found that Google's use of Perfect 10 thumbnails was "transformative" in part on the basis that they were used as an "electronic reference tool" which "transformed the image into a pointer directing a user to a source of information." *Id.* at 1165.  In that case, which dealt with Google's use of Perfect 10 thumbnails from 2005, when the user clicked on a Google thumbnail, most of the resulting page that appeared on the user's screen consisted of the third party website, which was framed in the lower two-thirds of that page.  In many instances the portion of the third-party website that appeared consisted entirely of text.  Zada Decl.  ¶10, Exh. 6.  While Perfect 10 did not agree with Google's use, it certainly enabled the user to review material on the third party website and determine whether or not to further explore that material.

Here, however, when a Yandex user clicks on a Yandex created Perfect 10 thumbnail, the user is presented with a second page created solely by Yandex, typically showing the full-size image, while ***it shows none of the related third party website.*** Zada Decl. ¶¶6-7, 9, Exhs. 2-3, 5.  In other words, Yandex is not using the thumbnail as a "pointer directing a user to a source of information," it is using the thumbnail to display a full-size image on its own webpage.  And, in the case of yandex.ru, Yandex frequently places its ads on that webpage as well, making such use commercial in

---

[1]  A work is transformative when it "does not merely supersede the objects of the original creation" but rather "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Amazon.com*, 508 F.3d at 1146.

1 nature.  *See Harper & Row*, 471 U.S. at 562. (commercial use "weigh[s] against a

2 finding of fair use" because "the user stands to profit from exploitation of the

3 copyrighted material without paying the customary price.")  Yandex even goes so far

4 as to select what appears to be the largest image available to it, which is normally from

5 a website unrelated to the website from which Yandex created the thumbnail.[2]  Zada

6 Decl. ¶9, Exh. 5.  Yandex thus does not provide the "public benefit" that the Ninth

7 Circuit recognized that Google provided in *Amazon.com* – it does not "direct a user to

8 a source of information" but rather "supersedes the use of the original work" and is

9 commercial in nature.  *See Amazon.com,* 508 F.3d at 1164, 1165.

10  Yandex has provided no evidence that any Yandex users have visited Perfect 10

11 after clicking on any of 40,000 Yandex misappropriated Perfect 10 thumbnails.

12  **(b) Yandex Has Not Acted in Good Faith**

13  The Ninth Circuit made clear in its 2007 ruling that "a party claiming fair use

14 must act in a manner generally compatible with principles of good faith and fair

15 dealing."  *Amazon.com*, 508 F.3d at 1164 fn. 8, (*citing Harper & Row*, 471 U.S. at

16 562-63 (1985)).  It found that Google likely satisfied that requirement because Google

17 "only incidentally indexes infringing websites.  This incidental impact does not amount

18 to an abuse of the good faith and fair dealing underpinnings of the fair use doctrine."

19 *Id.* at 1164.   The Ninth Circuit distinguished Google's practice from alleged infringers

20 who "intentionally misappropriated the copyright owners' works."  *Id.*  In contrast, the

21 use of a ***known*** infringing thumbnail to link to a full-size infringing image does not

22 comport with principles of good faith and fair dealing and is not a fair use.

23  In *Amazon.com*, Google represented that it "diligently responds to notices of

---

[2]  Perfect 10 believes that Yandex has ended Google's practice of displaying a substantial portion of the related third party website upon clicking a thumbnail, because Yandex is trying to keep all of the user traffic at yandex.com and yandex.ru by providing no material from the third-party website, other than possibly its full-size image.  In this regard, Yandex is not acting as an information source but rather as an infringing website that is simply using massive quantities of other people's property for its own commercial gain.  *See Amazon.com*, 508 F.3d at 1165.

1    alleged infringement," that Google "excludes sites with … adult, or mature

2    content…from its AdSense [advertising] program," and that "Google's economic

3    interests are not intertwined with the exploitation of copyrighted materials."  Zada

4    Decl. ¶11, Exh. 7.

5        Here, Yandex can make no such claims.  Yandex refused to process DMCA

6    notices under any circumstances, places ads next to highly explicit material, and

7    exploits copyrighted materials without compensating rights holders.   Yandex is

8    continuing to use thousands of known infringing Perfect 10 thumbnails to display

9    thousands of full-size Perfect 10 images.  Zada Decl. ¶¶5-8, 16, Exhs. 2-4, 12.  In fact,

10   Yandex has recently refused to process Perfect 10 DMCA notices identifying

11   thousands of infringements on massive paysites hosted in the United States, using the

12   argument that because it does not link immediately to any infringing work, it has no

13   responsibility to stop sending traffic to known websites engaged in criminal activity.[3]

14   Zada Decl. ¶16, Exh. 12.

15       The whole purpose behind Yandex's present motion is to ask this Court for a

16   green light to continue its unfettered exploitation of copyrighted works overseas.

17   Yandex's clear demonstration of bad faith substantially differentiates this case from

18   *Amazon.com* and should lead to a ruling that Yandex's use is not fair.

19              **(c)    Yandex Offers No Benefit To The U.S. Public**

20       The Ninth Circuit's ruling also relied largely on a finding that the nature of

21   Google's search engine offered a great benefit to the U.S. public.  *See Amazon.com,*

22   508 F.3d at 1166.  There is no similar "public benefit" to allowing a Russian based

23

24   ―――――――――――――――――――――
     [3]  It is very rare that a search engine provides a link directly to an infringing  work or
25   otherwise illegal material, such as a movie, a counterfeit drug, or a stolen credit card.
     Consequently, Yandex's position is that it is not required to remove more than perhaps
26   1 link in 1000 to websites involved in illegal activity.  Zada Decl. ¶16, Exh. 12, p. 15.
     This position is directly contrary to the legislative history of the DMCA, which
27   condemns the providing of links to websites that offer movies and other obviously
     copyrighted materials, whether the link goes immediately to the illegal materials or
28   not.  S. Rep. No. 105-190, at **44 (1998).

search engine which claims that few Americans use it, to exploit American works.

### 2.      Nature of the Copyrighted Work

The Ninth Circuit found that this factor slightly favored Perfect 10, recognizing that Perfect 10's photographs "consistently reflect professional, skillful and sometimes tasteful artistry." *Amazon.com,* 508 F.3d at 1167, fn. 9.

### 3.      Amount And Substantiality Of The Use

The Ninth Circuit found that this factor favored neither party. *Id.* at 1167-1168. However, here Yandex has used approximately 40,000 Perfect 10 thumbnails, whereas Google used approximately 1,500 Perfect 10 thumbnails of Perfect 10's image library. Zada Decl. ¶12, Exh. 8. As a result of the enormous disparity in the number of thumbnails used, this factor should favor Perfect 10.

### 4.      Effect Of The Use On The Market

As Yandex's use of thumbnails is not transformative but rather is a superseding use as noted above, market harm is presumed. *Leadsinger,* 512 F.3d at 531, *quoting Sony Corp. of Am. v. Universal City Studios, Inc.,* , 464 U.S. 417, 451 (1984) ("when 'the intended use is for commercial gain,' the likelihood of market harm 'may be presumed'"). Further, as fair use is an affirmative defense, Yandex has the burden to offer evidence of the lack of market harm, *yet offers none*. *See Monge,* 688 F.3d at 1181. "If the defendant's work adversely affects the value of any of the rights in the copyrighted work … the use is not fair." *Harper & Row,* 471 U.S. at 568. Because of the demonstrable destruction of Perfect 10's business, this most important factor swings dramatically in Perfect 10's favor. Zada Decl. ¶3; *Id.* at 567 ("…the Act focuses on 'the effect of the use upon the potential market value for or value of the copyrighted work." This last factor is undoubtedly the single most important element of fair use.")

The *Amazon.com* Court addressed facts and circumstances indicating that Perfect 10 was selling cell phone downloads, and had a significant yearly revenue. Since that time, Perfect 10 has been forced to close its cell-phone downloading

business (which was making approximately $5,000/month at the time Perfect 10 filed its 2005 Motion for Preliminary Injunction [Zada Decl. ¶3], and close its magazine. Perfect 10 currently has two employees, and revenues of less than $60,000 a year. Zada Decl. ¶3.

The Ninth Circuit found that Google's use of thumbnails did not hurt Perfect 10's market for full size images because they were not a substitute for full-sized images, noting their transformative nature. *See Amazon.com,* 508 F.3d at 1168. Here, as noted, Yandex's use of thumbnails to display identical full size images on Yandex created pages is not transformative as they directly substitute for same materials provided by Perfect 10's website. A user has no reason to pay Perfect 10 when it can view the same images for free from Yandex.

In its *Amazon.com* appellate papers, Google argued that the District Court in *Perfect 10 v. Google* had found that Perfect 10 had presented no evidence of downloads of its full-size images by Google users, and thus no evidence of harm to its full-size images. Zada Decl. ¶11, Exh. 7. However, here Perfect 10 has provided evidence of **billions** of unauthorized views and downloads of its images from websites to which Yandex links Perfect 10 thumbnails. Zada Decl. ¶15, Exh. 11. In other words, there is now massive evidence of damage to Perfect 10's full-size images unlike the facts and circumstances before the *Amazon.com* Court.

Finally, in comparison to 2005, when approximately 1500 Perfect 10 thumbnails were at issue, Google was linking those thumbnails to websites which typically infringed 5-10 Perfect 10 images. Now, Defendants have infringed approximately 40,000 Perfect 10 thumbnails and are linking them to websites that on average each infringe at least 1,000 Perfect 10 images. Zada Decl. ¶12, Exh. 8. The damage to Perfect 10's business is many times greater than it was in 2005.

In order to even begin to estimate the damage that Yandex's unauthorized use of 40,000 Perfect 10 thumbnail images has caused to Perfect 10, it would be necessary to total the number of Yandex users that have viewed  Perfect 10 images at Yandex, as

1    compared to the percentage of those users that have joined perfect10.com.  Because

2    Yandex installs Yandex web browsers and cookies on users computers, it could track

3    users as they leave Yandex and sign up for perfect10.com, if that ever happened.  Zada

4    Decl. ¶¶25-26, Exhs. 21-22.  It is not surprising that Yandex has not provided that

5    information, which would likely show that millions of Yandex users have viewed

6    Perfect 10 images at Yandex and none have subscribed to Perfect 10.  Yandex does not

7    even credit Perfect 10 as being the source of 40,000 thumbnails that it knows belong to

8    Perfect 10.  The damage caused by each infringing thumbnail also depends on the

9    number of clicks on that thumbnail, which relates to the number of additional

10   unauthorized copies of Perfect 10's full-sized works that are being created via Yandex

11   and dispersed throughout the world.  Yandex comes nowhere close to meeting its

12   burden as it has provided none of this information.

13   With respect to the potential market for cellular phone downloads, the Ninth

14   Circuit noted that there existed "a market for reduced-size images" of Perfect 10's

15   photographs, however found the "potential harm to Perfect 10's market [for cell phone

16   downloads] remains hypothetical."  *Amazon.com,* 508 F.3d at 1168.  The damage is no

17   longer "hypothetical" as that business went from generating Perfect 10 $5,000/month

18   revenue from Europe alone, to nothing.  Zada Decl. ¶3.

19   **B.    FOTKI.YANDEX.RU THUMBNAILS ARE CLEARLY NOT FAIR**

20   **USE**

21   In addition to the yandex.com and yandex.ru search engines, Yandex also

22   operates a search engine, fotki.yandex.ru, which searches exclusively for full-size

23   images stored on Yandex servers.  It provides links only to Yandex hosted pages –

24   none to  third-party "information sources." Four Yandex ads typically appear next to

25   thumbnails as well as full-size images.[4]  Zada Decl. ¶6, Exh. 2.  Fotki.yandex.ru's

26

27   _____

     [4] Although Yandex continues to place four Yandex ads on each page of
28   thumbnails, Yandex appears to have very recently stopped placing ads on some of the
     pages reached after clicking on the thumbnails.

operation is similar to that of an infringing website with a search function, not a search engine.

With respect to the first fair use factor, fotki.yandex.ru thumbnails are highly commercial as they are surrounded by Yandex ads.  They are not transformative because they are not used to link to any third-party information source.  Fotki.yandex.ru thumbnails provide no public benefit to the U.S. public.  They are simply used to display full-size images on Yandex servers and to enhance Yandex's ad revenue.  Zada Decl. ¶6, Exh. 2.

With respect to the fourth factor, effect of use on the market, these thumbnails with their links to the corresponding full-size images simply act as a substitute to Perfect 10's thumbnails and full-size works.  As more and more users view and download such images, unauthorized copies of such images spread throughout the Internet, further damaging the value of Perfect 10's works.  Yandex has not even mentioned such thumbnails in its Motion, which clearly are not put to the same use as the Google thumbnails in *Amazon.com*.  As a result, Yandex's Motion regarding such thumbnails must be denied.

## IV.   PERFECT 10'S CONTRIBUTORY INFRINGEMENT CLAIMS ARE NOT EXTRATERRITORIAL

Defendants' extraterritoriality arguments with respect to contributory liability fail for multiple reasons as explained below.

The Ninth Circuit articulated the standard for contributory liability of Internet Service Providers ("ISPs"), which includes search engines as well image hosts, holding that "a computer system operator can be held contributorily liable if it has actual knowledge that specific infringing material is available using its system, can take simple measures to prevent further damage to copyrighted works, yet continues to

provide access to infringing materials." *Amazon.com*, 508 F.3d at 1172.[5]

In articulating this Internet-specific test, the Ninth Circuit recognized that "services or products that facilitate *access to websites throughout the world* can significantly magnify the effects of otherwise immaterial infringing activities" and that "Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. We cannot discount the effect of such a service on copyright owners." *Id.* The Ninth Circuit thus recognized that, due to the world-wide interconnected nature of the Internet, a search engine like google.com or yandex.com should be held contributorily liable under U.S. law when it provides links and user traffic to infringing websites regardless of their "geographical location" because it assists U.S. users in gaining *access* to the infringing materials offered by those websites. *See id.* Contrary to Yandex's Motion, there is no suggestion in *Amazon.com* that a search engine would only be liable for failing to expeditiously remove links to U.S. based websites.

The case law Defendants cite to regarding extraterritoriality does not address contributory liability in the context of ISPs for their actions on the Internet as recognized by the Ninth Circuit. *See Amazon.com*, 508 F.3d at 1172.

## A.   YANDEX.COM WAS HOSTED IN THE UNITED STATES

Defendants ignore that yandex.com was hosted in the United States during a ninth month period covering all of the 51,960 links and images which Defendants claim should be excluded for extraterritorial reasons.   Under the Ninth Circuit's test for contributory liability, Yandex.com's failure to expeditiously remove any of the 51,960 infringing images/links at issue in the Motion should make it liable for contributory copyright infringement. *See, Amazon.com*, 508 F.3d at 1172.  Yandex provides no logical explanation as to why this test, which clearly applied to Google

---

[5] Perfect 10 has provided notice to Yandex of specific infringing materials. Yandex refused for months to remove those links. *See* Perfect 10's Motion for Partial Summary Judgment/Adjudication (Dkt. No. 105).

and other U.S. hosted search engines such as yandex.com, should not be applied here. The fact that yandex.com was hosted in the U.S. should be enough by itself to defeat Defendant's Motion.

### B.   YANDEX ACTS OF INFRINGEMENT OCCUR IN THE U.S.

It is well recognized that "the Copyright Act only does not reach activities that take place *entirely* abroad." *Subafilms Ltd. v. MGM-Pathe Commission Co.*, 24 F.3d., 1088, 1098 (9th Cir. 1994). In 1998, the Ninth Circuit in *Los Angeles News* made clear that for the Copyright Act to apply, "at least one alleged infringement must be completed entirely within the United States." *Los Angeles News Servs. v. Reuters Television Int'l Ltd.*, 149 F.3d 987, 990 (9th Cir. 1998). The Ninth Circuit made no specification that such "one alleged infringement" cannot be comprised of contributory actions. *See id*. The Ninth Circuit in *Los Angeles News* recognized that *Subafilms* concerned liability solely on the "authorization of infringing acts." *Id*. at 991(citing *Subafilms*, 24 F.3d. at 1099). The Ninth Circuit rather adopted the Second Circuit's holding that, because "copyright holders acquire an equitable interest in infringing works produced in the United States as soon as they come into being" a plaintiff is entitled to recover damages flowing from exploitation abroad of domestic acts of infringement. *Los Angeles News*, 149 F.3d 987, 992 (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.05, at 14-96 (1996)).

Courts have further recognized that "predicate acts" of infringement occurring within the United States fall within the scope of the Copyright Act. *See, e.g., Seals v. Compendia Media Group*, 2003 U.S. Dist. LEXIS 2980, 10-11 (N.D. Ill. Feb. 27, 2003)(citing *Los Angeles News*, 149 F.3d 987, 992 (9th Cir. 1998); *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)). *See also Stockfood America, Inc. v. Pearson Education, Inc.*, 2012 WL 5986791at *6 (November 29, 2012) (predicate acts permitting further infringements abroad constitute an exception to the Copyright Act's extraterritorial reach).

Yandex.com has directly infringed Perfect 10 copyrights in the United States by

copying at least 20,000 Perfect thumbnails onto its U.S. servers.  The Copyright Act thus applies to all of yandex.com's related acts, including yandex.com's provision of links from those 20,000 thumbnails to corresponding full-size images as well as to other infringing websites.  In other words, even if the yandex.com thumbnails are determined to be fair use (and they should not for reasons explained in Section III above), the U.S. Copyright Act should still apply to Yandex's resulting contributory liability for providing links related to such direct infringements, which it failed to remove after receiving notice.  *See Amazon.com*, 508 F.3d at 1172.

In the alternative, Yandex at a minimum is contributorily liable for the infringement of Perfect 10's images by knowingly making available U.S. hosted infringing thumbnails, links, and html code needed to display full-size infringing images to Yandex users.  Such actions constitute "predicate acts" in that they encourage infringement overseas.

Courts have further recognized that "a distinction should be drawn between purely extraterritorial conduct…and conduct which crosses borders, so that at least a part of the offence takes place within the United States."  *Yesh Music v. Lakewood Church*, 2012 WL 524187 at *9 (S.D.Tex., February 14, 2012)(citing 4 *Nimmer on Copyright* §17.02, at 17-20).  Part of the infringement here certainly took place in the United States.

## C.     YANDEX CONTRIBUTES TO U.S. DOWNLOADS

Perfect 10 has also demonstrated that the U.S. Copyright Act applies by presenting evidence of downloads in the United States.

Under *Amazon.com*, Yandex search engines yandex.com, yandex.ru, fotki.yandex.ru and its hosting service narod.ru make their images available to a worldwide audience, and thus contribute to the direct infringement by U.S. users who download such images.  In the process, Perfect 10's exclusive right of reproduction, as

well as distribution, is violated.  17 U.S.C. §§106(1),(3).[6]  It is well established that "the acts of uploading and downloading [infringing works] are each independent grounds of copyright infringement.  *Columbia Pictures Industries, Inc. v. Fung*, 2009 WL 6355911 at *8 (Dec. 21, 2009, C.D. Cal); *see also Tableau Software Inc. v. Any Aspect KFT*, 2008 WL 5429819 at *4 (Aug. 12, 2008) (download of infringing software conducted by wife of officer of plaintiff constituted act of infringement in the United States).  Further, for the Copyright Act to apply, only "at least one alleged infringement must be completed entirely within the United States."  *Los Angeles News,* 149 F.3d at 990-991.

The Northern District specifically recognizes that evidence provided by a plaintiff's investigator demonstrating the ability to access infringing material in the United States, is sufficient to establish that acts of direct infringement were properly within the jurisdiction of the Copyright Act.  *See* Zada Decl., ¶30, Exh. 26 (*Louis Vuitton Malletier v. Akanoc Solutions, Inc.*, Case No. CV-07-03952-JW, Dkt. No. 281 at 5 (N.D. Cal. March 19, 2010)("*Louis Vuitton* March 19, 2010 Order") (plaintiff's investigator's purchase of counterfeit items from website hosted on defendants' servers constituted acts of direct infringement within the jurisdiction of the Copyright Act sufficient to deny defendants' Rule 50 motion for judgment as a matter of law).

Perfect 10 provides evidence herein that Perfect 10 U.S. investigators Mark Woodward, Marc Yelloz, and Mike Saz have downloaded infringing Perfect 10 images offered by yandex.com, yandex.ru, fotki.yandex.ru and narod.ru.  *See* Declarations of Mark Woodward, Marc Yelloz, and Mike Saz, filed concurrently.  This is sufficient under *Louis Vuitton* and *Los Angeles News*, to establish the application of the U.S. Copyright Act.  *See Louis Vuitton* March 19, 2010 Order;  *Los Angeles News,* 149 F.3d at 990-991.

---

[6] Yandex.com and yandex.ru offer and display full-size Perfect 10 images, and Yandex hosts fotki.yandex.ru and narod.ru, all of which offer to U.S. users full-size infringing Perfect 10 images to view or download.   Zada Decl. ¶¶6-7, Exhs. 2-3.

1    Yandex simply claims that it does not keep track of downloads by U.S. users,

2    which is not enough to meet its burden.  Motion at 15.

3    In addition, Perfect 10 provides evidence that Google, Bing, AOL, and other

4    U.S. search engines have copied and made available to their hundreds of millions of

5    users, well over  700 infringing Perfect 10 images from Yandex hosted websites

6    fotki.yandex.ru and narod.ru, going back to 2004.  Zada Decl., ¶¶19-22, Exhs. 15-18.

7    Once such widely used search engines incorporate such infringing Yandex hosted P10

8    images in their offerings, it is a forgone conclusion that U.S. users will download such

9    images.

10    Furthermore, Perfect 10 has found evidence that at least 40 Perfect 10 images

11    were likely uploaded to Yandex hosted websites from tumblr.com, a U.S. based

12    website.  Zada Decl. ¶23, Exh. 19.

13    Finally, Dr. Zada downloaded thousands of images from both yandex.ru and

14    yandex.com for use in Perfect 10's DMCA notices.  Zada Decl. ¶5.

15    In addition, the enormous traffic to Yandex search engines statistically

16    guarantees that downloads of Perfect 10 images from yandex.com and yandex.ru by

17    U.S. users have taken place.  For example, alexa.com states that .5% of the traffic to

18    yandex.ru comes from the United States, and Wikipedia estimates that yandex.ru

19    receives 150 million queries each day. Zada Decl. ¶27, Exh. 23.  This means that

20    yandex.ru receives approximately 750,000 queries from U.S. users each day, or 22.5

21    million queries each month.  As noted above, even if one download of a particular

22    Perfect 10 image took place in connection with such queries, a direct infringement has

23    occurred in the United States.

### 1.    Disputed Issues of Fact Regarding Download Data

25    There are further disputed issues of fact as to whether Yandex is withholding

26    evidence of direct user downloads when it claims that it does not track user downloads

27    of full-size images either from its "full-size image view" pages, or from its

28    fotki.yandex.ru and narod.ru hosting services.  Perfect 10 has repeatedly requested data

1  regarding user downloads as early as October of 2012.  Yandex however now states

2  that it does not track such downloads. Motion 3:18-20; 4:16-20, 26-27; 15:8-13.

3  Yandex's denial is both inconsistent with its other statements and is contrary to

4  its business' needs to keep track of clicks on its ads.

5  For one thing, Yandex states that it stores "the most popular Fotki

6  [fotky.yandex.ru] images …." ).  Declaration of Tatiana Bakharevskaya, ¶7.  However,

7  *Yandex does not explain how it determines "the most popular Fotki images" without*

8  *keeping track of each fotki image's views and downloads.*  Nor can it determine

9  whether such images belong to Perfect 10 just based on their URL as Ms.

10  Bakharevskaya claims.  In addition, Yandex's advertising program places ads next to

11  Perfect 10 images.  Zada Decl. ¶¶6-7, Exhs. 2-3.  For the purposes of determining the

12  efficiency of such ads, Yandex undoubtedly keeps track of the number of times the

13  page containing the Perfect 10 image is viewed as compared to the number of clicks on

14  each ad.  In order to view the page, there must be a download of the image into the

15  user's memory cache.  *Amazon.com* 508 F.3d at 1156.  Thus Yandex must keep track

16  of such downloads.

17  Furthermore, Yandex's protestations that it does not keep track of user

18  downloads are contradicted by Yandex "Metrika documents" as well as fotki.yandex.ru

19  source code, and is inconsistent with other statements Yandex makes.  Voit Decl. ¶¶3-

20  4, Exh. 1.

21  "Yandex Metrika" is a program that Yandex makes available to website owners

22  hosted on fotki.yandex.ru and narod.ru, that enables them to track visitor clicks and

23  downloads.  Metrika documents show that Yandex offers to third party webmasters the

24  ability to: "*watch every click, scroll and keystroke* performed on your website as if you

25  were looking through the eyes of the visitor," "replay user actions exactly as they

26  occurred, to see what happens on each page, how users navigate, right down to every

27  mouse movement, keystroke and click" and that "the click map measures and displays

28  statistics for clicks on links, buttons, etc on your site." Zada Decl. ¶24, Exh. 20.  The

fotki.yandex.ru source code contains mentions of "statcounter_metrika" strongly suggesting that Yandex is using its Metrika download tracking program on such pages. It only stands to reason that if Yandex offers such tracking programs to its users, it maintains at least as much information about user behavior itself.  In the opinion of computer forensics expert Stefan Voit, who Perfect 10 hired to examine fotki.yandex.ru, Yandex is running Metrika on its fotki.yandex.ru hosted web pages and is either tracking user downloads or has the ability to do so.  Voit Decl. ¶¶3-4, Exh. 1.

Yandex further concedes that it loads cookies onto its users computers which monitor the "web pages you visit, *content you retrieve* and advertising displayed…"  Yandex also offers a Yandex browser for users to download.  The terms and conditions that the user must agree to in order to download the Yandex browser includes the statement that Yandex is allowed to track "the websites visited, pages viewed, and files uploaded…"  Zada Decl. ¶¶25-26, Exhs. 21-22.

Further, Yandex has not presented evidence that yandex.com did not make copies of full size images within the United States to create its thumbnail images in violation of Perfect 10's reproduction right.  17 U.S.C. § 106(1).

### D.   YANDEX'S ANALYSIS IS FLAWED

Yandex's extraterritorial analysis is flawed for multiple reasons, including the definition of a website's "geographic location."   Because a website can switch hosts overnight,[7] as well as link to or display images from websites in other geographical locations, a website's "geographic location" is the entire world, not the specific country in which the host of the website is located as Yandex contends.  Once a website posts material, that material becomes available to a world audience, including search engines, who "facilitate access to [such] websites throughout the world and can significantly magnify the effects of….infringing activities." *Amazon.com*, 508 F.3d at

---

[7] For example, Yandex.com changed the country in which it is hosted during the pendency of this lawsuit.   Motion 4:3-5.

1146.  By sending a website traffic, Yandex contributes to infringement by that website that ultimately becomes worldwide.[8]

Because websites change their hosts, Yandex's analysis would lead to an unworkable situation where there would be contributory liability for providing a link one day but not the next.  There is no date on documents used by Yandex in its analysis.   But whatever date Yandex used, it appears to have done the lookup only one time for each alleged infringer.  Zada Decl. ¶18, Exh. 14.  Yandex should have analysed each host throughout the relevant period, which would be since at least October of 2011.  *Perfect 10 has readily found at least six websites listed in Defendants papers which were hosted in the United States during the relevant period, contrary to Defendant's claims.*  Zada Decl. ¶18, Exh. 14.

Yandex's analysis is also inconsistent.  For example, Yandex lists the URL kadets.info/showthread.php?t=57943 as being "extraterritorial" in its "Summary of foreign infringements" spreadsheet because kadets.info is hosted outside the U.S.  Grundy Decl., Exh. A.  However, the images of the page determined by that link are hosted on imagebam.com in the United states.  Zada Decl. ¶14, Exh. 10.   As a result of Yandex's self-serving and inconsistent analysis, huge infringing websites such as kadets.info, nudecelebforum.com, planetsuzy.org, shockmodels.su, urlgalleries.net, and ymorno.ru are treated as entirely "extra-territorial" in Yandex's analysis of 51,960 links, even though they frequently display infringing P10 images via Yandex from U.S. hosted websites.  Zada Decl. ¶¶13-14, 17, Exhs. 9-10, 13.

---

[8] Adoption of Defendants' arguments would destroy the careful balance created by the Ninth Circuit in *Amazon.com*, which left its test for contributory liability as to only tool left to copyright holders to stop search engine traffic to  infringing overseas websites.  If Defendants are successful in restricting the reach of the Ninth Circuit test to only links to U.S. hosted websites, massive infringers like nudecelebforum.com will be able to argue that they too are not subject to U.S. laws by making sure that the images they display are hosted outside of the United States.

## V.   PERFECT 10'S DIRECT INFRINGEMENT CLAIMS ARE NOT EXTRATERRITORIAL

### A.   DIRECT INFRINGEMENTS BY YANDEX.COM IN THE U.S.

Yandex.com admittedly has copied Perfect 10 thumbnails onto its servers in Nevada, from at least late June 2012 to mid March 2013.  Borkovsky ¶7.  Yandex does not dispute that such direct infringements in the United States are within the scope of the U.S. Copyright Act although it argues they are fair use.  However, even if this Court were to find in favor of Yandex on fair use (and it should not, for the reasons in Section III above), Yandex's inaction should still constitute contributory liability under *Amazon.com.  See Amazon.com,* 508 F.3d at 1172.

### B.   FOKTI.YANDEX.RU AND NAROD.RU DIRECT INFRINGEMENT BY DISPLAY

Perfect 10's direct infringement claims with respect to Yandex's display of Perfect 10 images hosted on Yandex's servers in Russia are also valid because they satisfy the "server test" for display as articulated by the Ninth Circuit, in violation of Perfect 10's exlusive display right.  *See* 17 U.S.C. §106(5); *See Amazon.com,* 508 F.3d at 1160.  Here, Yandex stores infringing Perfect 10 images on its servers in Russia, and has directly displayed those images to a worldwide audience including to users in the United States.  Perfect 10 has already provided evidence of user downloads of such images hosted on Yandex servers; such users necessarily viewed the display of such images in connection with their downloading.  See Declarations of Mark Woodward, Marc Yelloz, and Mike Saz filed concurrently.  At the minimum, Yandex is contributorily liable for the direct downloads of such images as described in detail above.

### C.   YANDEX.COM'S DIRECT INFRINGEMENT BY DISPLAY

Under the Copyright Act, the definition of display, is "*any showing of a 'copy' of the work*, either directly or by means of a film, slide, television image, or any other device or process." (emphasis added).   17 U.S.C. § 101.  In *Amazon.com*, the Court

adopted the District Court's "server test," which placed responsibility for the directly infringing display, not on the displaying site (which in that case was Google), but on the hosting site. *See Amazon.com*, 508 F.3d at 1161; *See also*, Zada Decl. ¶¶28-29, Exhs. 24-25.[9]

In any event, when yandex.com displays a full-size image hosted on yandex.ru servers – because they are servers owned by the same company, the server test should apply. A company with different geographical locations should not be allowed to escape liability by placing infringing images on servers outside the United States while it is operating a website in the U.S. Furthermore, Yandex suggests it keeps duplicate copies of images on all of its servers [Zada Decl. ¶6, Exh. 2, p. 15], so full-size Perfect 10 images may very well have been stored on yandex.com's U.S. servers. Bakareshkaya Decl. ¶7. At the minimum, such displays fall within the scope of the U.S. Copyright Act because yandex.com displayed the images via html code stored on servers in the U.S.

## VI.    PERFECT 10'S CONTRIBUTORY CLAIMS FOR OTHER INFRINGEMENTS

Defendants' Motion completely disregard thousands of other infringements identified by Perfect 10 on U.S. hosted websites to which Defendants provide thousands of links. Perfect 10 has sent at least 14 DMCA notices to Yandex beginning on May 8, 2013, *which Defendants have refused to process.* Zada Decl. ¶16, Exh. 12. Defendants justify their disregard of these key notices by mischaracterizing an email dated April 18, 2013 written by Perfect 10 attorney Natalie Locke. In that email, Ms. Locke simply noted that at present, Perfect 10 was aware of 232 notices sent to Defendants. Ms. Locke did not suggest that more notices might not be forthcoming.

The fourteen notices which Defendants disregard are very important because

---

[9] The Ninth Circuit server test was a preliminary ruling made before any discovery had taken place.

they identified at least 7,000 infringing Perfect 10 images offered by the paysites giganews.com, and usenet.net among others.  These sites, ***which are hosted in the United States***, are arguably the worst and most massive infringing paysites on the planet, infringing in total not only many tens of thousands of Perfect 10 copyrighted images, but also virtually every imaginable full length movie, song, and important piece of computer software.  Zada Decl. ¶16, Exh. 12.

## VII.   <u>YANDEX N.V.'S VICARIOUS LIABILITY</u>

Yandex N.V. controls its subsidiaries (including Yandex Inc., as this Court has already found) (Dkt. No. 73), and Yandex N.V. clearly financially benefits from the infringement of its subsidiaries.  Yandex's Motion does not dispute the foregoing, but rather requests this Court to dismiss Perfect 10's vicarious liability claims against Yandex N.V., claiming that no underlying acts of direct infringement on behalf of Yandex LLC or Yandex Inc. are valid.  As Perfect 10 has shown, both its direct and contributory claims against Yandex LLC and Yandex Inc. are not extraterritorial and its vicarious claims against Yandex N.V. are likewise proper.

## VIII.  <u>CONCLUSION</u>

Defendants motion regarding extra-territoriality attempts to severely limit the reach of the Ninth Circuit test in *Amazon.com* and is based on an erroneous definition of the "geographical location" of a website which Yandex applies inconsistently.  Yandex's bad faith and obvious exploitation of copyrighted works  precludes a fair use defense.  Furthermore, Yandex's fotki.yandex.ru thumbnails are clearly not fair use as they are used solely to display full-size images from Yandex servers and are surrounded by ads.  For these reasons and those above, Perfect 10 requests that this Court deny each and every portion of Defendants Motion.

Dated:  June 13, 2013

RESPECTFULLY SUBMITTED,
PERFECT 10, INC.

By: _____
        Natalie Locke
        Attorneys for Plaintiff Perfect 10, Inc.