1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Diane M. Doolittle (Bar No. 142046)
2  dianedoolittle@quinnemanuel.com
   Rachel Herrick Kassabian (Bar No. 191060)
3  rachelkassabian@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
4  Redwood Shores, California 94065-2139
   Telephone:    (650) 801-5000
5  Facsimile:    (650) 801-5100

6  Daniel C. Posner (Bar No. 232009)
   danposner@quinnemanuel.com
7  865 S. Figueroa Street, 10th Floor
   Los Angeles, California 90017
8  Telephone:    (213) 443-3100
   Facsimile:    (213) 443-3100

9
   Attorneys for Defendants Yandex N.V., Yandex
10 Inc. and Yandex LLC

11
                        **UNITED STATES DISTRICT COURT**
12
                       **NORTHERN DISTRICT OF CALIFORNIA**
13
                              **SAN FRANCISCO DIVISION**
14

15 | PERFECT 10, INC., a California corporation, | CASE NO. CV-12-1521 WHA (LB) |
   | --- | --- |
16 | Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING (1) PERFECT 10's EXTRATERRITORIAL INFRINGEMENT CLAIMS, AND (2) FAIR USE OF THUMBNAIL IMAGES IN YANDEX IMAGE SEARCH** |
17 | vs. | |
18 | | |
19 | YANDEX N.V., a Netherlands limited liability company; YANDEX INC., a Delaware corporation; and YANDEX LLC, a Russian Limited Liability Corporation, | |
20 | | Hon. William H. Alsup |
21 | Defendants. | Date: July 11, 2013<br>Time: 8:00 a.m.<br>Ctrm: 8 |

# TABLE OF CONTENTS

Page

I. P10 HAS FAILED TO RAISE A TRIABLE ISSUE AS TO THE TERRITORIALITY OF ITS DIRECT INFRINGEMENT CLAIMS ...................................1

   A. It Remains Undisputed That Yandex's User-Generated Content Sites Are Hosted Abroad, And Thus Extraterritorial ..................................................................1

   B. It Remains Undisputed That Any Thumbnail Images Stored In the Yandex.ru Index Are Extraterritorial And Not Actionable Under the Copyright Act ..................2

II. P10 HAS FAILED TO RAISE A TRIABLE ISSUE AS TO THE TERRITORIALITY OF ITS CONTRIBUTORY INFRINGEMENT CLAIMS ....................3

   A. P10 Does Not Dispute That 99.95% Of The Underlying Direct Infringements At Issue In Yandex's Motion Are Hosted Abroad ......................................................3

   B. P10's Focus On The Location Of The Alleged Contributory Acts Is Erroneous ...............................................................................................................4

   C. P10's Arguments Based on Hypothetical or Orchestrated "Downloads" of P10 Images Are Meritless ................................................................................5

      1. P10's "evidence" that U.S. downloads "must" have occurred is speculative and insufficient to create a genuine dispute of material fact ..............................................................................................................5

      2. Recent downloads orchestrated by P10 investigators are non-infringing and irrelevant to the past infringements at issue in this Motion ...........................................................................................................6

      3. P10's claim that Yandex has withheld evidence of downloads is meritless ..........................................................................................................6

III. P10 FAILS TO CREATE A TRIABLE ISSUE REGARDING YANDEX'S SHOWING THAT ITS USE OF THUMBNAIL IMAGES FOR ITS YANDEX.COM IMAGE SEARCH SERVICE IS A FAIR USE ..........................................8

   A. As the Ninth Circuit Has Already Held, the "Purpose and Character" of a Search Engine's Use of Thumbnails Heavily Favors Fair Use ...................................8

   B. P10 Fails To Show That the Second or Third Fair Use Factors Defeat Fair Use ..............................................................................................................11

   C. P10 Fails To Proffer Any Material Evidence Disputing That Yandex's Use of Thumbnails Has No Effect On the Market for P10 Images .....................................11

IV. P10'S VICARIOUS INFRINGEMENT CLAIMS AGAINST YANDEX N.V. FAIL .........12

V. P10'S MOST RECENT DMCA NOTICES ARE IRRELEVANT ....................................13

VI. P10'S OPPOSITION EVIDENCE IS OBJECTIONABLE .................................................13

# TABLE OF AUTHORITIES

Page

**Cases**

*Autodesk Inc. v. Dassault Systemes Solidworks Corp.*,
 685 F. Supp. 2d 1023 (N.D. Cal. 2009) ...................................................................................3

*Brae Transport, Inc. v. Coopers & Lybrand*,
 790 F.2d 1439 (9th Cir. 1986)..................................................................................................8

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994) ...............................................................................................................11

*Capitol Records, LLC v. ReDigi Inc.*,
 2013 WL 1286134 (S.D.N.Y. Mar. 30, 2013) .........................................................................2

*In re Cardtronics ATM Fee Notice Lit.*,
 874 F. Supp. 2d 916 (S.D. Cal. 2012) ......................................................................................8

*Elsevier Ltd. v. Chitika, Inc.*,
 826 F. Supp. 2d 398 (D. Mass. 2011) ......................................................................................6

*Fuentes v. Mega Media Holdings, Inc.*,
 011 WL 2601356 (S.D. Fla. June 9, 2011) ............................................................................11

*ITSI T.V. Products v. California Authority of Racing Fairs*,
 785 F. Supp. 864 (E.D. Cal. 1992) ........................................................................................13

*Krieg v. U.S. Foodservice, Inc.*,
 2011 WL 4344568 (N.D. Cal. Sept. 14, 2011).......................................................................14

*Los Angeles News Service v. Reuters TV International, Ltd.*,
 149 F.3d 987 (9th Cir. 1998)....................................................................................................4

*Louis Vuitton Malletier v. Akanoc Solutions, Inc.*,
 Case No. CV-07-03952-JW, Dkt. No. 281 (N.D. Cal. March 19, 2010) .................................6

*Olan Mills, Inc. v. Linn Photo Co.*,
 23 F.3d 1345 (8th Cir. 1994)....................................................................................................6

*Perfect 10 v. Google, Inc.*,
 416 F. Supp. 2d 828 (C. D. Cal. 2006).............................................................................2, 13

*Perfect 10, Inc. v. Amazon.com, Inc.*,
 508 F.3d 1146 (9th Cir. 2007).........................................................................................passim

*Rundquist v. Vapiano SE*,
 798 F. Supp. 2d 102 (D.D.C. 2011) .........................................................................................4

*Ryan v. CARL Corp.*,
 23 F. Supp. 2d 1146 (N.D. Cal. 1998) .....................................................................................6

*U.S. See Seals v. Compendia Media Grp.*,
  2003 U.S. Dist. LEXIS 2980 (N.D. Ill. Feb. 27, 2003) ................................................................. 4

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978 (9th Cir. 2007) ........................................................................................................ 5

*Stockfood America, Inc. v. Pearson Ed, Inc.*,
  2012 WL 5986791 (D. Me. Nov. 29, 2012) ................................................................................. 5

*Subafilms Ltd. v. MGM-Pathe Commission Co.*,
  24 F.3d 1088 (9th Cir. 1994) .................................................................................................. 3, 4

*Ticketmaster Corp. v. Tickets.com*,
  2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ............................................................................. 5

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
  843 F.2d 67 (2d Cir. 1988) ........................................................................................................... 4

### **Statutes**

17 U.S.C. § 106 ..................................................................................................................................... 3

17 U.S.C. § 501 ..................................................................................................................................... 6

17 U.S.C. § 602 ..................................................................................................................................... 6

Fed. R. Evid. 1002 .............................................................................................................................. 15

**Preliminary Statement**

Perfect 10 ("P10") quibbles with, but does not dispute, Yandex's evidence showing that *81%* of the alleged direct infringements by third parties that underlie P10's claims for contributory infringement, and *all* the alleged direct infringements by Yandex, are "extraterritorial," and thus not actionable under the U.S. Copyright Act. Instead, P10 resorts to "evidence" of *new* alleged territorial acts of infringement that it manufactured by hiring people in the U.S. to download its images from Yandex sites hosted in Russia. But these new downloads are not infringing at all, because they were authorized by the copyright holder, P10—and moreover, as new and distinct reproductions, they do not create a triable issue as to the extraterritoriality of any of the thousands of prior asserted infringements at issue in this motion. P10 also rehashes the same arguments the Ninth Circuit already rejected in *Perfect 10 v. Amazon.com*, asking this Court to reach a different result than the Ninth Circuit did regarding whether hosting thumbnail images in an image search service like Yandex's is a fair use. P10's protestations and speculations aside, *Amazon.com* applies here, and such conduct is a fair use as a matter of law. Yandex's motion should be granted in full.

**Argument**

I. **P10 HAS FAILED TO RAISE A TRIABLE ISSUE AS TO THE TERRITORIALITY OF ITS DIRECT INFRINGEMENT CLAIMS**

   A. **It Remains Undisputed That Yandex's User-Generated Content Sites Are Hosted Abroad, And Thus Extraterritorial**

P10 alleges 1,474 infringements concerning user-generated content hosted by Yandex on Russian servers. In its opposition brief, P10 does not dispute that *all* such content is hosted on servers located in Russia. Under the Ninth Circuit's server test, which holds that "it is the website publisher's computer, rather than [the search engine's] computer, that stores and displays the infringing image," *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007), Yandex is entitled to summary judgment for all Yandex-hosted content claims as a matter of law.

In hopes of creating a triable issue as to the territoriality of its infringement claims based on Yandex user-generated content sites (notwithstanding its lack of evidence that any such content was hosted in the U.S.), P10 argues that when an image stored on a server abroad is made available over the Internet and is accessed in the U.S., the image is "displayed" in the U.S. for purposes of the

Copyright Act. But as the Ninth Circuit's server test makes clear, the "display" of the image occurs when a computer owner stores the image on its server, ***not*** when a user accesses the image over the Internet. *Amazon.com*, 508 F.3d at 1159; *see also Capitol Records, LLC v. ReDigi Inc.*, 2013 WL 1286134, *7 (S.D.N.Y. Mar. 30, 2013) ("[T]he display of a photographic image on a computer may implicate the display right, though infringement hinges, in part, on where the image was hosted.").

In any event, P10's purported "evidence" that certain of its images displayed on Yandex websites have been "viewed" in the U.S. fails to create a triable issue. *See* Opp. at 23. P10 hired investigators to manufacture this purported evidence of territoriality by downloading images displayed on Fotki and Narod to computers located in the U.S. *See* Section VI, *infra* (listing objections to the declarations of these previously-undisclosed witnesses). P10 now claims that because these investigators "viewed" such images in the course of downloading them, territorial acts of infringement occurred that create a triable question of fact sufficient to defeat Yandex's motion. Not so. As a matter of law, "viewing" a copyrighted image does not violate any right protected by the Copyright Act; if it did, every Internet user could be held liable for copyright infringement simply by surfing the web and viewing what others have posted. This is not the law. *See Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 852 n.17 (C. D. Cal. 2006), *aff'd*, 508 F.3d at 1169-70 ("P10 argues that merely by viewing such websites, individual users of Google search make local 'cache' copies of its photos and thereby directly infringe through reproduction. The Court rejects this argument."). P10 has failed to create a triable issue as to the territoriality of any of its alleged infringement claims based on Yandex's hosting of user-generated content.

### B. It Remains Undisputed That Any Thumbnail Images Stored In the Yandex.ru Index Are Extraterritorial And Not Actionable Under the Copyright Act

P10 also fails to create a triable issue as to the territoriality of any of its alleged direct infringement claims that are premised on Yandex's display of thumbnail images in response to image search commands on yandex.ru. Again, P10 does not dispute that thumbnails displayed by yandex.ru in response to user queries are hosted on Russian servers. Under the server test, P10's claims for direct infringement based on such conduct therefore fail as a matter of law. *Amazon.com*, 508 F.3d at 1162. Rather than challenge territoriality, P10 argues that Yandex's hosting of

thumbnail images for electronic reference purposes is not a fair use. Opp. at 6. As discussed below, such conduct is a fair use as a matter of law. *See* Section III, *infra*. Thus, P10's direct infringement claims regarding thumbnail images hosted in Russia fail for this reason as well.

## II. P10 HAS FAILED TO RAISE A TRIABLE ISSUE AS TO THE TERRITORIALITY OF ITS CONTRIBUTORY INFRINGEMENT CLAIMS

### A. P10 Does Not Dispute That 99.95% Of The Underlying Direct Infringements At Issue In Yandex's Motion Are Hosted Abroad

In response to Yandex's evidence showing that 51,959 of the infringements located at the URLs identified in Yandex's motion are hosted outside the U.S., P10 contests only 23 of those URLs, offering evidence that they were hosted within the U.S. at some point during the relevant time period.[1] Thus, P10 does not dispute 99.95% of Yandex's evidence showing that P10's contributory infringement claims are premised on extraterritorial acts, and thus not actionable.

Rather than come forth with evidence showing that the direct infringements at issue are territorial—which is P10's burden both in opposing this motion and at trial— P10 insists, without a shred of legal support, that regardless of where the hosting servers are located, the "geographic location [of an alleged infringement on the Internet] is the entire world." Opp. at 21. This is contrary to law, as it is well-settled that 17 U.S.C. § 106 requires courts to determine, claim by claim, whether an act of infringement is territorial. *Subafilms Ltd. v. MGM-Pathe Commission Co.*, 24 F.3d 1088, 1095 (9th Cir. 1994). There is no "Internet exception" to the territoriality requirement. And of course, P10's argument is belied by its own reliance on the same geo-location data from domaintools.com on which Yandex relies to identify the specific locations of alleged infringements on the Internet. *See* Zada Decl. (Dkt. 167-1), ¶ 17; Zada Reply Decl. (Dkt. 130), ¶ 5. After relying on this same evidence of territoriality, P10 should be estopped from challenging its reliability now. *See Autodesk Inc. v. Dassault Systemes Solidworks Corp.*, 685 F. Supp. 2d 1023, 1027-28 (N.D. Cal. 2009) (judicially estopping plaintiff from taking an inconsistent position after having benefitted from it earlier in the case).

---

[1] While Yandex reserves its right to prove that these 23 URLs were hosted abroad at the specific times when they hosted the alleged infringing images, Yandex hereby withdraws its motion as to these 23 URLs only. *See Amended* Ex. A to Proposed Order, filed herewith.

1    P10 also argues that Yandex's methods are unreliable because it analyzed the location of
*either* the image host site *or* the site of the forum that linked to the hosting site. Opp. at 22. P10 is
wrong. Yandex ascertained the geo-location of *both* the website *and* the image URL complained of
in P10's DMCA notices, and then excluded any alleged infringements as to which *either* the
website *or* the image URL was hosted in the U.S. *See* Grundy Decl. Ex. A; Grigorieva Decl. Ex. A
("search links spreadsheet"). P10 has failed to create a genuine dispute on this ground either.

**B.    P10's Focus On The Location Of The Alleged Contributory Acts Is Erroneous**

P10 argues that the mere fact that the search index for yandex.com, from which image search results are served, was hosted in the U.S. for a nine-month period is sufficient to create a triable issue as to the territoriality of *all* its contributory infringement claims premised on Yandex's provision of links to infringing images hosted on third-party websites in yandex.com search results. Opp. at 15. But P10 does not dispute Yandex's authorities holding that the location of the *contributory* act is irrelevant because the territoriality of a claim for secondary infringement turns on the location of the underlying act of *direct* infringement. *See* Mot. at 9 (citing, *e.g.*, *Subafilms*, 24 F.3d at 1093; *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 126-27 (D.D.C. 2011)). P10's reliance on *Los Angeles News Service v. Reuters TV Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998), to argue that the direct infringement need not be territorial is of no help; there, the infringing videos were copied in the U.S. (the direct act of infringement), but transmitted abroad (the secondary act), so the contributory claim *was* premised on a territorial act and thus was actionable. *Id.* at 990-91.

P10's argument based on so-called "predicate acts" of infringement also fails, and indeed only highlights why P10's contributory claims are *not* actionable. Specifically, P10 argues that Yandex's provision of thumbnails, links and html code to assist its users in accessing infringing images are "predicate acts permitting further infringements abroad [that] constitute an exception to the Copyright Act's extraterritorial reach." Opp. at 16. But in each case cited by P10, the "predicate act" was an act of actionable *direct copyright infringement* that occurred *within the U.S. See Seals v. Compendia Media Grp.*, 2003 U.S. Dist. LEXIS 2980, at *11 (N.D. Ill. Feb. 27, 2003) (analyzing the location of the "*predicate act of direct infringement* on which [plaintiff] may also hang a claim of contributory infringement.") (emphasis added); *Update Art, Inc. v. Modiin Publ'g,*

*Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) (reproduction in the United States); *Stockfood Am., Inc. v. Pearson Ed, Inc.*, 2012 WL 5986791, at *6 (D. Me. Nov. 29, 2012) (unauthorized copying and distribution in the U.S.). By contrast, the so-called predicate acts here are not actionable direct infringements. For instance, Yandex's storage and display of thumbnail images for information location purposes is a fair use as a matter of law, *see* Section III, *infra.*, and URL links and html code are *not* copyrightable subject matter in the first place. *See Ticketmaster Corp. v. Tickets.com*, 2003 WL 21406289, *5 (C.D. Cal. Mar. 7, 2003) (URLs not copyrightable); *Amazon.com*, 508 F.3d at 1161 ("Providing these HTML instructions is not equivalent to showing a copy.").

Moreover, P10's reliance on *Amazon.com* to argue that ISPs should be liable for contributing to acts of infringement no matter where those acts occur is misleading. Opp. at 15. Extraterritoriality was not an issue decided in *Amazon.com*; the Ninth Circuit simply held that the display right is violated when "the website publisher's computer, rather than [the search engine's] computer, . . . stores and displays the infringing image"— which means that an infringement of the display right is extraterritorial when the hosting server is abroad. 508 F.3d at 1162.

### C. P10's Arguments Based on Hypothetical or Orchestrated "Downloads" of P10 Images Are Meritless

#### 1. P10's "evidence" that U.S. downloads "must" have occurred is speculative and insufficient to create a genuine dispute of material fact

Lacking evidence of territoriality, P10 instead speculates that some of its images ***must*** have been downloaded in the U.S., and thus infringed. Opp. at 19 (arguing "it is a forgone [sic] conclusion" that U.S. users will download P10 images, and traffic to Yandex "statistically guarantees" downloads from the U.S.). Such speculation is insufficient as a matter of law to create a genuine dispute of material fact. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Indeed, this Court has already rejected P10's attempt to rely upon "unsubstantiated" claims of image downloads. *See* Order Granting/Denying P10's Motion for Partial Summary Judgment (Dkt. 143 at 4) ("The appended exhibits [to the Zada Reply Declaration] only show that Yandex linked to other search providers' websites—not domestically-hosted infringing copies. P10's claims that U.S.-based individuals

downloaded the infringing images . . . are unsubstantiated."). P10's related argument that "enormous traffic" to Yandex from the U.S. statistically guarantees downloads (Opp. at 19) is not evidence at all, but mere speculation, and likewise fails to create a triable issue.

### 2. Recent downloads orchestrated by P10 investigators are non-infringing and irrelevant to the past infringements at issue in this Motion

Lacking any evidence of territorial infringements, P10 instead tries to manufacture such evidence by offering declarations from three previously-undisclosed witnesses who P10 paid to download P10 images in the U.S. from Yandex sites. Opp. at 18 (citing Woodward, Saz and Yelloz Declarations). This proves nothing. These declarations are inadmissible because these individuals were not disclosed in P10's Initial Disclosures. *See* Section VI, *infra*. Moreover, these new "alleged infringements" apparently took place *after* Yandex filed its motion, and thus obviously are not at issue here. Furthermore, these downloads (just like any downloads Zada performed) were *authorized by P10*, and thus are not "infringements" in the first place. *See* 17 U.S.C. § 501.[2]

### 3. P10's claim that Yandex has withheld evidence of downloads is meritless

P10 next argues that Yandex should not be granted summary judgment because it withheld evidence of U.S.-user downloads during discovery. Yandex did no such thing. As Yandex has made clear, including in a sworn witness declaration and in its discovery responses, Yandex does not have the download information P10 has requested. It does not track the IP address (*i.e.*, the

---

[2] *Akanoc*, cited by P10, does not support P10's use of investigators to manufacture purported infringements. In *Akanoc*, the infringing act—the defendant's importation of counterfeit goods into the U.S.—was an independently-infringing act by the *defendant* under 17 U.S.C. § 602, notwithstanding the investigator's role in procuring the importation. *See Louis Vuitton Malletier v. Akanoc Solutions, Inc.*, Case No. CV-07-03952-JW, Dkt. No. 281, at 5 (N.D. Cal. March 19, 2010). Here, however, there was no alleged direct infringement in the U.S. by anyone other than P10's investigators. Other cases cited in *Akanoc*, at 6 n.7, support this key distinction. In *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994), an investigator requested infringing copies, but the *defendant* actually committed infringement by *making* the infringing copies. *See also*, *e.g.*, *Ryan v. CARL Corp.*, 23 F. Supp. 2d 1146, 1149 (N.D. Cal. 1998) (investigator requested but did not make infringing copies). Indeed, a district court recently addressed the precise situation raised here, concluding that where the *only* evidence of direct infringement is located outside of the United States, a U.S.-based investigator's "downloading of unauthorized copies of plaintiffs' [works] … does not constitute an act of direct infringement occurring entirely within the United States." *Elsevier Ltd. v. Chitika, Inc.*, 826 F. Supp. 2d 398, 403 (D. Mass. 2011).

location) associated with user downloads of images from Yandex-hosted sites, nor does it track information about what its users do once they leave a Yandex-hosted page for a third-party website. *See* Bakharevskaya Decl. ¶ 17. P10's speculative attacks on Ms. Bakharevskaya's declaration are particularly specious given that P10 has refused Yandex's offers to make Ms. Bakharevskaya available for deposition. *See* Kassabian Reply Decl. ¶¶ 9-13.[3]

Nor does P10's purported "expert" declaration by Stefan Voit create a genuine dispute as to whether Yandex has evidence regarding user downloads (and even if it did, that still would not create a genuine dispute as to any issue raised in this motion). Mr. Voit purports to "believe that Yandex is *either* tracking user *page views/downloads* from that webpage *or has the ability to track them*." Voit Decl. ¶ 4 (emphasis added). This opinion, even if credited, is irrelevant because it conflates user "views" and "downloads," even though a "view" is not an act of infringement as a matter of law. *Amazon.com*, 508 F.3d at 1169. Further, the fact that Yandex *could* track this information (even if true) does not change the fact that Yandex *does not* track such data. Bakharevskaya Decl. ¶ 17; Bakharevskaya Reply Decl. ¶¶ 6, 7, 10.

P10 also argues that the existence of "Yandex Metrica"—an analytics tool that allows website owners to customize and track certain information—shows that Yandex *must* track downloads of images from Narod and Fotki. Opp. at 20. P10 is incorrect. Metrica is a website analytics program that allows subscribing website owners to track various metrics associated with their site. Metrica has a feature that permits its users to track file downloads from their websites, but that feature only tracks downloads of linked files (which can be clicked on), not downloads of embedded images (which must be "right-clicked" on to download), the latter of which is what P10 has complained of. Bakharevskaya Reply Decl. ¶ 7. Nor does Metrica track the IP address associated with such downloads, but rather only the number of downloads, such that it cannot be used for location purposes in any case. *Id.*

---

[3] P10 also argues that Yandex has withheld evidence of user-clicks on ads on Yandex sites (which it has not), and that such evidence would be relevant to territoriality—but it would not, because "clicks on ads" are not an act of infringement. At most, ad clicks might show how many times a page was viewed, which also is not an infringement. *See Amazon.com*, 508 F. 3d at 1169.

P10's further claim that Yandex Browser is somehow relevant is also incorrect. Opp. at 21. P10 misquotes the Browser user agreement, which states: "[Yandex] automatically receives *anonymous (without reference to the User)* information about the website visited, pages viewed and files uploaded." And Browser, like Metrica, has the ability to track information regarding linked file downloads, but not downloads of embedded images (as is relevant here). *Id.* ¶ 10.

In any event, P10's speculation about supposedly missing evidence is irrelevant and unpersuasive because P10 never requested any Metrica or Browser documents in discovery, and it has not moved under Rule 56(f) for further discovery, thereby waiving any argument that it needs additional discovery to respond to Yandex's motion. *See In re Cardtronics ATM Fee Notice Lit.*, 874 F. Supp. 2d 916, 927 (S.D. Cal. 2012) (granting summary judgment where the "Plaintiffs have not made a motion for a continuance or for leave to conduct additional discovery . . . ."); *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f).").

### III. P10 FAILS TO CREATE A TRIABLE ISSUE REGARDING YANDEX'S SHOWING THAT ITS USE OF THUMBNAIL IMAGES FOR ITS YANDEX.COM IMAGE SEARCH SERVICE IS A FAIR USE

Notwithstanding that the crux of Yandex's motion is that the vast majority of P10's infringement claims are extraterritorial, P10 devotes the bulk of its opposition to arguing why Yandex's display of thumbnail-sized versions of P10 images in yandex.com image search results is not a fair use under § 107 of the Copyright Act, often relying on arguments effectively identical to those it offered (and rejected) in *Amazon.com*. But P10 has failed to provide any basis, in fact or law, for this Court to depart from the Ninth Circuit's reasoned, and controlling, application of the four-factor fair-use test in *Amazon.com*.

#### A. As the Ninth Circuit Has Already Held, the "Purpose and Character" of a Search Engine's Use of Thumbnails Heavily Favors Fair Use

P10 argues boldly that "none" of the circumstances that led the Ninth Circuit to conclude that Google's use of thumbnails was "transformative" are present here. Opp. at 7. To the contrary, Yandex uses thumbnails in its image search service for precisely the same reasons and in the same manner as the Ninth Circuit found that Google did. Like Google, Yandex crawls the Internet for

images and stores low-resolution, "thumbnail"-sized versions of those images on its servers. *Compare* Bakharevskaya Decl. ¶ 12, *with Amazon.com*, 508 F.3d at 1155. Also like Google, Yandex directs users who click on a thumbnail to a landing page in which a full-sized version of the image—*hosted by the originating website*—is framed by information from Yandex's website, including links to one or more pages that display the full-sized image. *Compare* Bakharevskaya Reply Decl. ¶ 3, *with Amazon.com*, 508 F.3d at 1156-57. Yandex does "not store the [full-sized] photographic images," and thus does not "have a copy of the images for purposes of the Copyright Act." *Amazon.com*, 508 F.3d at 1160-61. Rather, Yandex simply provides the user with "instructions that direct a user's browser to a website publisher's computer that stores the full-size photographic image." *Id*. at 1161. As P10 acknowledges, the Ninth Circuit held that Google's use of thumbnails to facilitate the image search described above is a "highly transformative" fair use. *Id*. at 1165. P10's arguments for why the result should be different here are meritless.

*First*, P10 argues that Yandex's users who click on thumbnails are directed to "a Yandex-created second page that displays a similar full-size version of the image." Opp. at 8. To the extent P10 is suggesting that Yandex hosts the full-size image that appears on the landing page, P10's argument is factually incorrect. *See* Bakharevskaya Decl. ¶ 13. It is also legally erroneous, as the website that "displays" the full-size image is the hosting website. Thus, just as the Ninth Circuit found that Google "transform[ed] the [full-size] image into a pointer directing a user to a source of information," *Amazon.com*, 508 F.3d at 1165, Yandex's image search service does the same.[4]

*Second*, P10 argues that yandex.ru "frequently" places ads next to the full-sized images that appear on the image search results pages, thus "making such use [of thumbnail images] commercial

---

[4] P10's argument that Yandex has failed to present evidence that any users who click on thumbnails of P10 images have ended up on P10's authorized webpage, (Opp. at 9), is irrelevant, as this issue has nothing to do with whether Yandex uses thumbnails transformatively to direct users to sources of information. Nor is it relevant, or even notable, that some users who click on a thumbnail may be directed to a full-size image that is displayed on one of Yandex's Russian websites, like fotki.com, and hosted on a Yandex server in Russia. *See* Zada Decl. ¶ 19. Yandex's servers crawl the entire Internet, including Yandex's own sites, for images to deliver in response to image search requests. That some image search results may link to certain Yandex—hosted content has no bearing on whether Yandex's use of thumbnails is transformative.

in nature." Opp. at 8-9. This is irrelevant, as it is undisputed that yandex.ru is hosted in Russia, such that any thumbnails it hosts are not actionable infringements. Bakharevskaya Decl. ¶ 9. It also is undisputed that the only territorial index that P10 accuses is yandex.com, which ***does not have any advertising whatsoever***. Ryan Decl. ¶ 6. In any event, in *Amazon.com* the Ninth Circuit rejected P10's argument that Google's use of thumbnails to "lead users to sites that directly benefit Google's bottom line" via advertising was sufficient to defeat fair use; to the contrary, the Ninth Circuit held that Google's highly transformative use "outweighs Google's superseding and commercial uses of the thumbnails." 508 F.3d at 1166. The result should be the same.

*Third*, P10 argues, without authority, that unlike Google, Yandex's image search offers no "public benefit" because Yandex's users are Russian. Opp. at 10. But *Amazon.com*'s holding that "a search engine provides a social benefit by incorporating an original work into a new work, namely, an electronic reference tool," was not limited to benefits conferred to U.S. users. 508 F.3d at 1165. Nor does P10 proffer any evidence that Yandex's free image-search service geared toward Russia provides any less of a public benefit than one geared toward the U.S.

*Finally*, P10 argues that unlike Google, which the *Amazon.com* court found "only incidentally indexes infringing websites," Yandex "intentionally misappropriated the copyright owners' works," and thus, by virtue of its lack of good faith, is not entitled to benefit from a finding of fair use. Opp. at 9 (citing 508 F.3d at 1164). To the extent Yandex's use of "good faith" is relevant at all to the fair use test, P10 has offered only bare accusations—not evidence—in support of its bad faith claim.[5] It is undisputed that just like Google, Yandex "is operating a comprehensive search engine that only incidentally indexes infringing websites," along with millions of other websites. *Amazon.com*, 508 F.3d at 1164 n.8; Bakharevskaya Decl. ¶ 11-12 & Ex. A. P10 offers no evidence that Yandex's automated search engine "intentionally misappropriated" its copyrighted

---

[5] Notably, the Ninth Circuit's discussion of good faith in *Amazon.com* concerned the ability of certain companies whose very businesses were based upon misappropriating copyrighted works for their own commercial gain, to claim fair use. 508 F.3d at 1164 n.8 (citing cases). To the contrary, Yandex, the fourth largest search engine in the world, is a well-respected, NASDAQ-listed company, not an illicit "pirate" site, as P10 baselessly accuses it of being. *See* Barsukov Decl., filed April 1, 2013 (Dkt. 115-3), ¶¶ 11-12.

images or has engaged in any other conduct with the intent of commercially benefiting from P10's images. Moreover, P10's argument that Yandex has "refused to process DMCA notices under any circumstances" is belied by Zada's express admission that Yandex has processed *all* of P10's DMCA notices at issue in this motion. Zada Decl. ¶ 5.[6]

### B. P10 Fails To Show That the Second or Third Fair Use Factors Defeat Fair Use

P10 does not argue that the outcome of the second fair use factor—nature of the copyrighted work—should be different here than in *Amazon.com*; thus, this factor only slightly favors P10. *Amazon.com*, 508 F.3d at 1167. While P10 argues that the third factor—amount and substantiality of the use—"should favor" P10 because there are allegedly more thumbnails at issue here compared *Amazon.com* (Opp. at 11), this factor turns on how *each image* is used, not on *how many images* are used. *See id*. Thus, because Yandex, like Google, must "copy the entire image to allow users to recognize the image and decide whether to pursue more information about the image," this factor is neutral, as the court held in *Amazon.com*. *Id*. at 1167-68 (internal quotation and citation omitted).

### C. P10 Fails To Proffer Any Material Evidence Disputing That Yandex's Use of Thumbnails Has No Effect On the Market for P10 Images

P10 argues that unlike in *Amazon.com*, where the court held the fourth factor was neutral, "market harm is presumed" here because "Yandex's use of thumbnails is not transformative." Opp. at 11. As shown above, Yandex's use of thumbnails as an electronic reference tool *is* transformative, such that there is no presumption as a matter of law. *Amazon.com*, 508 F.3d at 1168. The Ninth Circuit also held that "thumbnails [a]re not a substitute for the full-sized images" and they do not "hurt Perfect 10's market for full-size images," *id*. at 1168; this holding is on all fours here as well. Nor does P10 offer any evidence sufficient to create a triable issue as to harm to its purported market for reduced-size cell-phone downloads – the only market it identifies. To the

---
[6] This argument also is illogical; under P10's reasoning, any allegation of infringement, such as a claim made in a DMCA notice, would prevent even the most obvious transformative use from being a fair use merely because the defendant did not succumb to the plaintiff's demand. This is not the law. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18 (1994) ("[B]eing denied permission to use a work does not weigh against a finding of fair use."); *Fuentes v. Mega Media Holdings, Inc.*, 2011 WL 2601356, at *13 (S.D. Fla. June 9, 2011) (rejecting plaintiff's argument that "because [defendants] continued to broadcast [the work] after [plaintiff] informed them they were infringing on his copyright, they then acted in bad faith").

1  contrary, P10's "evidence" shows that any "market" for cell phone downloads began to dry up in
2  *2005*, seven years before P10 sued Yandex. Zada Decl. ¶ 3. And contrary to its representations to
3  this Court, in July 2009 **P10 represented to a different Court that P10's cell-phone download**
4  **business "effectively ended in 2006"** –six years ago. Kassabian Reply Decl. ¶ 17. Further, P10
5  offers no evidence that *any* Yandex users have ever downloaded infringing thumbnail images for
6  cell phone use (nor does Yandex have such evidence); just as the Ninth Circuit found in
7  *Amazon.com*, P10's failure to offer this evidence renders its claimed market loss "hypothetical" and
8  unavailing. 508 F.3d 1168. Finally, P10's argument that P10 competed against Yandex for cell
9  phone downloads is flatly contradicted by P10's prior representations to this Court that "Perfect 10
10 is . . . not a competitor to [Yandex]." Dkt. 163 at 1.

In sum, as *Amazon.com* instructs, the heavily-transformative nature of Yandex's use of thumbnails and the important public benefit of its search services establish as a matter of law that Yandex's use of thumbnail images is fair use. In the words of the Ninth Circuit:

> In this case, Google has put Perfect 10's thumbnail images (along with millions of other thumbnail images) to a use fundamentally different than the use intended by Perfect 10. In doing so, Google has provided a significant benefit to the public. Weighing this significant transformative use against the unproven use of Google's thumbnails for cell phone downloads, and considering the other fair use factors, all in light of the purpose of copyright, we conclude that Google's use of Perfect 10's thumbnails is a fair use.

*Amazon.com*, 508 F.3d at 1168. Accordingly, all P10's claims premised on Yandex's alleged hosting of thumbnail-sized versions of infringing P10 images fail as a matter of law.[7]

### IV. P10'S VICARIOUS INFRINGEMENT CLAIMS AGAINST YANDEX N.V. FAIL

P10 offers no evidence in opposition to Yandex's motion on P10's vicarious infringement claims against Yandex N.V. These claims therefore fail to the same extent as P10's contributory infringement claims against Yandex LLC and Yandex Inc. because they are premised on the same alleged extraterritorial acts of infringement. *See ITSI T.V. Prods. v. Cal. Auth. of Racing Fairs*, 785

---

[7] P10's argument that thumbnails hosted on the fotki.yandex.ru "search engine" are not a fair use (Opp. at 13-14) is misleading and incorrect for several reasons: (i) Fotki is a user-generated content site (similar to Shutterfly), and not a "search engine" at all – but even if it was, Fotki's use of thumbnails would be a fair use as a matter of law under *Amazon.com* for the same reasons above; and (ii) Fotki thumbnails are hosted in Russia and thus extraterritorial. Bakharevskaya Decl. ¶ 7.

F. Supp. 854, 864 (territoriality requirement applies to vicarious infringement claims) (E.D. Cal. 1992).

## V.  P10'S MOST RECENT DMCA NOTICES ARE IRRELEVANT

As a last-ditch effort to avoid summary judgment, P10 urges that it has sent a handful of new DMCA notices in May 2013, which Yandex's motion "disregard[s]." Opp. at 24. These new notices are not surprising, as they reflect one of P10's most common litigation tactics—to continually expand its litigation claims indefinitely through a never-ending stream of DMCA notices, in hopes of avoiding a motion that could dispose of the entire case. *See Perfect 10, Inc. v. Google, Inc.*, No. 2:04-CV-09484, Status Conference Tr. 23:7, Nov. 14, 2011 (requiring P10 to file a list of all copyrights and notices of infringement it intended to assert in the case by December 31, 2011, because without a cutoff date, the case "will never end"); *see also id.* at 20:7-13 (court asking " what rights . . . Perfect 10 . . . has to take a case where it has alleged thousands of infringements at earlier times, new ones at other times in the course of this lengthy litigation and constantly add to it. Where is the stopping point?"). This is why, before filing this motion, Yandex sought (and received) P10's confirmation that all the infringements P10 was asserting in this case were identified in the 232 notices at issue here. *See* Kassabian Decl. ¶ 2. P10's belated attempt to expand the case now should be rejected. In any case, to the extent the alleged infringements identified in P10's new notices are properly in the case at all, they have no bearing on this motion, as Yandex did not move on them. Should the Court permit P10 to assert these new notices in this case, which P10 admits do not contain any processable URLs linking to any specific infringing content (Zada Decl. Ex. 12, at 1), Yandex will move for summary judgment on them.

## VI.  P10'S OPPOSITION EVIDENCE IS OBJECTIONABLE

Pursuant to Local Rule 7-3(c), Yandex objects to P10's opposition evidence as follows:

*First*, the **declarations of Mark Woodward, Mike Saz and Marc Yelloz** (Dkts. 167-28; 167-29; 167-30), and all statements in P10's opposition brief that rely upon or refer to them (Opp. at 2:28-3:4; 18:19-25; 23:19-24), should be stricken because P10 never disclosed these individuals as witnesses, in its Rule 26(a)(1) Initial Disclosures or its interrogatory responses, or notified Yandex that it intended to rely upon their testimony to attempt to demonstrate territoriality. P10 has no

justification for its failure to timely identify these individuals, particularly because their testimony purports to relate to the territoriality of P10's claims, which is a threshold showing P10 is required to make to prove its claims. Their declarations should be excluded. *See*, *e.g.*, *Krieg v. U.S. Foodservice, Inc.*, 2011 WL 4344568, at *5 (N.D. Cal. Sept. 14, 2011) (Alsup, J.) *aff'd*, No. 11-17423, 2013 WL 980149 (9th Cir. Mar. 14, 2013) (striking witness declaration attached to supplementary brief because the witness "was not mentioned in any of plaintiff's Rule 26 disclosures or interrogatory responses"). These declarations also should be excluded under Rule 402 as irrelevant. Their stated purpose is to show that it is *possible* to download P10 images from certain Yandex websites. *See* Saz Decl. ¶ 2; Woodward Decl. ¶ 2; Yelloz Decl. ¶ 2. The mere *possibility* that a U.S. Internet user *could* download images from a website is irrelevant.

*Second*, the **declaration of "computer expert" Stefan Voit** (Dkt. 167-31), and all statements by P10 relying on or referring to it (Opp. at 5:27-6:1; 20:17-20; 21:4-8), should be stricken under Rules 402 and 702 because: (i) Voit has no stated expertise or training in analyzing user tracking and is therefore not qualified; (ii) his opinion is irrelevant because he simply concludes that Yandex has the "ability" to track "user page views/downloads," but he does not dispute Yandex's evidence that it does *not* track the type of IP-specific user download evidence P10 seeks; (iii) his opinion is not based on sufficient facts because he analyzes only one fotki.yandex.ru page, does not explain his process for analyzing it, has no knowledge concerning Yandex's tracking of user data, and does not explain how the portions of code and JavaScript he addresses led to his conclusion; and (iv) his opinion is pure speculation ("Yandex is either tracking user page views/downloads . . . or has the ability to track them." Voit Decl. at 1.).

*Third*, Yandex objects to the **Zada Declaration** (Dkt. 167-1) on the following grounds: (i) it is replete with legal conclusions and non-factual arguments that violate Rules 701 and 702 and L.R. 7-5(b) (*see*, *e.g.*, Zada Decl. at 2:9-15; 3:6-10; 3:19-27; 4: 5-7; 4:22-23; 4:28-5:5; 5:7-10; 5:13-19; 5:24-6:9; 6:18-19; 7:6-27; 9:9; 9:12-11:4; 11:11-19; 11:27-12:2; 12:21-28; 13:6-8; 13:23-25; 14: 3-8; 14:16-21; 14:25-27; 16:2-4; 16:7-13; 16:16-19); (ii) the following portions are irrelevant: the "still up" folder in Ex. 1 to the extent it concerns alleged infringements not at issue here and not

previously disclosed in a DMCA notice to Yandex,[8] paragraphs 13 and 15 and Exs. 9 and 11 (relating to third-party websites that have no connection to this case and addressing "views" of images, which are not infringements), paragraph 16 and Ex. 12 (relating to alleged infringements for which P10 had not sent any DMCA notices until just before Yandex filed this motion and that are not at issue), lines 12:9-14 (concerning a secondary infringement claim, not a direct infringement claim, and thus irrelevant to extraterritoriality), paragraph 20 and Ex. 16 (relating to the number of visitors to a site, which is irrelevant to the location of an infringement), paragraph 21 and Ex. 17 (asserting that other search engines' indexing of narod.ru and fotki.ru is somehow relevant to territoriality, which it is not since those search engines' use is a fair use under *Amazon.com*), and paragraph 23 and Ex. 19 (not relating to any of the acts of alleged infringement at issue); (iii) lines 1:27-2:4 relating to P10's alleged lost cell phone downloading revenues, and lines 5:20-27 relating to Zada's personal opinions on how Yandex in-line linking works, are conclusory and contradicted by Zada's prior sworn statements (Kassabian Reply Decl. ¶¶ 16-17 ); (iv) exhibits 2-5, 7-16, 18-26 have been modified by Zada, and the statements at lines 15:19-22 misquote Ex. 22, in violation of Fed. R. Evid. 1002; and (iv) paragraph 17 is unintelligible and irrelevant in that its reference to Ex. 13 discusses information that does not appear to exist in Ex. 13.

## **Conclusion**

For the foregoing reasons, Yandex's motion for summary judgment should be granted.

DATED: June 20, 2013

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/
Diane M. Doolittle
Rachel Herrick Kassabian
*Attorneys for the Yandex Defendants*

---

[8] Despite the fact that P10 did not previously provide Yandex with these PDF screenshots in Exhibit 1 to the Zada Declaration via a DMCA notice, Yandex has nevertheless processed them since receiving P10's opposition papers, blocking all the discernible URLs that it was able to extract and process. *See* Grigorieva Reply Decl. ¶ 3.