**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

July 12, 2013

Honorable Donna Ryu
United States District Court, N.D. Cal.
1301 Clay Street
Oakland, California 94612

Re:     <u>Perfect 10, Inc. v. Yandex N.V. et al.</u>, Case No. CV-12-1521-WHA

Dear Magistrate Judge Ryu:

Defendants Yandex LLC, Yandex N.V., and Yandex Inc. ("Yandex") and plaintiff Perfect 10, Inc. ("Perfect 10") submit this joint letter pursuant to the Court's Notice of Reference and Order Re: Discovery Disputes briefing the parties' dispute over Yandex's request for additional depositions. This is the second joint discovery letter the parties are submitting to Your Honor.

Given the urgent nature of Yandex's request, and the upcoming discovery cutoff of July 31, Yandex respectfully requests that the Court schedule a hearing on the matters addressed in this letter at the Court's earliest convenience.

**<u>Yandex's Position</u>**

Yandex requests an order permitting it to take ten depositions beyond the ten automatically permitted by the Federal Rules. The additional depositions are necessary for Yandex to depose the people and entities from which Perfect 10 asserts it obtained ownership of tens of thousands of images. Specifically, Perfect 10 has asserted that it obtained copyrights to approximately 46,000 images -- 21,188 images from at least 17 separate assignors, and to 25,188 images through work made for hire arrangements with at least 35 separate photographers. Yet Perfect 10 is not asserting in this case that Yandex infringed all of these images. Rather, Perfect 10 has stated that "15,000 to 25,000" images of its more than 46,000 total images are in suit, *see* Perfect 10's Response to Yandex's Interrogatory No. 1, though, to date, it has steadfastly refused to identify which specific images it asserts were infringed by Yandex,[1] or which specific assignors purportedly assigned over rights to those images. Perfect 10's failure to disclose this basic information about its claims has effectively denied Yandex any meaningful ability to identify which deponents are relevant or to prioritize among them.[2]

---

[1]   Perfect 10's failure to identify the images it alleges were infringed is the subject of another discovery motion pending before this Court, currently set for hearing on July 18, 2013.

[2]   This gamesmanship has caused Yandex to waste time and resources guessing unsuccessfully at which witnesses may be relevant. What Yandex has discovered during this process is that, at the same time that Perfect 10 has refused to provide to Yandex information about which images and thus which assignors are at issue, Perfect 10 informed at least one third-party assignor that her images are not at issue at all. After identifying Amber Smith to Yandex as an assignor who Perfect 10 claims assigned it images, Yandex investigated her home and work addresses, and served a notice and subpoena on her. After receiving the subpoena, Ms.

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

The issue of copyright ownership is critical for Yandex to test whether Perfect 10 (a) has standing to assert specific copyrighted images and (b) can satisfy its evidentiary burden of proving ownership of the exclusive rights to each copyrighted image at issue. *See, e.g., Righthaven LLC v. Hoehn,* No. 11-16751, 2013 WL 1908876 (9th Cir. May 9, 2013) (where substance of the assignment transaction limited plaintiff's rights to license the copyrights, plaintiff did not hold exclusive rights and therefore had no standing to sue); *Jim Marshall Photography, LLC v. John Varvatos of California*, C-11-06702 DMR, 2013 WL 2422792 (N.D. Cal. June 3, 2013) (Ryu, J.) ("[A] party that obtains ownership through assignment of a previously-registered copyright bears the burden of proving his or her chain of title."); *In re Napster, Inc. Copyright Litig*., 191 F. Supp. 2d 1087, 1101 (N.D. Cal. 2002) ("In order to show ownership, plaintiffs need to produce chain of title from the listed author to themselves… plaintiffs have not met their burden and must produce chain of title to demonstrate ownership."). In addition, Perfect 10 has represented that it is seeking statutory damages in this case, which can range up to $150,000 per work infringed, but require that certain statutory requirements have been satisfied. To assess whether the standing, ownership, and statutory damages requirements have been satisfied, Yandex needs to be able to depose the people and entities involved in Perfect 10's asserted copyright ownership. Yandex is entitled to test Perfect 10's assertions that these requirements have been satisfied by examining knowledgeable third party witnesses who do not have the same financial interest in the outcome of this case as Perfect 10 CEO Norm Zada, who suggests that he should be the sole witness on these important topics.

These depositions can potentially reveal (1) imperfect assignments which deprive Perfect 10 of standing, *see, e.g., Righthaven,* 2013 WL 1908876, (2) imperfect work for hire transfers of ownership, *see, e.g., Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1155 (9th Cir. 2010), (3) non-exclusive licenses to other authorized publishers, which could mean some published copies of the images are authorized and not infringing, and (4) copyright registrations occurring more than three months after first publication, making the images ineligible for statutory damages, s*ee, e.g., Jim Marshall Photography*, 2013 WL 2422792 (Ryu, J.) ("17 U.S.C. § 412(2) requires registration of a work within three months after its first publication for recovery of statutory damages and attorneys' fees."). Here, one deposition has already confirmed that some of Perfect 10's purported assignments suffer from these legal defects. On June 28, 2013, Yandex deposed Hilario Artola, a representative of J. Stephen Hicks Photography, a company which Perfect 10 claims assigned it more than 1,500 images. Mr. Artola's testimony and documents confirmed that some of the Hicks assignment agreements to Perfect 10 listed the wrong photographer (as compared with the photographer whose name was listed on the assignment agreement itself), that some of the copyrights to certain images had never been formally transferred from Hicks to Perfect 10, that some of the images had been licensed to other websites prior to their assignment to Perfect 10, and that some images had not been registered until years after their first publication.

Given how critical these depositions are to its defense, Yandex informed Perfect 10 weeks ago that it would be forced to depose each person or entity from whom Perfect 10 claims to have

---

Smith contacted Yandex's counsel and informed Yandex's counsel that Perfect 10's CEO Norman Zada had told *her* that *none* of the images Perfect 10 purchased from her were even at issue in this case.

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

received rights in any image it is asserting against Yandex, particularly if Perfect 10 continued to refuse to provide a list of images allegedly infringed in this case. It requested that Perfect 10 stipulate to Yandex taking additional depositions. Perfect 10 responded that it did not agree to any extra depositions. On June 27, 2013, the parties held a meet-and-confer call in which Perfect 10 continued to refuse to stipulate to any additional depositions. Perfect 10 also continued to refuse to tell Yandex which images are at issue in this case, thereby preventing Yandex from eliminating any of these deponents from its list, or prioritizing among them.[3]

To enable it to fully and fairly defend itself against Perfect 10's damages claim of $150 million dollars, Yandex requests that it be granted at least ten additional depositions. Not only are these proposed depositions critical to Yandex's defense, they do not duplicate those depositions already taken or scheduled, because each assignor purportedly assigned a different set of images to Perfect 10.[4] Nor are they sought for some improper purpose, despite Perfect 10's misleading and factually incorrect assertions about the state of discovery in this case. Although Perfect 10 claims there are dozens of assignors and work-for-hire agreements through which it obtained rights, Yandex believes that once Perfect 10 fully responds to Yandex's Interrogatory No. 1 with the identification of images actually at issue (which is the subject of a separate motion to compel set for hearing on July 18), Yandex will be able to prioritize among the 52 potential witnesses to strike a balance between obtaining the information it needs and not creating an undue burden. Thus, Yandex seeks relief from the standard ten deposition limit imposed by the Federal Rules to take an additional ten depositions.

---

[3] Only after Yandex filed a motion to compel on this issue on June 7, and after Yandex provided its portion of this letter brief seeking additional depositions on July 3, did Perfect 10 reverse course on providing a list of allegedly infringing images. Just a few days ago, Perfect 10 claims to have produced three lists of images it claims were infringed on three specific websites Perfect 10 accuses Yandex of linking to in its image search services. Perfect 10 had previously produced three other such lists pertaining to three different websites. Thus, P10 has identified alleged infringements on just *six* websites -- out of the supposed hundreds or thousands of websites Perfect 10 accuses Yandex of linking to in its image search services. Because this production is so recent, Yandex has not had a full opportunity to review these materials. It highlights, however, that the delay here is on the part of Perfect 10, not Yandex. That Perfect 10 delayed production of such basic information as the identity of (just some of) the infringements it is suing on – which information would have allowed Yandex to identify potential deponents – until just a few weeks before the discovery cutoff, is inexcusable. Perfect 10's dilatory (and incomplete) production is not grounds to deny Yandex discovery into the same.

[4] Yandex has already taken, or is scheduled to take, or has noticed its intention to take, its full allotment of ten depositions, including the following: the three living witnesses from Perfect 10's initial disclosures (Perfect 10 CEO Norman Zada, Perfect 10 employees Melanie Poblete and Gwendalyn Augustine), Perfect 10's accountant Bruce Hersh, Perfect 10 via Rule 30(b)(6), two former Perfect 10 employees (Guillermo Simo and Sean Chumura), one former Perfect 10 photographer (Tracy Kahn), and one representative of one of Perfect 10's assignors (Hilario Artola of J. Stephen Hicks Photography). Perfect 10 questions why Yandex needs the Simo deposition, yet Perfect 10 identified him as a person with knowledge in its own interrogatory responses.

04769.52008/5408742.4  3

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

Yandex also requests that it be permitted to take some of these depositions (only if needed based on witness schedules) after the discovery cut-off date of July 31, 2013. If Perfect 10 had not refused to respond to Yandex's Interrogatory No. 1 (which Yandex propounded nearly nine months ago) with complete information that would have enabled Yandex to prioritize appropriate depositions, Yandex could have identified and pursued the necessary depositions sooner. Yandex should not be further penalized for Perfect 10's unreasonable withholding of critical information. Contrary to Perfect 10's accusation, Yandex is *not* seeking an extension of the July 31 discovery deadline, but rather, recognizes that some third parties may need some flexibility in deposition scheduling. Yandex will immediately notice and schedule all of the extra depositions it is granted, and make every effort to take them before July 31. Yandex would be happy to submit a proposed deposition schedule to the Court with respect to any depositions where the witness could not be located or confirmed for deposition before July 31, for the Court's approval. The comments of Judge Alsup that Perfect 10 quotes below were directed to Perfect 10 and its counsel Eric Benink, for Perfect 10's failure to take even a single foreign deposition as of May 2013 -- despite the fact that Perfect 10 has sued Russian (Yandex LLC) and Netherlands (Yandex N.V.) companies, whose employees are located abroad. Indeed, as of today, Perfect 10 still hasn't taken a single deposition of any Yandex N.V. or Yandex LLC witnesses during the merits phase – not one. Judge Alsup's admonition to Perfect 10 that the Court would not be continuing the trial date to allow Perfect 10 to take foreign depositions were not directed to Yandex, which has been diligent in seeking discovery.

In sum, Perfect 10 offers no good reason for its opposition to Yandex's request. In one breath, Perfect 10 accuses that Yandex's request should be denied because Yandex has been dilatory in discovery. In the next breath, Perfect 10 accuses that Yandex has served *too much* discovery. Perfect 10 also levies a variety of other baseless accusations having nothing to do with Yandex's simple request to depose the individuals who supposedly gave Perfect 10 the right to sue Yandex on the thousands of unspecified images Perfect 10 is asserting. Perfect 10's claim that it has already given Yandex lots of materials in discovery (such as its entire image collection, copyright registration collection, model release collection, and the like) is neither here or there – Yandex is asking for third party depositions, which place no material burden on Perfect 10 and which allow Yandex to test the evidence Perfect 10 has produced. It is not the case that Yandex must simply take Perfect 10's word for it that it holds valid assignments. Yandex's motion should be granted.

**Perfect 10's Position**

Yandex is asking for more depositions (and at the very last minute) because it has infringed massive quantities of Perfect 10 copyrighted works, *and* has refused to expeditiously remove such infringements . In oral argument on May 2, 2013, Judge Alsup made short shift of Yandex's complaints about the massive amount of infringement alleged in the case: THE COURT: "That was because you were infringing so many times. You're trying to hide behind - - that's like somebody killing their parents and saying, I'm an orphan." *See* May 2, 2013 Transcript of Proceedings Regarding Perfect 10's Motion for Summary Judgment at 44:24-45:1.

Perfect 10 is a tiny company with $60,000 in yearly revenue, that has been destroyed by copyright infringement. It only has two employees, Dr. Norman Zada, and Melanie Poblete, its in-house paralegal, whose depositions Yandex has already scheduled.

**quinn emanuel**  trial lawyers | silicon valley
555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

Yandex received all of Perfect 10's assignments and work for hire agreements in April of 2013 and has no justification for waiting until less than 30 days before the end of discovery to make its request for ten additional depositions.  Yandex has failed to establish the right to take any additional depositions beyond those allotted by the Federal Rules of Civil Procedure.  In addition, Yandex improperly asks the Court to extend the July 31, 2013 fact discovery deadline to accommodate its belated request when Judge Alsup has made it clear to *both* parties's attorneys that he would not entertain requests to elongate the discovery period in this case *due to either of the parties' failure to request timely discovery*.  See May 2, 2013 Transcript of Proceedings Regarding Perfect 10's Motion for Summary Judgment at 58:21-59:21 ("Are you doing your discovery?...Please do not come back to me and say you need more time to do depositions….You should be cracking and get going on your discovery…you should have already been halfway there by now.").

Yandex has clearly demonstrated that it is not interested in obeying its discovery obligations and conducting discovery in an appropriate manner, but rather is interested in crushing Perfect 10 with meaningless discovery, while refusing to produce any meaningful discovery itself.  Most of the depositions that Yandex seeks are completely irrelevant fishing expeditions which attempt to challenge the legality of contracts made ten years ago that neither party has challenged.

For example, while Yandex asks for 10 more depositions, Yandex and its counsel Quinn Emanuel have violated a direct court order by Judge Alsup to produce Yandex CEO Arkady Volozh for deposition, and are continuing to violate that order.  Yandex has also suppressed/refused to produce key contracts, and has been coaching witnesses to answer "I don't know" to most questions.  *See* Dkt. No. 180 (Perfect 10's Motion for Sanctions against Yandex N.V. and Arkady Volozh Pursuant to Fed. R. Civ. P. 37(b)(2)(A)).

Yandex has recently served Perfect 10 with more than 700 Requests for Admission.  It is bombarding Perfect 10 with third party document subpoenas, unending numbers of Documents Requests, and Interrogatories that are burdensome and irrelevant.   Yandex has vastly over-designated documents as Confidential and AEO, and has even attempted to exclude Perfect 10's President, Dr. Zada, from depositions by via clearly improper AEO designations.

As of Tuesday, July 9, Perfect 10 will have provided to Yandex, infringing images spreadsheets identifying more than 18,000 images allegedly infringed by Yandex.  More are on the way.  These spreadsheets take a great deal of time to prepare and Yandex could prepare them more easily than Perfect 10, but refuses to do so.  Perfect 10 has also provided Yandex with a 795 page Model Database Spreadsheet, a 46,000 image Model Database, 919,414 files of deposit materials, 9,627 pages of Copyright Certificates, 12,861 pages of Copyright applications, 3,355 pages of communications with the Copyright Office, 824 pages of assignment of rights agreements, 4,701 pages of model releases and photographer contracts, and 270 pages of work for hire agreements, in addition to detailed financial statements going back to 1996 and Perfect 10's tax returns.

In response, almost all of the documents produced by Yandex are in fact copies of Perfect 10's DMCA notices, **which Perfect 10 produced to Yandex and asked that Yandex not produce back**

quinn emanuel  trial lawyers | silicon valley
555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

*to Perfect 10* or lists of URLs blocked by Yandex in response to those notices.   Yandex continues to refuse to produce any data regarding downloads of Yandex offered images by U.S. users – and thus argues that almost all Perfect 10 alleged infringements should be excluded from the case – yet simultaneously asks Perfect 10 to spend an inordinate amount of time creating infringing images spreadsheets that may end up being moot.

Yandex intends to take the deposition of Guillermo Simo - Perfect 10's *printer* who was laid off in mid-2007.  Yandex has failed to explain why Mr. Simo's testimony would be relevant to this case.  The fact that Perfect 10 mentioned Guillermo Simo in response to an interrogatory asking for ALL persons with knowledge of the date of publication of Perfect 10's magazines (which ceased publication in 2007) is hardly a basis to depose him.  With respect to Ms. Amber Smith, Perfect 10 had produced her assignment agreement to Yandex, who should have been able to see that she only assigned Perfect 10 at most 15 images, so that a deposition of Ms. Smith would hardly be needed.

With respect to the further depositions Yandex asserts are necessary to this litigation, all written work for hire agreements, assignment of rights agreements, model releases and photographer contracts speak for themselves and clearly set forth Perfect 10's rights.  Assignment agreements and work for hire agreements between Perfect 10 and photographers generally include the same language, which provides that the photographer may not use or sell photo images created while shooting models under hire by Perfect 10 without Perfect 10's express written permission.  Perfect 10 has never authorized any Perfect 10 photographer to use any Perfect 10 image in a way that would not be permitted under Perfect 10's work for hire agreements.  Further, Perfect 10's President Dr. Zada will be available to testify both at deposition and at trial regarding these agreements.  There is no reason at this late date to allow Yandex to depose all of the photographers, who will not be witnesses at trial.  In any event, even if a Perfect 10 photographer placed a Perfect 10 copyrighted image on his website, that would not give third parties a right to use that image on their website, or give Yandex a right to link to, display, host, or place ads around the infringing image.  Indeed, whenever Perfect 10 has stated in a DMCA notice sent to Yandex that no one other than Perfect 10 is authorized to use a particular Perfect 10 image, those statements have been correct.  Whether or not in some instances third-parties may have the right to display certain images is irrelevant as Yandex does not have such rights.   At trial, only images from obviously infringing websites will be at issue.

The assignments and work for hire agreements that Perfect 10 has with various photographers are around ten years old and speak for themselves.  None of them have been challenged by the original assignor or by anyone else.  Perfect 10's copyright certificates from the Copyright Office have not been contested either.

Finally, with respect to Hilario Artola, J. Stephen Hicks, the owner of Hick Photography, passed away.  Yandex twists the facts when it suggests that there is anything improper about the images listed in Perfect 10's Model Database Spreadsheet that were purchased from J. Stephen Hicks, as well as the law regarding statutory damages.  Perfect 10 listed J. Stephen Hicks as the photographer because Perfect 10 was assigned the images from J. Stephen Hicks, who represented that he owned the Copyrights to those images.  The fact that a few of the images may have been photographed by Hicks employees is irrelevant.  The fact that some of the images may

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

have been assigned to Perfect 10 before Hicks had copyrighted them, is irrelevant as well, since the assignments are approximately ten years old. Statutory damages are available even if the image was not registered within three months of publication as long as the infringement began after the registration took place. 17 U.S.C. § 412(2), as cited by Yandex, only precludes statutory damages for the time period commencing after first publication of the work and *before* the effective date of registration. Yandex has not produced a single document indicating that it has infringed any Perfect 10 image prior to the effective date of registration so its arguments are immaterial. Further, the fact that J. Stephen Hicks may have had the right to use such images in his affiliate program, does not alter the fact that Yandex has no rights to copy, display, or place ads around such images.

Yandex cannot explain why any depositions of any photographer or assignor could supersede the written agreements made with Perfect 10 years ago. Accordingly, this Court should deny Yandex's request. *See, e.g., Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir.1996) (affirming denial of leave to take additional depositions where plaintiff "presented no good reason why additional depositions were necessary"); *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota,* 187 F.R.D. 578, 587 (D. Minn. 1999) (denying request for leave to take additional depositions where defendant "has made no showing that each of the deponents is essential to its discovery, and is not merely a replication of discovery that could be best accomplished with the number of deponents we previously allocated"). *See also Archer Daniels,* 187 F.R.D. at 585 ("to allow newfound, but sadly belated diligence to warrant an extension in the existing [discovery] deadlines only encourages procrastination by rewarding the indolent for their sloth.")

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By     /s/ Rachel Herrick Kassabian
    Diane M. Doolittle
    Rachel Herrick Kassabian
    Counsel for the Yandex Defendants


PERFECT 10, INC.

By     /s/ Lynell D. Davis
    Lynell D. Davis
    Counsel for Plaintiff Perfect 10, Inc.