IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., <br><br> Plaintiff, <br><br> v. <br><br> YANDEX N.V., a Netherlands limited liability company; YANDEX INC., a Deleware corporation; and YANDEX LLC, a Russian limited liability company, <br><br> Defendants. | No. C 12-1521 WHA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS AND VACATING HEARING** |

## INTRODUCTION

In this copyright action, plaintiff moves for sanctions for alleged violations of orders of the Court. For the reasons stated below, the motion is **GRANTED IN PART AND DENIED IN PART**. The August 15 hearing is **VACATED**.

## STATEMENT

The background of this action has been described in prior orders (Dkt. Nos. 24, 73, 76). In brief, Perfect 10 filed this action in March 2012 against defendant Yandex N.V., a Dutch holding company headquartered in the Netherlands. Two months later, Yandex N.V. moved to dismiss for lack of personal jurisdiction. Limited discovery was permitted on the corporate relationship among defendant, Yandex Inc. (a California subsidiary) and Yandex LLC (a Russian subsidiary), and the functions that each performed with respect to the Yandex family's search engine business in this forum.

During jurisdictional discovery, plaintiff Perfect 10 sought to depose Yandex CEO Arkady Volozh. Yandex N.V. moved for a protective order precluding Perfect 10 from deposing CEO Volozh on the grounds that he was an apex witness and that Perfect 10 had failed to show any compelling need to take his deposition rather than the depositions of two lower-ranking employees (Dkt. No. 34). A hearing was held on this issue on August 8, 2012 (Dkt. No. 51). At the hearing, Yandex was ordered to make two lower-ranking employees with more knowledge of day-to-day operations available to be deposed the following week. The Court took a wait-and-see approach with CEO Volozh: if the two employees offered by defense counsel Quinn Emanuel Urquhart & Sullivan, LLP proved to have less knowledge than indicated, the Court would extend the deadline and *possibly* let Perfect 10 take CEO Volozh's deposition (Tr. August 8, 2012 16: 17–23). The undersigned judge made the following *sua sponte* order. *Id.* 17:7–18:8:

> THE COURT: Ms. Kassabian, I'm ordering you as counsel in this case to keep track of where Mr. Volozh is. And before he comes to the United States again under any circumstances you must let us know . . . regardless of these two depositions and regardless of jurisdictional discovery or not on any subjects. If this guy shows up or is about to show up in the United States —
>
> MS. KASSABIAN: Let you know . . . And, Your Honor, may I just let opposing counsel know, or do you want something filed with Your Honor?
>
> THE COURT: Well, you just file something and let — and that way counsel will find out.
>
> MS. KASSABIAN: Okay.
>
> THE COURT: I would like to know myself.

Following the hearing, a written order issued. The order granted Yandex N.V.'s motion for a protective order precluding plaintiff Perfect 10 from deposing CEO Volozh on the grounds that he was an apex witness. However, the order was without prejudice to Perfect 10's ability to renew its request to depose CEO Volozh should the two employees Quinn Emanuel suggested prove not knowledgeable regarding jurisdictional discovery (Dkt. No. 52). The same order and hearing required Yandex's counsel to file notice with the Court "[i]n advance of any trip by Mr. Volozh to the United States or any of its territories during the pendency of this case." *Id.* at 1.

At the August 8, 2012 discovery hearing, Perfect 10 also requested that the Court order Yandex N.V. to provide Yandex LLC and Yandex Inc. contracts which had been executed with American companies. Yandex had previously refused to provide contracts between Yandex LLC

(Russia) and American companies, and Yandex Inc. (United States) and other American companies.

At the time, the only defendant was Yandex N.V., the Dutch holding company. At the hearing, the undersigned granted Perfect 10's request for Yandex Inc.'s contracts with American companies but excluded the contracts between American companies and Yandex LLC (Russia) because Yandex LLC was not a party to the case and was a foreign company. The undersigned judge noted (*id.* at 22):

> It's strange to me that we would be this kind of free-roving thing that just because you want to establish something we get to go all the way around the world with any affiliate, making three affiliates produce contacts with the United States. It's too attenuated, and on this record I'm not going to require it.

On September 4, 2012, defendant's motion to dismiss for lack of personal jurisdiction was denied because Perfect 10 made a *prima facie* showing of an agency relationship, for purposes of jurisdiction, between defendant Yandex N.V. and its subsidiary Yandex Inc. In October 2012, plaintiff was given leave to amend its complaint to add Yandex Inc., and Yandex LLC as defendants, which it did (Dkt. Nos. 87, 88).

In May 2013, an order issued referring all pending and future discovery disputes to a magistrate judge "in light of the unreasonable number of discovery disputes" filed by the parties (Dkt. No. 153). Discovery disputes were then referred to Magistrate Judge Donna Ryu (Dkt. No. 154).

The merits discovery cut-off expired on July 31, 2013. During a deposition of Arkady Borkovsky in June 2013, Borkovsky stated that CEO Volozh had been in Los Angeles on May 30, 2013. Upon learning that CEO Volozh had been in Los Angeles, Quinn Emmanuel inquired of Yandex N.V. whether CEO Volozh had been in the United States at any other time and learned that CEO Volozh had been in Palo Alto in February 2013.

Upon learning at the deposition that CEO Volozh had been in the United States, Perfect 10 requested the opportunity to depose him. In late June 2013, Perfect 10 asked Quinn Emanuel "whether it would be willing to make CEO Volozh available for a deposition in Los Angeles before the discovery cut-off on July 31, 2013, and to let Perfect 10 know by 12:00 pm, on Monday, July 1, 2013" (Dkt. No. 180 at 4–5). Prior to learning that CEO Volozh was in the

3

1  United States, Perfect 10 had never renewed its request with the Court to depose CEO Volozh.
2  As of Perfect 10's filing of its motion for sanctions on July 3, 2013, Quinn Emanuel had not
3  responded to Perfect 10's request. Quinn Emanuel Counsel Diane Doolittle responded to Perfect
4  10's request in an email some two weeks after Perfect 10's deadline, on July 16, stating that
5  Quinn Emanuel was unable to agree to Perfect 10's request to depose CEO Volozh because he
6  was an apex witness (Dkt. No. 197-1 at Exhibit A).

## ANALYSIS

### 1. THE COURT'S MONITORING ORDER.

#### A. Legal Standard.

Perfect 10 argues in its motion for sanctions that the appropriate legal standard is FRCP 37(b)(2)(A). FRCP 37(b)(2)(A) governs sanctions if a party "fails to obey an order to provide or permit discovery."

But the monitoring order was not an order to provide or permit discovery of CEO Volozh. The undersigned judge did not allow Perfect 10 to depose CEO Volozh in the United States (or anywhere else). The protective order specifically stipulated that "Perfect 10 may not depose Arkady Volozh" (Dkt. No. 52 at 1). The relevant legal standard is therefore not FRCP 37(b)(2)(A).

The Court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney fails to obey a scheduling or other pre-trial order. FRCP 16(f)(1). Our court of appeals has held that "[i]in determining the reach of the sanction authority, our courts are guided by the mandate of Federal Rule 1. The rules shall be construed to secure the just, speedy and inexpensive determination of every action." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989) (internal quotations omitted).

#### B. Dispute Regarding the Order's Applicability.

Perfect 10 moves for sanctions against Yandex N.V. and CEO Volozh claiming that Yandex N.V., CEO Volozh, and counsel Quinn Emmanuel violated this Court's protective order. This mistakes to whom the order applied. At the August 8 hearing, the undersigned judge made the following oral order: "Ms. Kassabian, I'm ordering you as counsel in this case to keep track

4

of where Mr. Volozh is" (Tr. August 8, 2012 17: 7–8). This order holds that Counsel Kassabian and Quinn Emanuel disobeyed the Court's explicit order to keep track of CEO Volozh's travel schedule and file notice with the Court in advance of travel to the United States.

After the August 8 hearing at which Quinn Emanuel was ordered to keep track of CEO Volozh's travel plans, a written order issued. The written order applied the August 8 oral order to Yandex N.V. "In advance of any trip by Mr. Volozh to the United States or any of its territories during the during the pendency of this case, Yandex N.V. shall file a notice with the Court and advise Perfect 10 of such trip" (Dkt. No. 52 at 1). This order therefore holds that Yandex N.V. violated the monitoring order.

Nowhere in the written order or at the August 8 hearing was CEO Volozh ordered to inform the Court of impending travel plans. This order holds that CEO Volozh did not violate the monitoring order.

**2.     SANCTIONS.**

**A.     Perfect 10 Has Not Demonstrated Harm.**

Perfect 10 contends that Quinn Emanuel and Yandex N.V.'s failure to abide by the monitoring order is "significant" and that it has been "severely prejudiced" (Dkt. Nos. 180 at 6, 204 at 9). Perfect 10 does not, however, demonstrate how it has been "severely" harmed by Quinn Emanuel's failure to abide by this Court's monitoring order or how the violation of the monitoring order affected the just, speedy, and inexpensive determination of this action.

The crux of Perfect 10's motion is that it has been harmed because it has not deposed CEO Volozh. This argument is misguided. *First*, the monitoring order was not an order for Yandex to produce CEO Volozh for a deposition. *Second*, Yandex's motion for a protective order was granted without prejudice: it was specifically noted that "[t]he Court's order in this regard is without prejudice to Perfect 10's ability to renew its request for Mr. Volozh's deposition" (Dkt. No. 52). Perfect 10 could have renewed its request at any point during discovery. Perfect 10 first renewed its request on Friday, June 28, 2013, one month before the close of discovery, after learning that CEO Volozh had been in the United States (Dkt. No. 180

at 4). Neither Yandex nor Quinn Emanuel is to blame for Perfect 10's delay in renewing its request.

*Third*, even if Quinn Emanuel had notified the Court of CEO Volozh's travel plans and Perfect 10 had renewed its order, it is not clear the request would have been granted at the time. The protective order dated August 8, 2012, precluded Perfect 10 from deposing CEO Volozh on the grounds that he was an "apex" witness. Perfect 10 would have still had to overcome the apex witness issue. Thus, on this record, Perfect 10 has not established that Quinn Emanuel's failure to abide the monitoring order caused "severe" harm.

### B. Bad Faith Has Not Been Demonstrated.

The Court may impose sanctions by virtue of its inherent power in the case of a party exercising bad faith, which includes a broad range of willful improper conduct. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

According to Quinn Emanuel counsel Diane Doolittle's sworn declaration, neither she nor anyone else at Quinn Emanuel was aware that CEO Volozh had traveled to the United States since the Court had issued its monitoring order (Doolittle Decl., Dkt. No. 197-1 ¶ 4).

> On June 26, 2013, I represented Arkady Borovsky, a Yandex Inc. employee at his deposition taken by Perfect 10. During this deposition, Mr. Boroksy testified that he had seen Mr. Volozh in May of 2013 in the United States. Before this time, neither I nor anyone else at Quinn Emanuel was aware that Mr. Volozh had traveled to the United States since the Court issued its order regarding Mr. Volozh. Although I continued to defend the deposition for several more hours, I immediately directed my team to investigate whether Mr. Volozh had made any other trip to the United States since the Court's order. My team learned that Mr. Volozh had also visited the United States in February 2013. Within hours of receiving this information, Yandex notified the Court of these trips.

Counsel Doolittle claimed the failure to notify the Court and Perfect 10 occurred "because of a simple mistake" (*id.* ¶ 6). Quinn Counsel Rachel Kassabian claimed in a sworn declaration that the mistake was that Quinn Emanuel relied on Yandex's in-house counsel (Kassabian Decl., Dkt. No.197-9 ¶ 4).

> I communicated the (August 8) oral order to Yandex's in-house counsel, Roman Krupenin, the same day as the hearing. I would have taken additional steps at that time to ensure compliance if I had thought that Yandex might not take sufficient steps to ensure its compliance through the completion of the trial. In hindsight, I should have, and could have, more proactively monitored these efforts, and more regularly reminded Mr. Krupenin about this aspect of the litigation. Since June 26, 2013, we

6

have taken additional steps to ensure that such inadvertant mistakes do not occur
again.

Counsel Doolittle apologized for the oversight. "On behalf of Yandex and Quinn Emanuel, I apologize sincerely for this error and any inconvenience this may have caused" (Dkt. No. 197-1 ¶ 6). Quinn Emanuel has also taken additional steps to ensure CEO Volozh's travel plans are better monitored, and that Quinn Emanuel is kept apprised of any upcoming trips to the United States or its territories. *Ibid.*

Perfect 10 argues that Quinn Emanuel "must have known" substantially in advance that CEO Volozh would be in the United States to attend Yandex Inc.'s board meeting and therefore acted in bad faith (Dkt. No. 180 at 5). It offers no additional evidence for this speculation. This speculation is furthermore contradicted by Counsel Doolittle's sworn declaration.

Although Quinn Emanuel's inattention to the order dated August 8, 2012 is troubling, bad faith has not been established on this record.

### C. Apex Deposition.

Although Perfect 10 has not demonstrated the "severe prejudice" it alleges, Quinn Emanuel's conduct nevertheless warrants a remedy. Quinn Emanuel violated a court order. Yandex violated a court order. Together, they deprived Perfect 10 of the opportunity to depose CEO Volozh. Perfect 10 requests the Court order Yandex to provide CEO Volozh to stand for a deposition for two days. This order holds that Perfect 10 may depose CEO Volozh for one day in a United States location chosen by Perfect 10 upon ten calendar days advance notice. Discovery will be reopened for that limited purpose for **TWENTY-EIGHT DAYS**.

Based on Perfect 10's briefs, the Court is concerned that the topics on which Perfect 10 seeks to depose CEO Volozh may not be fruitful. That CEO Volozh may have some knowledge regarding the alleged contracts identified in Perfect 10's unredacted briefs is plausible but not certain. Perfect 10 also devotes substantial space in its reply brief to a list of highly-technical questions on which it received allegedly unsatisfactory answers from other deponents. It seems less likely that a CEO would be knowledgeable on these subjects. Thus, reopening discovery for this limited purpose and allowing the CEO deposition will be contingent upon the following: CEO Volozh has until **AUGUST 12 AT NOON** to file a sworn declaration stating in detail whether

7

1  he has knowledge of the contractual issue identified on page five of Perfect 10's motion and the
2  technical topics listed on pages six to eight of Perfect 10's reply brief. (The declaration may be
3  filed under seal and redacted in a manner consistent with prior sealing orders.) It will not be
4  sufficient to say that others are more knowledgeable, the issue being the extent of CEO Volozh's
5  knowledge. If CEO Volozh lacks knowledge of any topic, he must explain why in each instance.
6  The deposition will then proceed as to subject areas on which CEO Volozh has knowledge (if
7  any).

8  If CEO Volozh fails to file a sufficiently-detailed declaration, fails to appear for
9  deposition (assuming he has relevant knowledge), or obstructs his deposition, the Court will
10 likely instruct the jury at trial that: (1) Yandex and its counsel were ordered to notify the Court
11 and opposing counsel of CEO Volozh's presence in the United States; (2) Yandex and its
12 counsel violated this order; and (3) from the violation of this order the jury could reasonably
13 conclude that the testimony avoided by the violation would be adverse to Yandex.

### 2. CONTRACT CLAIMS.

15 Perfect 10 also argues that Yandex and Quinn Emanuel have suppressed key contracts in
16 "likely violation" of this Court's order to produce responsive documents (Dkt. No. 180 at 6). As
17 evidence of this, Perfect 10 points to the declaration of Arkady Borkovsky, wherein Borkovsky
18 admits that Yandex has agreements with American companies. But Borkovsky also testified that
19 he works on behalf Yandex LLC (Russia). This Court's August 8, 2012 order *explicitly* withheld
20 contracts between Yandex LLC and American companies from discovery as "too attenuated"
21 since Yandex LLC was not a named defendant in the action (Tr. August 8, 2012 20:2–22:17).
22 Yandex therefore did not violate the August 8 order.

23 Yandex LLC, however, is now a party to the action. To the extent that Perfect 10 wishes
24 to pursue this discovery dispute, this matter is **REFERRED** to Judge Ryu.

### CONCLUSION

26 For the reasons stated above, Perfect 10's motion for sanctions is **GRANTED IN PART**
27 **AND DENIED IN PART**. This order holds that the foregoing issues are suitable for resolution

8

without a hearing. The August 15 hearing is hereby **VACATED**. Yandex's motion to continue the hearing date on Perfect 10's motion for sanctions is **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

Dated: August 6, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE