1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10    PERFECT 10, INC.,                                     No. C 12-01521 WHA

11              Plaintiff,

12       v.                                                 **AMENDED ORDER
                                                            GRANTING PARTIAL
13    YANDEX N.V., et al.,                                  SUMMARY JUDGMENT**

14              Defendants.

15    ————————————————————————/

16                                    **INTRODUCTION**

17        In this copyright infringement action involving thumbnail images of nude models,

18    defendants move for partial summary judgment.  For the reasons stated below, the motion is

19    **GRANTED**.

20                                    **STATEMENT**

21        **1.    THE PARTIES.**

22        Plaintiff Perfect 10, Inc., a California corporation, creates copyrighted adult

23    entertainment products, including photographs.  Perfect 10 owns and operates the subscription-

24    based internet website perfect10.com.  For the purposes of this motion, Perfect 10's ownership of

25    all copyrights at issue in this action is not contested (Br. 10 n.5).

26        Defendant Yandex N.V., a Dutch holding company headquartered in the Netherlands,

27    owns a family of companies under the "Yandex" brand.  It does not itself own or operate any

28    internet search engines or websites that host user-generated content.  It manages its investments,

including its subsidiaries, defendants Yandex LLC and Yandex Inc. (*id.* at 2).  Subsidiary

**United States District Court**
For the Northern District of California

1  Yandex LLC is a Russian technology company which operates yandex.ru, Russia's most popular

2  search engine. Subsidiary Yandex Inc., a Delaware corporation located in Palo Alto, provides

3  software-development services to Yandex LLC. Yandex Inc. does not own or operate any search

4  engines or websites that host user-generated content. It does, however, own servers in Nevada,

5  which hosted the search index for Yandex LLC's international version of its search engine

6  (yandex.com) for nine months in 2012–2013 (*ibid*).

**A.    Yandex LLC's Search Engines.**

*(1)    Yandex.ru.*

9  The yandex.ru search engine is Russia's most popular search engine and the fourth

10  largest search engine worldwide. It functions as follows. A user can query either a web or

11  image search. When a user types in a query, the search engine references a search index, which

12  is a database of all the words or images known to the search engine and their locations. When a

13  user searches for an image by typing in text, the search engine analyzes the text and then

14  determines whether a given image in its search index fits the user query (*id.* at 3).

15  Yandex.ru's image search index is compiled by "crawlers" that periodically canvas the

16  world-wide internet for images. It does not copy and store full-sized copies of the images it

17  finds but rather distills and stores smaller, lower-resolution thumbnail-sized copies. The storage

18  occurs on its servers. It reproduces its thumbnail copies on search results pages so that the user

19  can determine which, if any, thumbnails are hits. The user can then click through to the third-

20  party website that hosts the full-sized image. Yandex.ru also allows users to place ads and click

21  on ads. (This is also the way crawlers work for popular search engines based in the United

22  States.)

23  Because yandex.ru is a Cyrillic-language search engine, it typically crawls Russian-

24  language websites, which are normally hosted outside of the United States. The yandex.ru index

25  has always been hosted on Russian servers. Yandex.ru does not save data regarding where a

26  user goes next after leaving the search-results page.

27

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

### *(2)* *Yandex.com.*

Yandex.com is a search engine that provides English and other Latin-alphabet based search results. Like yandex.ru, it offers both an image search and a web search and generates its search results in the same manner. It does not store full-sized copies of its images on its server but rather thumbnail copies. Like yandex.ru, yandex.com does not save data regarding where a user goes after leaving the yandex.com search-results page. But there are differences. Unlike yandex.ru, yandex.com crawls for internet content using Latin-alphabet based terms, has no advertising anywhere on its site, and was physically hosted in the United States for a period of nine months, between June 2012 and March 2013 (whereas yandex.ru has always been physically hosted on servers in Russia). Outside of that nine-month window, yandex.com was hosted in Russia like yandex.ru. This civil action was commenced in March 2012.

### B.    **Yandex LLC's User-Generated Content Services.**

Yandex LLC hosts several popular Russian-language services that host user-generated content. Narod.ru is a Russian-language site-hosting service where users can build and host their own websites (like Wordpress). Fotiki.ru is a Russian-language photo-hosting service and online community similar to Shutterfly. Ya.ru is a blog-hosting service. Moikrug.ru is a social network for professionals. All of these services are hosted entirely on servers located in Russia. Yandex does not track the IP addresses associated with user uploads or downloads on any of these services and so it does not know where — geographically — uploads are coming from or downloads are going to. Yandex LLC also does not track "right-click" user activity data on any of its user-generated content services, so Yandex LLC does not know if users right-click on images and save them on their computers, and thus does not know if users in the United States download the images it hosts.

### 2.    **PERFECT 10'S CLAIMS.**

Perfect 10 has brought direct, contributory, and vicarious copyright infringement claims against Yandex N.V., Yandex Inc., and Yandex LLC. Perfect 10's first amended complaint refers to them collectively as "Yandex" because "they are inextricably involved in the operation of yandex.com and yandex.ru" (Dkt. No. 88 at 2).

Perfect 10's *direct* copyright infringement claims are as follows:  (1) narod.ru (site-hosting) and fotki.ru (photo-hosting) services hosted full-sized copies of user-uploaded infringing Perfect 10 images; (2) yandex.ru and yandex.com hosted infringing thumbnail-sized copies of Perfect 10 images and linked them to Yandex-created pages that display similar full-sized versions of the images often adjacent to Yandex ads (First Amd. Compl. ¶¶ 23–27; Br. 2–3; Opp. 5–6).

Perfect 10's *contributory* copyright infringement claims are as follows:  (1) yandex.ru linked to third-party sites that hosted full-sized infringing copies of Perfect 10's images; (2) Yandex.com linked to third-party websites that hosted full-sized infringing copies of Perfect 10's images; (3) Yandex LLC's user-generated content sites allowed users to upload and download infringing copies of Perfect 10's images.

Perfect 10's *vicarious* copyright infringement claims against Yandex N.V. are based on the allegations of direct and contributory infringement purportedly committed by Yandex LLC and Yandex Inc.

According to defendants, in a series of DMCA notices sent to Yandex Perfect 10 identified 63,756 URLs from Yandex search results pages linking to allegedly infringing Perfect 10 images hosted on third-party websites.  Perfect 10 furthermore asserted 1,474 acts of direct infringement based on Narod, Fotki, Ya.ru, and Moikrug.ru's hosting of Perfect 10 images uploaded by third-parties (Br. at 6).

During discovery in this action, both Perfect 10 and Yandex have used widely-available geo-location tools.  These software tools obtain IP addresses (the numeral labels assigned to computing devices) which can then be used to determine, among other things, the country in which a device is located.  This is important because legal liability is tied to the location of servers and storage media used to capture the images.  Perfect 10 has used geo-location tools to determine the owners and hosts of various websites that display allegedly infringing Perfect 10 images.  Yandex used geo-location tools to obtain IP addresses and corresponding geo-locations of all 63,756 allegedly infringing URLs which Perfect 10 alleged yandex.com and/or yandex.ru linked to in their search results.

United States District Court

For the Northern District of California

1    Of the 63,756 alleged infringements to which yandex.com and/or yandex.ru linked in

2    search results, Yandex contends that 51,959 of them were hosted on servers located outside of

3    the United States and 50,485 concerned content hosted by third-party websites. The remaining

4    1,474 of the 51,959 URLs located outside of the United States concern content uploaded by

5    Yandex users to Narod.ru, Fotki.ru, Ya.ru, and Moikrug.ru accounts hosted by Yandex LLC, all

6    of which are located on servers in Russia (*id.* at 7).

7    Yandex served discovery requests asking Perfect 10 to produce all documents showing

8    the location of the direct infringements on which the contributory and vicarious claims are based.

9    Perfect 10 directed Yandex to documents that claimed to show infringement hosted in the United

10    States. Perfect 10 did not, however, produce evidence of direct infringement in the United States

11    relevant to the location of the 51,959 alleged infringements hosted on servers outside the United

12    States. Furthermore, Perfect 10 did not provide evidence of direct infringement in the United

13    States relevant to the 1,474 alleged infringements based on user-generated content hosted by

14    Yandex (*id.* at 7–8).

15    Yandex now moves for partial summary judgment on the issues of (1) whether Perfect 10

16    images hosted on Yandex services located abroad are direct infringements; (2) whether Yandex's

17    thumbnail versions of Perfect 10 images hosted on servers in the United States for a nine-month

18    period in 2012–13 constituted fair use; (3) whether Yandex is contributorily liable for linking to

19    Perfect 10 images hosted by extraterritorial third parties; and (4) vicarious liability. Both parties

20    have submitted briefing on the motion, and oral argument was held on July 11, 2013.

**ANALYSIS**

22    Summary judgment is proper when the pleadings and the evidence in the record "show

23    that there is no genuine dispute as to any material fact and that the moving party is entitled to

24    judgment as a matter of law." FRCP 56(a). A dispute is genuine only if there is sufficient

25    evidence for a reasonable fact-finder to find for the non-moving party, and material only if the

26    fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49

27    (1986).

28

5

United States District Court
For the Northern District of California

1    **1.    DIRECT INFRINGEMENT CLAIM.**

2         It is a well-established principle that, as a general rule, the Copyright Act has no

3    extraterritorial application. *Minden Pictures, Inc. v. Pearson Educ., Inc.*, No. 11-5385-WHA,

4    2013 WL 71774, at *1 (N.D. Cal. Jan 7, 2013), *citing L.A. News Serv. v. Reuters Television Int'l,*

5    *Ltd.*, 149 F.3d 987, 990 (9th Cir. 1998).  "Because the copyright laws do not apply

6    extraterritorially, each of the rights conferred under the five section 106 categories must be read

7    as extending no farther than the United States' borders. . . .  [They] do not reach acts of

8    infringement that take place entirely abroad." *Subafilms Ltd. v. MGM-Pathe Comm'n Co.*, 24

9    F.3d 1088, 1094, 1098 (9th Cir. 1994).

10        To present a prima facie case of direct infringement, a plaintiff:

11             (1) . . . must show ownership of the allegedly infringed material
               and (2) they must demonstrate that the alleged infringers violate at
12             least one exclusive right granted to copyright holders under 17
               U.S.C. § 106.  Even if a plaintiff satisfies these two requirements
13             and makes a prima facie case of direct infringement, the defendant
               may avoid liability if it can establish that its use of the images is a
14             "fair use" as set forth in 17 U.S.C. § 107.

15   *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007).

16        **A.    Servers Outside the United States.**

17        Yandex moves for summary judgment on Perfect 10's direct infringement claims

18   "premised on the 1,474 acts of alleged infringement concerning user-generated content [i.e. user-

19   uploaded Perfect 10 images] hosted on Yandex's narod.ru, fotki.ru, ya.ru, and moikrug.ru

20   services."  Yandex argues that the evidence is undisputed that these Yandex services are, and

21   have always been, hosted on servers in Russia.  The "server test" applied by our court of appeals

22   makes the hosting website's computer, rather than the search engine's computer, the situs of

23   direct copyright infringement liability.  *Amazon*, 508 F.3d at 1159–60.  Therefore, Yandex

24   argues, these foreign-hosted images are extraterritorial and not actionable under the Act.  This

25   order agrees.

26        Perfect 10 does not contest that the servers for these Yandex services are located in

27   Russia.  Rather, Perfect 10 objects that fotki.ru and narod.ru (and presumably Yandex's other,

28   similar sites) commit "direct infringement by display."  According to Perfect 10, when its images

United States District Court

For the Northern District of California

1    are hosted on servers located in Russia, Yandex violates Perfect 10's "exclusive display right"

2    because users in the United States could download them.  Perfect 10 supplies declarations

3    establishing that a United States user *could* download Perfect 10 images from a Yandex server in

4    Russia, but no evidence of *actual* downloads in the United States.

5            This theory of liability is rejected.  Although Perfect 10 cites *Amazon* in support of its

6    argument, nowhere in that decision did our court of appeals endorse the idea that display of a

7    copyrighted image anywhere in the world creates direct copyright liability in the United States

8    merely because the image could be downloaded from a server abroad by someone in the United

9    States.  Such a principle would destroy the concept of territoriality inherent in the Copyright Act

10   for works on the internet.

11           In a more plausible variation of this argument, Perfect 10 points out that when Yandex's

12   servers were located in the United States for a nine-month period, a Yandex.com image search

13   performed by a server in the United States *could have linked* to a Perfect 10 image hosted on a

14   Yandex server in Russia.  Perfect 10 argues that Yandex should not escape direct copyright

15   liability by international distribution of its hosting and searching servers.

16           It is not necessary to address the validity of this theory's merits.  It fails for lack of proof.

17   Perfect 10 does not demonstrate that Yandex in fact stored or displayed full-sized copies of the

18   Perfect 10 images on Yandex's United States servers.  (The issue of thumbnail versions of

19   Perfect 10 images stored on Yandex servers in the United States will be addressed below.)

20   Perfect 10 only submits that "Yandex suggests it keeps duplicate copies of images on all of its

21   servers . . . so full-size Perfect 10 images *may very well have been* stored on yandex.com's U.S.

22   servers" (Dkt. No. 167 at 24 (citation omitted, emphasis added)).  Perfect 10's speculation that

23   full-size image storage may have occurred in the United States is insufficient at the summary

24   judgment stage, which is the point in litigation to stand and deliver on admissible evidence.  Nor

25   is there any evidence of an effort by Yandex to intentionally circumvent copyright liability

26   through clever placement of its servers or through manipulation of the corporate form.

27

28

                                                    7

This order accordingly holds that Yandex's hosting of full-sized Perfect 10 images on servers in Russia does not constitute direct copyright infringement in the Untied States. To this extent, Yandex's motion for partial summary judgment is **GRANTED**.[1]

**B.      Servers Inside the United States.**

Yandex concedes that during the nine-month period from June 2012 to March 2013 when yandex.com servers were located in the United States, Yandex stored thumbnail versions of Perfect 10 images within the territorial reach of the Copyright Act. Yandex does not dispute that Perfect 10 owned (and owns still) the copyrights in the images it asserts, nor the basic proposition that Yandex's use of the thumbnails violated Perfect 10's display and distribution rights in these images. Thus, this order assumes that Perfect 10 can make out a *prima facie* case of direct infringement based on these thumbnails. The burden then shifts to Yandex to show that its thumbnail copies constituted fair use. *See Amazon*, 508 F.3d at 1158. This order holds that Yandex has met its burden.[2]

The fair use defense is codified in 17 U.S.C. 107, which states:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

---

[1]   There is a split in authority as to whether the extraterritoriality question is jurisdictional in nature, or should instead be analyzed in terms of whether the extraterritorial acts state a claim for infringement. *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1367–68 (Fed. Cir. 2008). Our court of appeals has not ruled on the issue, and it is only mentioned in a footnote in the parties' briefs. This order assumes without deciding that the issue should be analyzed in terms of whether the extraterritorial acts state a claim.

[2]   Perfect 10 devotes a section of its opposition to arguing that Perfect 10 thumbnails on Yandex's fotki.yandex.ru search engine are not fair use (Dkt. No. 167 at 13–14). This issue is outside the scope of Yandex's motion for partial summary judgment. Moreover, the fotki.yandex.ru servers are extraterritorial and therefore not susceptible of a claim of direct infringement.

United States District Court
For the Northern District of California

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

This order is guided by the decision of our court of appeals in *Amazon* (which involved the same plaintiff, similar facts, and itself relied on an analogous fact pattern in *Kelly v. Arriba Soft*, 336 F.3d 811 (9th Cir. 2003)).

Regarding the first factor, "[t]he central purpose of this inquiry is to determine whether and to what extent the new work is 'transformative.'" *Amazon*, 508 F.3d at 1164. Our court of appeals found in *Amazon* (and *Kelly*) that using a thumbnail image as a pointer to a source of information is highly transformative. So too here. Yandex's thumbnail versions served a different function than Perfect 10's use: "improving access to information on the Internet versus artistic expression." *Id.* at 1165.

Perfect 10 objects that, unlike the Google search function at issue in *Amazon*, the yandex.com image search linked the thumbnail directly to a larger version of the image, without including parts of the surrounding third-party web page, concentrating its fire on a technique known as "in-line linking." When a user of the yandex.com search service clicked on one of the thumbnails, the full-size source image appeared in the same browser window. *Significantly, although it appeared as an integrated page, the full-size image was actually transmitted from the third-party website directly to the user's computer — no copy was ever stored on yandex.com's servers.* Put differently, the user would continue to see the Yandex logo near the top of the screen (which came from the United States-based server) *and* would see on the rest of the screen a full-size image of the nude model (which came from the third-party server).

It is true that this integrated composite screen left the impression that the nude model image emanated from Yandex, but this objection fails for three reasons. *First*, our court of appeals expressly held that in-line linking to a full-size image does not constitute direct infringement. *Id*. at 1159–60. Without a direct infringement of the full-size image, the fair use defense does not come into play — at least as to that full-size image. *Second*, whether a browser

9

United States District Court

For the Northern District of California

1   window shows only the thumbnail and the full-size image — instead of the full-size image along

2   with part of the surrounding web page — does not affect whether the use of the *thumbnail* has

3   been transformed.  *Third*, even if yandex.com's use of the thumbnail were broadly described as

4   an 'in-line link connected to a full-size image,' that use remains highly transformative.

5          Perfect 10 also objects that when the yandex.com thumbnail images in-line linked to full-

6   size versions, the full-size images were displayed beside commercial advertising.  These

7   objections are not supported by competent evidence.  The summary judgment record does *not*

8   show that any of the yandex.com thumbnails (as opposed to thumbnails from Yandex services in

9   Russia) were used in connection with advertising.  The storage of full-size images and use of

10  advertising on the *yandex.ru* website *in Russia* is irrelevant here.

11         Perfect 10 next argues that Yandex should not be permitted to benefit from the fair use

12  defense because Yandex has acted in bad faith.  Specifically, Perfect 10 contends that because

13  Yandex has objected to certain DMCA notices sent by Perfect 10, Yandex should be precluded

14  from relying on the fair use defense generally.  This argument fails both because Perfect 10 has

15  not adduced evidence substantiating its allegation of bad faith, and because Perfect 10 fails to

16  explain the connection between its DMCA notices and Yandex's decision to use thumbnails in

17  its search engine.  Nor is there any evidence that Yandex's use of Perfect 10 images for its

18  thumbnails was targeted or pretextual.

19         Perfect 10 attempts to distinguish this action from *Amazon* by arguing that Yandex's

20  search service (which was directed towards English-speaking internet users in Russia) did not

21  provide a public benefit for "Americans" (Dkt No. 167 at 10–11).  This argument is not

22  persuasive.  *Amazon*'s discussion of the public benefit from internet search engines was not

23  constrained by whether they provided a particular benefit to the United States.  Moreover,

24  Perfect 10's argument is contradicted by its own efforts to show that the Yandex's search service

25  reached users in the United States (*see* Opp. at 19 (stating that .5% of the traffic to yandex.ru

26  currently comes from the United States, which means that "yandex.ru receives approximately

27  750,000 queries from U.S. users each day, or 22.5 million queries each month.")).

28

United States District Court

For the Northern District of California

Regarding the second factor, Yandex argues that the nature of the copyrighted works is comparable to the images in *Amazon* and in keeping with that decision should only slightly favor Perfect 10. Perfect 10 does not dispute this contention, and this order agrees.

Regarding the third factor, Perfect 10 argues that the "amount and substantiality" analysis should favor Perfect 10 because Yandex allegedly used 40,000 Perfect 10 thumbnails, compared to approximately 1,500 used by Google in the *Amazon* action. Perfect 10 confuses the nature of the substantiality analysis. It proceeds, like the concept of infringement, on a copyright-by-copyright basis. Thus, the number of allegedly infringed images is not relevant. And, as noted above, there is no evidence in the record that Yandex's enterprise was dedicated to circumvention of the Act. As in *Amazon* and *Kelly*, this order concludes that the third factor favors neither party because the Yandex's transformative use required use of the entire image, albeit in much reduced size. *See Amazon*, 508 F.3d at 1167–68; *Kelly*, 336 F.3d at 821.

As for the effect on the market for the original, Perfect 10 first contends that market harm should be presumed. In light of *Amazon*, this argument is rejected because Yandex's use is transformative. *See Amazon*, 508 F.3d at 1168.

Perfect 10 next contends that Yandex is responsible for "billions of unauthorized views and downloads of its images from websites to which Yandex links Perfect 10 thumbnails" (Opp. 12 (emphasis removed)). Put differently, Perfect 10 is arguing that Yandex causes it market harm because Yandex provides a search service that links to third-party infringers. This argument is not substantiated by competent evidence. Perfect 10's putative support for this contention consists of screen shots from *third-party* websites showing that links *on those websites* leading to Perfect 10 images had been viewed approximately 3.8 million times as of December 2012 (which was within the nine-month period that yandex.com servers were located in the United States). Perfect 10 does not, however, provide evidence that any of those views were the result of yandex.com users clicking on thumbnails stored on yandex.com servers in the United States during that nine-month period. The simple fact that the thumbnail links were stored in yandex.com's index and accessible on the internet does not compel a finding that those links were actually viewed or used.

11

Perfect 10 also theorizes that user views of the 40,000 Perfect 10 thumbnails that were on the yandex.com site could have been tracked by Yandex and then compared to statistics for users joining perfect10.com as paying members. Perfect 10 claims that such data "would likely show that millions of Yandex users have viewed Perfect 10 images at Yandex and none have subscribed to Perfect 10" (Opp. 13). This is speculation, not proof.

Similarly, Perfect 10 contends that in *Amazon* our court of appeals recognized that there was a market for cell phone downloads of reduced-size versions of Perfect 10 images back in 2007, but that the harm to this market was hypothetical at the time. 508 F.3d at 1168. Pointing to the alleged loss of its cell phone download business in the ensuing years, Perfect 10 cries foul. Perfect 10 reasons that the market for reduced-size images has dried up since 2007, and Yandex has began providing a thumbnail search service since 2007; ergo, Perfect 10 has been harmed by Yandex. This simple correlation, without more, does not constitute sufficient evidence that Yandex's use of 40,000 thumbnail images between June 2012 and March 2013 affected Perfect 10's market. Significantly, in a prior litigation against Google, Perfect 10's president stated in a sworn declaration that Perfect 10's cell phone download business "effectively ended in 2006." *Perfect 10, Inc. v. Google Inc.*, No. 2:04-cv-9484 (C.D. Cal.) (Dkt. No. 438, filed July 5, 2009).

In sum, there is no evidence in the record that *Yandex.com's* use of thumbnail versions of Perfect 10's image during a nine-month period had any effect on the market for those same images. This order therefore concludes that this factor favors neither party.

Taking a step back, this order must now consider the above factors together "in light of the purposes of copyright." *Amazon*, 508 F.3d at 1168. As in *Amazon*, Yandex's significant transformative use must be weighed against the nature of the work, which weighs slightly in favor of Perfect 10, and the neutral third and fourth factors. Upon due consideration, this order holds that yandex.com's thumbnails stored on its servers in the United States for a nine-month period were fair use.

**2.   CONTRIBUTORY INFRINGEMENT CLAIM.**

Now this order will return to the servers overseas, as well as those in the United States, and consider the claim of contributory infringement, that is, the claim that those servers contributed to direct infringement by others within the United States.

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *Id.* at 1169, *citing Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). To establish contributory liability, Perfect 10 must first establish direct infringement by third parties because secondary liability otherwise cannot exist. *Amazon*, 508 F.3d at 1169. For contributory infringement, the servers that matter are the servers where the underlying direct infringement occurred. As our court of appeals stated in *Subafilms*, "a primary activity outside the boundaries of the United States, not constituting an infringement cognizable under the Copyright Act, cannot serve as the basis for holding liable under the Copyright Act one who is merely related to that activity within the United States." *Subafilms*, 24 F.3d at 1093, *quoting* 3 David Nimmer & Melville B. Nimmer, NIMMER ON COPYRIGHT § 12.04[A][3][b], at 12-86. Thus, contributory liability can exist regardless of the location of the defendant's servers as long as the underlying direct infringements occurred in the United States.

Yandex moves for summary judgment on approximately 50,000 yandex.com and yandex.ru links identified in Perfect 10's DMCA notices. The links connect to full-size versions hosted on third-party websites. *Using the same geo-location tools used by Perfect 10, Yandex demonstrates that the third-parties hosting the 50,000 full-sized images are extraterritorial, and Perfect 10 does not provide any evidence to the contrary.*[3] Therefore, Yandex argues, the full-size images cannot constitute direct infringement under the Copyright Act, and the yandex.com links to them cannot contributorily infringe. This order agrees. To this extent, summary judgment is **GRANTED**.

Perfect 10 argues that our court of appeals held in *Amazon* that "a search engine like google.com or yandex.com should be held contributorily liable under U.S. law when it provides

---

[3]   Following the submission by Perfect 10 of evidence that 23 of the links connected to domestic websites, Yandex withdrew its motion as to those 23 and now only seeks summary judgment on those links for which the extraterritorial situs is uncontested.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   links and user traffic to infringing websites regardless of their 'geographical location' because it

2   assists U.S. users in gaining access to the infringing materials offered by those websites" (Opp.

3   15).  This interpretation of *Amazon* is incorrect.  Implicit in the passage in *Amazon* cited by

4   Perfect 10 was the notion that the prerequisite for contributory infringement — an act of direct

5   infringement in the United States — was satisfied.  *Amazon* does not change the view adopted by

6   our court of appeals in *Subafilms*:  if third-party activity is extraterritorial, it cannot directly

7   infringe, and in turn there can be no contributory infringement.  For the same reason, Perfect

8   10's insistence that the Yandex.com servers were located in the United States for a nine-month

9   period does not change the contributory liability analysis.  Again, it must also be emphasized

10   that there is no evidence that Yandex is or has been intentionally attempting to circumvent

11   copyright liability by funneling internet users to Perfect 10 images.

12          Perfect 10 also invokes the predicate act doctrine, "whereby a plaintiff can collect

13   damages for foreign copyright violations that are directly linked to the domestic copyright

14   violation.  *Minden*, 2013 WL 71774 at *1, *citing L.A. News Serv. v. Reuters Television Int'l, Ltd.*,

15   149 F.3d 987, 991–92 (9th Cir. 1998).  Perfect 10's argument that a contributory infringement

16   could constitute a predicate violation still presupposes a territorial direct infringement to support

17   contributory liability.  For the 50,000 links at issue, no territorial direct infringement exists.

18          Perfect 10 further argues that the 40,000 yandex.com thumbnails that were stored in the

19   United States for nine months could constitute predicate direct infringements, notwithstanding

20   Yandex's fair use defense.  This theory of liability ends where it starts.  Because (as explained

21   above) those yandex.com thumbnails constituted fair use, they did not infringe, and there is no

22   predicate violation.

23          **3.     VICARIOUS LIABILITY CLAIM.**

24          *Amazon* sets out the test for vicarious liability:

25                  One infringes vicariously by profiting from direct infringement
                    while declining to exercise a right to stop or limit it.  As this
26                  formulation indicates, to succeed in imposing vicarious liability, a
                    plaintiff must establish that the defendant exercises the requisite
27                  control over the direct infringer and that the defendant derives a
                    direct financial benefit from the direct infringement.

28

14

508 F.3d at 1173. Like contributory liability, vicarious liability requires an underlying act of direct infringement. Yandex's websites in Russia do not directly infringe because they are beyond the territorial reach of the Copyright Act. Yandex's thumbnails that were stored on servers in the United States for a nine-month period did not infringe because they were fair use. This order has also determined that Yandex is not contributorily liable based on extraterritorial third-party infringement. Thus, for these issues specifically within the scope of Yandex's motion for partial summary judgment, there can be no vicarious liability. To this extent, Yandex's motion for summary judgment is **GRANTED**.

### 4.   UNITED STATES DOWNLOADS.

Finally, Perfect 10 contends that it has "demonstrated that the U.S. Copyright Act applies by presenting evidence of downloads in the United States" (Opp. 17). It is not clear from Perfect 10's opposition whether it makes this argument in the context of its allegations of direct infringement, contributory infringement, jurisdiction, or something else. Regardless, the same result pertains. Whether the alleged infringing United States downloads are analyzed as a basis for direct or contributory liability, at the summary judgment stage Perfect 10 must adduce evidence that such downloads occurred. It has not done so.

Perfect 10 asserts that at "least 40 Perfect 10 images were likely *uploaded* to Yandex-hosted websites" (Dkt. No. 167 at 19 (emphasis added)). As explained above, it is not contested that the Yandex websites that host images *are extraterritorial*, which precludes direct infringement for hosting the uploaded images.

Perfect 10 submitted declarations from a private investigator, a web developer, and a graphic designer (Dkt. Nos. 167-28–30). In each one, the declarant states they were asked by Perfect 10 to use various Yandex services to download Perfect 10 images to computers located within the United States. Each declarant confirms that this is "possible" and then explains the process by which they each accomplished the task. These declarations do not change any of the conclusions herein. Perfect 10's own downloads (and downloads by its agents) conducted as part of its investigation do not constitute direct infringements because Perfect 10 cannot infringe its own copyrights. Nor do any of the declarations rise to the level of expert testimony showing

that any particular quantity of such downloads have in fact occurred.  This order agrees that it is *possible* for someone in the United States to download infringing copies of Perfect 10 images using Yandex's search engine.  The summary judgment record does not establish, however, that any such downloading has actually occurred.

In its opposition brief, Perfect 10 claims that "it is a foregone conclusion that U.S. users will download [copyrighted] images" and "the enormous traffic to Yandex search engines statistically guarantees that downloads of Perfect 10 images . . . by U.S. users have taken place" (Dkt. No. 167 at 19).  These claims are not supported by expert testimony, documents, or other evidence.  Thus, on the present record, they are speculative and unsubstantiated.  In sum, Perfect 10's assertions regarding United States downloads do not change any of the conclusions herein.

CONCLUSION

For the reasons stated above, Yandex's motion for partial summary judgment is **GRANTED**.  This order disposes of Perfect 10's direct infringement claims in their entirety.  A portion of Perfect 10's claims for contributory and vicarious liability remain in the case and shall proceed to trial.

**IT IS SO ORDERED.**

Dated:   September 6, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

16